IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

Vs.                                                                No. 2:13-cv-02289 dkv
                                                                   JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

      Defendants.

## ANSWER OF DEFENDANTS, PEDIATRIC ANESTHESIOLOGISTS, P.A., AND BABU RAO PAIDIPALI, M.D.

Defendants, Pediatric Anesthesiologists, P.A. ("Pediatric Anesthesiologists") and Babu Rao Paidipalli, M.D. ("Dr. Paidipalli"), by and through their undersigned counsel, respond to the allegations contained in the Complaint, paragraph by paragraph, as follows:

1.     Defendants are without information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint concerning the plaintiff's current place of residence. Based on information and belief, defendants admit that plaintiffs are the parents and next of kin of Brett Lovelace, decedent. Defendants admit that defendant, Pediatric Anesthesiologists, is a professional association doing business in the state of Tennessee and that defendant, Dr. Paidipalli, is a resident citizen of Shelby County, Tennessee.

2.      Defendants admit that Pediatric Anesthesiologists is a pediatric anesthesiology service corporation having its principal place of business in Memphis, Tennessee, and that defendant, Dr. Paidipalli, is a resident citizen of Shelby County, Tennessee.

3.      Defendants deny that any acts or omissions on their part in this matter constitute medical negligence and deny that they caused injury to, and the subsequent death of the decedent, Brett Lovelace. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 of the Complaint.

4.      Defendants are without information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint.

5.      Defendants deny that the plaintiffs have complied with T.C.A. 29-26-121(a), and allege that plaintiffs failed to comply with such statute for reasons including, but not limited to, plaintiffs' failure to include with their statutory pre-suit notice a HIPAA-compliant medical authorization. In this regard, defendants would show that paragraph 3 of the medical authorization enclosed with the plaintiffs' statutory notice failed to specifically designate the type of information to be disclosed under the authorization and therefore failed to comply with HIPAA regulations, 45 C.F.R. §164.508(c)(1)(i) which requires that an authorization contain "a description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion", and 45 C.F.R. §164.508(b)(2), which requires that an authorization be "filled out completely, with respect to an element described in 164.508(c)" which are "core elements" which must be included for an authorization to be valid under HIPAA. Paragraph 3 of the medical authorization form utilized by plaintiffs includes categories of

types of information to be disclosed with a blank next to each type of information to be checked if such type of information is to be disclosed, but none of the blanks were checked or otherwise marked, and therefore plaintiffs' medical authorization failed to contain "a description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion." In addition, the medical authorization submitted by plaintiffs was deficient due to plaintiffs' failure to include therein "a description of each purpose of the requested use or disclosure," required by 45 C.F.R. §164.508(c)(1)(iv). This requirement is also stated to be a "core element" under 45 C.F.R. §164.508(c)(1) and the failure to include it renders the authorization defective. These deficiencies make the medical authorization submitted by plaintiffs non-compliant with HIPAA and thus make the notice provided by plaintiffs insufficient under T.C.A. 29-26-121(a)(2)(E).

6. Defendants deny that plaintiffs have complied with T.C.A. 29-26-121 as stated in paragraph 5 above and paragraph 18 hereafter.

7. Defendants admit that plaintiff attached to their Complaint a document entitled "Plaintiffs' Certificate Of Good Faith". However, defendants are without information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7, and therefore deny the same.

8. Defendants admit that defendant, Pediatric Anesthesiologists, and defendant, Dr. Paidipalli, are respectively a Tennessee professional association and a licensed Tennessee medical practitioner engaged in the medical specialty practice of pediatric anesthesiology in and for the city of Memphis, Tennessee. Defendants can neither admit nor deny the remaining allegations in paragraph 8 of the Complaint.

9.     Defendants admit the allegations in paragraph 9.

10.     Defendants admit that post-operatively, the patient, Brett Lovelace, was transferred from the operating room to PACU on March 12, 2012, and would show that the patient was in stable condition at that time.  Defendants deny the remaining allegations contained in paragraph 10 of the Complaint.

11.     Defendants admit that they owed their patient, Brett Lovelace, a duty of care in accordance with the recognized standard of acceptable professional practice in the profession and specialty thereof that the defendants practiced, in the Memphis, Tennessee community, at the time of the care provided to their patient, and defendants aver that they complied with said duty.  Defendants deny that their care fell below the recognized standard of acceptable professional practice for pediatric anesthesiologists in this community.  Defendants deny all remaining allegations in paragraph 11 including all subsections thereof, including subsections a, b, c, and d, as directed at these defendants. These defendants can neither admit nor deny the allegations directed at other defendants as set forth in paragraph 11 of the Complaint.  It is denied that these defendants are jointly and/or severally liable for any injury to plaintiffs or plaintiffs' decedent as alleged in paragraph 11 of the Complaint.

12.     Defendants deny the allegations contained in paragraph 12 of the Complaint as directed to these defendants.  Defendants deny all allegations of negligent infliction of emotional distress as set forth in paragraph 12 of the Complaint.

13.     Defendants deny the allegations contained in paragraph 13 of the Complaint.  Further, defendants rely on and incorporate herein by reference the statutory

caps applicable to the alleged damages as codified in T.C.A. 29-39-101, *et. seq.*,
including but not limited to, T.C.A. 29-39-102.

14.     All allegations contained in the Complaint which are not specifically
admitted hereinbefore are here and now denied.

15.     Defendants deny that plaintiffs are entitled to the relief sought, or to any
relief whatsoever in the premises, against these defendants.

16.     Defendants demand a jury for the trial of this cause.

17.     Defendants allege that the Complaint fails to state a claim against the
defendants upon which belief can be granted and further allege that the plaintiffs, Daniel
Lovelace and Helen Lovelace, individually, have no cause of action or claim against
these defendants upon which relief can be granted.

## AFFIRMATIVE DEFENSES

18.     Defendants allege that plaintiffs failed to comply with T.C.A. 29-26-121,
for reasons including, but not limited to, the plaintiffs' failure to provide a HIPAA-
compliant medical authorization with the statutory pre-suit notice, required by T.C.A. 29-
26-121(a)(2)(E), as the medical authorization provided by plaintiffs failed to comply with
45 C.F.R. §164.508(c)(1)(i), which requires that the authorization contain "a description
of the information to be used or disclosed that identifies the information in a specific and
meaningful fashion," a "core element," and also failed to comply with 45 C.F.R.
164.508(c)(1)(iv), which requires that the authorization contain "a description of each
purpose of the requested use or disclosure," another "core element." The medical
authorization provided by plaintiffs, paragraph 3 thereof, includes blanks to be checked to
identify the information to be disclosed, but none of the blanks were checked, and the

medical authorization also omitted a description of each purpose of the requested use or disclosure. Thus, the medical authorization provided by plaintiffs failed to include two (2) of the mandatory "core elements" under HIPAA regulations. Pursuant to 45 C.F.R. §164.508(b)(2), the authorization provided by plaintiffs is defective and thus is non-HIPAA compliant. Further, defendants incorporate herein by reference the allegations contained in paragraph 5 of this Answer.

19.     Defendants allege that the one year statute of limitations provided in T.C.A. 29-26-116 was not extended for 120 days as provided in T.C.A. 29-26-121(c), due to the fact that the plaintiff failed to comply with T.C.A. 29-26-121(a). Defendants further allege that the one year statute of limitations applicable to the action filed by plaintiffs herein, as provided in T.C.A. 29-26-116, expired prior to the filing of this action and that plaintiffs' Complaint should therefore be dismissed with prejudice.

20.     Defendants allege that they did not cause any injury to the plaintiffs or to the plaintiffs' decedent, Brett Lovelace.

21.     Defendants assert the doctrine of comparative fault as an affirmative defense and assert fault under this doctrine against a non-party, Kelly Kish, who was at all times relevant to this matter, a registered nurse employed with Methodist Healthcare – Memphis Hospitals d/b/a Le Bonheur Children's Medical Center, and assert fault against non-party Methodist Healthcare – Memphis Hospitals, based on Kelly Kish's deviations from the recognized standard of acceptable professional practice for a registered nurse in this community in the care provided to the patient, Brett Lovelace, and deviations from the standard of care by other personnel of Methodist Healthcare – Memphis Hospitals responsible for the care provided to the patient. Defendants allege that such deviations in

the care provided by Kelly Kish and Methodist Healthcare – Memphis Hospitals to the patient known to defendants at this time include, but are not limited to, Kelly Kish's acts and omissions summarized in an Agreed Order entered by the Tennessee Board of Nursing on February 20, 2013, wherein Kelly Kish's nursing license was revoked based on her negligent care of the patient in this case.  As stated in the Agreed Order, Kelly Kish admitted the following facts to be true:  Kelly Kish was employed as a registered nurse by Le Bonheur Children's Hospital in Memphis, Tennessee from about February 11, 2008 through March 23, 2012.  Kelly Kish was assigned to care for a twelve-year old patient [Brett Lovelace] in the post anesthesia care unit (PACU) following the patient's tonsillectomy/adenoidectomy.  The patient was the only patient assigned to Kelly Kish during the approximately 90 minutes the patient was in PACU.  Kelly Kish placed a pulse oximeter on the patient, but the oximeter worked only intermittently, and Kelly Kish did not notify anyone of the problem and did not replace the device.  At no time did Kelly Kish attempt to speak with or rouse the patient, despite charting a rating of 9 out of 10 on the Aldrete scale. Such a score [if true] would indicate, among other things, full breathing, high oxygen saturation, full consciousness, good circulation, and lively activity and motor control.  Kelly Kish never roused or checked on the patient to make these ratings, but instead charted these ratings based on her observations of the patient's status when he initially entered the PACU.  Among other things, Kelly Kish charted the patient's level of consciousness as "arousable on calling" from the time he entered the PACU up until the "Harvey" code was called.   Throughout her time caring for the patient, Kelly Kish documented oxygen saturations that were not reflected on the print-out.  Kelly Kish documented, for example, 100% oxygen saturation when the monitor

read only "artifact" or levels below 25%. At one point, the patient was heard making

snoring and/or gasping noises, which the patient's parents brought to Kelly Kish's

attention. Approximately 30 minutes after the patient was admitted to the PACU, Kelly

Kish documented the patient's blood pressure as 118 over 56.  Approximately 45 minutes

after the patient was admitted to the PACU, Kelly Kish documented the patient's blood

pressure as 106 over 53.  Approximately 60 minutes after the patient was admitted to the

PACU, Kelly Kish charted that the patient's blood pressure as 84 over 42.  Kelly Kish did

not take any action in response to these changes in the patient's blood pressure.

Approximately 90 minutes after the patient was admitted to the PACU, Kelly Kish left to

obtain fluids for the patient. Upon her return, the patient's father asked Kelly Kish for

help turning the patient, as the patient's leg appeared blue.  When the patient was turned

supine, he was noted to be deeply cyanotic, apneic, and pulseless. CPR was initiated, and

a "Harvey" code indicating a nonresponsive patient, was called.  The patient died

approximately 48 hours later.  During the patient's time in the PACU, Kelly Kish

accessed Facebook and at least one other social media website using a hospital computer.

Defendants allege that the care provided by Kelly Kish to the patient, Brett

Lovelace, was in violation of and a gross deviation from the recognized standard of

acceptable professional practice for a registered nurse practicing in the post-anesthesia

care unit in the Memphis, Tennessee community at the time of the foregoing incident,

and that such deviation from the applicable standard of care was the cause of the injury

to, and death of, Brett Lovelace, which would not otherwise have occurred.  Defendants

allege that Kelly Kish, and her employer, Methodist Healthcare – Memphis Hospitals, are

responsible to plaintiffs for the harm and damages suffered by the patient, Brett Lovelace,

and by his parents, the plaintiffs herein, as a result of the grossly negligent care provided by Kelly Kish, who at all times relevant hereto was acting in the scope and course of her employment with Methodist Healthcare – Memphis Hospitals.  Defendants further aver that the allegations in the Complaint are applicable to all Methodist Healthcare – Memphis Hospitals' personnel who were responsible for monitoring Brett Lovelace in the PACU, including but not limited to, Kelly Kish.  At the trial of this cause, defendants are entitled to have liability, if any, apportioned to Kelly Kish and Methodist Healthcare – Memphis Hospitals.

22.     Defendants deny any negligence and fault on their part, but allege alternatively that if any of their acts or omissions are found to be in any way a cause of any of the injuries sustained by the patient, Brett Lovelace, or by his parents, the plaintiffs, herein, that the acts and omissions on the part of Kelly Kish and Methodist Healthcare – Memphis Hospitals constitute a superseding cause of all injuries sustained by Brett Lovelace and the plaintiffs herein.

23.     Defendants allege that they arrived at their conclusions, diagnoses, and embarked upon the course of medical care, treatment, examination, and procedures in connection with the treatment of the plaintiffs' decedent, in the exercise of their best medical judgment, and that in making their diagnoses and in providing their care, they at all times exercised that degree of care, skill, ability, and learning as was regularly and customarily exercised by other healthcare providers practicing their profession and/or specialty in this community.

24.     Defendants fully complied with the recognized standard of acceptable professional practice for pediatric anesthesiologists practicing in Memphis, Tennessee at the time of the incident in question.

25.     All the medical care, attention, examination, treatments, prescriptions and procedures rendered or furnished by these defendants were the usual, proper and customarily accepted medical treatments, attention, care, prescriptions, examinations, and procedures for the condition of the plaintiffs' decedent, then and there existing, and at no time were defendants guilty of any negligence or improper medical attention, care, treatment, examination, prescriptions or procedures.  On the contrary, defendants performed each and every act of medical attention, care, treatment, examinations, prescriptions, and procedures in a careful, proper and efficient form and in a customary, recognized, accepted and approved manner followed by the medical profession in their community at that time, based upon the facts, circumstances, symptoms, complaints, conditions, findings, and history existing in the plaintiffs' decedent's case.

26.     Defendants did not guarantee to cure the plaintiffs' decedent nor to place plaintiffs' decedent in exactly the position that he was in prior to the time of the care provided by defendants, nor do defendants ever guarantee a complete cure or a complete correction of any health problem.  This is for the reason that medicine is not an exact science and life itself is unpredictable and uncertain regardless of the care, skill and diligence exercised by a physician.

27.     Defendants, in conducting the examination and rendering the medical care and treatment to the plaintiff's decedent, possessed and exercised that degree of skill,

care, and learning ordinarily possessed and exercised by other competent members of their profession and specialty in their community on the dates of treatment.

28.     Defendants assert that they exercised appropriate medical judgment in this case. If the plaintiffs contend that these defendants made a mistake in judgment, then these defendants respond as follows: An honest mistake in judgment in determining the care or extent of treatment to be administered in determining the necessity of an operation or treatment does not give rise to a cause of action; and a health-care practitioner is not guilty of malpractice if he follows the course of treatment advocated by health-care practitioners in relevant specialties in good standing in their community. Health-care practitioners must be allowed a wide range in the exercise of their judgment and discretion. In any instances, there can be no fixed rule by which to determine the duty of a health-care practitioner, but he must often use his own best medical judgment and act accordingly. By reason of that fact, the law will not hold a health-care practitioner guilty even though his judgment may prove erroneous in retrospect in a given case, unless it is shown that the course pursued was clearly against the course recognized as correct by the profession generally. As long as there is room for an honest difference of opinion among competent health-care practitioners, a health-care practitioner who uses his own best medical judgment cannot be convicted of negligence even though it may afterward develop that he was mistaken.

29.     The law credits a medical practitioner with the presumption that he has discharged his full duty.

30.     Should the proof that develops in this case reveal that the plaintiffs, or the plaintiffs' decedent, or the co-defendant, or any other person, was or were guilty of

negligence that caused or contributed to the injuries or damages in this matter, defendants will rely upon the doctrine of comparative fault to either bar any recovery against these defendants or to diminish any recovery in proportion to the faults attributable to such persons. Pleading in the alternative, the allegations of the Complaint are incorporated herein by reference with regard to any allegations of fault as to co-defendant.

31.     When there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners in good standing, a health-care practitioner is not negligent if while exercising his best judgment, he selects one of the approved methods that later turns out to be unsuccessful, or one not favored by certain other practitioners.

32.     Defendants allege upon information and belief that the plaintiffs have settled their claim in this matter with Kelly Kish and her former employer, Methodist Healthcare – Memphis Hospitals, for which a release of all claims was executed by plaintiffs, and allege that if the proof shows that plaintiffs' release includes Methodist's agents, actual or apparent, employees, servants, and/or representatives, that such release constitutes a release as to any and all claims plaintiffs might have against these defendants, barring any claim against these defendants in this matter.

33.     Defendants allege that the settlement amount plaintiffs received from Methodist Healthcare – Memphis Hospitals constitutes a reduction in or set-off against the amount of whatever damages plaintiffs might otherwise have in this cause under T.C.A. 29-26-119. Defendants further allege that if any medical bills incurred by plaintiffs at Methodist Healthcare – Memphis Hospitals were "written off" or otherwise

extinguished pursuant to a settlement agreement or otherwise, then such bills are not recoverable as damages in this action.

34.      Defendants deny liability in this matter; further, plaintiffs' recovery of any economic loss is limited as provided in T.C.A. 29-26-119, which is incorporated by reference.

35.      Defendants rely upon and incorporate by reference the statutory caps applicable to damages as provided in the Tennessee Civil Justice Act of 2011, codified at T.C.A. 29-39-101, *et. seq.*

36.      Defendants allege that the cause of the plaintiffs' injuries and damages was the underlying condition from which Brett Lovelace suffered and not any care provided by these defendants.

37.      Defendants reserve the right to amend their Answer to allege additional affirmative defenses or other matters as discovered during this litigation.

Now, having answered the Complaint filed against them, these defendants pray that the action be dismissed with prejudice as to them, that they recover their costs, and that they be granted all other relief to which they are entitled.

Respectfully submitted,

THE HARDISON LAW FIRM, P.C.


s/David M. Cook
DAVID M. COOK (BPR #5362)
ALBERT G. MCLEAN (BPR #5150)
Attorneys for Defendants, Pediatric
Anesthesiologists, P.A. and Babu Rao Paidipalli,
M.D.
119 S. Main Street, Suite 800
Memphis, TN 38103-3685
(901) 525-8776
dcook@hard-law.com
amclean@hard-law.com


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been served upon all attorneys of record, via ECF, as follows:

Mark Ledbetter
Halliburton & Ledbetter
Attorney for Plaintiffs
254 Court Avenue
Suite 305
Memphis, TN 38103

and

J. Kimbrough Johnson
Marcy Dodds Magee
Thomas, Hendrix, Harvey, Johnson & Mitchell, PLLC
Attorneys for Defendant, Mark P. Clemons, M.D.
2900 One Commerce Square
Memphis, TN 38103

This 12th day of June, 2013.


s/Albert G. McLean
ALBERT G. MCLEAN