IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

_____

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

     Plaintiffs,

VS.                        NO.: __2:13-cv-02289 dkv____
                                   JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI ; and,
MARK P. CLEMONS,

     Defendants.

_____

**PLAINTIFFS' MEMORANDUM BRIEF IN OPPOSITION TO MOTION OF DEFENDANTS, PEDIATRIC ANESTHESIOLOGISTS, P.A., AND BABU RAO PAIDIPALLI, M.D., TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO F.R.C.P. 12(B) AND MEMORANDUM OF LAW IN SUPPORT OF SAME**

_____

The Motion [D.E. 12] is without merit and must be denied; moreover, T.C.A. § 29-26-121 must be declared unconstitutional.

**I.**

Before addressing the Motion, the standards applicable to a motion to dismiss under Rule 12, F.R.C.P., bear mention:

1.    When a federal court considers a motion to dismiss for failure to state a claim on which relief can be granted, the court must apply the Federal Rules of Civil Procedure and not the state law in question.  Federal Deposit Ins. Corp. v. Haddad, , 778 F. Supp. 1559 (S.D.Fla.1991).

2.    The issue of whether federal court should dismiss complaint for failure to state claim upon which relief can be granted is question of federal law even when federal court sits in diversity; dismissal is procedural device, Federal Rule of Civil Procedure is directly applicable, and federal court

1

must follow federal law in applying federal procedural law.  Sheldon v. Munford, Inc., 660 F.Supp. 130 (N.D. In.1987).

3.      A motion to dismiss must be denied unless the court finds beyond all doubt that plaintiffs cannot prove any fact to support its claims for relief.  F.D.I.C. v. Nathan, 804 F. Supp. 888 (S.D.Tex.1992).

4.      For purposes of motion to dismiss, court shall construe pleadings liberally, and if there is any possibility of relief, the case should not be dismissed.  Yeitrakis v. Schering-Plough Corp., 804 F.Supp. 238 (D.N.M.1992).

5.      When considering a motion to dismiss, the court accepts as true all factual allegations in complaint and draws inferences from those allegations in light most favorable to plaintiff and dismissal is not warranted unless it appears beyond doubt that plaintiff could prove no set of facts in support of claim which would entitle him to relief   Walsche v. First Investors Corp., 793 F.Supp. 394, affirmed in part, vacated in part, 981 F.2d 649 (D.Conn.1992).

6.      Complaint should not be dismissed unless, looking solely at complaint and its exhibits and taking supported allegations therein as true, it appears beyond doubt that plaintiffs can prove no set of facts in support of claim which would entitle them to relief.  Church of Scientology Intern. v. Eli Lilly & Co., 778 F.Supp. 661, reargument denied, (S.D.N.Y.1991).

7.      Question on motion to dismiss is not whether plaintiffs will ultimately prevail, but rather, whether they prove any set of facts in support of their claims that would entitle them to relief. In re Meridian Securities Litigation, 772 F.Supp. 223 (E.D.Pa.1991).

8.      Motion to dismiss is not a proper vehicle for determination of facts outside the complaint.  Washington v. Official Court Stenographer, 251 F.Supp. 911 (E.D.Pa.1966).

9.      Dismissal is not favored unless it appears that in no event would pleader be able to prove actionable claim.  Parr v. Great Lakes Exp. Co., 484 F.2d 767 (7th Cir.1973).

10.     A motion to dismiss on basis of pleadings alone should rarely be granted.  <u>Madison</u> v. <u>Purdy,</u>  410 F.2d 99 (5th Cir. 1969).

11.     Motions to dismiss are to be carefully scrutinized, weighing doubts in favor of nondismissal.  <u>Landmark Tower Associates</u> v. <u>First Nat. Bank of Chicago</u>, 439 F.Supp. 195 (S.D.Fla.1977).

12.     Ordinarily, motions to dismiss are viewed with disfavor and are granted sparingly. <u>Harman</u> v. <u>Willbern</u>, 227 F.Supp .892 (D.C.Kan.1964).

## II.

This matter is before the Court on a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.  As said, Rule 12, F.R.C.P., is invoked; therefore, Tennessee procedural rules do not apply.  As the following reveals, T.C.A. § 29-26-121(c) is either satisfied or not dispositive, in this case.

The facts and allegations of the Complaint are to be accepted as true under Rule 12.  <u>Walsche</u> v. <u>First Investors Corp.</u>, 804 F.Supp. 238 (D.N.M. 1992) [I, <u>supra</u>].  Those facts reveal a medical malpractice case grounded in negligence and for which a Complaint for Personal Injuries, Wrongful Death, Medical Negligence [Health Care Liability Action] and Negligent Infliction of Emotional Distress [NIED] against the Defendants, Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli, and Mark P. Clemons, was timely filed by the Plaintiffs, Daniel Lovelace and Helen Lovelace, individually, and as Parents of Brett Lovelace, deceased.

## FACTS

On March 12, 2012, Plaintiffs' decedent and son, Brett Lovelace, age 12, was treated at LeBonheur Children's Hospital in Memphis, Tennessee; Brett Lovelace underwent a tonsillectomy and adenoidectomy; the surgery was performed by Defendant, Mark P. Clemons.  In that procedure,

anesthesia was administered to Plaintiff's decedent by Defendant, Pediatric Anesthesiologists, P.A. personnel, including Defendant, Babu Rao Paidipalli.  Following what was to be a minor elective surgery, twelve-year-old Brett Lovelace was transported to the LeBonheur recovery room or PACU [post-anesthesia care unit]; there, all Defendants were chargeable and responsible for his post-operative care, when he sustained a medical injury on March 12, 2012; Brett Lovelace subsequently died on March 14, 2012.  The parties culpable or negligent in causing Brett Lovelace's injury and consequent death due to asphyxia include the following:

    a.    Pediatric Anesthesiologists, P.A.;

    b.    Babu Rao Paidipalli; and,

    c.    Mark P. Clemons.

The notice letter and proofs of service were mailed to Defendants via certified mail, return receipt requested; copies of the notice letter, HIPAA authorizations and return receipts were properly and timely filed with the Complaint.

Defendants claim that the provided HIPAA authorization by Plaintiffs was inadequate and that dismissal is warranted.  Attached hereto as Exhibit "A" is a copy of Plaintiff's certified mail notice letter to the Defendant, Pediatric Anesthesiologists, P.A., and Exhibit "B", along with the attached and enclosed [which movants received], Plaintiff's HIPAA-compliant authorization.  This same notice letter and HIPAA authorization were sent to and timely received by each Defendant.   The notice letter [Exhibit "A"] [Paidipalli – for illustration] states in pertinent part:

" . . . Through me, Daniel and Helen Lovelace <u>are asserting a potential claim for medical malpractice of a health care liability action under T.C.A. § 29-26-115 against Babu Rao Paidipalli</u>.  Also, Daniel and Helen Lovelace each assert a potential claim for negligent infliction of emotional distress (NIED) against Babu Rao Paidipalli

<u>Brett Spencer Lovelace was a 12-year-old male child who underwent a tonsillectomy and adenoidectomy (T&A), which was done under general endotracheal tube anesthesia (Babu Rao Paidipalli was the anesthesiologist) on March 12, 2012, at LeBonheur Children's Hospital in Memphis, Tennessee.  After the surgery (Dr. Mark P. Clemons was the surgeon), Brett Spencer Lovelace was transferred to the hospital's PACU,</u>

4

where he (1) suffered positional asphyxia and respiratory arrest.  Brett Spencer
Lovelace suffered consequent (2) brain swelling and anoxic brain injury that resulted in
brain death.  He was pronounced dead on March 14, 2012.  It is alleged that a claim
arose due to the acts or omissions of the intended recipient(s) of this letter, as no one
intervened to protect the child or issue orders for his safe resuscitation. . . .

(E)      A HIPAA compliant medical authorization permitting the provider receiving the
notice to obtain the complete medical records from each other provider being sent a
notice.  An authorization is enclosed."  [NOTE: The same letter and HIPAA
authorization were sent to all Defendants.]  [emphasis supplied.]

All Defendants received their own personal original of the statutory notice letter, Exhibit "A",

as well as an accompanying personal original HIPAA authorization, Exhibit "B"; each Defendant's

letter and authorization allowed Defendant to obtain the Plaintiff's decedent's (a) underline complete medical

records (b) from each other Defendant (c) in relationship to a medical negligence suit to be filed

against them.  As such, the letter and HIPAA notice complied with 45 C.F.R. 164.  First, Plaintiff

clearly provided to the Defendant an agreement or consent in the form of a letter that agreed that, on

behalf of Plaintiffs, Defendants could receive all decedent's "complete medical records"; further

Plaintiffs provided the required patient information to them in a specific and meaningful fashion, i.e.,

the events and transactions of Brett Lovelace's death and injury were detailed at length, the location,

date and outcome of Defendants' care deficits, the name and address of various parties, were also

succinctly described in the letter; the HIPAA-compliant authorization was proper.  45 C.F.R. 164.510;

45 C.F.R. 164.512; 45 C.F.R. 164.506.

Under, 45 C.F.R. 164, the letter sent by Plaintiffs' agent and counsel, which letter enclosed the

HIPAA authorization, confirmed the intent and scope of the authorization, so that the two are to be

examined together.  The accompanying letter sent on behalf of Plaintiffs gave Defendants access to

Brett Lovelace's "complete medical records," with its explanatory statements, and gave a simple,

detailed and direct description of the medical treatment that gave rise to the tort claim.  The Notice

further expressed that decedent's "complete medical records" were the intended object of Plaintiffs'

consent; such was also an agreement, a signed HIPAA-compliant authorization.  Thus, 45 C.F.R. 164.508, 45 C.F.R. 164.506, 45 C.F.R. 164.502, 45 C.F.R. 164.510, were met.  Note:  T.C.A. § 29-26-121 does not specify any subsection of 45 C.F.R. 164 as controlling.

Defendants argue that "unchecked items" on the HIPAA authorization rendered it invalid.  However, it is plain from the text of the accompanying letter and its explanatory statements, and the authorization itself, that it was incumbent upon Defendants to check what records they needed.  The attached letter plainly stated the consent and intention of Plaintiffs was for Defendants to be able to obtain the "complete medical records" of Brett Lovelace!  The authorization attached gave Defendants options or choices, not limitation or restrictions.  All "core" elements were stated and the broadest possible scope was accorded to Defendants.  The accompanying letter expressly agreed and consented to Defendants to obtain the complete records of the decedent, or T.C.A. § 29-26-121 specified.  Second, Defendants argue that Plaintiffs cannot show "extraordinary cause" to warrant a waiver of the requirements of a HIPAA compliant authorization; on the contrary, it is incumbent upon Defendants to first establish that a violation of HIPAA has occurred.  This the Defendants have not done.  Plaintiffs' consent and agreement to allow Defendants to obtain the decedent's records was granted without an authorization, which alone sufficed to comply with HIPAA.  45 C.F.R. 164.  Under HIPAA, Defendants needed no authorization, at all, as their use and disclosure of Brett Lovelace's patient health information to each other, or "covered entities", was an exception to 45 C.F.R. 164.508, as litigation is deemed part of a "health care operation."  45 C.F.R. 164.506; 45 C.F.R. 164.512.  [Exhibit "C", pp. 2, 4, 5, 9, 32, 33, 34, 35 of 35].

Further, in Tennessee, statutes such as T.C.A. § 29-26-121 are liberally construed to effectuate their purposes rather than strictly construed, particularly where a remedial statute such as this one is invoked.  Houghton v. Aramark. Educ, Res, Inc., 90 S.W. 3d 676 [Tenn. 2002].  A liberal construction

of T.C.A. § 29-26-121, as it relates to HIPAA, is to ask if Defendants were denied access to the "complete medical records" of Brett Lovelace or not.  They were given <u>carte</u> <u>blanche</u>.

Under T.C.A. § 29-26-121, an injured patient is not allowed to file suit against a negligent practitioner until the litigation has been initiated through a notice process, which is here at issue. Nonetheless, HIPAA is stated to apply under said statute.  T.C.A. § 29-26-121 (a)(2)(E).  Under HIPAA, a federal regulatory scheme, a covered entity such as the Defendants, are allowed to use or disclose information for "health care operations" such as medical-legal matters in which they are involved.  Under those circumstances, HIPAA states that no authorization is required.  45 C.F.R. 164.506; 45 C.F.R. 164.512.

A "covered entity," such as the Defendants are also allowed under the HIPAA regulation to use or disclose medical information where the individual (or their proxy) gave an oral agreement for them to use under 45 C.F.R. 164.510..  Here, a written consent and agreement was provided to Defendants. <u>Holman</u> v. <u>Rask</u>, 761 N.W. 2d 391 (Mich.App. 2008); <u>People</u> v. <u>Ring</u>, 2011 W.L. 4104959 (Mich.App.).  Thus, there was no need for a further document to be created to prove a patient's consent:

> HIPAA does not require that a healthcare provider <u>document the patient's agreement or lack of objection</u>.  HIPAA Interpretive Guides, H.H.S.  [Exhibit "C", p. 2 of 35].

Additionally, as T.C.A. § 29-26-121 incorporates HIPAA by reference, HIPAA regulations provide that "at the request of the individual," records shall be released.  A letter by counsel acting as an agent of the Plaintiffs, "the individual" in this context, was clearly such a request.  The HIPAA regulations concerning authorizations is couched in terms that authorizations are always required in only two circumstances, <u>viz.</u>, for psychotherapy records and for marketing uses.  45 C.F.R. 164.508 (a)(2) and (3).  Thus, HIPAA regulations allow use or disclosure of patient health information without an authorization as by consent, agreement or by a medical practitioner or healthcare provider who is

using and disclosing records ("patient health information)" for purposes of malpractice litigation involving them.  In sum, no HIPAA authorization was separately required here for Defendants.

Moreover, neither the court nor Plaintiffs reach "the extraordinary cause" precipice in this case, <u>viz</u>., T.C.A. § 29-26-121 (a)(4)(b).  Plaintiff's letter and accompanying HIPAA authorization, construed together as intended, authorized and consented for Defendants to have access to Brett Lovelace's "complete medical records".  Further, there is no authorization form adopted by HIPAA nor is there a requirement under the HIPAA regulations that Plaintiffs check for the Defendants the list of records that they order from another provider, having previously given them <u>carte</u> <u>blanche</u> or full consent in the accompanying letter to obtain decedent's "complete medical records."  Defendants' negligent acts and harmful events occurred over a period of two (2) hours on a single day in a single surgery, which wrongs were detailed in the accompanying letter that made the HIPAA authorization its exhibit.

The Motion to Dismiss should be denied.  No case cited by the Defendants is on point, nor do the circumstances here warrant a dismissal.  The medical authorization was not defective; it was proper in all respects.  Further, Defendants were freely permitted to use and disclose Brett Lovelace's entire medical files under the "health care operation" clause once they received notice of intent to sue; additionally, the letter and authorizations provided Defendants the full (a) consent and (b) agreement of Plaintiffs to obtain full access to their son's "complete medical records" from the other "covered entities.".

## III.

### The Medical Malpractice Act Is Unconstitutional

This Court must consider the fact that the Tennessee Medical Malpractice Act - in its various parts, and <u>in</u> <u>toto</u>, is unconstitutional.  Until the passage of the Tennessee Medical Malpractice Act, all tortfeasors causing personal injuries to others were treated the same way, and all persons injured as a

result of the negligence of another followed the same path to redress.  Without a valid basis, in 1975, the Tennessee legislature began a continuing process of passing discriminatory class legislation intended to shield health care providers from responsibility for their negligence.  The legislature has continued this action with its passage of T.C.A. § 29-26-121.

### III.a. T.C.A. § 29-26-121 Is Unconstitutional

The equal protection clause found in both the United States and Tennessee constitutions guarantees that "all persons similarly circumstanced shall be treated alike."  F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920); State ex rel. Department of Social Services v. Wright, 736 S.W.2d 84 (Tenn.1987).

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. **No State shall make or enforce any law which** shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor **deny to any person within its jurisdiction the equal protection of the laws.**  (Emphasis added).

There can be no question that in T.C.A. § 29-26-121 the legislature made a law which denies to all the citizens of Tennessee injured as a result of medical malpractice the equal protection of the laws.

Article XI, Section 8 of the Tennessee Constitution is Tennessee's "equal protection" clause, and, in pertinent part, provides as follows:

The legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie [immunities], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law....

In T.C.A. § 29-26-121, the legislature passed a "law granting to [health care providers], rights, privileges, immunitie [immunities], or exemptions," which rights, privileges, immunities or

exemptions have not been extended to other tortfeasors.  The question is whether this classification

violates the Equal Protection clause of the United States Constitution and Article XI, Section 8 of the

Tennessee Constitution.  It does.

> To withstand scrutiny under the rational basis standard, a classification must "have
> some basis which bears a natural and reasonable relation to the object sought to be
> accomplished, and **there must be some good and valid reason** why the particular
> individual or class upon whom the benefit is conferred, or who are subject to the burden
> imposed, not given to or imposed upon others, should be so preferred or discriminated
> against."  (Citations omitted).

Town of Huntsville v. Duncan, 15 S.W.3d 468, 472 (Tenn. App. 1999) (emphasis added).

Article XI, Section 8 of the Tennessee Constitution is "implicated when a statute 'contravene[s]

some general law which has mandatory statewide application.' "   (Town of Huntsville v. Duncan,

15 S.W.3d 468, 472 (Tenn. App. 1999), quoting Civil Serv. Merit Bd. v. Burson, 816 S.W.2d 725, 727

(Tenn.1991)).  The "general law" in personal injury actions - other than medical malpractice - is that a

complaint must be filed within one year of the accrual of the cause of action.  T.C.A. § 28-3-104.

There are no preliminary requirements which must be satisfied before suit can be filed.  Only when a

claim is based upon medical malpractice is the claimant required to serve a notice on all potential

defendants 60 days before suit can be filed.  There is no "good and valid" basis for this restriction on

tort cases which happen to be based upon medical malpractice.

In the case of State ex rel. Maner v. Leech, 588 S.W.2d 534 (Tenn. 1979) the Court notes:

> Our courts have repeatedly held that **absurdities should be avoided**, Roberts v. Cahill
> Forge & Foundry Co., 181 Tenn. 688, 184 S.W.2d 29 (1944); that **the courts should
> not place upon a statute a construction which would work to the prejudice of the
> public interest**, Burns v. Duncan, 23 Tenn. App. 374, 133 S.W.2d 1000 (1939),
> 588 S.W.2d at 540 (emphasis added).

The only excuses which have been offered in an attempt to uphold the constitutionality of

section 121 are that it will "weed out" frivolous lawsuits and encourage early settlement.  These

excuses do lead to absurdity, and plainly the act works to the prejudice of the public interest.  Two

points make this clear.

First, the reasons suggested would apply to all tort claims, and not just medical malpractice, so there is no basis for creating restrictions on medical malpractice claims that are not applicable to all tort claims.

Second, making 60 day notice mandatory, and essentially requiring dismissal if the notice is not given more than 60 days before suit is filed have nothing to do with whether a claim is meritorious or frivolous.  Similarly, requiring a claimant to provide access to medical records does not require dismissal if there is a problem.

If the legislature sought to promote early evaluation, all that was needed was a notice procedure equivalent to Tenn.R.Civ.P. 3.  A plaintiff would be allowed to follow the Rule 3 requirements with regard to notice, and once notice was effected, would have 120 days within which to file suit.  There is simply no rational basis for the artificial stricture created by section 121.

Similarly, there is absolutely no valid basis for the mandate to dismiss suits except for "extraordinary cause", T.C.A. § 29-26-121 (a)(4)(b), shown with respect to anything less than 60-day notice.  This requirement has nothing to do with whether a claim is meritorious or frivolous.  Its only purposes are to provide an additional barrier to suit and to cause dismissal of meritorious claims.  If pre-suit notice is the real intent of the legislature, all that is required is to follow the requirements of Rule 3 with respect to the notice letter.

One-hundred years ago, the Tennessee Supreme Court made clear that such discriminatory class legislation should not be permitted:

> The General Assembly undoubtedly has the power, and is not prohibited by the constitutional provisions referred to, from enacting laws containing reasonable and proper classification of the objects of the legislation, **but the classification must not be mere arbitrary selection.**  It must have some basis which bears a natural and reasonable relation to the object sought to be accomplished, and there must be some good and valid reason why the particular individual or class upon whom the benefit is conferred, or who are subject to the burden imposed, not given to or imposed upon others, should be so preferred or discriminated against.  **There must be <u>reasonable and substantial differences</u> in the situation and circumstances of the persons placed in different classes which disclose the propriety and necessity of the classification.  If**

11

> **legislation arbitrarily confers upon one class benefits, from which others in a like situation are excluded, it is a grant of a special right, privilege, or immunity, prohibited by the Constitution, and a denial of the equal protection of the laws to those not included.  If the legislation, without good reason and just basis, <u>imposes a burden upon one class which is not imposed upon others in like circumstances</u> or engaged in the same business, it is a denial of the equal protection of the laws to those subject to the burden and a grant of an immunity to those not subject to it.**

State v. Nashville C. & St. L. Ry. Co., 135 S.W. 773, 775 (Tenn. 1911) (emphasis added).

Quite simply, there are no "**reasonable and substantial differences in the situation and circumstances of the persons placed in different classes**," <u>i.e.</u>, in the situation and circumstances of persons injured by anything other than medical negligence, when compared to persons injured by medical negligence.  In T.C.A. § 29-26-121, the legislature discriminated in favor of the health care industry by imposing burdens upon victims of medical negligence; such burdens do not fall upon persons injured by anything other than medical negligence.

If the legislature actually intended to ameliorate the malpractice insurance problem, or reduce medical errors, it should pass legislation to control the insurance companies, allow full redress against tortfeasor-health care providers, and not hamstring those bringing valid claims of medical negligence.

### III.b.

T.C.A. § 29-26-121 and the entire Medical Malpractice Act are also unconstitutional because the requirement that a Claimant provide a HIPAA medical authorization prior to filing suit is preempted by Federal law, which overrides any state's law in contravention of Federal law.

Additional reasons evidence the unconstitutionality of the statute:

First, in passing T.C.A. § 29-26-121 (with a condition precedent to commencing a lawsuit), the Tennessee General Assembly unconstitutionally encroached upon the inherent rule-making authority of the Tennessee Supreme Court.  (Commencement of suit is governed by Tenn.R.Civ.P. 3, a rule promulgated under the constitutional authority of the Tennessee Supreme Court).

12

Second, as explained by the Tennessee Court of Appeals in the case of <u>Alsip</u> v. <u>Johnson City Medical Center, et al.</u>, No. E2004-00831-COA-R9-CV, 2005 Tenn. App. LEXIS 385 (June 30, 2005), affirmed by 197 S.W.3d 722 (Tenn. 2006), § 29-26-121 is clearly preempted by HIPAA because

> ... the key component in analyzing HIPAA's "more stringent" requirement is **the ability of the patient to withhold permission and to effectively block disclosure**. . . . **If state law can force disclosure without a court order, or the patient's consent, it is not "more stringent" than the HIPAA regulations.** No. E2004-00831-COA-R9-CV, at pp. 26-27 (emphasis added).

### III.b.(1)

Rule 3 of the Tennessee Rules of Civil Procedure, as with Rule 3, F.R.C.P., establishes how a law suit may be commenced in this State. Rule 3, and the balance of Tennessee's rules of procedure, were promulgated under the constitutional authority of the Tennessee Supreme Court. In enacting T.C.A. § 29-26-121, the legislature encroached upon the inherent rule-making authority of the Tennessee Supreme Court. As noted by that Court:

> The authority of the General Assembly to enact rules of evidence in many circumstances is not questioned by this Court. Its power in this regard, however, is not unlimited, and any exercise of that power by the legislature must inevitably yield when it seeks to govern the practice and procedure of the courts. **Only the Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this state**, see, e.g., <u>State</u> v. <u>Reid</u>, 981 S.W.2d 166, 170 (Tenn. 1998) ("It is well settled that Tennessee courts have inherent power to make and enforce reasonable rules of procedure."); see also Tenn. Code Ann. §§ 16-3-401, -402 (1994), and this inherent power "exists by virtue of the establishment of a Court and not by largess of the legislature," <u>Haynes</u> v. <u>McKenzie Mem'l Hosp.</u>, 667 S.W.2d 497, 498 (Tenn. Ct. App. 1984). Furthermore, because the power to control the practice and procedure of the courts is inherent in the judiciary and necessary "to engage in the complete performance of the judicial function," cf. <u>Anderson County Quarterly Court</u> v. <u>Judges of the 28th Judicial Cir.</u>, 579 S.W.2d 875, 877 (Tenn. Ct. App. 1978), **this power cannot be constitutionally exercised by any other branch of government**, see Tenn. Const. art. II, § 2 ("No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."). **In this area, "the court is supreme in fact as well as in name."** See <u>Barger</u> v. <u>Brock</u>, 535 S.W.2d 337, 341 (Tenn. 1976).

> <u>State of Tennessee</u> v. <u>Mallard</u>, 40 S.W.3d 473, 480-481 (Tenn. 2001) (emphasis added).

Tennessee law further provides that provisions published in the Tennessee Code Annotated do not supersede the Tennessee Rules of Civil Procedure.  T.C.A. § 16-3-406 states that once the Rules of Civil Procedure become effective, **"all laws in conflict therewith shall be of no further force or effect."**  Any conflict between provisions of the Tennessee Rules of Civil Procedure and provisions of the Tennessee Code which cannot be harmoniously construed, shall be resolved in favor of the Rules of Civil Procedure.  Mid South Pavers, Inc. v. Arnco Constr. Inc., 771 S.W.2d 420, 422 (Tenn. Ct. App. 1989).

The Tennessee General Assembly has usurped the rules governing commencement of suit in medical malpractice actions, which commencement of suit is governed by Tenn.R.Civ.P. 3.  Such powers "cannot be constitutionally exercised by any other branch of government."  Thus, the notice requirements of § 29-26-121, parts (a) and (b) are unconstitutional.

At least two other states which have considered pre-suit notice requirements similar to those in T.C.A. § 29-26-121, have held such statutes to be unconstitutional.

In Waples v. Yi, 234 P.3d 187 (Wash. 2010), the Washington Supreme Court held that a notice statute similar to T.C.A. § 29-26-121, violated the governing doctrine of separation of powers because it conflicted with the Washington Rules of Civil Procedure governing commencement of an action by adding a step for commencing a suit not required by court rules.  As noted by the Court:

> Requiring notice adds an additional step for commencing a suit to those required by CR 3(a). And, failure to provide the notice required by RCW 7.70.100(1) results in a lawsuit's dismissal, as it did here, **even where the complaint was properly filed and served pursuant to CR 3(a).**
> ...
>
> We make the same holding here. The conflict between RCW 7.70.100(1) and CR 3(a) cannot be harmonized and both cannot be given effect. If a statute and a court rule cannot be harmonized, the court rule will generally prevail in procedural matters and the statute in substantive matters. "Substantive law 'creates, defines, and regulates primary rights,' while procedures involve the 'operations of the courts by which substantive law, rights, and remedies are effectuated.' " (Citation omitted).  Like RCW 7.70.150, RCW 7.70.100(1) does not address the primary rights of either party and deals only with the procedures to effectuate those rights. Therefore, RCW 7.70.100(1)

14

involves procedural law and will not prevail over CR 3(a).

Conclusion

> **The notice requirement of RCW 7.70.100(1) irreconcilably conflicts with the commencement requirements of CR 3(a) and is unconstitutional because it conflicts with the judiciary's power to set court procedures.**

234 P.3d at 191 (emphasis added).

The Arkansas Supreme Court, in the second case, likewise struck down a pre-suit notice requirement similar to those of Tennessee and Washington.  In <u>Weidrick</u> v. <u>Arnold</u> 835 S.W.2d 843 (Ark. 1992), the Court struck down the procedural hurdle of a statutory requirement for 60-day notice prior to filing an action <u>as being at odds with and superseded by Rule 3 of Arkansas Rules of Civil Procedure</u>.  The half-life of these legislative "sleights of hand" that play havoc on the judiciary, and the public, appears to average five (5) years, during which time judicial resources are misdirected and mischief done.

### III.b.(2)

T.C.A. §29-26-121(c) is also unconstitutional; it imposes added restraints upon the procedure of Tenn.R.Civ.P. 3.  Rule 3 provides that, if process is not served within 90 days of issuance, the plaintiff can toll the running of the statute of limitations by obtaining issuance of new process within one year from the issuance of the previous process.

Contrary to this procedure, T.C.A. §29-26-121(c) effectively kills the suit before it starts. While 121(c) provides for a 120 day extension of the statutes of limitation and repose when notice is given pursuant to the requirements of section 121, it also provides "<u>nor shall more than one (1) extension be applicable to any provider</u>."  Thus, if a plaintiff is unsuccessful in serving the pre-suit notice letter within 120 days after the running of the statutes of limitation or repose, rather than allowing a plaintiff the opportunity to toll the statutes by timely reissuing notice letters, § 121 bars any further action in the case.

## IV.

The analysis by the Court of Appeals in the case of <u>Alsip</u> v. <u>Johnson City Medical Center, et al.</u>, No. E2004-00831-COA-R9-CV, 2005 Tenn. App. LEXIS 385 (June 30, 2005), affirmed by 197 S.W.3d 722 (Tenn. 2006), left no question that the Tennessee legislature invaded an area preempted by HIPAA.  As that Court noted:

> **Even if Tennessee law provided that the filing of a lawsuit involving medical issues constituted a waiver by the plaintiff of the covenant of confidentiality, we believe that this law would be preempted** by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the rules promulgated by the United States Department of Health and Human Services pursuant to HIPAA.  **Federal law clearly provides that the provisions of HIPAA and its related rules, where more stringent or, stated another way, more confidentiality-friendly, preempt the less stringent edicts of state law**; while states can establish greater protections than those provided for under HIPAA, they cannot promulgate rules that provide for less stringent protections. 45 C.F.R. § 160.203 (2005).  As explained in the case of <u>Law</u> v. <u>Zuckerman</u>, 307 F. Supp. 2d 705, 711 (D. Md. 2004), **the key component in analyzing HIPAA's "more stringent" requirement is the ability of the patient to withhold permission and to effectively block disclosure**. . . . <u>**If state law can force disclosure without a court order, or the patient's consent, it is not "more stringent" than the HIPAA regulations.**</u>  No. E2004-00831-COA-R9-CV, at pp. 26-27 (emphasis added).

Again, "the key component in analyzing HIPAA's 'more stringent' requirement is **the ability of the patient to withhold permission and to effectively block disclosure**."

Simply because a patient files a malpractice suit does not mean that the patient loses the protections of HIPAA.  Under HIPAA, records cannot be disclosed except with the patient's agreement, consent or a HIPAA-compliant protective court order, or where "health care operations" are involved.  The Tennessee legislature ignored the privacy protections of HIPAA, and effectively said, "We will force a malpractice victim to yield his/her HIPAA rights."   This cannot be done.  As the Court of Appeals noted in <u>Alsip</u>: "<u>If state law can force disclosure without a court order, or the patient's consent, it is not 'more stringent' than the HIPAA regulations.</u>"

Disclosure without a court order, or the patient's agreement or consent, is exactly what the Tennessee General Assembly did by T.C.A. § 29-26-121. Thus, § 29-26-121 is preempted; and as respects its other defects, to state it, this section is also unconstitutional.

## V.   <u>CONCLUSION</u>

Plaintiffs consented and agreed to give Defendants' full and complete access to all of decedent's medical records from the other notified parties. Defendants, under HIPAA, were free to share ("use and disclose") Brett Lovelace's complete medical records once they received notice of intent to sue, as litigation is listed as a "health care operation" under HIPAA, entitling Defendants to use and disclose Brett Lovelace's records without an authorization!

Further, the entire Medical Malpractice Act is nothing more than an attempt to create an elite group of persons free of the requirements and duties otherwise imposed on citizens of this State. What have our Courts said when such a privileged cohort appeared before them?

> Such a system only promotes greater opportunities for the advantaged while diminishing the opportunities for the disadvantaged. <u>Tennessee Small School Systems</u> v. <u>McWherter</u>, 851 S.W.2d 139, 155 (Tenn. 1993).

> It is our opinion that there are no "super citizens" under our form of government and that it is beyond the power of the legislature to create such a class.... Creating a class whose members were not subject to the jurisdiction of the ordinary courts would deny the rest of us equal protection. <u>Industrial Development Bd. Of City of Tullahoma</u> v. <u>Hancock</u>, 901 S.W.2d 382, 385 (Tenn. App. 1995).

The health care industry has acquired privileged status in Tennessee. There never was, nor will be, a valid basis for laws designed to protect the rich and powerful from liability for their acts of negligence. A law that confers a disparate benefit upon the few is theft by another name.

T.C.A. § 29-26-121 and the broader Medical Malpractice Act with which it is gnarled, are unconstitutional. For this reason, and more, Defendants' Motion to Dismiss must be denied.

Even if the overweening restrictions of section 121 are given fair consideration, in a light most favorable to Plaintiffs, the facts and reasonable inferences from the facts establish that Plaintiffs gave, and Defendants clearly received, timely notice of the claim, and an agreement or consent to decedent's complete medical records; further, no prejudice resulted from any claim of a defect in the HIPAA authorization, as full access was afforded under HIPAA to Defendants under the "health care operations" rule.

Since section 121 encroaches upon the inherent rule-making power of the Tennessee Supreme Court, it is unconstitutional.  Further, since section 121 forces a patient to yield permission, without the privacy safeguards of HIPAA, it is a less stringent privacy safeguard than HIPAA, and is thus preempted.  The Court should find that T.C.A. § 29-26-121 is unconstitutional and preempted by HIPAA, and deny Defendants' Motion to Dismiss.

**WHEREFORE**, premises considered, Plaintiffs pray that this Court deny Defendants' Motion to Dismiss as unwarranted under the facts of this case, or by reason of preemption or the unconstitutionality of T.C.A. § 29-26-121.

Respectfully submitted,

HALLIBURTON & LEDBETTER

s/P. Mark Ledbetter

MARK LEDBETTER          AR# 74175
Attorney for Plaintiffs          TN#17637
254 Court Avenue, Suite 305
Memphis, TN  38103
(901) 523-8153-phone
(901) 523-8115-fax
Mark794@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2013, I electronically filed  **Plaintiffs' Memorandum Brief in Opposition to Motion of Defendants, Pediatric Anesthesiologists, P.A., and Babu Rao Paidipalli, M.D., to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to F.R.C.P. 12(B) and Memorandum of Law in Support of Same** with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to  The Hardison Law Firm, and the firm of Thomas, Hendrix, Harvey, Johnson & Mitchell.  The undersigned hereby certifies that Robert E. Cooper, Jr., Attorney General for the State of Tennessee, has been served by U.S. Mail, postage prepaid, at his address listed below:

David M. Cook - #5362
Albert G. McLean - #5150
The Hardison Law Firm, P.C.
119 S. Main Street, Suite 800
Memphis, TN  38103-3685
Phone:  901.525.8776
Email:  dcook@hard-law.com
Email:  amclean@hard-law.com
Attorneys for Defendants,
Pediatric Anesthesiologists, P.A. and
Babu Rao Paidipalli, M.D.


J. Kimbrough Johnson - #7953
Marcy Dodds Magee – 19360
Thomas, Hendrix, Harvey, Johnson & Mitchell, PLLC
Attorneys for Defendant, Mark P. Clemons, M.D.
2900 One Commerce Square
40 S. Main Street
Memphis, TN  38103
Phone:  901.525-8721
Fax:  901.525-6722
Email:  Johnsonk@thomasonlaw.com
Email:  MageeM@thomasonlaw.com


Robert E. Cooper, Jr.
Attorney General for the State of Tennessee
Office of the Attorney General
425 5th Avenue North
Nashville, TN  37243
Phone:  (615) 741-3491
Fax: (615) 741-2009

s/P. Mark Ledbetter
Mark Ledbetter, Certifying Attorney