IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL LOVELACE AND HELEN LOVELACE | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 2:13-CV-02289 dkv |
| PEDIATRIC ANESTHESIOLOGISTS, P.A.; DR. BABU RAO PAIDIPALLI & DR. MARK P. CLEMONS | ) ) ) ) | |
| Defendants. | | |

**MEMORANDUM OF LAW IN SUPPORT OF METHODIST HEALTHCARE – MEMPHIS HOSPITALS' MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER**

COMES NOW non-party Witnesses Methodist Healthcare – Memphis Hospitals ("Methodist" or "Witness") by and through undersigned counsel, and files this Memorandum of Law in Support of its Motion to Quash Defendants' Subpoena and Motion for Protective Order. For the reasons set forth below, Methodist requests that the Court enter an Order served upon counsel for Methodist by Defendants Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D. Methodist further requests that the Court enter a Protective Order prohibiting the parties to this action from seeking documents or other information from the Witness that requires disclosure of privileged, confidential, or protected documents, or otherwise places an undue burden on the Witness. In support of its Motion, Methodist states as follows:

I.   **STATEMENT OF THE FACTS**

On March 12, 2012, Plaintiffs' minor son, Brett Lovelace, was admitted to Le Bonheur Children's Medical Center for removal of tonsils and adenoids by Dr. Mark Clemons. Following

1

the procedure, the patient was transferred to the Post Anesthesia Care Unit ("PACU"). While in the PACU, the patient "coded" and was resuscitated, but ultimately expired on March 14, 2012. Investigation of the event began early, and Methodist agreed to attend mediation with Plaintiffs to this action in December 2012, prior to any legal action by Plaintiffs. Methodist and Plaintiffs entered into a Confidential Settlement Agreement and Release on or about December 19, 2012.

Plaintiffs filed their Complaint against Defendants Pediatric Anesthesiologists, P.A. Babu Rao Paidipalli, M.D. and Mark P. Clemons, M.D. (collectively, "Defendants") on May 8, 2013 alleging claims of medical malpractice against Defendants related to the March 12, 2012 hospitalization of their minor son, Brett Lovelace. (*See generally* Compl. (Doc 1.).)

On August 15, 2013, Defendants Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D. served a subpoena on counsel for Methodist. A copy of the subpoena received by counsel is attached hereto as Exhibit 1.

Methodist objects to the requests for documents contained in Exhibit A to the Subpoena, using the same paragraph numbers, as follows:

(1) The information sought in this request can be obtained from another source that is more convenient, less burdensome and/or less expensive, to wit: the medical records relevant to the events at issue in the present lawsuit and/or a FOIA request to the State of Tennessee.

(2) No objection.

(3) Methodist objects to this request as vague, overly broad and unduly burdensome. Methodist does not understand what is meant by "computer logs." The request is overly broad in that it seeks such logs pertaining to all computers in the PACU on March 12, 2012. Moreover, this request seeks information protected by the attorney-client privilege and/or work product doctrine.

2

(4) Methodist objects to this request as not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Methodist further objects to this Request to the extent that it seeks confidential, proprietary and/or sensitive business information, or commercially private data of Methodist, a non-party party, and to the extent it seeks confidential information of Ms. Kish, a non-party. In further objection, Methodist asserts that Ms. Kish's personnel file is protected by the Tennessee Patient Safety and Quality Improvement Act. Furthermore, information pertaining to Ms. Kish's licensure is public record and can be obtained through the Tennessee Department of Health.

(5) Methodist objects to this request as it seeks confidential information from a non-party.

In further response to these requests, Methodist also states that it does not waive the attorney-client privilege, attorney work product doctrine, protection under the Tennessee Patient Safety and Quality Control Act or any other relevant statutes of the State of Tennessee or under the United States Code regarding confidentiality.

## II. LAW AND ARGUMENT

### A. Motion to Quash or Modify.

Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure requires the court from which a subpoena was issued to quash or modify a subpoena that "requires disclosure of privileged or protected matter" or "subjects a person to undue burden." The Advisory Committee's Notes to the 1991 amendments to Rule 45 state that the amendments have enlarged the protections afforded persons who are required to assist the court by giving information or evidence. Fed. R. Civ. P. 45 1991 advisory committee's note; *see also* Wright & Miller, Quashing or Modifying a Subpoena, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.) (2009).

3

Although irrelevance or overbreadth of requests are not specifically listed under Federal Rule of Civil Procedure 45 as a basis for quashing a subpoena, courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics,* 275 F.R.D. 251, 253 (S.D. Ohio 2011). In reviewing a motion to quash, the Court may consider "whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivleged, and crucial to the moving party's case." *Bogosian v. Woloohojian Realty Corp.,* 323 F.3d 55, 66 (1st Cir. 2003). "If the documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Recycled Paper Greetings v. Davis,* No. 1:08mc12, 2008 U.S. Dist. LEXIS 10649, at *3 (N.D. Ohio Feb. 13, 2008).

This is a medical malpractice case regarding the care and treatment provided to the Plaintiffs' minor son following a tonsillectomy and adenoidectomy. Accordingly, the information relevant to the claims and defenses in this case is contained in the medical records. To require a non-party witness to produce information stored in other locations, such as monitor print-outs or computer logs, is duplicative, overly broad and unduly burdensome, particularly when the patient's vital signs, values, readings, etc. are contained in the medical records.

Furthermore, Defendants' subpoena seeks the personnel file of a nurse caring for the patient in the PACU who is not a party to this litigation. Information pertaining to Ms. Kish's licensure and termination are public record and can be obtained through the Tennessee Department of Health. The personnel file necessarily contains Ms. Kish's personal information, and contains confidential, proprietary and/or sensitive business information, or commercially

4

private data of Methodist. Personnel files are also protected by the Tennessee Patient Safety and Quality Improvement Act, Tenn. Code Ann. § 68-11-272.

The Act provides that:

> Records of a [Quality Improvement Committee] and testimony or statements by a healthcare organization's officers, directors, trustees, healthcare providers, administrative staff, employees or other committee members or attendees relating to activities of the QIC shall be confidential and privileged and **shall be protected from direct or indirect means of discovery**, subpoena or admission into evidence in any judicial or administrative proceeding.

*Id.* § 68-11-272(c)(1) (emphasis added).

A "quality improvement committee" is defined as a "committee," an "activity," or "one or more individuals" evaluating the "safety, quality, processes, costs, appropriateness or necessity of healthcare services." *Id.* § 68-11-272(b)(4). These functions expressly include, but are not limited to:

> (A)  Evaluation and improvement of the quality of healthcare services rendered;
>
> (B)  Determination that health services rendered were professionally indicated or were performed in compliance with the applicable standards of care; . . .
>
> (D)  **Evaluation of the qualifications, credentials, competence and performance of healthcare providers or actions upon matters relating to the discipline of any individual healthcare provider** . . .
>
> (I)  **Supervision, education, discipline, admission, and the determination of privileges of healthcare providers** . . .
>
> (J)  **Review of professional qualifications or activities of healthcare providers** . . .
>
> (K)  Evaluation of the quantity, quality and timeliness of healthcare services rendered to patients . . . .

*Id.* § 68-11-272(b)(4) (emphasis added). Thus, the Tennessee legislature chose to provide a broad privilege for healthcare facilities' quality improvement documents.

5

M OBD 2423232 v1
2910081-000466 08/19/2013

Tennessee's quality improvement statute became law in 2011. Other states have comparable quality assurance privileges that are instructive. Courts in these states have addressed similar personnel file discovery disputes and have ruled that personnel file documents related to disciplinary actions and performance reviews are protected under the peer review and quality assurance privileges. *See Mejia-Arevalo v. INOVA Health Care Serv., Inc.*, 77 Va. Cir. 43, 49 (Va. Cir. Ct. 2008)[1]; *Steinbacher v. Mariano*, 19 Pa. D. & C. 4th 399, 410 (Pa. Ct. Comm. Pleas Lycoming Cnty. 1992)[2].

In *Mejia-Arevalo*, for example, the plaintiff brought a variety of negligence claims against a hospital and a nurse employed by the hospital. 77 Va. Cir. at 44. During discovery, the plaintiff sought to obtain the entire personnel file of the nurse who provided care to the plaintiff. *Id.* at 48-50. The defendants objected to the discovery request on the bases of the quality assurance privilege, privacy, and irrelevance to the litigation. *Id.* The defendants claimed that the personnel file was privileged. *Id.* After reviewing the arguments, the court ruled that (1) documents describing any financial information related to the nurse (such as compensation and tax returns) are not discoverable until plaintiff proves the relevance of the request; and (2) the nurse's peer reviews and evaluations are privileged under the relevant Virginia peer review statute because an employee evaluation "is essentially a quality control report regarding [the nurse's] employee performance." *Id.* at 49. The court allowed discovery of documents detailing the training courses that the nurse had attended. *Id.*

Tennessee law provides that quality improvement documents contained in Ms. Kish's personnel file "shall be protected from direct or indirect means of discovery." *See* Tenn. Code Ann. § 68-77-272(c)(1). As a result, this Court should quash Defendants' subpoena request for

---

[1] *Mejia-Arevalo* is attached as **Exhibit 2.**
[2] *Steinbacher* is attached as **Exhibit 3.**

6

any documents showing disciplinary actions and performance reviews on the quality improvement privilege. *See* Tenn. Code Ann. § 68-11-272(c)(1); *see also* 42 U.S.C. §§ 1395i-3; 42 C.F.R. § 483.75(o)(3).

Finally, Defendants' request to Methodist, a non-party witness, for the confidential settlement agreement and release entered into by the Plaintiffs and Methodist is improper and places undue burden on Methodist in requiring it to divulge the terms of a confidential agreement.

Therefore, pursuant to Fed. R. Civ. P. 45(c)(3)(A), the Witness requests that this Court quash the Subpoena issued to Methodist in this case. In the alternative, the Witness requests that this Court modify the subpoena to prevent the parties to this action from seeking information requested in requests 1, 3, 4, and 5 of the subpoena, and any other matter which will subject the Witness to an undue burden, namely confidential information or information available from other, less burdensome sources.

B.   **Motion for Protective Order.**

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides:

> A party or any person from whom discovery is sough may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery [and/or] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or disclosure to certain matters.

Fed. R. Civ. P. 26(c)(1). As discussed above, Defendants issued a Subpoena to Methodist in this case. According to Exhibit A of the Subpoena, Defendants' requests seek confidential or protected information, are overly broad and place undue burden on the Witness.

For all the reasons discussed above, the subpoena should be quashed. For these same reasons, the Witness requests a Protective Order prohibiting the parties to this action from

seeking information from the Witness that requires disclosure of privileged, confidential, or protected documents, or otherwise places an undue burden on the Witness.. The Witness submits that said protective order should forbid the parties from seeking information from the Witness regarding requests 1, 3, 4 and 5 in Exhibit A to the Subpoena and any other matter which is privileged, confidential, overly broad or places an undue burden on the Witness.

## V. CONCLUSION

The Witness does not contest the parties' right to seek discovery from third parties, as a general premise. That discovery, however, must be conducted appropriately and not seek protected or confidential information and documents, or other information that places an undue burden on the Witness.

Accordingly, the Witness respectfully requests that the Court quash Defendants Pediatric Anesthesiologists, PA and Dr. Babu Rao Paidipalli's Subpoena to Methodist. The Witness also requests that the Court enter a Protective Order forbidding the parties from seeking information from the Witness that requires disclosure of privileged, confidential, or protected documents, or otherwise places an undue burden on the Witness.

Respectfully submitted,

s/ Craig C. Conley
Craig C. Conley (# 19341)
Ormonde B. DeAllaume (# 26266)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-2303
cconley@bakerdonelson.com
odeallaume@bakerdonelson.com
*Attorneys for Non-Party Witness*
*Methodist Healthcare – Memphis Hospitals*

## CERTIFICATE OF CONSULTATION

Pursuant to 26(c)(1) of the Federal Rules of Civil Procedure and Local Rule 7.2(a)(1)(B), Mr. Conley and Mr. McLean have exchanged emails and consulted via the telephone, but have been unable to resolve this dispute.

                                                               s/ Craig C. Conley
                                                               Craig C. Conley

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of August, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                                               s/ Craig C. Conley
                                                               Craig C. Conley

M OBD 2423232 v1
2910081-000466  08/21/2013