Westlaw.

Not Reported in S.E.2d, 77 Va. Cir. 43, 2008 WL 8201043 (Va.Cir.Ct.)
**(Cite as: 2008 WL 8201043 (Va.Cir.Ct.))**

C

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

Circuit Court of Virginia,
Fairfax County.
Paula MEJIA–AREVALO
v.
INOVA HEALTH CARE SERVICES, et. al.

No. CL 2007–15529.
Aug. 8, 2008.

Robert J. Surovell, Esq., Surovell Markle Isaacs & Levy PLC, Fairfax, Virginia, for Plaintiff.

William Carey, Esq., Blankingship & Keith PC, Fairfax, Virginia, for Defendant.

JONATHAN C. THACHER, J.
*1 Dear Counsel:

This matter came before the Court on Plaintiff Arevalo's ("Plaintiff") Motion to Compel Discovery Responses to Plaintiff's Interrogatory No. 19, and Requests for Production of Documents Nos. 6, 29, 30, and 31. After reviewing the pleadings, each party's briefs, and the arguments presented at oral argument, the Court partially denies and partially grants Plaintiff's Motion to Compel. Specifically, the Court denies Plaintiffs Motion to Compel Responses to Interrogatory No. 19, and Requests for Production of Documents Nos. 29–31. Further, the Court has examined the documents requested in Request for Production of Documents No. 6 *in camera,* and determined that all documents concerning Defendant Altland's income and finances are not discoverable at this time, and that those requested documents that contain peer evaluations and peer reviews are privileged from discovery. However, to the extent that Request for Production of Documents No. 6 seeks documents describing Defendant Altland's training and continuing education, the Court grants Plaintiff's Motion.

**Background and Factual Findings**

Plaintiff's Complaint alleges the following: Plaintiff, nearing the full term of her pregnancy, met with her obstetrician, Dr. Jose S. Tissera, M.D., on September 29, 2006. At this meeting, Dr. Tissera determined that Plaintiffs unborn child presented itself in a breech position. Five days later, at approximately 11:30 p.m. on the evening of October 3, 2006, Plaintiff reported to Inova Fairfax Hospital ("Hospital"). After her admission, Plaintiff received treatment from Defendant Altland ("Altland"), a nurse at the Hospital. Nearly thirty-five minutes of this treatment consisted of fetal heart rate monitoring, which detected a reactive fetal heart rate pattern. The Hospital's staff informed the on-call physician, Dr. Francisco Jose Buxo, of Plaintiff's condition. Dr. Buxo ordered Plaintiffs discharge by phone approximately forty-five minutes after her arrival.

Roughly forty-five minutes after Plaintiff's release, an EMT discovered Plaintiff in the doorway of her home, where she had partially delivered her stillborn child in a breech position. The EMT transported Plaintiff to Inova Alexandria Hospital, where she received multiple emergency surgeries to halt internal bleeding. Plaintiff eventually entered an eleven-day coma. The covering physician at Inova Alexandria completed Plaintiff's delivery.

Plaintiff alleges that the negligence of both Defendant Inova Health Care Services ("Inova") and Altland caused her injuries. Specifically, Plaintiff alleges, *inter alia,* that Altland negligently failed to properly follow delivery protocol, negligently failed to properly assess Plaintiff's condition and the condition of her child upon arrival, and negligently failed to properly examine Plaintiff prior to her discharge on the morning of October 4, 2006. Further, Plaintiff alleges, *inter alia,* that Inova negligently failed to follow labor and delivery protocol, negligently failed to properly train health care pro-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


EXHIBIT 2

Not Reported in S.E.2d, 77 Va. Cir. 43, 2008 WL 8201043 (Va.Cir.Ct.)
**(Cite as: 2008 WL 8201043 (Va.Cir.Ct.))**

viders, negligently failed to obtain an adequate patient history from Plaintiff, and negligently failed to perform a Cesarean delivery after failing to ascertain that Plaintiff's child presented in a breech position.

*2 The Court must determine whether Plaintiff may propound discovery that seeks information concerning Inova's internal policies, procedures, and protocols, as well as the contents of Altland's personnel file. Specifically, Plaintiff seeks to discover Inova's internal protocol for dealing with non-English speaking patients (Request for Production of Documents No. 30), Inova's protocol for dealing with patients whose doctor is an on-call physician (Request for Production of Documents No. 31), as well as all of Inova's procedures regarding Plaintiff's treatment surrounding this action (Request for Production of Documents No. 29). Plaintiff's Interrogatory No. 19 treats these separate requests cumulatively, asking if Inova maintains such written policies or protocols. Plaintiff's Request for Production of Documents No. 6 asks for all documents contained in Altland's personnel file.

**Analysis**
*I. Plaintiff's Requests to Discover Inova's Internal Policies, Procedures, and Protocol*

Plaintiff argues that she is entitled to discover both the existence of, and, if found to exist, the substance of Inova's written policies pertaining to her personal medical care, medical care rendered to non-English speaking patients, and policies regarding treatment of patients by on-call physicians. Plaintiff contends that these documents are not privileged under Virginia Code § 8.01–581.17, as they are not generated by a peer review committee referred to in the statute. See *Riverside Hospital, Inc. v. Johnson*, 272 Va. 518, 636 S.E.2d 416 (2006) (holding that incident reports describing decedent's care that are generated after decedent's death are not documents generated by a committee referred to in § 8.01–581.17).

However, in their brief, Inova advances that the legislative intent in enacting § 8.01–581.17 is to "promote open and frank discussion during the peer review process among health care providers", in furtherance of improvements in the quality of health care. *HCA Services of Virginia, Inc. v. Levin*, 260 Va. 215, 221, 530 S.E.2d 417, 420 (2000). In furtherance of this end, Inova argues that the scope of the statutory privilege must be sufficiently broad to shield the internal conversations of health care committees, thereby improving the quality of health care services. Maintaining that these internal policies are the end result of the types of discussion granted privilege under the statute, Inova asserts that the policies themselves are privileged.

The Supreme Court of Virginia has yet to rule precisely on the issue at hand. Further, the circuits themselves remain divided on the issue of whether a hospital's internal policies, procedures, and protocol may be discovered, leaving no clear consensus of circuit court decisions. See Goodman et. al, *Annual Essay of Virginia Law: Essay: Discovery Divide: Virginia Code Section 8.01–581's Quality Assurance Privilege and Its Protection of Healthcare Provider Policies and Incident Reports*, 39 U. Rich. L.Rev. 61, 67 (2004).

*3 Virginia Code § 8.01–581.17(B) provides, in pertinent part, that:

> The proceedings, minutes, records, and reports of any (i) medical staff committee, utilization review committee, or other committee, board, group, commission, or other entity as specified in § 8.01–581.16 ... or (iii) quality assurance, quality of care, or peer review committee, together with all communications, both oral and written, originating in or provided to such committees or entities, are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after a hearing and for good cause airings from extraordinary circumstances being show, orders the disclosure of such proceedings, minutes, records, reports, or communications.

Virginia Code § 8.01–581.16 states:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 77 Va. Cir. 43, 2008 WL 8201043 (Va.Cir.Ct.)
**(Cite as: 2008 WL 8201043 (Va.Cir.Ct.))**

Every member of, or health care professionals consultant to, any committee, board, group, commission, or other entity shall be immune from civil liability for any act, decision, omission, or utterance done or made in performance of his duties while serving as a member to such committee, board, group, commission ... which functions primarily to review, evaluate, or make recommendations on ... (ii) the professional services furnished with respect to the medical ... necessity for such services, (iii) the purpose of promoting the most efficient use of monitoring the quality of care of available health care facilities and services ... (iv) the adequacy or quality of professional services ....provided that such committee ... or other entity has been established pursuant to federal or state law or regulation ....or established and duly constituted by one or more public or licensed private hospitals.

Those courts authorizing the discovery of similar internal policies often utilize an analysis that combines the principles of *ejusdem generis* and *noscitur a sociis*. See, e.g., *Day v. Medical Facilities of America, Inc.*, 59 Va. Cir. 378, 379 (Salem 2002); *Owens v. Children's Hosp. of the King's Daughters, Inc.*, 45 Va. Cir. 97, 99 (Norfolk 1997) (internal citations omitted); *Stevens v. Lemmie*, 40 Va. Cir. 499, 508 (Petersberg 1996). Under the doctrine of *noscitur a sociis*, if both general and specific words are grouped together in a statute, the specific words limit the scope of the objects described by the general words to those objects specifically enumerated. *Cape Henry Towers, Inc. v. National Gypsum Co.*, 229 Va. 596, 603, 331 S.E.2d 476 (1985). The *ejusdem generis* approach provides that, if the legislature would have used a more general phrasing if they intended the "general" words in a statute to apply, rather than using specific words in the statutory language. *Gates & Sons v. Richmond*, 103 Va. 702, 706, 49 S.E. 965, 966 (1905). Applying this combined analysis to § 8.01–581.17, these courts hold that the term "all communications" is limited by the terms "proceedings, minutes, records, and reports". See,

e.g., *Day*, 59 Va. Cir. at 379. Following this logic, these courts then infer that, since the legislature only specifically enumerated a particular subset of communications, namely "procedures, minutes, records, and reports", an organization's internal policies, procedures, or protocol do not fall under the scope of the privilege, as they are not particularly specified in the statute. *Id.*

*4 However, these courts overlook the phrase "proceedings, minutes, records, reports, or communications" the legislature included in § 8.01–581.17 (B)(iii). Though the combined approached discussed above may logically ensue from the first addition of "all communications" after "procedures, minutes, records and reports", the subsequent inclusion of the phrase "proceedings, minutes, records, reports, or communications" demonstrates that the plain meaning of the statute cannot be limited to the more specified set of communications. Further, the policies, procedures, and protocols at issue are not "medical records kept with respect to a patient within the ordinary course of business", which the legislature deemed non-privileged. Va.Code § 8.01–581.17(C). Nor are they oral communications made with respect to a "specific medical incident", which are also not-privileged. Code § 8.01–581.17 (B). Since the policies, procedures, and protocols do not fall within the given statutory exception to "all communications", they are within the subset of communications statutory defined and thus subject to statute.

In *HCA Health Care Services of Virginia, Inc v. Levin*, the Supreme Court of Virginia stated that "[t]he obvious legislative intent [of § 8.01–581.17] is to promote open and frank discussion during the peer review process among health care providers in furtherance of the overall goal of improvement of the health care system." 260 Va. at 221, 530 S.E.2d at 420. The Court later expanded this interpretation, finding that the legislature intended to protect a committee's "deliberative process and the conclusions reached through that process" from discovery. *Riverside Hospital, Inc. v. Johnson*, 272 Va. 518,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 77 Va. Cir. 43, 2008 WL 8201043 (Va.Cir.Ct.)
**(Cite as: 2008 WL 8201043 (Va.Cir.Ct.))**

533, 636 S.E.2d 416, 424 (2006).

The protocols at issue are the end result of the self examination that the legislature intended to promote through § 8.01–581.17. *Francis v. McEntee*, 10 Va. Cir. 126, 128 (Henrico County, 1987). Health care providers create these policies to augment the quality of their services. *Id.* Therefore, a health care organization's internal means of producing, creating, and amending these policies and protocols must be protected from discovery. Categorizing these policies and protocols as privileged fully enables the "open and frank" criticism of current or previous policies, as well as their effects on the quality of health care provided. A health care organization's internal criticism should be encouraged, in the interest of advancing the quality of health care, by allowing the end product of this criticism the same protection afforded the criticism itself. *See Riverside*, 272 Va. at 518, 636 S.E.2d at 424; *See also Mangano v. Kavanaugh*, 30 Va. Cir. 66, 68 (Loudon 1993) (arguing that privacy promotes the aggressive exposure and correction of deficiencies or mistakes) (internal citations omitted).

Furthermore, these policies should be privileged from discovery under a rationale similar to that which prevents their introduction as evidence. Virginia has long recognized that admitting internal standards of conduct into evidence allows prudent men to be deemed civilly liable if they violate the higher standards of caution they take upon themselves, independent of the law's requirements. *Virginia Rwy. & Power Co. v. Godsey*, 117 Va. 167, 83 S.E. 1072 (1915). Though inadmissible, Plaintiff still presumably imagines enjoying a substantial benefit at trial if she receives answers to these discovery requests, with a corresponding detriment to defendants. Plaintiff's benefit from this discovery would presumably increase as health care defendants' internal standards further exceed the standard of care provided by statute, which is the "degree of skill and diligence practiced by a reasonably prudent practitioner". Va.Code § 8.01-581.17(A). As such, allowing these types of internal policies to be discoverable would disincentivize similar health care providers from creating stringent internal policies. Rather than finding the Commonwealth's health care providers attempting to create increasingly stringent internal policies, the public will discover these providers racing to develop policies that mirror those performed by a "reasonably prudent practitioner" as closely as possible, in order to avoid liability for violating their heightened standard of care. Carrying this to its logical conclusion, as the number of providers seeking to develop policies strongly resembling those of a "reasonably prudent practitioner" increases, the level of skill used by a "reasonably prudent practitioner" will decrease.

\*5 Accordingly, the Court determines that Defendant may not be compelled to respond to Plaintiffs Interrogatory No. 19, and Requests for Production of Documents Nos. 29–31.

II. Plaintiff's Requests to Produce Defendant Altland's Personnel File

Plaintiff contends Altland's personnel file is discoverable, as it is reasonably calculated to lead to admissible evidence, and not privileged under § 8.01–581.17. In response, Altland and Inova (collectively, "Defendants") argue that revealing all information in Altland's personnel file would be overbroad, and potentially embarrassing. Further, Defendants claim that any information contained in the file that relates to Altland's training cannot be calculated to lead to admissible evidence. In support of this contention, Defendants note that the applicable standard of care required for Altland's treatment of Plaintiff is independent of the training Altland received. As such, Altland's training cannot be used at trial to demonstrate that the failed to adhere to the applicable standard of care. Therefore, Defendants claim, the Court should deny Plaintiff's Motion to Compel production of Altland's file.

Those documents describing any financial information relating to Altland are not discoverable to the extent that they describe Altland's pay or financial structure. Financial information, such as tax

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.E.2d, 77 Va. Cir. 43, 2008 WL 8201043 (Va.Cir.Ct.)
**(Cite as: 2008 WL 8201043 (Va.Cir.Ct.))**

returns and employment, may be subject to a "qualified privilege", requiring the party requesting discovery to demonstrate the relevance of the financial information. *See Continental Fed. Savings Bank v. Cooper,* 17 Va. Cir. 355, 355–56 (Fairfax 1989). In the instant case, Plaintiff has failed to show that Altland's financial information is at all relevant to the issues to be tried. Accordingly, to the extent that Plaintiff's Motion to Compel requests Altland's financial information, contained in her personal file, Plaintiff's Motion is denied without prejudice.

Further, all requested pertaining to Altland's peer reviews and evaluations are privileged under § 8.01-581.17. This information is generated by a health care quality control organization, under § 8.01-581.17(B), and is essentially a quality control report regarding Altland's employee performance. *See Clements v. MCV Associated Physicians,* 61 Va. Cir. 673, 678 (Richmond 2002) (holding a doctor's personnel file privileged under § 8.01-581.17 (B)). Accordingly, all documents regarding Altland's peer review are privileged from discovery.

However, those documents detailing the courses Altland attended are not privileged from discovery. This material is not the peer review materially designated as privileged under the statute, but merely a list or description of Altland's training record. Therefore, Defendants must disclose these documents to Plaintiff, as well as all certificates denoting that Defendant Altland completed these courses. Further, those orientation materials detailing the courses Altland completed as part of her initial training are discoverable. These materials merely describe the training courses completed by Altland, and therefore are not statutorily privileged under § 8.01581.17. *See Riverside,* 272 Va. at 530, 636 S.E.2d at 422 (holding that the trial court did not abuse its discretion in admitting evidence of a hospital's orientation program and nursing school curriculum). Accordingly, Plaintiff is entitled to these documents.

*6 The Court orders that all financial records contained in Altland's file are denied at this time, without prejudice. Additionally, the Court determines that all peer evaluations are protected by statutory privilege and shall not be compelled. Finally, the Court concludes that all documents regarding Altland's training and education is discoverable and Inova is ordered to disclose all such documents contained in Altland's file within fifteen days of the date of this letter opinion.

### Conclusion

The Court partially denies and grants the Plaintiff's Motion to Compel. The Plaintiff's lawyer shall prepare *an* Order reflecting the Court's ruling and present that Order for entry on my August 22, 2008 docket. If the Order is submitted by August 20, 2008, fully endorsed by all parties, counsel need not appear.

Va.Cir.Ct.,2008.
Mejia-Arevalo v. INOVA Health Care Services
Not Reported in S.E.2d, 77 Va. Cir. 43, 2008 WL 8201043 (Va.Cir.Ct.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.