Westlaw.

1992 WL 693726, 19 Pa. D. & C.4th 399
(Cite as: 1992 WL 693726 (Pa.Com.Pl.), 19 Pa. D. & C.4th 399)

C

Court of Common Pleas of Pennsylvania, Lycoming County.
Steinbacher
v.
Mariano

No. 90-00279.
May 8, 1992.

*Clifford Rieders,* for plaintiff.

*Francis Wenzel,* for defendant Thomas A. Mariano, M.D.

*Joseph Mellody,* for defendant Alice Hamoy, M.D.

*Donna Rae,* for defendant Phillip C. Breen, M.D.

*David Bahl,* for defendants Joanie Smith, R.N., Pat Dunlap, R.N., Kathryn Adams, R.N., *and* Jersey Shore Hospital.

BROWN, J.

*1 Several motions for discovery are before the court as a result of an action for medical malpractice in which an interpretation of the Peer Review Protection Act, 63 P.S. §425.1 et. seq., has become necessary. Plaintiff has requested the production of certain documents and answers to interrogatories, and a clear delineation of the privilege extended by the PRPA is required to determine what is discoverable. This is a case of first impression of review of the PRPA in Lycoming County.

The specific section of the PRPA in question is 63 P.S. §425.4, which reads as follows:

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation **401 and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings."

It is clear from the foregoing that the proceedings and records of a peer review committee are immune from discovery under the privilege established by the PRPA.

*2 Peer review is defined in section 425.2 of the PRPA as follows:

"'Peer review' means the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations."

**402 The intent of the Legislature in enacting the PRPA is clear from the title of the Act, namely:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT
3

1992 WL 693726, 19 Pa. D. & C.4th 399
**(Cite as: 1992 WL 693726 (Pa.Com.Pl.), 19 Pa. D. & C.4th 399)**

"An Act providing for the increased use of peer review groups by giving protection to individuals and data report[ed] to any review group. 1974, July 20, P.L. 564, no. 193."

Several ambiguities exist with regard to application of the PRPA to discovery. We are bound by the rules to statutory construction to interpret a statute in such a way that the legislative intent controls: See 1 Pa.C.S. §1921. The title and preamble of a statute may be considered in the construction thereof: See 1 Pa.C.S. §1924. Clearly, the legislative intent is to foster frank and candid discussion among health care professionals for the purpose of improving the quality of health care in the Commonwealth of Pennsylvania. See *Bredice v. Doctor's Hospital Inc.*, 500 F.R.D. 249, 250 (D.D.C. 1970); *Fisher v. Lancaster Mennonite Hospital Inc.*, 24 Leb. L.J. 75, 80 (1986); *O'Neill v. McKeesport Hospital*, 48 Pa. D. & C.3d 115, 121 (1987); *Sanderson v. Frank S. Bryan, M.D., Ltd.*, 361 Pa. Super. 491, 496, 522 A.2d 1138, 1140 (1987).

In applying the PRPA, some Pennsylvania courts of common pleas have favored broad protection of peer review proceedings from discovery. See *Schwartz v. Tri-County Hospital*, 74 Pa. D. & C.2d 52 (1975); *Fisher, supra*, at 75; *O'Neill, supra*, at 115; *Hanzsek v. McDonough*, 44 Pa. D. & C.3d 639 (1987); *Fuller v. Jackson*, 50 Pa. D. & C.3d 628 (1987); and *Fetterman v. Haba*, 47 D. & C.3d 435 (1987). Others have favored a more narrow interpretation of the privilege extended by the PRPA, and held that the privilege against discovery only extends to matters that are the subject of civil litigation. See **403*Bolton v. Holy Spirit Hospital/ Kipp v. Fitzgerald*, 40 D. & C.3d 372 (1984) and *Trent v. Lancaster General Hospital*, 44 Pa. D. & C.3d 606 (1986).

To date, the Pennsylvania Superior Court has addressed the PRPA three times. In *Gordon v. Lancaster Osteopathic Hospital*, 340 Pa. Super. 253, 489 A.2d 1364 (1985), the court held that communications made by doctors to the executive director, president of the medical staff, and members of the

board of directors of a hospital about another doctor were not privileged under the PRPA, as the communications were not made to peer review committee members whose functions included peer review under the hospital's by-laws. In *Sanderson v. Frank S. Bryan, M.D., Ltd., supra*, the Superior Court held that the Peer Review Act precluded a plaintiff in a medical malpractice action from obtaining documents other than those relating to their course of action, from a defendant hospital, maintained by a review organization involving review of a co-defendant doctor. The Superior Court felt that such documents would be privileged under the Peer Review Act. It is thus apparent that the holding in *Bolton, supra*, is not the standard used by the Pennsylvania Superior Court in applying the PRPA to discovery. The most recent case, *Steel v. Weisberg*, 368 Pa. Super. 590, 534 A.2d 814 (1987), *appeal dismissed*, 525 Pa. 503, 582 A.2d 648 (1990), held that information received by a committee member in his official capacity of a claim regarding a health care provider is privileged, and that questions concerning any testimony or proceedings before a peer review committee are protected. The court did, however, allow discovery of receipt of an allegedly defamatory letter and the names of individuals to whom it was distributed to allow plaintiff to prove his case **404 and to allow prosecution of those who knowingly provide a committee with false information. This exception to the privilege of the PRPA is in accord with section 425.3(a)(2)[FN1] of the act entitled "Immunity from Liability."

> FN1. "(a) Notwithstanding any other provision of law, no person providing information to any review organization shall be held, by reason of having provided such information, to have violated any criminal law, or to be civilly liable under any law, unless:
>
> (2) The provisions of paragraph (1) of this subsection shall not apply with respect to any action taken by any individual if such individual, in taking such action, was mo-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

1992 WL 693726, 19 Pa. D. & C.4th 399
(Cite as: 1992 WL 693726 (Pa.Com.Pl.), 19 Pa. D. & C.4th 399)

tivated by malice toward any person affected by such action."

*3 We adopt the sound reasoning expressed by the Lehigh County Court of Common Pleas, *Hanzsek v. McDonough, supra,* at 644, which held, "[W]e interpret the act [PRPA] to mean that where a document is prepared solely for purposes of peer review, that document is not discoverable. Where a document is prepared solely in connection with recording events of the treatment of a patient, that document is discoverable."

The privilege of the PRPA extends to peer review committee reports, records, proceedings, and testimony. See *Sanderson, supra,* at 1140. We also find that data generated pursuant to a request by a peer review organization is also protected. It should also be noted that, pursuant to the plain language of the PRPA section 425.4:

"[I]nformation, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to **405 matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings."

See also *Sanderson, supra* at 500, 522 A.2d at 1142.

It is also necessary to define what a peer review committee is. 63 P.S. § 425.2 defines "review organization" as follows:

"'Review organization' means any committee engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a health insurance review committee, a hospital plan corporation review committee, a professional health service plan review committee, a dental review committee, a physicians' advisory committee, a nursing advisory committee, any committee established pursuant to the medical assistance program, and any committee established by one or more state or local professional societies to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii)reducing morbidity or mortality; or (iii)establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto. It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes or other health care facilities." *Baldwin v. McGrath,* 8 Pa. D. & C.3d 341, 344 (1978), held that some definitive action would have to be taken before a peer review committee were established, and **406 *Gordon, supra* at 262, 489 A.2d at 1372, held that communications made by doctors to the executive director, president of the medical staff, and members of the board of directors of the hospital about another doctor were not protected under the PRPA, as they were not made to a review committee authorized under the hospital's by-laws. We therefore concur with the holding in *Mazzucca v. Methodist Hospital*, 47 Pa. D. & C.3d 55, 60 (1986), which states that the privilege against discovery granted by the PRPA is extended only when the requested discovery relates to a review committee established by some definitive action prior to the time of review, and that the record must be the product of said committee and relate to the matter which is subject to review.

*4 Plaintiff herein seeks the personnel files of individual employees of defendant Jersey Shore Hospital, which objects on the grounds that the requested documents are protected under the PRPA. Under section 425.2, [FN2] definitions of the PRPA

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

1992 WL 693726, 19 Pa. D. & C.4th 399
(Cite as: 1992 WL 693726 (Pa.Com.Pl.), 19 Pa. D. & C.4th 399)

peer review means the evaluation by professional health care providers of the care provided by other professional health care providers.

> FN2. "Peer review" means the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations.

The term "professional health care provider" is also defined in section 425.2[FN3] as individuals or organizations **407 approved, licensed or otherwise regulated to practice in the health care field under the laws of the Commonwealth. A review organization includes any hospital board, committee or individual reviewing the professional qualification or activities of its medical staff or applicants for admission thereto (see 163 P.S. §425.2, *supra*). *Fetterman, supra*, at 439, held that "[o]nce the application is submitted to the hospital board or committee and becomes the subject of that committee's review, protection from discovery is then provided by the Act [PRPA] as part of the records of the committee." Applied to the instant case, the nurse defendants are subject to deposition by plaintiff, and are free to answer any questions within their own knowledge. However, any memoranda, documents, evaluations, performance, abilities, etc., and any impressions obtained by members of the committee or witnesses as a result of the proceedings of the committee conducting the review are protected from discovery by the PRPA.

> FN3. "'Professional health care provider' means individuals or organizations who

are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth, including, but not limited to, the following individuals or organizations....

practice or operate in the health care field under the laws of the Commonwealth, including, but not limited to, the following individuals or organizations...."

Defendants have obtained a stay pending final resolution of a motion for protective order with regard to plaintiff's discovery upon Keystone Peer Review Organization (Key PRO). Key PRO conducts utilization and quality control peer review pursuant to its contractual commitment with the U.S. Department of Health and Human Services, Health Care Finance Administration. Plaintiff is seeking a taking-of-records deposition upon Key PRO requesting documents pertaining to review of Dr. Thomas Mariano's care of Albert Steinbacher Sr. 42 C.F.R. section 476, 138(3)[FN4] and 42 C.F.R. **408 section 476.140(e)[FN5] both preclude quality review study information obtained by a peer review organization (Key PRO) with patient identifiers from being subject to subpoena or discovery in a civil action.

> FN4. "(3) Disclosure to the courts. Patient identified records in the possession of a PRO are not subject to subpoena or discovery in a civil action, including an administrative, judicial or arbitration proceeding."

> FN5. "(e) Quality review study information with patient identifiers is not subject to subpoena or discovery in a civil action, including an administrative, judicial or arbitration proceeding. This restriction does not apply to HHS, including Inspector General administrative subpoena issued in the course of audits and investigations of department programs, in the course of administrative hearings held under the Social Security Act, or to disclosures to the Gen-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

1992 WL 693726, 19 Pa. D. & C.4th 399
**(Cite as: 1992 WL 693726 (Pa.Com.Pl.), 19 Pa. D. & C.4th 399)**

eral Accounting Office as necessary to carry out its statutory responsibilities."

*5 Accordingly, the following is entered.

### ORDER

And now, May 8, 1992, the court orders that:

(1) The motion by defendant Thomas A. Mariano, M.D., for a protective order to prevent taking-of-records deposition by plaintiff from Keystone Peer Review Organization Inc., is hereby granted.

(2) Plaintiff's motion to compel production of documents, filed June 12, 1990, is hereby granted.

(3) Plaintiff's motion to compel discovery is granted with regard to interrogatories 50(e), 55, 61, 62, 65, 66, 67, 68, 69, 70, 76, 78, and 79.

Defendant Thomas Mariano, M.D., will limit his answers to interrogatories numbered 71-75 inclusive, to Albert L. Steinbacher Sr.'s (decedent) cause of death, malpractice, negligence or course of treatment of decedent by any party. Defendants must answer interrogatory 76(h) and may limit his answer to lawsuits testified to by defendants' **409 experts, in which the treatment provided was the same type of treatment decedent received. Plaintiff's motion to compel discovery is denied with regard to plaintiff's first set of interrogatories numbered 17, 18, 32, 42, 44 46, 48, and 60.

(4) Plaintiff's motion to compel more specific answers to plaintiff's first set of interrogatories to defendant Alice Hamoy, M.D., filed November 16, 1990, is hereby denied.

(5) Plaintiff's motion to determine the sufficiency of the answer to request for admissions to defendant Phillip C. Breen, M.D., is hereby granted.

(6) The motion of Thomas A. Mariano, M.D., to compel discovery is hereby granted as to the requirement that plaintiff verify his answers to defendant's first set of interrogatories numbered 8

through 33, inclusive. Defendants' motion to compel discovery with regard to plaintiff's first set of interrogatories is hereby granted with regard to interrogatories numbered 18, 19, 27, 28, 29, 31, 32 and 33. Defendants' motion is denied with regard to interrogatories numbered 8, 13, 16, 20, 22, 23, 24, 26 and 30.

(7) The motion of defendant Thomas A. Mariano, M.D. to compel discovery is hereby granted with regard to defendants' expert witness interrogatories numbered 1-14, inclusive.

(8) The motion of defendant Thomas A. Mariano, M.D. to continue trial is hereby granted, and the court will instruct the court administrator to schedule this case for trial during the week of September 14, 1992.

(9) Plaintiff may have access to the medical records of the other patient referred to during oral testimony of March 10, 1992, and defendant Jersey Shore Hospital is ordered to provide said patient records to plaintiff with **410 the patient's name, address, or other identifying or nonclinical information redacted.[FN6]

> FN6. The court is mindful of the concern the Superior Court expressed in *Sanderson v. Bryan*, 361 Pa. Super. 491, 522 A.2d 1138 (1987), in regard to disclosure of medical records of other patients. However, unlike the cited case, the records request here is not general but geared to a specific time frame which has relevance to the events of this case. However, we do want to state that only medical records that pertain to the limited time frame discussed in the March 10, 1992 testimony must be produced. As this information is to be provided in an anonymous fashion and a limited time frame, we feel the right to discovery will control. See also *Stenger v. Lehigh Valley Hospital Center*, 386 Pa. Super. 574, 589, 563 A.2d 531, 539 (1989).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

1992 WL 693726, 19 Pa. D. & C.4th 399
**(Cite as: 1992 WL 693726 (Pa.Com.Pl.), 19 Pa. D. & C.4th 399)**

**\*6** (10) Plaintiff is denied access to the personnel files of nurses employed by defendant Jersey Shore Hospital and to evaluations of said nurses employed by defendant Jersey Shore Hospital and to evaluations of said nurses pursuant to the PRPA and reasoning in the foregoing opinion.

Compliance with these orders shall be by the close of discovery which, after oral hearing with counsel for the parties herein, is set for July 1, 1992.

Pa.Com.Pl. 1992.
Steinbacher v. Mariano
1992 WL 693726, 19 Pa. D. & C.4th 399

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.