IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
_____

DANIEL LOVELACE and
HELEN LOVELACE, Individually,
and as Parents of
BRETT LOVELACE, deceased,

    Plaintiffs,

VS.                                    NO.: 2:13-cv-02289 JPM-dkv

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

    Defendants.
_____

ORDER GRANTING IN PART AND DENYING IN PART METHODIST HEALTHCARE-MEMPHIS HOSPITALS' MOTION TO QUASH DEFENDANTS' SUPBOENA AND MOTION FOR PROTECTIVE ORDER, AND PLAINTIFFS' JOINDER IN SUCH MOTION
_____

    Before the court is the August 21, 2013 motion of Methodist Healthcare-Memphis Hospitals (hereinafter "Methodist"), a non-party, to quash a subpoena *duces tecum* seeking the production of five categories of documents and for a protective order prohibiting the parties to this action from seeking information from Methodist that requires disclosure of privileged, confidential or protected documents, or otherwise places an undue burden on Methodist. (D.E. 33.) The subpoena was served on Methodist by the defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D. (D.E. 33.) The plaintiffs,

Daniel and Helen Lovelace, individually and as parents of Brett Lovelace, deceased, ("the Lovelaces") have joined in Methodist's motion. (D.E. 34.) Pediatric Anesthesiologists and Dr. Paidipalli filed a response in opposition to the motion. (D.E. 38.) The motion was referred to the United States Magistrate Judge for determination. For the reasons that follow, the motion is granted in parted and denied in part.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

This medical malpractice action arises out of the hospitalization of the Lovelaces' minor son, Brett Lovelace, for a tonsillectomy and adenoidectomy by the defendant, Dr. Mark Clemons, on March 12, 2012, at Methodist LeBonheur Children's Medical Center. While in the Post Anesthesia Care Unit (PACU) following the procedure, Brett "coded", and was resuscitated but ultimately died two days later, on March 14, 2012.

Named as defendants in the complaint are Dr. Paidipalli, the anesthesiologist who administered the anesthesia to Brett; Pediatric Anesthesiologists, the medical group with which Dr. Paidipalli is affiliated; and Dr. Mark Clemons, the doctor who performed the surgery. In their answers, the defendants deny any medical negligence on their part but assert fault against a non-party, Kelly Kish, a recovery room nurse employed by Methodist LeBonheur, who was assigned to care for Brett in PACU following his surgery. In an Agreed Order with the Tennessee

Board of Nursing, Kish stipulated to certain facts concerning the care she provided to Brett in the PACU, including the fact that while she was caring for Brett, she "documented oxygen saturations that were not reflected on the print-out" and that Brett "was the only patient assigned to [her] during the approximately 90 minutes [Brett] was in the PACU." (Agreed Order, D.E. 38-1, at 3.) She also stipulated that during the time Brett was in the PACU, she "accessed Facebook and at least one other social media website using a hospital computer." (*Id.* at 4.) In the Agreed Order, she further acknowledged that the Stipulated Facts were sufficient to acknowledge violations of the following rules and statutes: (1) Tenn. Code Ann. § 63-7-101, *et seq*. and Tenn. Comp. R. & Regs. 1000-01-.13(1) & (1)(a), which includes "intentionally or negligently causing physical or emotional injury to a patient." As a result of these violations, Kish's nursing license was revoked. On March 23, 2012, Kish resigned her employment with Methodist in lieu of termination. (*Id.* at 4.)

Prior to filing this lawsuit, the Lovelaces engaged in mediation with Methodist in December 2012. As a result of the mediation, the Lovelaces settled their claims against Methodist, and the Lovelaces and Methodist entered into a Confidential Settlement Agreement and Release ("the Settlement Agreement") on December 19, 2012.

3

II.  ANALYSIS

Rule 45(c)(3) requires a court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3). Rule 45 sets forth the procedure to be followed to assert a claim of privilege or protection. It provides:

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(d)(2)(A).

Rule 26(c) of the Federal Rules of Civil Procedure provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" with respect to an aspect of discovery. Fed. R. Civ. P. 26(c). The burden of establishing good cause rests with the party moving for the protective order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting

4

from the discovery sought and cannot rely on mere conclusory statements." *Id.* (internal quotation marks omitted).

The subpoena seeks the production of the following five categories of documents: (1) printouts and other documents recorded by any monitoring equipment used in the care of Brett in the PACU on March 12, 2012; (2) all medical records, including x-rays and billing records pertaining to Brett; (3) any and all logs for the PACU on March 12, 2012; (4) the personnel file of Kish; and (5) the Settlement Agreement and release entered into between the Lovelaces and Methodist.

As grounds for quashing the subpoena, Methodist claims that the requests in the subpoena are vague, overly broad, unduly burdensome, seek non-relevant information, seek documents that can be obtained from other sources more convenient and less burdensome, and seek privileged and confidential documents. Contrary to Methodist's objections, Pediatric Anesthesiologists and Paidipalli insist that all the documents requested in the subpoena are relevant to their defenses and are not privileged.

A. Item No. 1

The subpoena seeks production of "[a]ll printouts and all other documents containing any data, vital signs, values, readings, and other information recorded by any monitoring equipment utilized in the care of Brett Lovelace in the Post Anesthesia Care Unite (PACU) at LeBonheur Children's Medical

5

Center . . . on March 12, 2012." (D.E. 39-1.) Methodist objects to this request on the grounds that the documents requested in this item are included in the medical records or can be obtained from the state of Tennessee in a FOIA request. In response, Pediatric Anesthesiologists and Paidipalli maintain that the medical records, however, may be inconsistent with the actual monitoring data based on Kish's factual stipulation that she recorded oxygen saturation rates in Brett's medical records that were inconsistent with the printouts from the monitor. Because the medical records may not contain accurate data, the printouts from the monitoring equipment in the PACU used for Brett are relevant. A FOIA request to the State of Tennessee is not a less burdensome or more convenient means to obtain these documents, which should be readily accessible to Methodist, and there is no affirmative representation by Methodist that the printouts are part of Brett Lovelace's medical records, only that his vital signs, values, and readings are recorded in his medical records, which, as indicated above, may be inaccurate. Accordingly, Methodist's motion to quash is denied as to Item No. 1.

B.   Item No. 2

The subpoena seeks production of the medical records, including x-rays, and billing records pertaining to Brett Lovelace's hospitalization. Methodist has not lodged any

6

objection to this item. Accordingly, Methodist's motion to quash is denied as to Item No. 2.

C. Item No. 3

The subpoena seeks production of all logs, including printouts of any computer log, and any paper log, for the PACU on March 12, 2012. Methodist objects to production of these documents on the grounds that the term "computer logs" is vague and overly broad in that it seeks logs pertaining to all computers in the PACU on March 12, 2012, and that it seeks attorney-client and or work product protected information. In their response, Pediatric Anesthesiologists and Paidipalli explain that the intent of this request is to discover the identities of all persons who were present in the PACU on March 12, 2012.

This item as written is somewhat vague and overbroad. This category of documents shall be limited to production of work schedules, logs, sign-in and sign-out sheets, or other similar documents, whether maintained in hard copy or on a computer, that indicate the persons present in the PACU on March 12, 2012, during the time Brett was present. Methodist's objections on the basis of privilege are overruled. The burden is on the person asserting the privilege to demonstrate grounds for applying the privilege. Methodist has failed to come forward with any basis for claiming attorney-client privilege or work

product protection as to these documents. Accordingly, the motion to quash is denied as to Item No. 3 of the subpoena.

D. Item No. 4

The subpoena seeks production of Kish's personnel file. Methodist objects on the grounds that Kish's personnel file includes her personal information, and confidential, proprietary and/or sensitive business information, and commercially private data of Methodist. Methodist also asserts that Kish's personnel file is protected by the Tennessee Patient Safety and Quality Improvement Act, Tenn. Code Ann. § 68-11-272 ("the Act").

Under the Tennessee Patient and Safety Quality Improvement Act, all records pertaining to the activities of a Quality Improvement Committee ("QIC") are "confidential and privileged . . . and protected from direct or indirect means of discovery, subpoena, or admission into evidence in any judicial or administrative proceeding." Tenn. Code Ann. § 68-11-272(c)(1). A QIC is defined as a committee formed or retained by a healthcare organization, an activity of a healthcare organization, or one (1) or more individuals employed by a healthcare organization" performing certain functions including "[e]valuation of the qualifications, credentials, competence and performance of healthcare providers or actions upon matters relating to the discipline of any individual healthcare provider," "[s]upervision, education, discipline, admission, and

8

the determination of privileges of healthcare providers," and "review of professional qualifications or activities of healthcare providers." Tenn. Code Ann. § 68-11-272(b)(4). Healthcare provider means any licensed healthcare professional including clinical staff of a healthcare organization. Tenn. Code Ann. § 68-11-272(b)(2). Records include "records of interviews and all reports, incident reports, statements, minutes, memoranda, charges, statistics, evaluations, critiques, test results corrective actions, and disciplinary actions." Tenn. Code Ann. § 68-11-272(b)(2).

In this case, Kish is a healthcare provider covered by the Act. By statute, any documents in her personnel file pertaining to the activities of a QIC as defined in the Act are protected from discovery. This includes, but is not limited to, performance evaluations and disciplinary proceedings.

In addition, documents in Kish's personnel file pertaining to her income or other financial information contain confidential information, are not relevant to this lawsuit, and are therefore not discoverable. Personal identification information such as her social security number is not discoverable. Methodist's motion to quash is granted as to these documents and denied to the remaining documents such as Kish's background, training, education, and work history, if such documents exist in her personnel file.

9

E.   <u>Item No. 5</u>

The subpoena seeks production of the Settlement Agreement between the Lovelaces and Methodist. As to the settlement agreement, Methodist's only objection is that the request is "improper and places undue burden on Methodist in requiring it to divulge the terms of a confidential agreement." (Mem., D.E. 33-1 at 7.)

Settlement agreements are not protected from discovery simply because they are marked confidential. *See Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12-cv-11536, 2012 WL 5471135 (E.D. Mich. 2012) and cases cited therein. In *Scheurer*, the court held that Rule 408 of the Federal Rules of Evidence and the Sixth Circuit's recognition of a "settlement privilege" in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003) did not preclude discovery of information such as the amount of the settlement. The court found that the defendants were entitled to disclosure of the settlement agreement.

The court agrees with the reasoning in *Scheurer* and finds that the Settlement Agreement is discoverable. In this case, the settlement between Methodist and the Lovelaces is relevant to the issue of damages. *See Oberthaler v. Ameristep Corp.*, No. 5:08-cv-1613, 2010 WL 1506908, at *1 (N.D. Ohio Apr. 13, 2010)(granting motion to compel because settlement was relevant

to the issue of damages). Accordingly, Methodist's motion to quash is denied as to the Settlement Agreement.

### III.  CONCLUSION

For the foregoing reasons, Methodist Healthcare-Memphis Hospitals' Motion to Quash Defendants' Subpoena and Motion for Protective Order, and Plaintiffs' Joinder in such motion, is granted in part and denied in part. Because the motion for protective order seeks the same relief as the motion to quash, the motion for protective order is denied as moot. Recognizing the sensitive nature of these documents, the court directs the parties to confer regarding an appropriate confidentiality agreement/protective order to govern the production of these documents. If the parties cannot agree on a protective order, each shall submit its own version within fourteen days of the date of this order.

Methodist shall, within fourteen (14) days of the date of the protective order, on a date and at a time mutually agreeable to counsel for the parties in this cause, produce the documents and things as set forth in this order for inspection and copying by counsel for the parties, at the offices of counsel for defendants, Pediatric Anesthesiologists and Paidipalli.

IT IS SO ORDERED this 21st day of October, 2013.

s/ Diane K. Vescovo<br>
DIANE K. VESCOVO<br>
UNITED STATES MAGISTRATE JUDGE