UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DANIEL LOVELACE and HELEN LOVELACE, individually, and as parents of BRETT LOVELACE, deceased, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) NO. 2:13-cv-02289-JPM-dkv ) |
| PEDIATRIC ANESTHESIOLOGISTS, P.A., BABU RAO PAIDIPALLI, and MARK P. CLEMONS, | ) ) ) ) |
| Defendants, | ) ) |
| And | ) ) |
| STATE OF TENNESSEE, | ) ) |
| Defendant-Intervenor. | ) |

_____

**STATE OF TENNESSEE'S MEMORANDUM OF LAW
IN SUPPORT OF TENN. CODE ANN. § 29-26-121**
_____

Defendant/Intervenor, the State of Tennessee, through the Office of the Attorney General and Reporter, hereby submits its Memorandum of Law in Support of Tenn. Code Ann. § 29-26-121. The State of Tennessee intervened in this case solely to defend the constitutionality of the Tennessee Health Care Liability Act (formerly known as the "Medical Malpractice Act"), Tenn. Code Ann. §§ 29-26-101 through 29-26-122. (Order Granting the State of Tennessee's Motion to Intervene as a Matter of Right, ECF No. 37.)

Although Plaintiffs have generally challenged "the Tennessee Medical Malpractice Act – in its various parts, and in toto," they only face dismissal based on alleged failure to comply with Tenn. Code Ann. § 29-26-121 and thus focus their constitutional arguments on the same

statute.  (Plaintiffs' Memorandum, ECF No. 30.)  Although all statutes contained in the Tennessee Health Care Liability Act are constitutional, the State of Tennessee has limited this Memorandum to Tenn. Code Ann. § 29-26-121 because, as argued below, statutes are presumed constitutional and their constitutionality should only be decided if absolutely necessary.[1]

### ARGUMENT

When a federal court has jurisdiction based on diversity of citizenship, "the applicability of state law depends on the nature of the issue before the federal court and not on the basis for its jurisdiction."  *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 630 (6th Cir. 2009).  If the "issue is a federal matter, federal law will apply."  *Watson v. McCabe,* 527 F.2d 286, 288 (6th Cir. 1975).  Thus, federal law applies when determining whether a state statute violates the United States Constitution.  *See Mathis v. Eli Lilly and Co.,* 719 F.2d 134, 136-141 (6th Cir. 1983) (applying federal law to a claim of unconstitutionality under the United States Constitution).

However, Tennessee courts determine "whether the [Tennessee] statute in question is violative of the Tennessee Constitution."  *Mathis,* 719 F.2d at 141.  If there is no Tennessee Supreme Court decision, the Court must "determine how the Tennessee Supreme Court would rule if presented with the same issue."  *Id.*  In the event that "a state appellate court has resolved an issue to which the high court has not spoken," the appellate decision is "authoritative absent a strong showing that the state's highest court would decide the issue differently."  *Kurczi v. Eli Lilly and Co.,* 113 F.3d 1426, 1429 (6th Cir. 1997).

---

[1] The other statutes of the Health Care Liability Act are not at-issue in this case.  Further, Plaintiffs have not met their burden to prove the other statutes unconstitutional.  However, the State respectfully requests additional time to brief the constitutionality of the other statutes if the Court deems it necessary.

Both federal law and state law presume that state statutes are constitutional and seek to uphold the statute wherever possible. *Northland Family Planning Clinic, Inc. v. Cox,* 487 F.3d 323, 339 (6th Cir. 2007); *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1366 (6th Cir. 1984); *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009). In a preemption inquiry, the proper approach is to reconcile the federal and state statutory schemes. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 183 (1978).

It is a "fundamental rule of judicial restraint" to "not reach constitutional questions in advance of the necessity of deciding them." *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.,* 467 U.S. 138, 157 (1984). Therefore, unless the constitutionality of Tenn. Code Ann. § 29-26-121 is absolutely necessary to the determination of this case, the issue should not be decided.

## I. TENNESSEE CODE ANNOTATED SECTION 29-26-121 DOES NOT VIOLATE EQUAL PROTECTION.

The United States Constitution "affords a great deal of deference to state legislatures in creating statutory classifications for legitimate social or economic purposes." *Borman's, Inc. v. Michigan Prop. & Cas. Guar. Ass'n,* 925 F.2d 160, 162 (6th Cir. 1991). Thus, the burden on a party seeking an equal protection challenge "is an extremely heavy one." *Id.* If "the legislation is economic or social in nature . . . and neither a fundamental right nor a suspect class is involved, [then] the level of scrutiny required is rational basis review." *Id.*

Under the rational basis test, "a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Id.* (citations omitted). The Tennessee Supreme Court "has followed the framework developed by the United States Constitution for analyzing equal protection claims." *Newton v. Cox,* 878 S.W.2d 105 (Tenn. 1994).

3

The United States District Court, Middle District of Tennessee, has agreed with Tennessee state courts and upheld the constitutionality of other Tennessee medical malpractice[2] statutes. *Ralph v. Nagy*, 749 F.Supp. 169 (M.D. Tenn. 1990) (citing *Sutphin v. Platt*, 720 S.W.2d 455 (Tenn. 1986)); *Baker v. Vanderbilt Univ.*, 616 F. Supp. 330 (M.D. Tenn. 1985) (citing *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn. 1978)). The statute at issue in *Ralph*, Tenn. Code Ann. § 29-26-115(b), allows a court to waive the contiguous-state requirement for expert witnesses and the Court concluded that the waiver provision acts as a "safety valve" against any constitutional deprivation. 749 F.Supp. at 175-176. *Baker* concluded that the statute which abrogates the collateral source rule, Tenn. Code Ann. § 29-26-119, is "rationally related to the legitimate governmental objective of reducing malpractice insurance premiums and health care costs, and the classification between medical malpractice litigants and other litigants is in furtherance of that objective." 616 F. Supp. at 332.[3]

Tennessee Code Annotated Section 29-26-121 requires that a claimant give at least 60 days' notice to a potential health care liability defendant prior to commencing an action. The notice shall include a list of all providers being notified and a HIPAA compliant medical authorization so that the providers can obtain records from each other. Tenn. Code Ann. § 29-26-121(a). The additional requirements are mitigated by the 120-day extension of the statutes of

---

[2] Effective April 23, 2012, the Tennessee legislature substituted "health care liability" for "medical malpractice." For the purposes of this Memorandum, "health care liability" and "medical malpractice" will be used interchangeably.

[3] In *Baker*, 616 F. Supp. at 332-333, the Court regarded *Harrison,* 569 S.W.2d at 822, as controlling on the issue of whether Tenn. Code Ann. § 29-26-119 violated the Tennessee Constitution. *Harrison* was controlling even though the Court in *Baker* examined another medical malpractice statute. *Id.* "Even if the Court believed otherwise, in light of the delicate federal-state balance, the Court would be extremely hesitant to invalidate a State statute on State constitutional grounds, absent clear guidance from the Tennessee Courts." *Id.* at 333.

limitations and repose once notice is provided. *Id.* at § (c). A court may excuse compliance with the notice requirements upon extraordinary cause shown. *Id.* at § (b). The reason for pre-suit notice is twofold: (1) to reduce the number of frivolous claims; and (2) to facilitate the settlement of claims prior to expensive litigation. *Jenkins v. Marvel*, 683 F.Supp.2d 626, 639 (E.D. Tenn. 2010).

The Tennessee Court of Appeals has upheld the constitutionality of Tenn. Code Ann. § 29-26-121 on equal protections grounds. *Webb v. Roberson,* No. W2012-01230-COA-R9-CV, 2013 WL 1645713, *14-21 (Tenn. Ct. App. Apr. 17, 2013), *application filed* (Tenn. June 17, 2013) (No. W2012-01230-SC-R11-CV) (attached). The plaintiffs alleged the statute violated both the Tennessee Constitution and the United States Constitution. *Id.* at *14. They argued that "there exists no rational basis for imposing pre-suit notice requirements upon a medical negligence claimant, while not imposing such requirements upon a *non*-medical negligence claimant." *Id.* at *17. The court stated succinctly: "We disagree." *Id.*

*Webb* stated that "[t]he courts of this state have rejected numerous equal protection challenges to the specific provisions of the Tennessee Medical Malpractice Act." *Id.* The Tennessee Supreme Court upheld the statute of repose in *Harrison,* 569 S.W.2d at 826. *Id. Harrison* noted that the legislature may have considered the "medical malpractice insurance crisis," which was caused by the reluctance of insurance companies to write medical malpractice policies because of the increased number of claims. *Id.* "Where policies were available, premiums had risen astronomically." *Id. Harrison* concluded that "the legislature could have perceived a threat, not only to the medical profession, but also to the general public." *Id.* In *Newton v. Cox*, 878 S.W.2d 105, 110 (Tenn. 1994), the court found it conceivable that a contingency fee cap for attorneys "would further the purposes of the Medical Malpractice Act by

reducing malpractice insurance costs and, therefore reduce the cost of health care to the public." *Id.* The Court of Appeals found it conceivable that the certificate of good faith statute, Tenn. Code Ann. § 29-26-122, furthered those same purposes in *Jackson v. HCA Health Services of Tennessee, Inc.,* 383 S.W.3d 497 (Tenn. Ct. App. 2012). *Webb,* 2013 WL 1645713, at * 18.

*Webb* upheld Tenn. Code Ann. § 29-26-121 and found that "the legislature could conceive of a relationship between section 29-26-121's pre-suit notice requirements and its legislative objectives of preventing protracted litigation through early investigation, and possibly, facilitating early resolution through settlement." *Id.* at *19. The "objectives are of particular importance in the context of medical malpractice claims where, as discussed [in *Harrison,* 569 S.W.2d at 825-827], increased malpractice insurance costs threaten both health care affordability and accessibility." *Id.*

*Webb* is an authoritative state appellate decision that follows the federal framework for an equal protection challenge, is consistent with other federal opinions upholding Tennessee medical malpractice statues[4], and is well-reasoned. *See Webb,* 2013 WL 1645713, at *14-21. It is conceivable that Tenn. Code Ann. § 29-26-121, which provides for early evaluation and streamlined disclosure of medical records, will accomplish the legislative objectives of facilitating early settlement and reducing the number of frivolous claims. In addition, a court may excuse compliance with the pre-suit notice requirements and so the statute contains a "constitutional safety valve" as determined by *Ralph*, 749 F.Supp. at 175-176. Accordingly, this Court should hold that Tenn. Code Ann. § 29-26-121 does not violate the equal protection guarantees contained in the United States Constitution and Tennessee Constitution.

---

[4] *See supra, Ralph*, 749 F.Supp. at 175-176, and *Baker*, 616 F. Supp. at 332.

## II.   TENNESSEE CODE ANNOTATED SECTION 29-26-121 DOES NOT VIOLATE THE SEPARATION-OF-POWERS DOCTRINE.

There are two Tennessee Court of Appeals' decisions that have upheld Tenn. Code Ann. § 29-26-121 against separation-of-powers challenges.  *Webb v. Roberson,* No. W2012-01230-COA-R9-CV, 2013 WL 1645713, *6-10 (Tenn. Ct. App. Apr. 17, 2013), *application filed* (Tenn. June 17, 2013) (No. W2012-01230-SC-R11-CV) (attached); *Williams v. SMZ Specialists, P.C.*, W2012-00740-COA-R9-CV, 2013 WL 1701843 (Tenn. Ct. App. Apr. 19, 2013), *application filed* (Tenn. June 17, 2013) (No. W2012-00740-SC-R11-CV) (attached).  In both *Webb* and *Williams*, the plaintiffs unsuccessfully argued that Tenn. Code Ann. § 29-26-121 attempts to supersede Tenn. R. Civ. P. 3 and the commencement of an action.

*Webb* cited to *Lynch v. City of Jellico,* 205 S.W.3d 384, 390 (Tenn. 2006), which upheld another "pre-suit requisite in the context of workers' compensation" against a separation of powers challenge.  2013 WL 1645713 at *8.  The Tennessee Supreme Court in *Lynch* "noted the necessity of overlap between the government branches, and pointed out that the judicial branch would ultimately adjudicate the claim if an agreement was not reached at the pre-suit conference." *Id.*

*Webb* concluded that Tenn. Code Ann. § 29-26-121 did not "constitute an impermissible encroachment upon the court's rule-making authority." *Id.* at *9.  The statute requires notice "*before the filing of a complaint.*" *Id.* (emphasis in original).  The statute is not entirely procedural, and, in any event, the Tennessee Supreme Court has stated that "consent to a legislatively-promulgated procedural rule is appropriate where the statute works within the framework and rules adopted by the judiciary." *Id.* (citing *State v. Mallard*, 40 S.W.3d 473, 481 (Tenn. 2001) (citing *Newton v. Cox*, 878 S.W.2d 105, 112 (Tenn. 1994))).  Because Tenn. Code Ann. § 29-26-121 "merely supplement[s] Rule 3 and can be harmoniously construed therewith,

we find such requirements do not violate the separation of powers doctrine." *Id.*  The court also disagreed with plaintiffs' arguments that the statute "effectively kills the suit before it starts[,]" and concluded that subjecting a claim to dismissal for failure to follow reasonable pre-suit requirements does not render the statute unconstitutional. *Id.* at *10.

*Williams* also concluded that Tenn. Code Ann. § 29-26-121 does not violate the separation-of-powers doctrine.  2013 WL 1701843.  Notice must be done before the filing of the complaint. *Id.* at *8.  A suit commences under Rule 3 and "it then falls to the courts to hear the facts and decide the issues." *Id.* (citing *Underwood v. State*, 529 S.W.2d 45, 47 (Tenn. 1975) ("A legislative enactment which does not frustrate or interfere with the adjudicative function of the courts does not constitute an impermissible encroachment upon the judicial branch of government.")).  In addition, the statute "is driven by the Legislature's substantive policy concerns, and therefore cannot be described as purely procedural." *Id.* at *9 (citing *Biscan v. Brown,* 160 S.W.3d 462, 474 (Tenn. 2005) ("Although it is the province of this Court to prescribe rules for practice and procedure in the state's courts, where a decision of the legislature chiefly driven by public policy concerns infringes on that power we will generally defer to the judgment of the legislature.")).

Both the *Webb* and *Williams* opinions should be considered authoritative because they are consistent with Tennessee Supreme Court decisions that have upheld statutes as involving permissible overlap between the legislative and judicial branches of government.  *See e.g., Lynch,* 205 S.W.3d at 390; *Biscan,* 160 S.W.3d at 474;  *Mallard,* 40 S.W.3d at 483; *Newton,* 878 S.W.2d at 112; *Underwood* 529 S.W.2d at 47; *Petition for Rule of Court Activating, Integrating, and Unifying the State Bar of Tennessee*, 292 S.W.2d 782 (Tenn. 1955).  They are also consistent with another Tennessee Court of Appeals case, which upheld the certificate of good faith statute

on similar grounds.  *See Jackson v. HCA Health Servs. of Tenn., Inc.,* 383 S.W.3d 497 (Tenn. Ct. App. 2012).

Plaintiffs' cited cases of *Waples v. Yi,* 234 P.3d 187, 160-161 (Wash. 2010)*,* and *Weiderick v. Arnold*, 835 S.W.2d 843 (Ark. 1992), do not make a strong showing that the Tennessee Supreme Court would decide differently than *Webb* and *Williams.* (Plaintiffs' Memorandum, ECF No. 30, pp. 14-15.)  The dissenting opinions in those cases are more akin to decisions of the Tennessee Supreme Court.  *See Waples,* 234 P.3d at 162-163 (Johnson, J., dissenting) ("the two can coexist harmoniously"); *Weiderick*, 835 S.W.2d at 850 (Hays, J., dissenting) (the notice requirement is not merely a procedural step but an "integral part of a statutory scheme intended to alleviate what the General Assembly of Arkansas saw as a matter of critical concern to the people of this state [the health care crisis]").  Therefore, this Court should uphold Tenn. Code Ann. § 29-26-121 on separation of powers grounds.

### III. TENNESSEE CODE ANNOTATED SECTION 29-26-121 IS NOT PREEMPTED BY THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT.

The Health Insurance Portability and Accountability Act ("HIPAA") sought to improve "the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information."  Pub. L. No. 104-191, § 261, 1996 HR 3101 (1996).  The federal legislature imposed a duty on the Secretary of Health and Human Services to publish rules and regulations pertaining to the privacy of protected health information.  42 U.S.C. §§ 1320a, 1320d – 1320d-9.  The standards were required to be "consistent with the objective of reducing the administrative costs of providing and paying for health care."  42 U.S.C.A. § 1320d-1(b).

The federal regulations contain an express preemption clause: "A standard, requirement, or implementation specification adopted under this subchapter that is *contrary* to a provision of State law preempts the provision of State law."  45 C.F.R. § 160.203 (emphasis added). "Contrary" means:

> (1)  A covered entity would find it impossible to comply with both the State and federal requirements; or
>
> (2) The provision of State law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of part C of title XI of the Act, section 264 of Public Law 104-191, or section 13402 of Public Law 111-5, as applicable.

*Id.* at § 160.202.  However, even when a state law is contrary, if it is more stringent than HIPAA, then there will be no preemption.  *Id.* at 160.203(b).

The privacy standards require a covered entity to use or disclose protected health information only pursuant to its provisions.  45 C.F.R. § 164.102.  A "covered entity" is defined as a health plan, health care clearinghouse, or health care provider.  45 C.F.R. § 164.103.

Disclosure may occur pursuant to an individual's authorization.  45 C.F.R. §  164.508. HIPAA specifically defines what constitutes a valid authorization and what makes an authorization defective.  45 C.F.R. § 164.508(b).  HIPAA anticipates that an individual may be required to sign an authorization in order to receive certain benefits.  *See e.g.,* 45 C.F.R. § 164.508(b)(4)(i) (a covered entity may condition research-related treatment on an authorization for the use or disclosure for such research); 45 C.F.R. § 164.508(b)(4)(ii) (a health plan may condition enrollment in the plan if the authorization is sought for eligibility or enrollment determinations or for underwriting or risk rating determinations).  Rather than prohibiting "conditioned" authorizations in all circumstances, HIPAA prohibits *covered entities* from making such conditions except in certain circumstances.  45 C.F.R. § 164.508(b)(4).

HIPAA does not prohibit a state government from requiring an authorization as a prerequisite to filing a medical malpractice lawsuit. *See id.* In fact, the federal agency advised that the privacy standards were "not intended to disrupt the current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected health information." 65 Fed.Reg. 82462–01, 82530 (Dec. 28, 2000).

Tennessee Code Annotated Section 29-26-121 requires a claimant to provide pre-suit notification of a potential medical malpractice suit. The notice must include a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E).

Although the decision is not binding on this Court, the Tennessee Court of Appeals has concluded that HIPAA does not preempt Tenn. Code Ann. § 29-26-121. *Webb v. Roberson,* No. W2012-01230-COA-R9-CV, 2013 WL 1645713, *10-14 (Tenn. Ct. App. Apr. 17, 2013), *application filed* (Tenn. June 17, 2013) (No. W2012-01230-SC-R11-CV) (attached). In *Webb,* plaintiffs alleged that the statute allows disclosure without a court order or the patient's consent in violation of HIPAA. *Id.* at * 12. The court stated that "[b]y pursuing a malpractice claim, the plaintiff consents to the disclosure of relevant health information." *Id.* at *14. "Notwithstanding this consent, however, . . . section 29-26-121 specifically demands that the claimant's authorization to release medical records be 'HIPAA compliant[,]' it limits the discoverable medical records to those held by providers sent notice by the claimant, and it requires the records be treated as confidential and be used only by the parties, their counsel, and their consultants." *Id.* (citing Tenn. Code Ann. § 29-26-121(a)(2)(E), (d)(2)). The court concluded that "a 'covered

11

entity' can comply with the requirements of both section 29-26-121 and HIPAA, and that section 29-26-121 does not impede the accomplishment or execution of HIPAA's purposes." *Id.*

This Court should also conclude that HIPAA does not preempt Tenn. Code Ann. § 29-26-121. Because the authorization must be HIPAA-compliant, it is not impossible for a covered entity to comply with both HIPAA and section 29-26-121. The statute contains adequate safeguards for a claimant's privacy so that it is not an obstacle to the objectives of HIPAA. Therefore, the definition of "contrary" is not met and HIPAA does not preempt Tenn. Code Ann. § 29-26-121.

Contrary to Plaintiffs' assertion, *Alsip v. Johnson City Med. Ctr.*, No. E2004-00831-COA-R9-CV, 2005 WL 1536192 (Tenn. Ct. App. June 30, 2005), does not support their contention that HIPAA preempts Tenn. Code Ann. § 29-26-121. (Plaintiffs' Memorandum, ECF No. 30, pp. 16-17.) *Alsip* stated in dicta that disclosure of protected information without a valid authorization or court order would violate HIPAA. 2005 WL 1536192, at *9. As argued above, Tenn. Code Ann. § 29-26-121 requires that any disclosure to be done pursuant to a valid HIPAA authorization and so the *Alsip* concerns are not present in this instant case.

**CONCLUSION**

If necessary for the resolution of this case, the Court should uphold the constitutionality of Tenn. Code Ann. § 29-26-121 and hold that the statute is not preempted by HIPAA. This Court should decline to rule on the constitutionality of the other medical malpractice statutes.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General and Reporter

s / STEPHANIE A. BERGMEYER
STEPHANIE A. BERGMEYER, BPR # 27096
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-6828
Stephanie.Bergmeyer@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing was filed electronically and the parties below were served through the Court's electronic filing system on this 28th day of October, 2013:

Mark Ledbetter
Halliburton & Ledbetter
254 Court Avenue, Suite 305
Memphis, Tennessee 38103

J. Kimbrough Johnson
Marcy Dodds Magee
Thomas, Hendrix, Harvey, Johnson & Mitchell, PLLC
2900 One Commerce Street
40 South Main Street
Memphis, Tennessee 38103

David M. Cook
Albert M. McLean
The Hardison Law Firm, P.C.
119 South Main Street, Suite 800
Memphis, Tennessee 38103

s / STEPHANIE A. BERGMEYER
STEPHANIE A. BERGMEYER