Page 1

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

Only the Westlaw citation is currently available.

SEE COURT OF APPEALS RULES 11 AND 12

Court of Appeals of Tennessee.
Charles WEBB and Evangeline Webb, Individually and as Husband and Wife
v.
Charles ROBERSON, M.D., et al.

No. W2012–01230–COA–R9CV.
Feb. 19, 2013 Session.
April 17, 2013.

Interlocutory Appeal from the Circuit Court for Shelby County, No. CT–004737–10; Robert S. Weiss, Judge.
Louis P. Chiozza, Jr., Memphis, Tennessee; Steven R. Walker, Oakland, TN, for the appellants, Charles Webb and Evangeline Webb.

Marty R. Phillips, John O. Alexander, Memphis, Tennessee, for the appellees, Charles Roberson, M.D. and Charles Roberson, M.D., P.C.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, Stephanie A. Bergmeyer, Assistant Attorney General, Nashville, TN, for the appellee, State of Tennessee.

Jennifer S. Harrison, Memphis, TN, for the appellees, Sabrina Greer, R.N., Brandy Madden, R.N., Jerry Ray, R.N., Tina Cox, R.N., Michael Maharrey, R.N. and AMISUB (SFH), Inc., d/b/a St. Francis Hospital.

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

**OPINION**

ALAN E. HIGHERS, P.J., W.S.,

**\*1** In this interlocutory appeal, Plaintiffs challenge the constitutionality of Tennessee Code Annotated section 29–26–121, which requires a medical malpractice claimant to provide certain notice sixty days prior to filing suit. We conclude that Tennessee Code Annotated section 29–26–121 is not an unconstitutional infringement upon the courts' rule-making authority, that it is not preempted by HIPAA, and that it does not violate the equal protection and due process provisions of state and federal law. Affirmed and Remanded.

**I. FACTS & PROCEDURAL HISTORY**

On September 23, 2010, Charles Webb and his wife, Evangeline Webb, (collectively "Plaintiffs") filed a medical malpractice Complaint against numerous defendants, including emergency room physician Charles Roberson, M.D. and Charles Roberson, M.D., P.C.;[FN1] nurses Sabrina Greer, Brandy Madden, Jerry Ray, Tina Cox, and Michael Maharrey ("Nurses"); and AMISUB (SFH), Inc. and AMISUB (SFH), Inc. d/b/a Saint Francis Hospital ("Hospital").[FN2] The Complaint alleged the negligent failure to timely diagnose and treat Mr. Webb's cancer on or about July 26, 2009. Also on September 23, 2010, Plaintiffs filed their Certificate of Good Faith in accordance with Tennessee Code Annotated section 29–26–122.

> FN1. In his Answer to Plaintiffs' Complaint, Dr. Roberson states "Charles Roberson, M.D., P.C. is not a legal entity and, therefore, is not a properly named defendant in this action."
>
> FN2. On appeal, the Nurses and the Hospital adopted the briefs filed by Dr. Roberson and the State of Tennessee.

Charles Roberson, M.D. and Charles Roberson, M.D., P.C. ("Dr.Roberson") filed an Answer on April 12, 2011, generally denying negligence and asserting that he was not provided with the sixty-

day pre-suit notice required by Tennessee Code Annotated section 29–26–121. Specifically, Dr. Roberson alleged that he received a notice letter on or about September 16, 2010—seven days prior to the filing of Plaintiffs' Complaint.

On April 21, 2011, the Hospital and the Nurses filed a joint Answer also generally denying any negligence.

On August 10, 2011, Dr. Roberson filed a Motion for Summary Judgment based upon Plaintiffs' alleged failure to comply with Tennessee Code Annotated section 29–26–121. Dr. Roberson claimed that Plaintiffs had failed to provide him with notice of the potential claim sixty days prior to the filing of the Complaint, that the statute of limitations, therefore, was not extended for a period of one hundred twenty days, and, thus, that the September 23, 2010 Complaint was filed outside of the one-year statute of limitations. Additionally, Dr. Roberson claimed that Plaintiffs' Complaint failed to comply with section 29–26–121 because it had no attached affidavit stating that timely notice had been delivered and to whom, and because it failed to include the information required within the sixty-day notice.

On September 2, 2011, the Nurses also filed a Motion to Dismiss based upon Plaintiffs' alleged failure to comply with the requirements of section 29–26–121. The Nurses claimed that the Hospital was served with a notice letter on July 21, 2010, but that the letter "was not served on the individually named nurses and the notice letter that was served ... did not list the individually named nurses as providers being sent notice." Additionally, the Nurses maintained that the July 21, 2010 notice letter failed to include the "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice" as required by section 29–26–121(a)(2)(E). Instead, according to the nurses, Plaintiffs "provided HIPAA compliant medical authorizations allowing all defendants other than these individually named nurses to obtain the plaintiff's medical records."

**\*2** In response to Dr. Roberson's Motion for Summary Judgment, Plaintiffs conceded that they had unsuccessfully attempted to personally serve Dr. Roberson with a pre-suit notice letter dated July 22, 2010, and that a letter was not personally delivered to him until September 16, 2010–seven days prior to the filing of their Complaint. However, Plaintiffs argued that service of the July 22, 2010 letter was attempted upon Dr. Roberson "several times at St. Francis Hospital; however, hospital security would not provide a work schedule for Dr. Roberson, and was uncooperative in assisting with service." Additionally, Plaintiffs contended that "T.C.A. § 29–26–121 and the entire Tennessee Medical Malpractice Act are unconstitutional." Likewise, in response to the Nurses's Motion to Dismiss, Plaintiffs challenged the constitutionality of section 29–26–121 and the entire Medical Malpractice Act. Due to the constitutional claims, the State of Tennessee was allowed to intervene in the matter and it filed a memorandum of law to defend the constitutionality of section 29–26–121,[FN3] which Dr. Roberson and the Nurses adopted.

> FN3. The State argued that Plaintiffs lack standing to challenge the constitutionality of the *entire* Medical Malpractice Act.

Following a hearing, the trial court granted Dr. Roberson's Motion for Summary Judgment. The court concluded that the Medical Malpractice Act is constitutional and that Plaintiffs failed to comply with the requirements of section 29–26–121. Specifically, the court found that Dr. Roberson was not served with notice until September 16, 2010, and therefore that Plaintiffs' Complaint was filed beyond the one-year statute of limitations for medical malpractice claims. Additionally, the trial court found that Plaintiffs had failed to file an affidavit along with their Complaint establishing delivery under section 29–26–121 and that their Complaint failed to include the information required within the sixty-day notice.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

Following a second hearing, the trial court granted summary judgment[FN4] in favor of the Nurses. Again, the trial court concluded that the Medical Malpractice Act is constitutional, and it further found that the Nurses had not been served with pre-suit notice of a potential claim, that the notice which was provided did not give the Nurses a HIPAA compliant medical authorization to obtain medical records from other providers receiving notice of the potential claim, and that Plaintiffs' Complaint failed to include the information required within the sixty-day notice.

> FN4. Apparently, the trial court concluded that the Nurse's motion to dismiss had been converted to a motion for summary judgment.

Plaintiffs filed a Motion to Alter or Amend claiming that the trial court had erred in considering "at least two aspects" of section 29–26–121's constitutionality under a rational basis test rather than under strict scrutiny. The trial court denied Plaintiffs' Motion to Alter or Amend. Plaintiffs then successfully moved the trial court for permission to pursue an interlocutory appeal, and on August 20, 2012, this Court entered an Order granting Plaintiffs' application for an interlocutory appeal.

## II. ISSUES PRESENTED

Plaintiffs raised four issues[FN5] in their Application for Interlocutory Appeal:

> FN5. In their appellate brief, Plaintiffs attempt to raise two additional issues: "whether the Trial Court Erred in Granting Summary Judgment to Dr. Roberson, and Whether the Trial Court Should Have Granted Plaintiffs' Motion to Dismiss without Prejudice pursuant to Tenn. R. Civ. P. 41.01(1)." However, because these additional issues were not raised in Plaintiffs' applications for interlocutory appeal, nor were they accepted for consideration by this Court, they will not be addressed. *See Montcastle v. Baird,* 723 S.W.2d 119, 122 (Tenn.Ct.App.1986); *see also Milligan v. George,* No. 01A01–9609–CH–00406, 1997 WL 39138, at *3 (Tenn.Ct.App. July 9, 1997) (scope of interlocutory appeal is restricted to issues certified by the trial court and accepted by appellate court).

**\*3** 1. Whether Tennessee Code Annotated section 29–26–121 is an unconstitutional infringement upon the rule-making authority of the courts, and particularly upon Tennessee Rule of Civil Procedure 3;

2. Whether the Health Insurance Portability and Accountability Act ("HIPAA") preempts Tennessee Code Annotated section 29–26–121;

3. Whether Tennessee Code Annotated section 29–26–121 violates the equal protection and due process provisions of state and federal law; and

4. Whether the entire Tennessee Medical Malpractice Act is unconstitutional.

For the following reasons, we conclude that Tennessee Code Annotated section 29–26–121 is not an unconstitutional infringement upon the courts' rule-making authority, that it is not preempted by HIPAA, and that it does not violate the equal protection and due process provisions of state and federal law. The case is remanded for further proceedings consistent with this opinion.

## III. STANDARD OF REVIEW

"Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." *Waters v. Farr,* 291 S.W.3d 873, 882 (Tenn.2009) (citing *Colonial Pipeline v. Morgan,* 263 S.W.3d 827, 836 (Tenn.2008)). When evaluating the constitutionality of a statute, we must begin with the presumption that the statute is constitutional, and we must uphold the statute's constitutionality "wherever possible." *Id.* (citing *State v. Pickett,* 211 S.W.3d 696,

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

700 (Tenn.2007)).

The issues presented in this interlocutory appeal involve a facial challenge to a statute, "meaning they involve a claim 'that the statute fails a constitutional test and should be found invalid in all applications.' " *Jackson v. HCA Health Servs. of Tenn., Inc.,* 383 S.W.3d 497, 500 (Tenn.Ct.App.2012) (quoting *Waters,* 291 S.W.3d at 921). Our Supreme Court has explained:

> A facial challenge to a statute is the most difficult challenge to mount successfully. The presumption of a statute's constitutionality applies with even greater force when a facial challenge is made. Accordingly, the challenger must establish that no set of circumstances exists under which the statute would be valid. Stated another way, the challenger must demonstrate that the law cannot be constitutionally applied to anyone.
>
> Courts considering a facial challenge to a statute should proceed with caution and restraint because holding a statute facially unconstitutional may result in unnecessary interference with legitimate governmental functions. Accordingly, the courts view facial invalidity as "manifestly strong medicine" and invoke it sparingly and only as a last resort.
>
> There are at least three reasons for the courts' reticence to invalidate statutes on their face. First, claims of facial invalidity often rest on speculation and thus run the risk of the "premature interpretation of statutes on the basis of factually barebones records." Second, facial challenges "run contrary to the fundamental principle of judicial restraint" by inviting the courts to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Third, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."

**\*4** Thus, a successful facial constitutional challenge results in the wholesale invalidation of the statute. While passing on the validity of a statute wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular. For this reason, many courts view "as applied" challenges as the "basic building blocks" of constitutional adjudication. "As applied" challenges are preferred because, if they are successful, they do not render the entire statute completely inoperative. In some circumstances, the courts can fulfill the legislature's intent by prohibiting only the unconstitutional applications of a statute, while allowing the State to enforce the statute in other circumstances.

*Id.* (quoting *Waters,* 291 S.W.3d at 921–23) (internal citations and footnotes omitted in quotation).

### IV. DISCUSSION
### A. *Constitutionality of Tennessee Medical Malpractice Act*

In this interlocutory appeal, Plaintiffs attempt to challenge the constitutionality of both a *specific section* of the Tennessee Medical Malpractice Act-section 29–26–121–and the *entire* Tennessee Medical Malpractice Act, Tennessee Code Annotated section 29–26–115, et seq. (the "Act").

"It is well-settled in Tennessee that 'courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties.' " *Waters,* 291 S.W.3d at 882 (quoting *State v. Taylor,* 70 S.W.3d 717, 720 (Tenn.2002)); *see also Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.,* 467 U.S. 138, 157, 104 S.Ct. 2267, 2279, 81 L.Ed.2d 113 (1984) ("It is a fundamental rule of judicial restraint ... that this Court will not reach constitutional questions in advance of the necessity of deciding them."). In this case, Plaintiffs face dismissal of their Complaint due to their alleged failure to comply with the requirements of section 29–26–121; the *entirety* of the Act is in no way implicated by the facts under

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

consideration here. As such, we find it unnecessary, and thus improper, for this Court to consider the constitutionality of the Act as a whole.

### *B. Constitutionality of Tennessee Code Annotated section 29–26–121*

We begin by looking at the statute under attack-section 29–26–121–which provides in relevant part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for medical malpractice [FN6] shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.

> FN6. This Court is aware that, effective April 23, 2012, the TMMA was amended, and the words "health care liability" were substituted for the words "medical malpractice" throughout the statute. 2012 Tenn. Pub. Acts, ch. 798, § 1–59. In this opinion, however, we cite to the 2009 version in effect at the time Plaintiffs filed suit.

(2) The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

**\*5** (C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:

(A) Personal delivery of the notice to the health care provider or an identified individual whose job function includes receptionist for deliveries to the provider or for arrival of the provider's patients at the provider's current practice location. Delivery must be established by an affidavit stating that the notice was personally delivered and the identity of the individual to whom the notice was delivered; or

(B) Mailing of the notice:

 (i) To an individual health care provider at both the address listed for the provider on the Tennessee department of health web site and the provider's current business address, if different from the address maintained by the Tennessee department of health; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient; or

 (ii) To a health care provider that is a corporation or other business entity at both the address for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the provider last provided a medical service to the patient.

(4) Compliance with subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

(b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

**\*6** (c) When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider....

(d)(1) All parties in an action covered by this section shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice. A party shall provide a copy of the specified portions of the claimant's medical records as of the date of the receipt of a legally authorized written request for the records within thirty (30) days thereafter. The claimant complies with this requirement by providing the providers with the authorized HIPAA compliant medical authorization required to accompany the notice. The provider may comply with this section by:

(A) Mailing a copy of the requested portions of the records with a statement for the cost of duplication of the records to the individual requesting the records;

(B) Informing the individual requesting the records that the records will be mailed only upon advance payment for the records for the stated cost of the records, calculated as provided in § 63–2–102. Any request for advance payment must be made in writing twenty (20) days after the receipt of the request for medical records. The provider must send the records within three (3) business days after receipt of payment for the records; or

(C) Fulfilling such other method that the provider and the individual requesting the records agree to in writing.

(2) The records received by the parties shall be treated as confidential, to be used only by the parties, their counsel, and their consultants.

**Tennessee Code Annotated section 29–26–121.**

1. Whether section 29–26–121 Infringes upon Rule–Making Authority of Courts

We first consider whether section 29–26–121 violates the separation of powers doctrine by infringing upon the courts' rule-making authority-particularly, in conflicting with, or attempting to supersede, Rule 3 of the Tennessee Rules of Civil Procedure.

Article II, sections 1 and 2 of the Tennessee Constitution provide for the separation of powers among the three branches of government. **Tenn. Const. Art. II, secs. 1 and 2.**

In general, the "legislative power" is the authority to make, order, and repeal law; the "executive power" is the authority to administer and enforce the law; and the "judicial power" is the authority to interpret and apply law. The Tennessee constitutional provision prevents an encroachment by any of the departments upon the powers, func-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

tions and prerogatives of the others. The branches of government, however, are guided by the doctrine of checks and balances; the doctrine of separation of powers is not absolute.

*State v. King,* 973 S.W.2d 586, 588 (Tenn.1998) (quoting *State v. Brackett,* 869 S.W.2d 936, 939 (Tenn.Crim.App.1993)). "Thus, while the three branches of government are independent and co-equal, they are to a degree interdependent as well, with the functions of one branch often overlapping that of another." *Id.* (citing *Underwood v. State,* 529 S.W.2d 45, 47 (Tenn.1975)). "A legislative enactment which does not frustrate or interfere with the adjudicative function of the courts does not constitute an impermissible encroachment upon the judicial branch of government." *Underwood,* 529 S.W.2d at 47.

***7** The Tennessee Rules of Civil Procedure are "promulgated by the Supreme Court and approved by [the Supreme Court] and approved by the General Assembly, pursuant to [the Supreme Court's] 'inherent power to promulgate rules governing the practice and procedure of the courts of this state.' " *Hall v. Haynes,* 319 S.W.3d 564, 571 (Tenn.2010) (citing *State v. Mallard,* 40 S.W.3d 473, 481 (Tenn.2001)). The rules "have 'the force and effect of law [,]' " and "provisions of the Tennessee Code which cannot be harmoniously construed will be resolved in favor of the Tennessee Rules of Civil Procedure." *Mid–South Pavers, Inc. v. Arnco Const ., Inc.,* 771 S.W.2d 420 (Tenn.Ct.App.1989) (citing Tenn.Code Ann. § 16–3–406). "[B]ecause the power to control the practice and procedure of the courts is inherent in the judiciary and necessary 'to engage in the complete performance of the judicial function,' ... this power cannot be constitutionally exercised by any other branch of government[.]" *Mallard,* 40 S.W.3d at 481 (quoting *Anderson County Quarterly Court v. Judges of the 28th Judicial Cir .,* 579 S.W.2d 875, 877 (Tenn.Ct.App.1978)) (internal citation omitted).

Notwithstanding the constitutional limits of legislative power in this regard, the courts of this state have, from time to time, consented to the application of procedural or evidentiary rules promulgated by the legislature. Indeed, such occasional acquiescence can be expected in the natural course of events, as this practice is sometimes necessary to foster a workable model of government. When legislative enactments (1) are reasonable and workable within the framework already adopted by the judiciary, and (2) work to supplement the rules already promulgated by the Supreme Court, then considerations of comity amongst the coequal branches of government counsel that the courts not turn a blind eye.

*Id.* (citing *Newton v. Cox,* 878 S.W.2d 105, 112 (Tenn.1994)). Moreover, "[a]lthough it is the province of [the Supreme] Court to prescribe rules for practice and procedure in the state's courts, where a decision of the legislature chiefly driven by public policy concerns infringes on that power [the Court] will generally defer to the judgment of the legislature." *Biscan v. Biscan,* 160 S.W.3d 462, 474 (Tenn.2005) (citing *Martin v. Lear Corp.,* 90 S.W.3d 626, 631–32 (Tenn.2002)).

Tennessee Rule of Civil Procedure 3 provides:

All civil actions are commenced by filing a complaint with the clerk of the court.[FN7] An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

FN7. This Court has stated, "Standing alone, Tennessee Rule of Civil Procedure 3 could be construed to mean that filing a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

complaint alone is sufficient to commence an action. However, this construction overlooks the application of Tennessee Rules of Civil Procedure 3 and 4, which also requires service of process. Tennessee law is clear that commencement of an action is accomplished only when a complaint is filed and process is served." *McNeary v. Baptist Mem'l Hosp.,* 360 S.W.3d 429, 439 (Tenn.Ct.App.2011).

**\*8 Tenn. R. Civ. P. 3.**

i. Pre–Suit Notice Requirement

Regarding compatibility with Rule 3, Plaintiffs first contend that the legislature "has attempted to control commencement of a suit in medical malpractice actions" by adding a written notice step in section 29–26–121. Plaintiffs claim that the pre-suit notice requirement attempts to supersede the lawsuit commencement procedures set forth in Rule 3 in violation of the Supreme Court's authority to promulgate rules governing practice and procedure.

Our Supreme Court has previously considered a pre-suit requisite in the context of workers' compensation. In *Lynch v. City of Jellico,* 205 S.W.3d 384, 390, 393 (Tenn.2006) the Court determined that requiring parties involved in a workers' compensation dispute to participate in a benefit review conference prior to filing suit did not violate the separation of powers doctrine. Specifically, the Court rejected the trial court's conclusion that the conference violated the separation of powers doctrine because it was conducted by a workers' compensation specialist rather than by a judge. *Id.* at 392–93. Relevant to the instant case, the Court noted the necessity of overlap between the governmental branches, and it pointed out that the judicial branch would ultimately adjudicate the claim if an agreement was not reached at the pre-suit conference. *Id.* at 293.

More akin to the instant case, in *Jackson v. HCA Health Services of Tennessee, Inc.,* 383 S.W.3d 497 (Tenn.Ct.App.2012), the middle section of this Court concluded that Tennessee Code Annotated section 29–26–122, which requires the contemporaneous filing of a certificate of good faith along with a medical malpractice complaint, did not conflict with Tennessee Rule of Civil Procedure 3, and therefore, that it did not violate the separation of powers doctrine. *Id.* at 505. This Court noted that the civil action continued to commence upon the filing of the complaint, and that the statute merely provided for dismissal of the action *if* the good faith certificate requirement was not satisfied. *Id.* The Court further acknowledged that dismissal was not mandated if a plaintiff failed to file a certificate of good faith; instead, failure to file the certificate could be excused upon "demonstrated extraordinary cause." *Id.* at 505–06 (citing Tenn.Code Ann. § 29–26–121(a)). Importantly, the Court stated that "requiring a plaintiff to conduct a due diligence inquiry prior to filing a complaint is not in conflict with the Tennessee Rules of Civil Procedure adopted by the Supreme Court of Tennessee. In fact, requiring a plaintiff to exercise due diligence prior to the filing of the complaint is entirely consistent with the rules." *Id.* at 505. Finally, the Court noted that the certificate of good faith requirement is easily complied with, as "[i]t merely requires proof of the plaintiff's due diligence, specifically that the plaintiff or his counsel consulted with at least one competent medical expert who provided a written statement confirming that the expert believes, based on the information available from medical records ..., that there is a good faith basis to maintain the action[.]" *Id.* at 506.

\*9 With the above-cited principles and applications in mind, we find no conflict between section 29–26–121 and Civil Procedure Rule 3 to constitute an impermissible encroachment upon the court's rule-making authority. As pointed out by the defendants, section 29–26–121 requires that written notice of a potential health care liability claim be given "*before the filing of a complaint.*" Thus, the statute's pre-suit notice requirements are satisfied-or not-before suit is commenced pursuant to Rule 3 by the filing of the complaint. *See Rajvongs v.*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Wright,* No. M2011–01889–COA–R9–CV, 2012 WL 2308563, at *5 (Tenn. Ct.App. June 18, 2012) (holding that a suit is "commenced" upon the filing of the complaint, *not* upon the filing of the sixty-day notice) *perm. app. granted* (Tenn. Sept. 19, 2012). Once suit is commenced, *if* the pre-suit notice requirements are demonstrably not met, the complaint is subject to dismissal *by the courts* absent "extraordinary cause" which is, likewise, determined *by the courts. See* Tenn.Code Ann. § 29–26–121(a)(4)(b); *see also Myers v. AMUSUB (SFH), Inc.,* 382 S.W.3d 300, 304 (Tenn.2012) ("We hold that the statutory requirement[ ] that a plaintiff give sixty days pre-suit notice ... [is a] mandatory requirement[ ] and not subject to substantial compliance.").

Moreover, the purpose of section 29–26–121 is " 'to give the defendant the opportunity to investigate and perhaps even settle the case before it is actually filed. At a minimum, it will give the defendant the opportunity to gather information before suit is filed and should eliminate the need for extensions of time to answer the complaint or slow-walk discovery.' " *DePue v. Schroeder,* No. E2010–00504–COA–R9–CV, 2011 WL 538865, at *5 (Tenn.Ct.App. Feb. 15, 2011) *perm. app. denied* (Tenn. Aug. 31, 2011) (quoting *Howell v. Claiborne and Hughes Health Ctr.,* No. M2009–01683–COA–R3–CV, 2010 WL 2539651, at *14 (Tenn. Ct.App. June 24, 2010)) *overruled on other grounds by Myers v. AMISUB (SFH), Inc.,* 382 S.W.3d 300 (Tenn.2012). Based upon legislature's substantive policy concerns, we find that the pre-suit notice requirement is not entirely procedural. In any event, as stated above, consent to a legislatively-promulgated procedural rule is appropriate where the statute works within the framework and rules adopted by the judiciary. *Mallard,* 40 S.W.3d at 481 (citing *Newton,* 878 S.W.2d at 112). Here, the statutory purposes supplement the Rules of Civil Procedure, which are to "be construed to secure the just, speedy, and inexpensive determination of every action [,]" **Tenn. R. Civ. P. 1,** and therefore, we find that deferment to the legislature is appropriate.

Finally, as with section 29–26–122–the constitutionality of which has been upheld-the requirements of section 29–26–121 are easily met. The written notice requires only minimal information which is easily accessible to the claimant, and several clearly-explained delivery methods are available. In sum, because the pre-suit notice requirements of section 29–26–121 merely supplement Rule 3 and can be harmoniously construed therewith, we find such requirements do not violate the separation of powers doctrine.

### ii. Tolling

**\*10** Rule 3 of the Tennessee Rules of Civil Procedure allows a plaintiff to toll the statute of limitations by obtaining issuance of new process within one year of the original issuance or, if no process was originally issued, within one year of the filing of the complaint. Plaintiffs point out that the one-year tolling period is unavailable to a health care liability plaintiff who *fails* to provide pre-suit notice within the original statute of limitations pursuant to section 29–26–121, and therefore, they argue that the legislative statute, in attempting to supersede the Courts' Rule 3, violates the separation of powers doctrine.

Plaintiffs are correct that a plaintiff who *fails* to comply with the requirements of section 29–26–121 may not take advantage of Rule 3's one-year tolling period, as the suit becomes subject to dismissal.[FN8] However, we disagree that this tolling inability "effectively kills the suit before it starts[,]" as Plaintiffs suggest. As explained above, the statutory pre-suit notice requirements are easily met and they work to promote both early evaluation and streamlined disclosure of medical records in order to facilitate the statutory goals of information gathering and litigation expediency.

> FN8. On appeal, Plaintiffs argue that the proper sanction for failure to comply with the requirements of section 29–26–121 is dismissal *without* prejudice. As stated

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

above, however, this issue was not accepted for consideration by this Court and will not be addressed. *See Montcastle,* 723 S.W.2d at 122.

Moreover, we note that a health care liability plaintiff who *complies* with the meager pre-suit notice requirements of section 29–26–121 is afforded an *additional* 120 day period in which to commence his claim. Section 29–26–121 provides that if the requisite pre-suit notice is given, "the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." **Tenn.Code Ann. § 29–26–121(a)(3)(B)(4)(c).** When suit is commenced pursuant to Rule 3, its tolling provisions become operative. Thus, a plaintiff who provides the requisite 29–26–121 notice may take advantage of *both* section 29–26–121's 120–day extension in which to commence his claim, and Rule 3's one year tolling period. In sum, we simply decline to adopt Plaintiffs' premise that subjecting a plaintiff's claim to dismissal-for failure to follow reasonable pre-suit requirements-renders a statute unconstitutional.

2. Whether Tenn.Code Ann. § 29–26–121 is Pre–Empted by HIPAA

Congress passed the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") [FN9] for the stated purpose of "improv[ing] ... the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." *South Carolina Med. Ass'n v. Thompson,* 327 F.3d 346, 348 (4th Cir.S.C.2003) (citation omitted). Specifically, HIPAA "creates privacy and security rules related to personal health information held by *covered entities.* " *North Cypress Med. Ctr. Operating Co. v. Fedex Corp.,* 892 F.Supp.2d 861, 2012 WL 4344611, at *7 n.1 (S.D.Tex. Sept. 14, 2012) (citing Pub.L. No. 104–191, 110 Stat.1936) (emphasis added). A "covered entity" is generally defined as either a health plan, a health care clearinghouse, or a health care provider engaged in electronic transactions. 45 C.F.R. § 160.103; *see also Graham v. Fleissner Law Firm,* No. 1:08–CV–00031, 2008 WL 2169512, at *3 (E.D.Tenn.2008). Under HIPAA, a covered entity generally "may not use or disclose protected health information without a[ ] [valid] authorization [.]" **45 C.F.R. § 164.508(a)(1).** However, in certain circumstances, "[a] covered entity may use or disclose protected health information without the written authorization of the individual[.]" **45 C.F.R. § 164.512.** For example, pursuant to HIPAA section 164.512(e)(1), "[a] covered entity may disclose protected health information in the course of any judicial administrative proceeding:"

> FN9. HIPAA is codified in Title 45, Parts 160, 162, and 164 of the Code of Federal Regulations. *See Jackson v. CVS Corp.,* 2010 WL 3385184, at *5 n.5 (Tenn.Ct.App. Aug. 26, 2010).

**\*11** (i) In response to an order of a court or administrative tribunal, provided that the covered entity disclosed only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective or-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

der[.]

(iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protect[ed] health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(1) No objections were filed; or

(2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or

(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

**45 C.F.R. § 164.512(e)(1).** A "qualified protective order" is one that:
(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information is requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

**\*12 45 C.F.R. § 164.512(e)(1)(v)(A), (B).**

On appeal, Plaintiffs argue that section 29–26–121 conflicts with HIPAA, and therefore, that the Tennessee statute is preempted.

"Our federal system of government recognizes the dual sovereignty of the federal government and the various state governments." *Pendleton v. Mills,* 73 S.W.3d 115, 126 (Tenn.Ct.App.2001) (citing *Printz v. United States,* 521 U.S. 898, 918, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); *Gregory v. Ashcroft,* 501 U.S. 452, 45, 111 S.Ct. 2395, 2399, 115 L.Ed.2d 410 (1991)). A state is sovereign within its own sphere subject only to preemption pursuant the Supremacy Clause of the United States Constitution.[FN10] *Id.* (citing *Tafflin v. Levitt,* 493 U.S. 455, 458, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990); *Bellsouth Telecomm., Inc. v. Greer,* 972 S.W.2d 663, 670 (Tenn.Ct.App.1997)).

> FN10. U.S. Const. art. VI, c.2 provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the land; and the Judges of every State shall be bound thereby, anything in the Constitution or laws of any state to the Contrary notwithstanding."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"The courts, however, are reluctant to presume that preemption of state law has occurred." *Id.* (citations omitted). Instead, "courts work from the assumption that the historic powers of the states with regard to matters traditionally subject to state regulation are not displaced by a federal statute unless that is the clear and manifest intent of Congress." *Id.* (citations omitted). A preemption inquiry begins by focusing upon the federal statutory language, with consideration given to the "entire federal statutory scheme." *Id.* at 127 (citations omitted). The inquiry must attempt "to reconcile the federal and state laws, ... rather than to seek out conflict where none clearly exists." *Id.* (citations omitted).

HIPAA contains an express preemption clause: "A standard, requirement, or implementation specification adopted under this subchapter that is *contrary* to a provision of State law preempts the provision of State law." **45 C.F.R. § 160.203** (emphasis added). "Contrary" means:

(1) A covered entity would find it impossible to comply with both the State and federal requirements; or

(2) The provision of State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives [of the Act.]

**45 C.F.R. § 160.202.** The preemption rule does not apply where "[t]he provision of State law relates to the privacy of individually identifiable health information and is *more stringent* than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter ." **45 C.F.R. § 160.203(b)** (emphasis added).

On appeal, Plaintiffs contend that the confidentiality requirements of section 29–26–121 are *less stringent* than HIPAA, and therefore, that section 29–26–121 is preempted. Specifically, Plaintiffs point out that HIPAA allows the disclosure of protected health information in response to a subpoena, discovery request, or other lawful process only if reasonable efforts were made to notify the individual who is the subject of the protected health information or if the party seeking the information made reasonable efforts to secure a qualified protective order either by the agreement of the parties or upon application to the court by the party seeking the protected health information. If a qualified protective order is sought, the order must limit the protected health information's use to the present litigation and it must require the return or destruction of such information upon the litigation's end. Without elaboration, Plaintiffs contend that section 29–26–121 contains "no such provisions" and that the Tennessee statute attempts to allow "[d]isclosure without a court order or the patient's consent[.]" [FN11] They suggest that, to avoid preemption, a state provision must be "more stringent" than the HIPAA regulations.

FN11. Tennessee Code Annotated section 29–26–121 was amended, effective July 1, 2013, to provide as follows regarding qualified protective orders:

(C)(i) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court and require the defendant or defendants who conducted the interview to return to the healthcare provider or destroy any protected health information obtained in the course of any such interview, including all copies, at the end of the litigation.

(ii) The qualified protective order shall expressly provide that participation in any such interview by a treating healthcare provider is voluntary.

**\*13** In response, Defendants argue that not only are "more stringent" state provisions not preempted by HIPAA, but state provisions which are "consistent" with HIPAA are also not preempted. Defendants contend that a health care liability

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

claimant can comply with both section 29–26–121 and HIPAA and they point out that section 29–26–121 specifically requires the mandatory pre-suit notice include "[a] HIPAA compliant medical authorization[.]" **Tenn.Code Ann. § 29–26–121(a)(2)(E).**

First, we must agree with Defendants' position regarding the preemption standard. Plaintiffs are correct that HIPAA expressly provides that "more stringent" state provisions are not subject to preemption. **45 C.F.R. § 160.203(b).** However, this does not necessarily indicate that a state provision *must* be "more stringent" in order to avoid preemption, as Plaintiffs suggest. HIPAA's preemption clause provides only for the preemption of "contrary" state provisions, which it defines as those provisions which make contemporaneous state and federal compliance impossible or which impede accomplishment and execution of federal objectives. A "non-contrary" state provision, which is *not* "less stringent" than the federal standard is not preempted simply because it is not *"more* stringent" than the federal HIPPA standard. *See Alsip v. Johnson City Med. Ctr.,* No. E2004–00831–COA–R9–CV, 2005 WL 1536192, at *9 (Tenn. Ct.App. June 30, 2005) *aff'd by Alsip v. Johnson City Med. Ctr.,* 197 S.W.3d 722 (Tenn.2006) ("Federal law clearly provides that the provisions of HIPAA and its related rules, where more stringent or, stated another way, more confidentiality-friendly, preempt the less stringent edicts of state law; while states can establish *greater* protections than those provided for under HIPAA, they cannot promulgate rules that provide for *less* stringent protections.") (citing 45 C.F.R. § 160.203 (2005)) (footnote omitted).

With this preemption standard in mind, we consider whether the requirements of section 29–26–121 are "contrary" to those set forth by HIPAA. Again, Plaintiffs assert that section 29–26–121 allows disclosure of protected health information without either a court order or the patient's consent in contravention of HIPAA.

In *Alsip v. Johnson City Medical Center,* 197 S.W.3d 722, 723–24 (Tenn.2006), our Supreme Court discussed the issue of plaintiff consent when it considered whether ex parte communications between a medical malpractice plaintiff's physicians and defense attorneys violated the implied covenant of confidentiality between physicians and patients. Ultimately, the Court determined that ex parte communications were unnecessary because formal discovery methods were sufficient to uncover the plaintiff's relevant medical information. *Id.* at 728. However, the Court noted that "public policy considerations reflected in the Tennessee Rules of Civil Procedure require that the covenant of physician-patient confidentiality be voided for the purpose of discovery[,]" *id.* at 726 (citing Tenn. R. Civ. P. 26; *Gall ex rel. Gall v. Jamison,* 44 P.3d 233, 239 (Colo.2002), and it stated that "by filing the lawsuit, the plaintiff impliedly consents to disclosure of his *relevant* medical information." *Id.* at 727 (citing Tenn. R. Civ. P. 26.02); *see also id.* at 728 ("[C]onsent here to disclose the decedent's confidential, relevant medical information was *implied at law* as a consequence of the plaintiffs' conduct (i.e., by the filing of the lawsuit)[.]").

**\*14** We simply cannot agree with Plaintiffs' position that section 29–26–121 allows for the release of protected health information without either a court order or the patient's consent, in violation of HIPAA. By pursuing a malpractice claim, the plaintiff consents to the disclosure of relevant medical information.[FN12] *See, e.g ., Holman v. Rasak,* 785 N.W.2d 98,106 (Mich.2010) ("The HIPAA regulations were 'not intended to disrupt the current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected health information.' ") (quoting 65 Fed.Reg. 82462–01, 82530 (December 28, 2000) discussing 45 C.F.R. § 164.512(e)) (footnote omitted). Moreover, HIPAA expressly provides that protected health information may be released, in the context of a judicial proceeding, in response to lawful process *where the*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

*subject of the protected information is notified of the information request.* **45 C.F.R. § 164.512(e)(1)(ii)(A)** (emphasis added). Certainly, the plaintiff, who, in the pursuit of his claim has authorized the release of his medical records, is aware of the information request. Notwithstanding this consent, however, HIPAA protection is not waived by the pursuit of a malpractice claim. As pointed out by Defendants, section 29–26–121specifically demands that the claimant's authorization to release medical records be "HIPAA complaint[,]" it limits the discoverable medical records to those held by providers sent notice by the claimant, and it requires the records be treated as confidential and be used only by the parties, their counsel, and their consultants. **Tenn.Code Ann. § 29–26–121(a)(2)(E), (d)(2).**

> FN12. In their appelate brief, Plaintiffs briefly argue that because section 29–26–121 requires the release of information *prior to suit commencement* that "there is no way that a potential plaintiff has waived anything." This argument, however, is without merit as public policy considerations related to the need to discovery are no less applicable sixty days prior to suit commencement.

In sum, we find that a "covered entity" can comply with the requirements of both section 29–26–121 and HIPAA, and that section 29–26–121 does not impede the accomplishment or execution of HIPAA's purposes. Accordingly, section 29–26–121 is not a "contrary" provision subject to preemption.

3. Whether section29–26–121 Violates Equal Protection and Due Process Provisions

Finally, we address Plaintiffs' arguments that section 29–26–121 violates the Equal Protection and Due Process provisions of both the Tennessee Constitution and the United States Constitution.

i. Standard of Review FN13

> FN13. In his brief, Dr. Roberson contends that Plaintiffs first argued in their Rule 59.04 Motion to Alter or Amend that section 29–26–121 should have been reviewed under strict scrutiny, and therefore, that the issue should be considered waived. Dr. Roberson also points out that interlocutory appeal was not specifically granted with regard to the strict scrutiny versus rational basis issue. However, we find a determination of the appropriate scrutiny standard is necessary to our consideration of the statute's constitutionality under due process and equal protection challenges; thus, we will consider which test applies.

At the outset, we must consider Plaintiffs' argument that the pre-suit notice requirements of section 29–26–121 restrict the fundamental right of court access, and therefore, that the constitutionality of the statute must be analyzed under strict scrutiny.

A legislative classification which disadvantages a "suspect class" or which interferes with the exercise of a "fundamental right" must be analyzed under strict scrutiny. *In re Estate of Combs,* No. M2011–01696–COA–R3–CV, 2012 WL 3711748, at *5 (Tenn. Ct .App. Aug. 28, 2012) *perm. app. denied* (Tenn. Jan. 14, 2013) (citing *State v. Tester,* 879 S.W.2d 823, 828 (Tenn.1994)); *see also In re Adoption ofJ.K. W.,* No. E2006–00906–COA–R3–PT, 2007 WL 161048, at *4 (Tenn.Ct.App. Jan. 23, 2007) *perm. app. denied* (Tenn. Apr. 30, 2007) ("Tennessee courts have used the strict scrutiny approach in regard to fundamental rights 'without exception.' ") (citation omitted). "In order to survive a strict scrutiny analysis, the statute must serve a compelling state interest and be narrowly tailored to serve that interest." *In re Adoption ofJ.K.W.,* 2007 WL 161048, at *4 (citation omitted). If, however, no fundamental interest or suspect class is involved, the legislation is subject only to a rational basis test. *Harrison v. Schrader,* 569 S.W.2d 822, 825 (Tenn.1978) (footnote omit-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

ted). "Under this standard, if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Id.* (citations omitted).

**\*15** Our Tennessee Supreme Court has held that "medical malpractice litigants are not members of a suspect class." *Newton v. Cox,* 878 S.W.2d 105, 109 (Tenn.1994) (citing *Sutphin v. Platt,* 720 S.W.2d 455 (Tenn.1986)). Thus, in their attempt to invoke strict scrutiny, Plaintiffs contend that Tennessee Code Annotated section 29–26–121 impinges on the fundamental right of access to the courts under Article I, Section 17 of the Tennessee Constitution, which provides in relevant part:

> That all courts shall be open; and every man, for injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

**Tenn. Const. art. I,** § 17 ("Open Courts Clause"). Specifically, Plaintiffs claim that section 29–26–121 "in its attempt to super[s]ede the procedures set forth in Tenn. R. Civ. P. 3 and in its arbitrary restriction which requires that the notice letter be served during the original statute of limitations (and which does not permit any extension-equivalent to alias process-in which to complete service of the notice letter)" runs afoul of the Open Courts Clause.

Our Supreme Court, however, has explained that the Open Courts Clause "has been interpreted ... as a mandate to the judiciary and not as a limitation upon the legislature." *Harrison,* 569 S.W.2d at 827 (citing *Scott v. Nashville Bridge Co.,* 143 Tenn. 86, 223 S.W. 844 (1920)). The right to court access is not absolute. Instead,

> [t]he constitutional guaranty providing for open courts and insuring a remedy for injuries does not guaranty a remedy for every species of injury, but applies only to such injuries as constitute violations of established law of which the courts can properly take cognizance.

> *Id.* (quoting *Barnes v. Kyle,* 202 Tenn. 529, 535–36, 306 S.W.2d 1, 4 (1957)).

> Thus, the courts are open only to those who suffer injuries as defined by the constitution, statute, or common law. Thus, if the legislature chooses to classify some damage outside the realm of "legal injury," it may do so, as long as no other constitutional provision is violated. That is what is meant by the statement that Article I, section 17 is a mandate to the judiciary and not the legislature. The legislature may limit access to the courts, but the judiciary may not.

*Stutts v. Ford Motor Co.,* 574 F.Supp. 100, 103 (M.D.Tenn.1983) (citing *Barnes,* 306 S.W.2d 1).

In *Harrison,* our Supreme Court upheld the constitutionality of the three-year medical malpractice statute of limitations—employing a rational basis test-specifically finding that it did not violate the Open Courts Clause. Quoting with approval *Barnes,* the Court noted that statutes of limitation are " 'exclusively the creatures of the legislative branch of government [,]' " *id.* (citing *Carney v. Smith,* 222 Tenn. 472, 477, 437 S.W.2d 246, 248 (1969)), that "[t]hey are justified on the basis of policy[,]" and that the legislature, "in enacting such legislation, may weigh the conflicting interests between one person's right to enforce an otherwise valid claim and another person's right to be confronted with any claim against him (within a suitable time)." *Id.*

**\*16** The *Harrison* Court likewise cited with approval *Dunn v. Felt,* 379 A.2d 1140 (Del.Super.1977), which addressed whether Delaware's three-year medical malpractice statute of limitations violated a provision of the Delaware Constitution similar to Tennessee's Open Courts Clause. The *Dunn* Court found that the plaintiffs had misconceived the nature of the statute of limitations:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

It does not eliminate a remedy for a civil wrong; it simply provides that after 3 years no cause of action can arise. The General Assembly has the power to create new rights and abolish old ones so long as they are not vested.

*Harrison,* 569 S.W.2d at 827 (quoting *Dunn,* 379 A.2d 1140).

In the instant case, Plaintiffs take issue with section 29–26–121's requirement that written pre-suit notice of the potential health care liability claim be given within the original statute of limitations, without provision for extension. As was explained in the cases cited above, however, the legislature has the inherent authority to set the parameters under which a cause of action accrues and is abolished; in enacting section 29–26–121, it crafted an affirmative defense for failure to comply with the pre-suit notice requirements. Because the Open Courts Clause "applies only to such injuries as constitute violations of established law of which the courts can properly take cognizance[,]" *Harrison,* 569 S.W.2d at 827, we find that Plaintiffs may not successfully invoke the clause to challenge section 29–26–121, nor to insist that section 29–26–121 be analyzed under strict scrutiny.

ii. Equal Protection

"The concept of equal protection espoused by the federal and of our state constitutions[FN14] guarantees that 'all persons similarly circumstanced shall be treated alike.' " *Newton v. Cox,* 878 S.W.2d 105, 109 (Tenn.1994) (quoting *Tenn. Small School Sys. v. McWherter,* 851 S.w.2d 139,153 (Tenn.1993)). Where, as here, the legislative classification does not interfere with the exercise of a fundamental right nor does it disadvantage a suspect class, the rational basis test provides the appropriate standard for determining whether the statute should be upheld on equal protection grounds. *See id.* at 109–10 (citations omitted). Under this standard, the classification must simply "rest upon a reasonable basis .... it is not unconstitutional merely because it results in some inequality." *Harrison,* 569 S.W.2d at 825. "[I]f any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld." *Id.* at 826 (citing *Swain v. State,* 527 S.W.2d 119 (Tenn.1975); *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1968); *Phillips v. State,* 202 Tenn. 402, 304 S.W.2d 614 (1957)); *see also Club Sys. of Tenn., Inc. v. YMCA of Middle Tenn.,* No. M2004–01966–COA–R3–CV, 2005 WL 3479628, at *10 (Tenn.Ct.W.S.App. Dec. 19, 2005) *perm. app. denied* (Tenn. June 26, 2006) ("Tennessee courts have consistently held not only that the rational basis standard is a very low level of scrutiny, but also that the party challenging the rational basis of a statute bears the burden of proving that the legislative classification in that statute is unreasonable and arbitrary.") (citing *Harrison,* 569 S.W.2d at 826). Specific evidence of the relationship between the classification and its purported purpose is unnecessary; "[t]he proper analysis is whether the legislature *could conceive* of a relationship between the statute and the purpose of the [legislation]." *Newton,* 878 S.W.2d at 110 (emphasis added).

> FN14. Although our Supreme Court has "recogniz[ed] ... [the] 'historic[ ] and linguistic[ ] distinct[ness],' " of the equal protection provisions of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution, it "has followed the framework developed by the United States Constitution for analyzing equal protection claims." *Newton v. Cox,* 878 S.W.2d 105 (Tenn.1994) (citing *Tenn. Small School Sys. v. McWherter,* 851 S.W.2d 139, 152–54 (Tenn.1993)).

**\*17** On appeal, Plaintiffs contend that there exists no rational basis for imposing pre-suit notice requirements upon a medical negligence claimant, while not imposing such requirements upon a *non*-medical negligence claimant. We disagree.

The courts of this state have rejected numerous equal protection challenges to specific provisions of the Tennessee Medical Malpractice Act. In *Harris-*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

on v. Schrader, 569 S.W.2d 822, 825 (Tenn.1978), the plaintiffs challenged the Act's three-year statute of repose arguing, like Plaintiffs in the instant case, that no rational basis existed for treating medical malpractice plaintiffs differently from non-medical malpractice plaintiffs. In upholding the constitutionality of the statute of repose, the Court noted that

> At the time the legislature passed the statute of limitations ..., this state and the nation were in the throes of what was popularly described as a "medical malpractice insurance crisis." Because of alleged increasing numbers of claims, insurance companies had grown reluctant to write medical malpractice policies. Where policies were available, premiums had risen astronomically.

*Id.* at 826 (footnote omitted). The Court reasoned that the legislature could have perceived a threat, not only to the medical profession, but also to the general public. Specifically, the Court stated that the legislature may have considered the increased cost of health care due to skyrocketing liability costs, the decreased number of physicians due to the cessation of practice and early retirement, and the decreased quality of health care due to the practice of "defensive medicine." *Id.* Additionally, the Court found that "it could be argued" that placing a three-year limitation on actions could lead to decreased malpractice insurance costs. *Id.* Importantly, the Court found the *validity* of these concerns irrelevant; what mattered was that the considerations "were accepted by the legislature and formed the predicate for its action." *Id.* Ultimately, the Court could not "say that there [was] no reasonable basis" for the legislative classification or that it bore "no reasonable relation to the legislative objective of reducing and stabilizing insurance and health costs and protecting the public as a whole." *Id.* Instead, when the legislation was enacted, " 'there was indubitably a valid reason for the distinction made' by the statute." *Id.* at 827.

Similarly, in *Newton v. Cox,* 878 S.W.2d 105 (Tenn.1994), our Supreme Court rejected an equal protection challenge to Tennessee Code Annotated section 29–26–120, which establishes a contingency fee cap for attorneys representing medical malpractice claimants. Employing the rational basis test, the Court found "it conceivable that the General Assembly concluded that the contingency cap ... would further the purposes of the Medical Malpractice Act by reducing malpractice insurance costs and, therefore reduce the cost of health care to the public." *Id.* at 110. Thus, it found the statute did not violate the equal protection provisions of the Tennessee or United States constitutions. *Id.*

**\*18** More recently, in *Jackson v. HCA Health Services of Tennessee, Inc.,* 383 S.W.3d 497 (Tenn.Ct.App.2012), the middle section of this Court rejected an equal protection challenge to Tennessee Code Annotated section 29–26–122, which requires that a medical malpractice complaint be accompanied by a certificate of good faith. Relying upon *Harrison,* and its language regarding the purposes behind the Medical Malpractice Act, the *Jackson* Court stated,

> we cannot say that the current medical malpractice act, specifically, Tennessee Code Annotated § 29–26–122(a), has no reasonable basis for the distinction in filing good faith certificates in medical malpractice actions and not in civil actions for personal injuries caused by other means, which are not under the purview of medical malpractice, or that it has no natural relation to the legislative objective.

> As was the environment at the time of *Harrison,* the legislature perceived a threat in 2009, not only to the medical profession and its insurers, but to the general welfare of the citizens of this state because, believing that as liability costs increase, so does the cost of health care and the practice of "defensive medicine," spawned by the fear of costly legal actions, may lead to a lower quality of health care in general. Whether these considerations are or are not valid is not for this court to determine. What is relevant and con-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

trolling is that they were accepted by the legislature and formed the predicate for its action.

Accordingly, we cannot say that there is no reasonable basis for the separate classification of health care providers or that this classification bears no reasonable relation to the legislative objective of reducing and stabilizing health costs and protecting the general public. Borrowing a phrase from *Harrison,* at the time Section 122(a) was enacted, "there was indubitably a valid reason for the distinction made" by the statute.

*Id.* at 505 (internal citations omitted).

Turning to the instant case, as stated above, the purpose of section 29–26–121 is " 'to give the defendant the opportunity to investigate and perhaps even settle the case before it is actually filed. At a minimum, it will give the defendant the opportunity to gather information before suit is filed and should eliminate the need for extensions of time to answer the complaint or slow-walk discovery.' " *DePue,* 2011 WL 538865, at *5 (quoting *Howell,* 2010 WL 2539651, at *14). The legislative purposes of section 29–26–121 have been further discussed as follows:

The State of Tennessee Senate Republican Caucus newsletter ... states that "[t]he legislation is designed to reduce the number of frivolous lawsuits filed in Tennessee each year ... by requiring early evaluation and streamlined disclosure of medical records.".... A news release from the Senate Republic Caucus ... contains the following relevant language:

The State Senate has approved and sent to the governor major tort reform legislation aimed at weeding out meritless medical malpractice lawsuits.

**\*19** ....

Key provisions in the bill include:

• Notice would be provided at least two months before a lawsuit is filed *to help resolve the case before it goes to court.*

It appears, therefore, that the Tennessee statute was intended ... to provide notice to potential parties and to facilitate early resolution of cases through settlement.

*Jenkins v. Marvel,* 683 F.Supp.2d 626, 639 (E.D.Tenn.2010) (footnotes and internal citations omitted).

Simply put, we find that the legislature could conceive of a relationship between section 29–26–121's pre-suit notice requirements and its legislative objectives of preventing protracted litigation through early investigation, and possibly, facilitating early resolution through settlement. *See DePue,* 2011 WL 538865, at *5 (citation omitted). These objectives are of particular importance in the context of medical malpractice claims where, as discussed above, increased malpractice insurance costs threaten both health care affordability and accessibility. In sum, because the classification rests upon a reasonable basis, we reject Plaintiffs' claim that section 29–26–121 violates the equal protection provisions of the Tennessee and United States constitutions.

### iii. Due Process

Article I, section 8 of the Tennessee Constitution provides

That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

**Tenn. Const. Art. I, sec. 8.** This "law of the land" provision is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution. *Newton,* 878 S.W.2d at 110 (citing *State ex rel. Anglin v. Mitchell,* 596 S.W.2d 779, 786 (Tenn.1980)). "Due process under the state and federal constitutions encom-

passes both procedural and substantive protections." *Lynch v. City of Jellico,* 205 S.W.3d 384, 391 (Tenn.2006).

Substantive due process "limits oppressive government action[,]" and may be categorized into two types of claims: "(1) deprivations of a particular constitutional guarantee and (2) actions by the government which are 'arbitrary, or conscience shocking in a constitutional sense.' " *Id.* at 391–92 (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1228 (6th Cir.1997)). "In short, substantive due process bars certain government action regardless of the fairness of the procedures used to implement them." *Id.* at 392 (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Where, as here, no fundamental right is involved, "the test for determining whether a statute comports with substantive due process is whether the legislation bears 'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.' " *Newton,* 878 S.W.2d at 110 (quoting *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934); *National Railroad Passenger Corp. v. Atchison, Topka & Santa Fe Ry. Co.,* 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985)). In applying this test, courts do not "inquire into the motives of a legislative body or [ ] scrutinize the wisdom of a challenged statute or ordinance." *Martin v. Beer Bd. for City of Dickson,* 908 S.W.2d 941, 955 (Tenn.Ct.App.1995) (citations omitted).

**\*20** Procedural due process, however, does not prevent deprivations of "life, liberty, or property" but instead it simply "requires state and local governments to employ fair procedures when they deprive persons of a constitutionally protected interest in 'life liberty, or property.' " *Cheatham County v. Cheatham County Bd. of Zoning Appeals,* No. M2012–00930–COA–R3–CV, 2012 WL 5993757, at \*3 (Tenn.Ct.App.Nov.30, 2012) (quoting *Parks Props. v. Maury County,* 70 S.W.3d 735, 743 (Tenn.Ct.App.2001)). Procedural due process requires "that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." *Lynch,* 205 S.W.3d at 391 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 429–30, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Manning v. City of Lebanon,* 124 S.W.3d 562, 566 (Tenn.Ct.App.2003)). It is clear, however, "that a state may erect reasonable procedural requirements for triggering the right to an adjudication, such as statutes of limitations, and a state may terminate a claim for failure to comply with a reasonable procedural rule without violating due process rights." *Burford v. State,* 845 S.W.2d 204, 208 (Tenn.1992) (citing *Logan,* 455 U.S. at 437). When a state terminates a claim for failure to comply with procedural requirements, the procedural due process "question, then, is 'whether the state's policy reflected in the statute affords a fair and reasonable opportunity for ... bringing ... suit.' " *Id.* (quoting *Pickett v. Brown,* 638 S.W.2d 369, 376 (Tenn.1982) *rev'd on other grounds* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983)).

In this interlocutory appeal, Plaintiffs assert that section 29–26–121 violates both the procedural and substantive due process provisions of the United States Constitution. Plaintiffs claim that the statute "is designed to take away the right of a plaintiff to bring suit, not based upon any consideration of the merits, and not based upon a reasonable statute of limitations, but by erecting artificial and punitive barriers to suit." They further contend that no rational basis exists for the statute because reduction of frivolous lawsuits can be accomplished by section 29–26–122's certificate of good faith requirement, and because after the allegedly HIPAA-violative provisions of section 29–26–121 are eliminated, section 29–26–121 will no longer work to facilitate early resolution of cases.

First, we reject Plaintiffs' contention that section 29–26–121 deprives them of their property without due process of law. As explained above, section 29–26–121 simply requires a medical mal-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1645713 (Tenn.Ct.App.))**

practice plaintiff, within the standard statute of limitations, to provide minimal, easily-accessible information to health care providers who will be named as defendants, and several clearly-explained delivery methods for this information are available. For example, the notice may be personally delivered to the health care provider or to the provider's receptionist, or it may be sent via certified mail to the health care provider-without regard to actual receipt-which, if undelivered, may be resent within five business days. **Tenn.Code Ann. § 29–26–121(a)(3)(B), (a)(4) .** Once this pre-suit notice is given, the statute affords the plaintiff an additional 120 days in which to file suit, and statutory non-compliance may be excused for "extraordinary cause shown." Section 29–26–121 simply does not deprive Plaintiffs of a meaningful opportunity to pursue their medical malpractice claim so as to violate procedural due process.

**\*21** Moreover, as we explained in our equal protection analysis, section 29–26–121's pre-suit notice requirements bear a reasonable relation to the proper legislative objectives of preventing protracted litigation through early investigation, and possibly, facilitating early resolution through settlement. *See DePue,* 2011 WL 538865, at \*5 (citation omitted). Despite Plaintiffs' argument that such objectives are applicable to *all* tort cases and therefore may not provide grounds for differential treatment within the medical malpractice context, we find that these objectives are of *particular* importance in the medical malpractice arena as, again, increased malpractice insurance costs threaten both health care affordability and accessibility. Moreover, based upon our above-finding that neither the statute-nor portions of it-are preempted by HIPAA, we reject Plaintiffs' argument that the statute is ineffective to facilitate early case resolution. Accordingly, we conclude that section 29–26–121 passes substantive due process muster as it is reasonably related to proper legislative purposes and it is neither arbitrary nor discriminatory. *See Newton,* 878 S.W.2d at 110 (citations omitted).

### V. CONCLUSION

For the aforementioned reasons, we conclude that Tennessee Code Annotated section 29–26–121 is not an unconstitutional infringement upon the courts' rule-making authority, that it is not preempted by HIPAA, and that it does not violate the equal protection and due process provisions of state and federal law. The case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellants, Charles Webb and Evangeline Webb, and their surety, for which execution may issue if necessary.

Tenn. Ct.App.,2013.
Webb v. Roberson
Slip Copy, 2013 WL 1645713 (Tenn.Ct.App.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.