Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1701843 (Tenn.Ct.App.))**

Only the Westlaw citation is currently available.

SEE COURT OF APPEALS RULES 11 AND 12

Court of Appeals of Tennessee.
James C. WILLIAMS, Individually and on behalf of the heirs at law of Gayle Ann Williams, Deceased, for the use and benefit of the heirs at law of Gayle Ann Williams, Deceased, and on behalf of Gayle Ann Williams, Deceased
v.
SMZ SPECIALISTS, P.C., Syed H. Shirazee, M.D., P.C., Syed H. Shirazee, M.D., Said Elias, M.D., P.C., Said Elias, M.D., Memphis Emergency Room Group, PLLC, Steven G. Bentley, M.D., P.C., Steven G. Bentley, M.D., Tenent Healthsystems Bartlett, Inc., St. Francis Hospital–Bartlett, and John and/or Jane Doe,
v.
State of Tennessee.

No. W2012–00740–COA–R9–CV.
Jan. 24, 2013 Session.
April 19, 2013.

Appeal from the Shelby County Circuit Court, No. CT–005482–10; Donna M. Fields, Judge.

Darrell E. Baker, Jr., Deborah Whitt, and M. Jason Martin, Memphis, Tennessee for Defendant/Appellant, Said Elias, M.D.

Michael L. Robb, Margaret F. Cooper, and Samantha E. Bennett, Memphis, Tennessee for Defendant/Appellant, Steven G. Bentley, M.D.

Robert E. Cooper, Jr., William E. Young, and Stephanie A. Bergmeyer, Nashville, Tennessee for Defendant/Intervenor/Appellant, the State of Tennessee.

Louis P. Chiozza Jr., Memphis Tennessee and Steven R. Walker, Oakland, Tennessee for Plaintiff/Appellee, James C. Williams, Individually and on behalf of the heirs at law of Gayle Ann Williams, Deceased.

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J. W.S., and J. STEVEN STAFFORD, J., joined.

**OPINION**
HOLLY M. KIRBY, J.

*1 This appeal involves a constitutional challenge to T.C.A. § 29–26–121, which requires notice to defendants prior to the commencement of a health care liability lawsuit. The plaintiff filed a lawsuit asserting health care liability against the defendant health care providers within the applicable statute of limitations, but without providing the defendants with prior notice as required under Section 29–26–121. In ruling on the defendants' motion for summary judgment, the trial court held that Section 29–26–121 conflicted with Rule 3 of the Tennessee Rules of Civil Procedure. On this basis, it held that the statute infringed upon the authority of the judicial branch to enact rules governing the procedures for commencing a lawsuit, and thus violated the separation of powers clause of the Tennessee Constitution. The defendant health care providers were granted permission for this interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. We reverse, holding that pre-lawsuit notice requirement in Section 29–26–121 does not contravene the separation of powers clause of the Tennessee Constitution.

**FACTS AND PROCEEDINGS BELOW**

The facts pertinent to this appeal are generally undisputed. On November 8, 2010, Plaintiff/Appellee James C. Williams filed a complaint in the Circuit Court for Shelby County, Tennessee against Defendant/Appellants Steven G. Bentley, M.D. ("Dr.Bentley") and Said Elias, M.D. ("Dr.Elias") (collectively "Defendants"). The lawsuit alleged that Drs. Bentley and Elias were negligent in the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

care and treatment of Mr. Williams's deceased wife Gayle Ann Williams while she was hospitalized at St. Francis Hospital–Bartlett from November 8 through November 18, 2009. The complaint was filed within the limitations period under the applicable statute of limitations. However, Mr. Williams did not give Drs. Bentley and Elias "written notice of the potential claim" at least sixty days before he filed the complaint, as set forth in Tennessee Code Annotated § 29–26–121(a) and (b).

After the lawsuit was served, Drs. Bentley and Elias filed motions for summary judgment. The motions asserted that the complaint should be dismissed because Mr. Williams did not comply with the mandatory notice provisions in Section 29–26–121.

Mr. Williams's initial response to the Defendants' motions for summary judgment challenged the constitutionality of Tennessee Code Annotated § 29–26–121, on the ground that it violated the constitutional right to equal protection. After the constitutionality of the statute was called into question, Defendant/Appellant the State of Tennessee ("State") filed a motion to intervene in the lawsuit as a matter of right to defend the constitutionality of the statute, and was later added as a party by consent order.

Mr. Williams later amended his response to add challenges to the constitutionality of the statute based on the right to procedural and substantive due process. Mr. Williams also asserted the doctrine of federal preemption, arguing that Section 29–26–121 conflicted with the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA") because Section 29–26–121 required a potential plaintiff to disclose protected health information, and thus, Section 29–26–121 was preempted by HIPAA.

**\*2** In November 2011, the trial court granted summary judgment in favor of the Defendants, based on Mr. Williams's failure to comply with the statutory pre-suit notice requirements set forth in Section 29–26–121. The trial court rejected the argument that Section 29–26–121 violated either the Equal Protection Clause or the Due Process Clause, and held that Section 29–26–121 was not preempted by HIPAA. The trial court also held that Mr. Williams had not shown "extraordinary cause" to excuse his failure to comply with Section 29–26–121.[FN1]

> FN1. Pursuant to subsection (b) of Section 29–26–121, "The court has discretion to excuse compliance with this section only for extraordinary cause shown." Tenn.Code Ann. § 29–26–121(b).

After receiving the trial court's order granting summary judgment, Mr. Williams filed a motion to alter or amend the order. The motion to alter or amend argued, among other things, that Section 29–26–121 placed an unconstitutional pre-condition on the commencement of a lawsuit, and encroached upon the inherent rule-making authority of the Tennessee Supreme Court in violation of the doctrine of separation of powers. The Defendants filed responses opposing the motion to alter or amend.

In January 2012, the trial court granted Mr. Williams's motion to alter or amend. It denied the Defendants' motions for summary judgment on the basis that the pre-suit notice requirements in subsections (a) and (b) are unconstitutional. The trial court held that "only the Tennessee Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this state" and "Rule 3 of the Tennessee Rules of Civil Procedure establishes how a law suit is to be commenced in this State." It characterized Section 29–26–121 as "procedural in nature" and held that "by enacting T.C.A. § 29–26–121, the Tennessee Legislature has added an additional, and preclusive, step to commencement of an action." The trial court found "no way to separate the notice requirement of [Section 29–26–121] from commencement of an action." It opined that "the Tennessee Legislature has attempted to control commencement of suit in medical malpractice actions, but the power to con-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1701843 (Tenn.Ct.App.))**

trol procedures in the courts cannot be constitutionally exercised by any branch of government other than the courts." The trial court held that the pre-lawsuit notice requirements set forth in Section 29–26–121(a) and (b) were an "unconstitutional infringement upon the rule-making authority of the courts," and particularly infringed upon Rule 3 of the Tennessee Rules of Civil Procedure "since commencement of suit is governed by Tenn. R. Civ. P. 3." The trial court held that subsections (a) and (b) of Section 29–26–121 were unconstitutional for violating the separation of powers clause of the Tennessee Constitution, and on this basis denied the Defendants' motions for summary judgment.

The Defendants filed a motion for permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court granted permission for the interlocutory appeal, and certified a number of questions for the appeal. It first certified the question of whether Section 29–26–121 "is an unconstitutional infringement upon the rule-making authority of the court and particularly upon Tenn. R. Civ. P. 3," because Section 29–26–121 added "an additional, and preclusive, step to commencement of an action" and the Section 29–26–121 notice requirement could not be separated from the commencement of an action. It also certified the questions of whether Section 29–26–121 is preempted by HIPAA, whether it violates the equal protection and due process clauses in the state and federal constitutions, and whether the trial court erred in denying the Defendants' motions for summary judgment.

**\*3** Having secured the permission of the trial court for a Rule 9 interlocutory appeal, the Defendants filed applications for permission from the appellate court as well. This Court granted permission for the appeal, but limited the question on appeal to "[w]hether the trial court erred in failing to grant the motions for summary judgment of [the Defendants] by determining that Tenn.Code Ann. § 29–26–121(a) and (b) are unconstitutional because these sections violate the separation of powers doctrine."

### ISSUE ON APPEAL AND STANDARD OF REVIEW

"Under Rule 9 of the Tennessee Rules of Appellate Procedure, the issues in a Rule 9 interlocutory appeal are limited to the questions that are certified by the trial court in its order granting permission for the appeal and also certified by the appellate court in its order granting permission for the appeal." *Shaffer v. Memphis Airport Auth.,* No. W2012–00237–COA–R9–CV, 2013 WL 209309, at \*3; 2013 Tenn.App. LEXIS 32 at \*9 (Tenn.Ct.App. Jan.18, 2013) (citing *In re Bridgestone/Firestone,* 286 S.W.3d 898, 902 (Tenn.Ct.App.2008)). Thus, the issue presented in this appeal is whether the trial court erred in denying the motions for summary judgment filed by Drs. Bentley and Elias on the basis that subsections (a) and (b) of Section 29–26–121 violate the separation of powers clause of our Constitution.

The issue presented on appeal is a question of law. Therefore, the standard of review is *de novo* without according any presumption of correctness to the trial court's holding. *Lynch v. City of Jellico,* 205 S.W.3d 384, 390 (Tenn.2006); *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn.2005).

### ANALYSIS

In 2008, Tennessee's Legislature amended the Medical Malpractice Act by enacting two new statutes,[FN2] one of which was Tennessee Code Annotated § 29–26–121. The statute established a new requirement that a plaintiff in a health care liability action must give the contemplated health care provider defendants a pre-lawsuit notice 60 days prior to the filing of the complaint.[FN3] *Rajvongs v. Wright,* No. M2011–01889–COA–R9–CV, 2012 WL 2308563, at \*4; 2012 Tenn.App. LEXIS 393, at \*11 (Tenn.Ct.App. June 18, 2012) (perm. app. granted Sept. 19, 2012). Subsections (a) and (b) of Section 29–26–121 provide:

> FN2. The Legislature also enacted Tennessee Code Annotated § 29–26–122,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

which requires that the plaintiff in a health care liability action file a certificate of good faith with his complaint. In *Jackson v. HCA Health Services of Tenn., Inc.,* this Court held that Section 29–26–122 does not conflict with Rule 3 of the Tennessee Rules of Civil Procedure and does not violate the separation of powers clause of the Tennessee Constitution. *Jackson v. HCA Health Services of Tenn., Inc.,* 383 S.W.3d 497, 506–07 (Tenn.Ct.App.2012) (perm. app. denied Aug. 16, 2012).

FN3. In 2009, the Legislature amended Section 29–26–121(c) to increase the extension of the statutory limitations and repose periods, from 90 days to 120 days. *Rajvongs,* 2012 WL 2308563, at *4 n. 6, 2012 Tenn.App. LEXIS 393, at *13 n. 6. In 2012, the Legislature substituted the term "health care liability" for "medical malpractice" in the statutes. *Vaughn v. Mountain States Health Alliance,* No. E2012–01042–COA–R3–CV, 2013 WL 817032, at *4 n. 7; 2013 Tenn.App. LEXIS 159, at *10 n. 7 (Tenn.Ct.App. March 5, 2013) (citing Acts 2012, ch. 798 § 59 (effective April 23, 2012)).

(a) (1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

***4** (D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:

(A) Personal delivery of the notice to the health care provider or an identified individual whose job function includes receptionist for deliveries to the provider or for arrival of the provider's patients at the provider's current practice location. Delivery must be established by an affidavit stating that the notice was personally delivered and the identity of the individual to whom the notice was delivered; or

(B) Mailing of the notice:

(i) To an individual health care provider at both the address listed for the provider on the Tennessee department of health web site and the provider's current business address, if different from the address maintained by the Tennessee department of health; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient; or

(ii) To a health care provider that is a corporation or other business entity at both the address

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1701843 (Tenn.Ct.App.))**

for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient.

(4) Compliance with shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

(b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

**\*5** Tenn.Code Ann. § 29–26–121(a) and (b) (2012).

On appeal, Mr. Williams argues vigorously that Section 29–26–121 conflicts with Rule 3 of the Tennessee Rules of Civil Procedure, which governs the commencement of civil actions. Rule 3 provides: "All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved...." Tenn. R. Civ. P. 3 (2012). Mr. Williams contends that Section 29–26–121 "supercedes Rule 3 by adding a step," that is, the statute requires the plaintiff in a health care liability action to give written notice of the potential claim to health care providers who will be named defendants at least 60 days before the complaint is filed. This additional step, Mr. Williams notes, is not included in Tenn. R. Civ. P. 3, and consequently, it changes the process that was intended by the courts for the commencement of a lawsuit, resulting in a conflict with the judiciary's authority to set court procedures. Section 29–26–121(a), Mr. Williams argues, "effectively kills the suit before it starts," in that it conflicts with the provision in Rule 3 that if process is not served within 90 days of issuance, the plaintiff can toll the running of the statute of limitations by obtaining issuance of new process within one year from issuance of the previous process.

In the alternative, even if Section 29–26–121 does not directly conflict with Tenn. R. Civ. P. 3, Mr. Williams characterizes Section 29–26–121 as purely procedural rather than substantive, and contends that it is contrary to the inherent power of the judicial branch for the legislative branch to promulgate the procedural rules that govern the courts. Mr. Williams describes the statute as an attempt by the Legislature to control the commencement of a health care liability action; as such, Mr. Williams contends, it encroaches on the inherent rule-making authority of the Tennessee Supreme Court. The Tennessee Legislature's attempt to control the judicial process, Mr. Williams insists, violates the separation of powers clause of our Constitution, and must not be permitted.

In contrast, the State and the Defendants maintain that Section 29–26–121 does not conflict with Rule 3. They argue that Section 29–26–121 only adds a "brief temporal restriction before the suit may be commenced." Thus, the statute comple-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1701843 (Tenn.Ct.App.))**

ments Rule 3 by adding a pre-suit notice requirement, and the two can be construed harmoniously. The Legislature's enactment of Section 29–26–121, they contend, was a legitimate exercise of the Legislature's police power and its authority to set policy for the State, and does not impact inherent judicial function. Therefore, they argue that the trial court erred in holding that Section 29–26–121 violates the separation of powers clause of the Tennessee Constitution.

**\*6** At the outset, we note the standard utilized in evaluating the constitutionality of Section 29–26–121 in this appeal.[FN4] "[I]t is well-established in Tennessee that when considering the constitutionality of a statute, we start with a strong presumption that acts passed by the legislature are constitutional." *Lynch,* 205 S.W.3d at 390 (citing *Osborn v. Marr,* 127 S.W.3d 737, 740–41 (Tenn.2004)). Our "charge is to uphold the constitutionality of a statute wherever possible." *Waters v. Farr,* 291 S.W.3d 873, 882 (Tenn.2009). Therefore, "we must indulge every presumption and resolve every doubt in favor of constitutionality." *Lynch,* 205 S.W.3d at 390 (quoting *Vogel v. Wells Fargo Guard Servs.,* 937 S.W.2d 856, 858 (Tenn.1996)). The presumption of constitutionality "applies with even greater force" where, as here, a party "brings a facial challenge to the validity of a statute." *Waters,* 291 S.W.3d at 882. When a facial challenge to the constitutionality of a statute is made, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *Id.* at 921.

> FN4. In this appeal, Mr. Williams urges this Court to apply the "strict scrutiny" test to evaluate the constitutionality of Section 29–26–121. However, the strict scrutiny test only applies when the legislative action at issue is said to impermissibly interfere with the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class. *See Harrison v. Schrader,* 569 S.W.2d 822, 825 (Tenn.1978). While the trial court below considered arguments based on equal protection and the Open Courts clause of the Tennessee Constitution, those issues are not within the parameters of the question certified for this Rule 9 appeal. Accordingly, we decline to apply the strict scrutiny standard to our analysis of whether Section 29–26–121 contravenes the separation of powers clause of the Constitution. We note as well that Mr. Williams's appellate brief includes arguments that Section 29–26–121 interferes with the exercise of a fundamental right of access to the courts, and that the complaint should have been dismissed without prejudice. We decline to consider those arguments for the same reason.

The question before us in this appeal is whether Section 29–26–121 violates the separation of powers clause of the Tennessee Constitution. Article II, Section 1 of our Constitution states: "The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Tenn. Const. art. II, § 1. This is followed by the separation of powers clause in Article II, Section 2: "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Tenn. Const. art. II, § 2.

The separation of powers clause "prohibits one branch from encroaching on the powers or functions of the other two branches." *Colonial Pipeline Co. v. Morgan,* 263 S.W.3d 827, 843 (Tenn.2008) (citing Tenn. Const. art. II, § 2; *State v. Brackett,* 869 S.W.2d 936, 939 (Tenn.Crim.App.1993)). "In general, the 'legislative power' is the authority to make, order, and repeal law; the 'executive power' is the authority to administer and enforce law; and the 'judicial power' is the authority to interpret and apply law ." *Colonial Pipeline Co.,* 263 S.W.3d at 843, n. 8. However, "[t]he branches of government

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1701843 (Tenn.Ct.App.))**

... are guided by the doctrine of checks and balances; the doctrine of separation of powers is not absolute." *Id.* "%[I]t is impossible to preserve perfectly the 'theoretical lines of demarcation between the executive, legislative and judicial branches of government" and "[i]ndeed there is, by necessity, a certain amount of overlap because the three branches of government are interdependent." *State v. Mallard,* 40 S.W.3d 473, 481 (Tenn.2001); *see also Newton v. Cox,* 878 S.W.2d 105, 111 (Tenn.1994) ("[A]reas exist in which both the legislative and judicial branch have interests, and that in such areas both branches may exercise appropriate authority.").

**\*7** "Only the Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this state." *Mallard,* 40 S.W.3d at 480–81; *see also Thomas v. Oldfield,* 279 S.W.3d 259, 261 (Tenn.2009). This power is vested with the Supreme Court "by virtue of the establishment of a Court and not by largess of the legislature." *Mallard,* 40 S.W.3d at 481 (quoting *Haynes v. McKenzie Mem'l Hosp.,* 667 S.W.2d 497, 498 (Tenn.Ct.App.1984)); Tenn.Code Ann. § 16–3–402 (2012). "Furthermore, because the power to control the practice and procedure of the courts is inherent in the judiciary and necessary to engage in the complete performance of the judicial function, this power cannot be constitutionally exercised by any other branch of government." *Corum v. Holston Health & Rehab. Ctr.,* 104 S.W.3d 451, 454 (Tenn.2003) (citing *Mallard,* 40 S.W.3d at 481; *Anderson County Quarterly Court v. Judges of the 28th Judicial Cir .,* 579 S.W.2d 875, 877 (Tenn.Ct.App.1978)); *see also* Tenn. Const. art. II, § 2. While the power of the legislature is broad, "[i]ts power ... is not unlimited," and any exercise of power "by the legislature must inevitably yield when it seeks to govern the practice and procedure of the courts." *Mallard,* 40 S.W.3d at 480.

In light of the Court's inherent power to promulgate the rules governing the practice and procedures of the courts, Tennessee Code Annotated § 16–3–406 was enacted to ensure that rules enacted pursuant to the prescribed procedure between the Supreme Court and the Legislature prevail over conflicting laws. *See* Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 1–2(b) ( 3d ed.2009). Therefore, once a rule governing the practice and procedure of the courts has become effective, "all laws in conflict therewith shall be of no further force or effect." *Corum,* 104 S.W.3d at 454–55; Tenn.Code Ann. § 16–3–406. However, even with regard to procedural and evidentiary rules, the Tennessee Supreme Court has held:

> [T]he courts of this state have, from time to time, consented to the application of procedural or evidentiary rules promulgated by the legislature. Indeed, such occasional acquiescence can be expected in the natural course of events, as this practice is sometimes necessary to foster a workable model of government. When legislative enactments (1) are reasonable and workable within the framework already adopted by the judiciary, and (2) work to supplement the rules already promulgated by the Supreme Court, then considerations of comity amongst the coequal branches of government counsel that the courts not turn a blind eye. This Court has long held the view that comity and cooperation among the branches of government are beneficial to all, and consistent with constitutional principles, such practices are desired and ought to be nurtured and maintained. While it is sometimes difficult to practically ascertain where Article II, section 2 draws the line, the distinction may be simply stated as that between cooperation and coercion.

**\*8** *Mallard,* 40 S.W.3d at 481–82 (citations omitted).

"The essence of Tennessee Code Annotated section 29–26–121 is that a defendant be given notice of a medical malpractice claim before suit is filed." *Myers v. Amisub (SFH) Inc.,* 382 S.W.3d 300, 309 (Tenn.2012). The pre-lawsuit notice requirements in Section 29–26–121 do not conflict with the Court's procedural rules, including Tenn.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1701843 (Tenn.Ct.App.))**

R. Civ. P. 3., because Section 29–26–121 requires notice of a potential claim "before the filing of the complaint." Tenn.Code Ann. § 29–26–121(a)(1). The pre-suit notice requirements are satisfied before the lawsuit is "commenced" pursuant to Rule 3. Once the suit is "commenced" under Rule 3, it then falls to the courts to hear the facts and decide the issues, including the issue of whether the action should be dismissed for failure to comply with the pre-lawsuit requirements. *See Underwood v. State,* 529 S.W.2d 45, 47 (Tenn.1975). ("A legislative enactment which does not frustrate or interfere with the adjudicative function of the courts does not constitute an impermissible encroachment upon the judicial branch of government."). Indeed, this Court recently held that Section 29–26–121 does not "redefine the commencement of an action as occurring at any time other than when the complaint is filed." *Rajvongs,* 2012 WL 2308563, at *5, 2012 Tenn.App. LEXIS 393, at *15. Therefore, Section 29–26–121 and Rule 3 can be construed harmoniously.

In addition, the important policy reasons behind the Legislature's enactment of Section 29–26–121 belie Mr. Williams's contention that the statute is purely procedural. The Tennessee Supreme Court in *Myers* explained the policy reasons for the statute:

> By passing this statute, the legislature intended to give prospective defendants notice of a forthcoming lawsuit. In Senate committee discussion of the bill that introduced Tennessee Code Annotated sections 29–26–121 and 122, the bill's co-sponsor, Senator Mark Norris, stated that the new law was "designed to give people notice that there's about to be a claim and to put everyone who might be involved on notice that a suit will shortly be filed."

*Myers,* 382 S.W.3d at 309–310 (footnote omitted). One court identified the problem the legislation was intended to address:

> The State of Tennessee Senate Republican Caucus newsletter for the week of April 2, 2007 states that "[t]he legislation is designed to reduce the number of frivolous lawsuits filed in Tennessee each year ... by requiring early evaluation and streamlined disclosure of medical records." TN Senate Republican Caucus Weekly Wrap, April 6, 2007 (*available at* http://www.tnsenate.com/weekly2007/04–06–07.htm). A news release from the Senate Republican Caucus on April 24, 2008 contains the following relevant language:

> > The State Senate has approved and sent to the governor major tort reform legislation aimed at weeding out meritless medical malpractice lawsuits.

> > **\*9** Key provisions in the bill include:

> > Notice would be provided at least two months before a lawsuit is filed to help resolve the case before it goes to court.

> *Jenkins v. Marvel,* 683 F.Supp.2d 626, 639 (E.D.Tenn.2010) (quoting TN News Rel., S. Rep. 4/24/2008) (footnote and emphasis omitted).

Thus, while Section 29–26–121 sets forth procedural steps to be taken by a plaintiff in a health care liability action, the procedural steps in the statute serve the legislative purpose of giving the potential health care provider defendants "the opportunity to investigate and perhaps even settle the case before it is actually filed." *Hinkle v. Kindred Hosp.,* No. M2010–02499–COA–R3–CV, 2012 WL 3799215, at *6; 2012 Tenn.App. LEXIS 611, at *15–16 (Tenn.Ct.App. Aug.31, 2012) (citing *Howell v. Claiborne and Hughes Health Center,* M2009–01683–COA–R3–CV, 2010 WL 2539651 at *14, 2010 Tenn.App. LEXIS 400, at *40–41 (Tenn.Ct.App. May 27, 2010) (perm. app. granted Dec. 7, 2010, app. dismissed Jan. 19, 2011)); *see also Rajvongs,* 2012 WL 2308563, at *8, 2012 Tenn.App. LEXIS 393, at *15; *DePue v. Schroeder,* No. E2010–00504–COA–R9–CV, 2011 WL 538865, at *6; 2011 Tenn.App. LEXIS 62, at *15–20 (Tenn.Ct.App. Feb.15, 2011) (perm. app.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)
**(Cite as: 2013 WL 1701843 (Tenn.Ct.App.))**

denied Aug. 31, 2011) (quoting *Jenkins,* 683 F.Supp.2d at 638–39). The pre-lawsuit notice requirements potentially promote an early resolution and "reduce the number of frivolous lawsuits filed in Tennessee each year ... by requiring early evaluation and streamlined disclosure of medical records." *DePue,* 2011 WL 538865, at *6, 2011 Tenn.App. LEXIS 62, at *16 (relying on *Jenkins,* 683 F.Supp.2d at 638). To help balance the burden of the pre-suit notice requirement of subsections (a) and (b) of Section 29–26–121, the Legislature extended the statute of limitations in subsection (c) and created an "extraordinary cause" exception to the notice requirement "so that it would not be an absolute bar to all claims whatsoever for failure to comply with the notice requirements." Tenn.Code Ann. § 29–26–121(b); *DePue,* 2011 WL 538865, at *7, 2011 Tenn.App. LEXIS 62, at *18. The overall statutory scheme, including the pre-lawsuit notice requirement in Section 29–26–121, is driven by the Legislature's substantive public policy concerns, and therefore cannot be described as purely procedural. *See Biscan v. Brown,* 160 S.W.3d 462, 474 (Tenn.2005) ("Although it is the province of this Court to prescribe rules for practice and procedure in the state's courts, where a decision of the legislature chiefly driven by public policy concerns infringes on that power we will generally defer to the judgment of the legislature.").

Whether the statute is wise or actually accomplishes the Legislature's stated purpose is not for us to say. "[I]t is not the role of this Court to pass upon the wisdom or lack thereof of the legislation under review. In the absence of constitutional infirmity such matters are ones of policy solely for the legislature ." *Harrison v. Schrader,* 569 S.W.2d 822, 827 (Tenn.1978).

**\*10** For all of these reasons, we must conclude that Mr. Williams has not overcome the strong presumption that Section 29–26–121 is constitutional. Accordingly, we must reverse the decision of the trial court insofar as it denied the Defendants' motions for summary judgment on the basis that Section 29–26–121 is unconstitutional as violative of the separation of powers clause of the Tennessee Constitution.

## CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed to Plaintiff/Appellee James C. Williams, individually and on behalf of the heirs at law of Gayle Ann Williams, for which execution may issue if necessary.

Tenn.Ct.App.,2013.
Williams v. SMZ Specialists, P.C.
Slip Copy, 2013 WL 1701843 (Tenn.Ct.App.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.