IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

VS.                                                                NO.:   2:13-cv-02289 JPM-dkv

JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and,
MARK P. CLEMONS,

      Defendants.

---

**RESPONSE OF DEFENDANTS, PEDIATRIC ANESTHESIOLOGISTS, P.A.,
AND BABU RAO PAIDIPALLI, M.D., TO METHODIST HEALTHCARE – MEMPHIS
HOSPITALS' OBJECTIONS TO MAGISTRATE'S ORDER REGARDING MOTION TO
QUASH DEFEDNATS' SUBPOENA AND MOTION FOR PROTECTIVE ORDER**

---

COME NOW defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli,

M.D., by and through their counsel of record and submit the following Response to Methodist

Healthcare – Memphis Hospitals' Objections To Magistrate's Order Regarding Motion To

Quash Defendants' Subpoena And Motion For Protective Order, and state as follows:

<u>FACTS AND PROCEDURAL HISTORY</u>

Plaintiffs, Daniel and Helen Lovelace, assert a claim against Pediatric Anesthesiologists,

P.A., Babu Rao Paidipalli, M.D., and Mark D. Clemons, M.D., for alleged medical malpractice,

allegedly resulting in the death of plaintiffs' son, Brett Lovelace, and plaintiffs also assert a

claim against the defendants for negligent infliction of emotional distress based upon the alleged

medical malpractice claim.  The claim is based on care provided by defendants at Methodist Le Bonheur Children's Medical Center, 50 N. Dunlap, Memphis, Tennessee, on March 12, 2012, allegedly resulting in Brett Lovelace's death on March 14, 2012.  In defendants' Answer (ECF 13, paragraph 3), defendants deny any medical negligence on their part and deny that they caused injury to, and the subsequent death of the patient, Brett Lovelace.  In their Answer (ECF 13, paragraph 21), defendants assert fault against non-parties, Kelly Kish, a nurse employed with Methodist Healthcare – Memphis Hospitals (hereinafter "Methodist"), and Methodist, based on Kelly Kish's nursing negligence in her care provided to the patient, Brett Lovelace, and negligence by other personnel of Methodist responsible for the care provided to the patient. Kelly Kish has admitted she was negligent in an "Agreed Order", entered with the Tennessee Board of Nursing on February 20, 2013, which is a public record filed with the Tennessee Secretary of State, which resulted in Kelly Kish's nursing license being revoked.  A copy of this "Agreed Order" is attached as Exhibit A.  In their Answer , Defendants allege that the negligent acts and omissions of Kelly Kish and Methodist Healthcare – Memphis Hospitals caused the injury to, and death of Brett Lovelace.  (ECF 13, par. 21, pp. 6 – 9.)

Prior to filing this lawsuit, the plaintiffs engaged in mediation with Methodist in December, 2012.  Methodist has admitted in its Memorandum of Law that Methodist settled plaintiffs' claim against it and that "Methodist and Plaintiffs entered into a Confidential Settlement Agreement and Release on or about December 19, 2012."  (ECF 33-1, page 2.)  The amount of the settlement and the other terms of the settlement entered into between plaintiffs' and Methodist, such as the scope of the release by plaintiffs, are unknown to defendants.

Defendants alleged in their Answer that the settlement amount plaintiffs received from Methodist healthcare – Memphis Hospitals constitutes a reduction in or set-off against whatever

damages plaintiff might otherwise have in this cause pursuant to T.C.A. 29-26-119 and have

further alleged that if any medical bills were "written off" or extinguished pursuant to a

settlement agreement or otherwise, then such bills are not recoverable as damages. (ECF 13, par.

33, pp. 12 – 13.)

Defendants further alleged in their Answer that if the proof shows that plaintiff's release

includes Methodist's agents, actual or apparent, that such release constitutes a release as to any

and all claims against these defendants. (ECF 13, par. 32, p. 12.)

On August 15, 2013, Defendants filed and served a subpoena *duces tecum* on Methodist

Healthcare – Memphis Hospitals (hereinafter "Methodist"), a copy of which is attached hereto as

Exhibit B, seeking to obtain documents described therein, listed as item numbers 1 – 5 in the

attachment to the subpoena.  Methodist filed a motion and supporting memorandum of law,

seeking to quash Defendants' subpoena or for a protective order, as to item numbers 1, 3, 4 and 5

in the subpoena. (ECF 33, ECF 33-1.)  Plaintiffs "joined in" Methodist's motion.  The motion

was referred to the Magistrate for determination. (ECF 35.)  Defendants filed a Response and a

supporting Memorandum of Law in opposition to Methodist's motion. (ECF 38, ECF 39.)  On

October 21, 2013, the Magistrate entered an order denying in part, and granting in part,

Methodist's motion.  The order denied Methodist's motion as to item number 1 (printouts of

monitoring equipment information pertaining to the patient whose care is at issue); item number

2 (medical records of the patient); item number 3 (Methodist's logs which indicate the persons

who were present in the PACU during the time the patient was treated there); and item number 5

(settlement and release agreement entered into by the plaintiffs and Methodist).  The order

granted in part and denied in part, Methodist's motion as to item number 4 (the personnel file of

Kelly Kish).

The only part of the Magistrate's order to which Methodist has objected is the Magistrate's denial of Methodist's motion to quash item number 5 in the subpoena - the settlement and release documents entered into by the plaintiffs and Methodist.  The only grounds asserted by Methodist in its motion to quash before the Magistrate, as it pertains to the settlement agreement and release documents, was that the subpoena "seeks confidential information from a non-party." (ECF 33-1, p. 3.)  Methodist also asserted generally with regard to all items described in the subpoena as follows: "In further response to these requests, Methodist also states that it does not waive the attorney-client privilege, attorney work product doctrine, protection under the Tennessee Patient Safety and Quality Control Act or any other relevant statutes of the State of Tennessee or under the United States Code regarding confidentiality."   (ECF 33-1, p. 3.) However, Methodist's sole argument and ground for its objection to the Magistrate's order is that the confidential settlement agreement is allegedly not relevant under a "heightened relevancy standard for discovery of confidential settlement agreements" (ECF 46, pp. 2 – 4), which is an argument Methodist did not make to the Magistrate.

<u>LAW AND ARGUMENT</u>

I.

STANDARD OF REVIEW

Pursuant to Rule 72(a), Federal Rules of Civil Procedure, and applicable case law, an order of a Magistrate judge on a non-dispositive matter which has been referred to the Magistrate for determination, is binding except to the extent that objections to it are timely filed and the district court modifies or sets aside any part of the order "that is clearly erroneous or contrary to law". *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603 (W.D. Tenn. 2009);

*Bell v. Ameritech Sickness & Accident Disability Benefit Plan*, 399 F. App'x 991 (6th Cir. 2010). A district court normally applies a "clearly erroneous or contrary to law" standard of review for non-dispositive preliminary measures of section 636(b)(1)(A).   *United States v. Curtis*, 237 F. 3d 598, 603 (6th Cir. 2001).  Defendants submit that the Magistrate judge's order is not "clearly erroneous or contrary to law" and therefore should be affirmed.

II.

METHODIST HAS WAIVED ITS GROUNDS FOR OBJECTION TO THE MAGISTRATE'S ORDER BASED ON ALLEGED LACK OF RELEVANCY BY NOT ARGUING SUCH GROUNDS TO THE MAGISTRATE

Methodist has filed an objection to the Magistrate's order denying Methodist's motion to quash Defendants' subpoena for the settlement and release documents entered into by the plaintiffs and Methodist, based solely on the grounds of alleged lack of relevancy, and in particular, the grounds of "a heightened relevancy standard for discovery of confidential settlement agreements", which is a ground Methodist did not assert before the Magistrate. Accordingly, the Magistrate did not address Methodist's particular argument in her order. Defendants respectfully submit that Methodist has therefore waived such objection.  It is a well recognized principle in federal jurisprudence that a district court will not consider an argument made with regard to an objection to a Magistrate judge's non-dispositive pretrial order unless the Magistrate judge had the opportunity to address the particular objection, and therefore such an objection is waived by the objecting party.  See *Evans v. Walgreen Company*, 2011 U.S. Dist. LEXIS 72192 (W. D. Tenn. July 5, 2011); and *Hann v. Michigan*, 2007 U.S. Dist. LEXIS 87604 (E. D. Mich. Nov. 29, 2007).  See also *United States v. Ault*, 2011 U.S. Dist. LEXIS 11717 (E. D. Tenn. Feb. 4, 2011); *The Glidden Co. v. Kinsella*, 386 F. App'x 535 (6th Cir. 2010); *Murr v.*

5

*United States*, 200 F. 3d 895 (6th Cir. 2000); *Heston v. Comm'r of Soc. Sec.*, 245 F. 3d 528, 535 (6th Cir. 2001); and *United States v. Waters*, 158 F. 3d 933 (6th Cir. 1998).

III.

## METHODIST'S ALLEGED GROUNDS OF LACK OF RELEVANCY AS TO THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN METHODIST AND PLAINTIFFS IS WITHOUT MERIT

Without waiving Defendants' argument stated in Section II above, Defendants respectfully submit that Methodist's alleged grounds of lack of relevancy as to the settlement agreement and release between Methodist and plaintiffs is without merit. The settlement and release documents entered into between plaintiffs and Methodist are relevant to the defenses asserted by defendants in their Answer (ECF 13) filed in this cause and furthermore are reasonably calculated to lead to the discovery of admissible evidence in this cause, in accordance with *Fed. R. Civ. P.* 26(b)(1).

First, the settlement agreement and release signed by plaintiffs and Methodist is reasonably calculated to lead to the discovery of admissible evidence regarding the issue of damages. T.C.A. 29-26-119 limits a plaintiff's recoverable economic damages to "actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to, costs of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer, either governmental or private, by Social Security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually." T.C.A. 29-26-119.

Plaintiffs' Complaint alleges that plaintiffs are entitled to recover damages for "decedent's pecuniary losses due to his untimely death, which exceed, based upon a projection of pecuniary losses of and for Brett Lovelace, the sum of $2,000,000.00 over a normal work life to age 65…"  (ECF 1, p. 7.)  Defendants submit that whatever settlement amount was paid by Methodist to plaintiffs should be considered by the triers of fact as payment, in full or in part, of the decedent's loss of earnings and/or loss of earning capacity, regardless of whether or not the settlement agreement breaks down the settlement amount into economic losses versus non-economic losses, absent an express statement in the settlement agreement that states that the settlement amount does not constitute payment for the deceased's loss of earning capacity or loss of earnings.

Furthermore, plaintiffs are claiming as part of their damages, medical bills incurred at Methodist.  If Methodist agreed to "write off" or otherwise extinguish any medical bills incurred by plaintiffs for the medical care provided during the admission in question, whether as part of the written settlement agreement, or as part of a verbal agreement between plaintiffs and Methodist, then defendants are entitled to discover such agreement, to prove that such medical expenses have been "written off" or otherwise extinguished and therefore are not recoverable as damages pursuant to T.C.A. 29-26-119.

Secondly, the settlement agreement and release is reasonably calculated to lead to the discovery of admissible evidence regarding plaintiffs' release of claims.  Methodist has stated in its Memorandum of Law filed in support of its Motion To Quash, that  on December 19, 2012, that Methodist entered into a "Confidential Settlement Agreement and Release" with the plaintiffs.  (ECF 33-1, p. 2.)  Such document would reasonably be expected to contain language releasing Methodist Healthcare – Memphis Hospitals and Methodist's "agents" and/or "apparent

agents," and if that is the case, such release would arguably include these Defendants since they would be considered "apparent agents" of Methodist, based on Tennessee law, as Defendants were selected by Methodist to provide services to the patient and had no relationship with the patient prior to the patient's admission to the hospital. *White v. Methodist Hospital South*, 844 S.W.2d 642 (Tenn. App. 1992.)

In *Scheurer Hospital v. Lancaster Pollard & Company, et al.*, 2012 U.S. Dist. LEXIS 160842 (E.D. Mich. November 9, 2012), which the Magistrate judge cites in her order, the Court granted the defendants' motion to compel requiring the plaintiff in that case to produce the confidential settlement agreement entered into between the plaintiff and a third party, as well as any statements or communications that would explain what claims are actually settled and for what amounts. *Ibid.*, p. 4. In S*cheurer*, there was no dispute as to relevancy, only the issue of the confidentiality of the settlement agreement, as is the case with regard to Methodist's motion to quash presented to the Magistrate. The *Scheurer* Court noted that the documents sought were not rendered non-discoverable by the fact that the settlement agreement between the plaintiff and the third party contained a confidentiality provision. The Court stated in this regard as follows:

> Agreements are not protected from discovery simply because they have been denominated "confidential" by the parties. A general concern for protecting confidential information does not equate to privilege… In the context of settlement agreements, the mere fact that settling parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality.

*Ibid.* at p. 4, (citing numerous cases).

In *Scheurer*, *supra*, it was further noted that neither Rule 408 of the Federal Rules of Evidence, nor *Goodyear Tire & Rubber Company v. Childs*, 332 F. 3d 976 (6th Cir. 2003), preclude discovery or admissibility of a settlement agreement itself or the basic components of

the agreement, such as statements explaining what claims were settled and for what amount. *Ibid.* at p. 3.

Other cases allowing discovery of "confidential settlement agreements" include *National Union Fire Insurance Company v. Porter Hayden Company*, 2012 U.S. Dist. LEXIS 23716 (D. Md. February 24, 2012); and *Channelmark Corporation v. Destination Products International, Inc.*, 2000 U.S. Dist. LEXIS 9854 (N.D. Ill. July 12, 2000). In both of these cases, the issue of relevancy was expressly raised and the court held that the settlement agreements were relevant or reasonably calculated to lead to the discovery of admissible evidence. It should also be noted that although Methodist did not raise the issue of relevancy, or "a heightened relevancy standard for discovery of confidential settlement agreements", before the Magistrate judge, the Magistrate judge did specifically find that the settlement between plaintiffs and Methodist is relevant to the issue of damages, and cited in support of such finding, *Oberthaler v. Ameristep Corp.*, 2010 WL 1506908 (N.D. Ohio April 13, 2010).

In *McDaniel v. General Care Corporation*, 627 S.W.2d 129 (Tenn. App. 1981), perm. app. denied, September 28, 1981, plaintiff was allowed by the Trial Court to testify that she had lost wages and medical expenses of certain amounts but the defendants were not permitted to establish before the jury what amount of these expenses were either reimbursed or paid by sources other than plaintiff's own assets, despite the fact that the parties had stipulated that none of the wages were in fact lost and that the plaintiffs had been reimbursed for all of the medical expenses. The Tennessee Court of Appeals reversed the Trial Court and held that it was error on the part of the trial court to permit the plaintiffs to prove medical expenses and loss of wages which were either reimbursed to them or paid by sources other than plaintiff's own assets. *Ibid.* 132 – 133. Therefore, based on *McDaniel*, if any of the medical expenses which plaintiff seeks

to recover in this cause were "written off" or extinguished by Methodist, whether pursuant to the written settlement agreement or pursuant to other communications between Methodist and plaintiffs, or if the settlement amount paid by Methodist represented a payment of all claims asserted by the plaintiffs against Methodist, and it could reasonably be inferred by the triers of fact that the settlement amount was payment, in full or in part, of Brett Lovelace's loss of earning capacity for his projected work-life (which plaintiffs have alleged to be $2,000,000.00 in their Complaint), then such documents and information is relevant and discovery of such documents and information is reasonably calculated to lead to the discovery of admissible evidence. Or, alternatively, the Court could find that the settlement amount paid by Methodist will be considered a credit against whatever judgment, if any, plaintiffs might obtain in this matter. At a minimum, the settlement agreement and terms thereof are reasonably calculated to lead to the discovery of admissible evidence with regard to the issue of damages and with regard to the issue of plaintiffs' release of the claims against Defendants.

## CONCLUSION

Based on the foregoing points and authorities, defendants respectfully submit that the Magistrate's order is not clearly erroneous or contrary to law, and that Methodist's objections to the Magistrate's order should be denied and the Magistrate's order affirmed.

Respectfully submitted,

THE HARDISON LAW FIRM, P.C.

By:      <u>s/David M. Cook</u>
             DAVID M. COOK (5362)
             ALBERT G. MCLEAN (5150)
             Attorney for Defendants,
             Pediatric Anesthesiologists, P.A. and
             Babu Rao Paidipalli, M.D.
             119 S. Main Street, Suite 800
             Memphis, Tennessee 38103
             (901) 525-8776
             <u>dcook@hard-law.com</u>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the Court's electronic filing system upon:

Mark Ledbetter, Esq.
Halliburton & Ledbetter
Attorney for Plaintiffs
254 Court Avenue
Suite 305
Memphis, TN 38103

J. Kimbrough Johnson, Esq.
Marcy Dodds Magee, Esq.
Attorneys for Defendant, Mark P.
Clemons, M.D.
Thomason, Hendrix, Harvey, Johnson &
Mitchell, PLLC
2900 One Commerce Street
Memphis, TN 38103

Craig C. Conley, Esq.
Ormonde B. DeAllaume, Esq.
Baker, Donelson, Bearman, Caldwell
& Berkowitz, P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Mary M. Bers, Esq.
Stephanie A. Bergmeyer, Esq
Office of the Attorney General and Reporter
For the State of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207

this 14th day of November, 2013.

             <u>s/David M. Cook</u>
             DAVID M. COOK

RECEIVED

2013 FEB 22 PM 3: 21

SECRETARY OF STATE

## BEFORE THE TENNESSEE BOARD OF NURSING

In The Matter of:  )
)
**KELLY KISH**  )
R.N. License Number 99584  )   Docket Number 17.19-118516A
)
**Respondent**  )
)

### AGREED ORDER

The State of Tennessee, by and through the Office of General Counsel and the Respondent, Kelly Kish, R.N., (Respondent), by and through her attorney, hereby stipulate and agree, subject to approval by the Tennessee Board of Nursing (Board), to the following:

### I.   Authority and Jurisdiction

The Board regulates and supervises nurses licensed to practice pursuant to Tennessee Code Annotated Section (TENN. CODE ANN. §) 63-7-101, *et seq.* (Code), including the discipline of licensees, as well as those who are required to be licensed, who violate the Code and the Rules promulgated by the Board, Official Compilation of Rules and Regulations of the State of Tennessee (TENN. COMP. R. & REGS.), 1000-01-.01, *et seq.* (Rules). The Board enforces the Code and Rules to promote and protect the health, safety and welfare of the public; accordingly, it is the policy of the Board to require strict compliance with the law and to apply the law to preserve the quality of nursing care provided in Tennessee.

### II.   Stipulations of Fact

1. Respondent has been at all times pertinent hereto licensed by the Board as a registered nurse in the State of Tennessee, having been granted license number 99584 on June 14, 1994, which currently has an expiration date of April 30, 2014. Respondent's registered nurse license bears a multistate privilege to practice nursing in states which have entered into the Interstate Nurse Licensure Compact.



2. Respondent was employed as a registered nurse by LeBonheur Children's Hospital in Memphis, Tennessee from about February 11, 2008 through about March 23, 2012.

3. On or about March 12, 2012, Respondent was assigned to care for a 12-year-old male patient ("the patient") who was in the post anesthesia care unit (PACU) following a tonsillectomy/adenoidectomy. The patient was the only patient assigned to Respondent during the approximately 90 minutes the patient was in the PACU.

4. The patient was stable upon transfer from the operating room to the PACU.

5. The patient's mother and father were present in the PACU with the patient.

6. Upon arrival to the PACU, the patient positioned himself prone, with his legs drawn up under him, buttocks in the air, arms crossed over his head, and his face down on the mattress. At no time did Respondent attempt to change the patient's position.

7. Upon the patient's arrival into the PACU, Respondent made an initial assessment but chose not to place the patient on a cardiac monitor, as permitted by hospital policy.

8. Respondent placed a pulse oximeter on the patient, but the oximeter worked only intermittently, and Respondent did not notify anyone of the problem and did not replace the device.

9. At no time did Respondent attempt to speak with or rouse the patient, despite charting a rating of 9 out of 10 on the Aldrete scale. Such a score would indicate, among other things, full breathing, high oxygen saturation, full consciousness, good circulation, and lively activity and motor control. Respondent admitted that she never roused or checked on the patient to make these ratings, but instead charted based on her observation of the patient's status when he initially entered the PACU. Among other things, Respondent charted the patient's level of consciousness as "arousable on calling" from the time he entered the PACU up until the "Harvey" code, indicating an unresponsive patient, was called, as

2

detailed below.

10. Throughout her time caring for the patient, Respondent documented oxygen saturations that were not reflected on the print-out. Respondent documented, for example, 100% oxygen saturation when the monitor read only "artifact" or levels below 25%.

11. Respondent documented a series of assessments approximately every 15 minutes that the patient was in the PACU during the patient's first hour, then every 30 minutes thereafter, as dictated by hospital policy. In her assessments Respondent documented, in addition to the Aldrete scores noted above, breath sounds and readings from an automated blood pressure cuff.

12. At one point, the patient was heard making snoring and/or gasping noises, which the patient's parents brought to Respondent's attention. Respondent discussed the sounds with the parents, and Respondent states she also discussed the sounds with a physician. Respondent did not take any further action in response to these noises.

13. Approximately 30 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 118 over 56. Approximately 45 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 106 over 53. Approximately 60 minutes after the patient was admitted to the PACU, Respondent charted that the patient's blood pressure was 84 over 42. Respondent did not take any action in response to these changes in the patient's blood pressure.

14. Approximately 90 minutes after the patient was admitted to the PACU, Respondent left to obtain fluids for the patient. Upon her return, the patient's father asked Respondent for help turning the patient, as the patient's leg appeared blue. When the patient was turned supine, he was noted to be deeply cyanotic, apneic, and pulseless. CPR was initiated, and a "Harvey" code, indicating a nonresponsive patient, was called.

3

15. While the patient was eventually resuscitated, he suffered severe anoxic brain injury and died approximately 48 hours later.

16. During the patient's time in the PACU, Respondent accessed Facebook and at least one other social media website using a hospital computer.

17. On or about March 23, 2012, Respondent resigned in lieu of termination.

### III.   Stipulated Grounds for Discipline

18. The Stipulations of Fact are sufficient to establish that Respondent has violated the following statutes or rules, for which disciplinary action by the Board is authorized, TENN. CODE ANN. § 63-7-101, *et seq*. and TENN. COMP. R. & REGS., 1000-01-.01, *et seq*.

19. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of TENN. CODE ANN. § 63-7-115 (a)(1): The board has the power to deny, revoke or suspend any certificate or license to practice nursing or to otherwise discipline a licensee upon proof that the person:

    (C)   Is unfit or incompetent by reason of negligence, habits or other cause;

    (F)   Is guilty of unprofessional conduct.

20. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of Rule 100-01-.-.13(1) TENN. COMP.R.REGS., RULE 1000-01-.-.13(1):

    (a)   Intentionally or negligently causing physical or emotional injury to a patient;

    (c)   Abandoning or neglecting a patient requiring nursing care.

21. The facts stipulated in paragraphs eight (8) through eleven (11) constitute a violation of Rule 100-01-.-.13(1) TENN. COMP.R.REGS., RULE 1000-01-.-.13(1) (a):

    (b)   Failure to maintain a record for each patient which accurately reflects the nursing problems and interventions for the patient and/or failure to maintain a record for each patient which accurately reflects the name and title of the nurse providing care;

(w)   Engaging in acts of dishonesty which relate to the practice of nursing.

### IV.   Stipulated Disposition

For the purpose of avoiding further administrative action with respect to this cause, Respondent agrees to the following:

22.   It is hereby ordered that Respondent's Tennessee nursing license number **99584** is **REVOKED** and her multistate privilege to practice in any other party state is **VOID**.

23.   Respondent must pay the actual and reasonable costs of prosecuting this case, pursuant to TENN. CODE ANN. §§ 63-7-115(d) and 63-1-144 and Rule 1000-01-.04(11) of the TENN. COMP. R. & REGS., to the extent allowed by law.  These costs will be established by an Assessment of Costs prepared by counsel for the Department.  The Assessment of Costs shall not exceed one thousand dollars ($1,000.00) and shall be paid in full within twelve months from the issuance of the Assessment of Costs.

24.   Each condition of discipline herein is a separate and distinct condition.  If any condition of this Order, or any application thereof, is declared unenforceable in whole, in part, or to any extent, the remainder of this Order, and all other applications thereof, shall not be affected. Each condition of this Order shall separately be valid and enforceable to the fullest extent permitted by law.

### V.   Representations of Respondent

25.   Respondent understands and admits the allegations, charges, and stipulations in this Order.

26.   Respondent understands the rights found in the Code, the Rules, and the Uniform Administrative Procedures Act, TENN. CODE ANN. §§ 4-5-101 through 4-5-404, including the right to a hearing, the right to appear personally and by legal counsel, the right to confront and cross-examine witnesses who would testify against Respondent, the right to testify and present evidence on Respondent's own behalf, including the issuance of

5

subpoenas to compel the attendance of witnesses and the production of documents, and the right to appeal for judicial review.  Respondent voluntarily waives these rights in order to avoid further administrative action.

27. Respondent agrees that presentation of this Order to the Board and the Board's consideration of it and all matters divulged during that process shall not constitute unfair disclosure such that the Board or any of its members become prejudiced requiring their disqualification from hearing this matter should this Order not be ratified.  All matters, admissions, and statements disclosed during the attempted ratification process shall not be used against the Respondent in any subsequent proceeding unless independently entered into evidence or introduced as admissions.

28. Respondent also agrees that the Board may issue this Order without further process.  If the Board rejects this Order for any reason, it will be of no force or effect for either party.

## VI.   Notice

29. This revocation is formal disciplinary action and will be reported to the Health Integrity and Protection Data Bank (HIPD).

30. Costs shall be paid by submitting a certified check, cashier's check, or money order payable to the State of Tennessee.  Costs payments must include the Respondent's name and this case number, 201200757, on the instrument of payment and shall be mailed or delivered to:

> Office of Investigations
> Attn: Disciplinary Coordinator
> Tennessee Department of Health
> 227 French Landing, Suite 201
> Nashville, Tennessee 37243

**APPROVED FOR ENTRY:**

_____          2/19/13
Kelly Kish                               DATE
R.N. License Number 99584
Respondent


_____          2/19/13
Donna L. Boyce                           DATE
Adams and Reese LLP
Brinkley Plaza
80 Monroe Ave, Suite 700
Memphis, Tennessee 38103
(901) 525-3234
Attorney for Respondent


_____          2/20/13
Marc R. Guilford (BPR # 025419)          DATE
Assistant General Counsel
Tennessee Department of Health
Office of General Counsel
220 Athens Way, Suite 210
Nashville, Tennessee 37243
(615) 741-1611

---

### Approval by the Board

Upon the agreement of the parties and the record as a whole, this **CONSENT ORDER** was approved as a **FINAL ORDER** by a majority of a quorum of the Tennessee Board of Nursing at a public meeting of the Board and signed this 20th day of February, 2013.

**ACCORDINGLY, IT IS ORDERED** that the agreements of the parties will, and hereby do, become the Final Order of the Board.

_____
Chairperson/Acting Chairperson
Tennessee Board of Nursing

7

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon the Respondent, Kelly Kish through her counsel, Donna L. Boyce, Adams and Reese, 80 Monroe Ave, Suite 700, Memphis, Tennessee 38103, by delivering same in the United States regular mail and United States certified mail, number 7012 1640 0002 3921 5150 return receipt requested, with sufficient postage thereon to reach its destination.

This 22nd day of February , 2013.

Marc R. Guilford
Assistant General Counsel

## CERTIFICATE OF FILING

This Order was received for filing in the Office of the Tennessee Secretary of
State, Administrative Procedures Division, and became effective on the 22ND
day of _February_ , 2013.

_Thomas G. Stovall JR_

Thomas G. Stovall
Director, Administrative Procedures Division

AO 88B (Rev 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Tennessee

| | |
|---|---|
| DANIEL LOVELACE AND HELEN LOVELACE | ) |
| *Plaintiff* | ) |
| v. | ) |
| PEDIATRIC ANESTHESIOLOGISTS, P.A., DR. | ) |
| BABU RAO PAIDIPALLI & DR. MARK P. CLEMONS | ) |
| *Defendant* | ) |

Civil Action No.   2:13-cv-02289 dvk

(If the action is pending in another district, state where:
                                                    )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Methodist Healthcare-Memphis Hospitals d/b/a Methodist LeBonheur Children's Hospital c/o Craig Conley,
      Attorney for Methodist-LeBonheur, 165 Madison Ave., 20th Floor, Memphis, TN 38103

   ☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: all documents and things described in the attached Exhibit "A".

| Place: In lieu of appearance, please mail copies of documents and things to David M. Cook & Albert G. McLean, Attorneys, 119 S. Main, Suit 800, Memphis, TN 38103 | Date and Time:<br><br>08/28/2013 10:00 am |
|---|---|

   ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  *8-8-13*

| CLERK OF COURT | | |
|---|---|---|
| _____ | OR | *Albert M. McLean* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D._____ , who issues or requests this subpoena, are:
 David M. Cook and Albert G. McLean, Attorneys, 119 S. Main St., Suite 800, Memphis, TN 38103;
 dcook@hard-law.com and amclean@hard-law.com; (901) 525-8776

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:13-cv-02289 dvk

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* Methodist Lebonheur Childrens Hospital

was received by me on *(date)* 8-8-13 .

☑ I served the subpoena by delivering a copy to the named person as follows: Y Sheila Griesheimer Leges Sec

on behalf of Craig Conley _____

on *(date)* 8-15-13 ; or 3:50

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: 8-15-13

*Server's signature*

M Huddleston   PPS
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Exhibit "A" to Subpoena *Duces Tecum*

(1)     All print-outs and all other documents containing any data, vital signs, values, readings, and other information recorded by any monitoring equipment utilized in the care of Brett Lovelace in the Post Anesthesia Care Unit (PACU) at LeBonheur Children's Medical Center, 50 North Dunlap, Memphis, Tennessee 38107, on March 12, 2012;

(2)     Any and all medical records, including x-rays and billing records pertaining to Brett S. Lovelace, DOB: 8-21-1999; SS#: 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;

(3)     Any and all logs, including print-outs of any computer log, and any paper log, for the Post Anesthesia Care Unit (PACU) at LeBonheur Children's Hospital, for March 12, 2012;

(4)     Any and all documents which comprise or are contained in the personnel file of Kelly Kish, former employee; and

(5)     Any and all documents evidencing any settlement agreement entered into between Daniel and Helen Lovelace and Methodist Healthcare – Memphis Hospitals and/or Methodist LeBonheur Children's Hospital pertaining to any claim of Daniel and Helen Lovelace, individually, and/or as parents of Brett Lovelace, deceased, and any and all documents evidencing any release of claims against any person, by Daniel and Helen Lovelace, individually, and/or as parents of Brett Lovelace, deceased.

    Attached hereto is a copy of the requesting attorney's HIPAA-compliant letter to Daniel and Helen Lovelace, parents and representative of Brett Lovelace, deceased, c/o of their attorney, dated June 28, 2013, to which no objection has been made.



EXHIBIT
EXHIBIT A

# THE HARDISON LAW FIRM, P.C.
### LEE A. HARDISON, Jr. (1915-1983)

**ALBERT G. MCLEAN**

Tennessee Supreme Court Rule 31 Listed Mediator

119 South Main Street, Suite 800
Memphis, Tennessee 38103-3685
Telephone (901) 525-8776
Telecopier (901) 525-8790
www.thehardisonlawfirm.com
amclean@hard-law.com

June 28, 2013
<u>VIA U.S. MAIL AND
FACSIMILE TRANSMISSION</u>

Mr. Daniel Lovelace and Mrs. Helen Lovelace
Parents of Brett Lovelace, Deceased
c/o P. Mark Ledbetter, Esq.
Halliburton & Ledbetter
254 Court Avenue
Suite 305
Memphis, TN 38103

Re:    **Lovelace v. Paidipalli,** *et alia*
      <u>U. S. District Court #2:13-cv-02289-JPM-dkv</u>
      HLF File No.:  212-18673

Dear Mr. and Mrs. Lovelace:

      This letter is being sent in conformity with 45 C.F.R. 164.500 *et. seq.* including, but not limited to, 45 C.F.R. 164.512.  Our firm is representing the defendants, Pediatric Anesthesiologists, P.A., and Babu Rao Paidipalli, M.D., in the above-captioned matter.  We will be requesting from Methodist Healthcare – Memphis Hospitals d/b/a Le Bonheur Children's Medical Center the following documents: "(1)  the entire records pertaining to the healthcare of Brett S. Lovelace, including, but not limited to, all medical records, psychiatric reports, psychiatric and/or psychological evaluations, histories, notes, consents, charts, photographs, reports, lists, summaries, lab results, autopsy records, correspondence, billing records, any other itemization of medical expenses, receipts, reports, any and all diagnostic/radiographic films and reports of same; (2) all print-outs and all other documents containing any data, vital signs, values, readings, and other information recorded by any monitoring equipment utilized in the care of Brett Lovelace in the Post Anesthesia Care Unit (PACU) at Le Bonheur Children's Medical Center, 50 North Dunlap, Memphis, Tennessee 38103 on March 12, 2012 and (3) any and all logs, including print-outs of any computer log, and any paper log, for the Post Anesthesia Care Unit (PACU) at Le Bonheur Children's Medical Center for March 12, 2012."

      We will be requesting the aforesaid documents pertaining to the care of Brett Lovelace by issuing a subpoena or subpoenas *duces tecum* to Methodist Healthcare – Memphis Hospitals d/b/a Le Bonheur Children's Medical Center and requesting that it permit copying of, or that it provide copies, of such documents to the undersigned, with an affidavit of a custodian of such documents to authenticate such documents.  Further, upon receipt of said documents, we will

Page 2
June 28, 2013

provide a copy of said documents to you through your attorneys, and to other counsel in this matter if they should want copies, at no cost except for cost of duplication /copying.  We further agree that the aforesaid documents/protected health information will not be utilized for any purpose other than issues related to the above-referenced litigation for which this information is requested.  Further, after a reasonable time after the conclusion of this litigation, our copies of said documents will be destroyed.

If you object to release of the above-referenced documents/protected health information, or the method of obtaining said documents/protected health information, I must ask you, by and through your counsel, to file an objection with the Court in which this action is pending, with a copy to David M. Cook and me, stating any objection you may have.  If you (through your attorney) have not responded to David M. Cook and me, or filed an objection with the Court within ten (10) days from the date of this letter, I will assume that you have no objections to our filing and serving such subpoena(s) for the above-referenced documents and requesting copies of such documents with an affidavit of the custodian thereof, and will proceed accordingly. If you have any questions regarding this notice, please contact your attorney, P. Mark Ledbetter.

Yours very truly,

THE HARDISON LAW FIRM, P.C.

ALBERT G. MCLEAN

AGM:sh

cc:   Babu Rao Paidipalli, M.D.
      Pediatric Anesthesiologists, P.A. (c/o Beverly Smith)