IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL LOVELACE AND HELEN LOVELACE | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 2:13-CV-02289 dkv |
| | ) | |
| PEDIATRIC ANESTHESIOLOGISTS, P.A.; DR. BABU RAO PAIDIPALLI & DR. MARK P. CLEMONS | ) ) ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OF LAW IN SUPPORT OF METHODIST HEALTHCARE – MEMPHIS HOSPITALS' MOTION FOR STAY FROM MAGISTRATE'S ORDER PENDING APPEAL

COMES NOW non-party Witness Methodist Healthcare – Memphis Hospitals ("Methodist"), by and through undersigned counsel, and files this Memorandum of Law in Support of its Motion for Stay from Magistrate's Order Pending Appeal.   In support of its Motion, Methodist states as follows:

### PROCEDURAL HISTORY

Methodist filed its Motion to Quash Defendants Pediatric Anesthesiologists, P.A. and Dr. Babu Rao Paidipall's ("Defendants") Subpoena on August 21, 2013, requesting relief from the Court in the form of a Protective Order preventing Defendants' Subpoena.   (D.E. 33). Defendants' Subpoena sought, among other things, the Settlement Agreement entered into between Daniel and Helen Lovelace ("Plaintiffs") and Methodist pertaining to their claims and any documents evidencing the release of claims against any person by Plaintiffs.   (D.E. 33-2). On October 21, 2013, the Magistrate entered an Order Granting in Part and Denying in Part

Methodist's Motion to Quash, wherein it ordered Methodist to produce the Settlement Agreement.   (D.E. 43).   On November 4, 2013, Methodist timely filed its Objections to Magistrate's Order Regarding Motion to Quash Defendants' Subpoena and Motion for Protective Order (D.E. 46).   Defendants filed their Response on November 14, 2013 (D.E. 49).   On November 20, 2013, Methodist filed a Motion for Leave to File a Reply Brief addressing Defendants' response (D.E. 50).

Although Methodist's appeal of the Magistrate's order is still pending, Defendants insist that Methodist is required to turn over the confidential Settlement Agreement that is the sole subject of the pending appeal.   Therefore, Methodist now files this Motion for Stay from Magistrate's Order Pending Appeal in order to protect its confidential information until this Court rules on the appeal.

**LAW AND ARGUMENT**

**I.     THIS COURT SHOULD GRANT METHODIST'S MOTION BECAUSE THE FACTORS THIS COURT MUST CONSIDER FAVOR GRANTING A STAY PENDING THE APPEAL OF THE MAGISTRATE'S ORDER.**

In ruling on a motion for stay pending an appeal, the court must engage in the same inquiry as when it reviews the grant or denial of a temporary restraining order or a preliminary injunction.   *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Walter v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982).   In determining whether a stay should be granted, this Court must consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Michigan Coalition of Radioactive Material Users*, 945 F.2d at 153 (quoting *Ohio ex rel. Celebrezze v.*

*Nuclear Regul. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)).  These factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together."  *Id.* (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

### A. Granting Methodist a Stay of Relief will not harm Defendants nor any conceivable public interest.

First, Defendants will not suffer any harm as a result of this Court granting a stay from the Magistrate's order pending an appeal.  Prior to filing the Motion to Quash, Methodist offered to give Defendants a redacted copy of the confidential Settlement Agreement showing every piece of information except for the dollar amount of the settlement.  Methodist remains willing to disclose that information until this Court has ruled on the pending appeal of the Magistrate's order, and has informed counsel for Defendants that the Settlement Agreement does not contain any allocation or information regarding the amount paid and does not release their clients.  Instead, Defendants insist they must be given <u>all</u> information contained in the Settlement Agreement.  Assuming, *arguendo*, that Defendants win the pending appeal, they will not suffer any harm by waiting until this Court has ruled on the appeal to see the information contained in the confidential Settlement Agreement.  In fact, should Methodist disclose the confidential document now, and then later win on appeal, Defendants would have accessed the information despite this Court finding they had no right to do so (*see* Section C below).  Further, there is no public interest that would be harmed by requiring Defendants to wait the short time until this Court has ruled on the appeal to see the document at issue.  Therefore, the third and fourth factors that this Court must consider support the granting of Methodist's Motion.

### B. Methodist has a good chance of prevailing on the merits of their appeal of the Magistrate's order.

While Methodist acknowledges the broad scope of discovery outlined in F.R.C.P. 26, this Court has discretion to limit or preclude discovery that may meet the general standard of

relevance pursuant to F.R.C.P. 26(b)(1) if the discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, or the burden of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  F.R.C.P. 26(b)(2).

Methodist submits that the Magistrate did not apply, and Defendants have not met, the heightened relevancy standard for discovery of confidential settlement agreements.  *See Wagner v. Circle W. Mastiffs*, No. 2:08-cv-431, No. 2:09-cv-0172, 2013 U.S. Dist. LEXIS 68349, *17 (S.D. Ohio May 14, 2013) (internal citations omitted).[1]  In *Wagner*, the court recognized that some courts have required a party seeking discovery of confidential settlement agreements "to make a particularized showing that the documents relating to settlement agreements are relevant and likely to lead to the discovery of admissible evidence."  *Id.* (quoting *Flat Glass Anti-trust Litigation*, 2013 U.S. Dist. Lexis 56086 (W.D. Penn. April 19, 2013)).  The court's determination in *Wagner* was based solely on whether the settlement agreement sought was relevant to the remaining issues in litigation involving the remaining co-defendants.  *Wagner*, 2013 U.S. Dist. LEXIS 68349 at *14.

In its appeal, Methodist respectfully requested that this Court recognize and apply the heightened standard recognized by *Wagner*.  While on its face, Defendants' position regarding the relevance of the Settlement Agreement appears reasonable, the information Defendants claim they are entitled to is not contained in the Settlement Agreement and/or is available from other sources.

---

[1] A copy of *Wagner* is attached as Exhibit A.

In this case, Defendants contend that the amount of the settlement between Plaintiffs and Methodist is relevant to the issue of damages in this case. (D.E. 38, 39). First, Defendants argue that if Methodist wrote off the medical bills related to Brett Lovelace's hospitalization, they are entitled to establish that such costs are not recoverable pursuant to Tenn. Code. Ann. § 29-26-119. This information is not contained in the Settlement Agreement. Rather, whether or not charges were written off would be reflected in the patient's billing records.

Second, Defendants argue that the Settlement Amount "might be" considered by a jury to be payment of the decedent's loss of earnings or loss of earning capacity. The Settlement Agreement contains no designation or categorization of amounts paid in settlement of Plaintiffs' potential claims against Methodist. Furthermore, Methodist has never been a party to this or any other lawsuit by Plaintiffs. The claims brought in this action are separate and distinct from any claims Plaintiffs may have had against Methodist, regardless of the fact that the claims are based on the same events. Therefore, Defendants have not and cannot establish the potential for double recovery by Plaintiffs. As the *Wagner* Court noted, the party seeking the discovery must address the issue of set-off with specificity, setting forth facts that would allow the court to make a determination based on more than speculation. *Wagner*, 2013 U.S. Dist. LEXIS 68349 at *23-24. Because the Settlement Agreement contains no categorization of damages, there is no basis beyond speculation for the information sought by Defendants. Therefore, Methodist is likely to win on the merits of its pending appeal before this Court.

### C. Alternatively, Methodist will be irreparably harmed absent a stay because denying Methodist's Motion will render Methodist's appeal of the Magistrate's order moot.

While Methodist's has a likelihood of succeeding on the merits of its appeal, granting a stay, however, does not require this Court to make that determination at this time. "To justify the granting of a stay, a movant need not always establish a high probability of success on the

merits." *Ohio ex rel. Celebrezze*, 812 F.2d at 290 (citing *Cuomo v. United States Nuclear Regul.*

*Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).   As the Sixth Circuit Court of Appeals has

explained, "The probability of success that must be demonstrated is inversely proportional to the

amount of irreparable injury [the moving party] will suffer absent the stay.  Simply stated, more

of one excuses [sic] less of the other." *Michigan Coalition of Radioactive Material Users*, 945

F.2d at 153 (citing *Ohio ex rel. Celebrezze*, 812 F.2d at 290).

     If this court denies Methodist's Motion, Methodist will surely suffer irreparable harm

because a denial would render its timely appeal of the Magistrate's order moot.  *See United*

*States v. Ritchie*, No. 3-92-610, 1992 U.S. Dist. LEXIS 16416 (E.D. Tenn. Oct. 7, 1992)[2]; *EEOC*

*v. Quad/Graphics, Inc.*, 875 F. Supp. 558 (E.D. Wisc. 1995).   In *Ritchie*, the United States

District Court for the Eastern District of Tennessee granted the defendant's motion for a stay of

judgment pending appeal, explaining that it would be "impossible to repair the harm done" to

defendant's clients if the appellate court later ruled in his favor. *Id.* at *1-2.  Therefore, the court

granted the defendant's motion, holding that he did not have to divulge "information his clients

[had] requested he keep secret" until the appellate court ruled on his appeal.  *Id.*

     Similarly, in *Quad/Graphics*, the United States District Court for the Eastern District of

Wisconsin granted the defendant's motion for a stay of the court's opinion pending appeal even

though the defendant would not likely succeed on the merits of his appeal.  875 F. Supp. at 560.

The court held that "[r]equiring the respondent to turn over the requested information, where its

appeal is seeking to avoid such requirement, would make the appeal academic." *Id.*  Therefore,

the court explained:

> Despite my belief that the [defendant] is not likely to succeed on its appeal, I believe that
> the other four factors, primarily the irreparable harm that the [defendant] will suffer if a

---

[2] A copy of *Ritchie* is attached as Exhibit B.

stay is not granted, weigh heavily in favor of granting the stay.  Failure to grant the [defendant] a stay in this case would make its right to appeal of little value.

*Id.*

Here, like *Ritchie* and *Quad/Graphics*, requiring Methodist to comply with the Magistrate's order and turn over the confidential Settlement Agreement to Defendants would effectively do away with Methodist's pending appeal.  The sole issue giving rise to the appeal is the disclosure of the Settlement Agreement.  If Methodist is required to turn over the confidential document at issue, and Methodist wins on appeal, Defendants would have already accessed the confidential information this Court decided Defendants were not entitled to.  In other words, once Defendants have seen the confidential information, it cannot be "un-seen."  Therefore, Methodist is entitled to a stay from the Magistrate's Order pending a ruling by this Court on its pending appeal.

In communicating with Defendants' counsel in an attempt to resolve the issues in this Motion, Defendants' counsel insisted that Methodist's appeal of the Magistrate's order did not stay the Magistrate's order, and, therefore, Methodist must still produce the Settlement Agreement while the appeal is still pending.  In support of this assertion, Defendants' counsel relied on five cases:  *Evans v. Walgreen Co.*, No. 09-2491, 2011 U.S. Dist. LEXIS 72192 (W.D. Tenn. July 5, 2011), *Guiden v. Leat Corp.*, No. 5:10-CV-00175, 2013 U.S. Dist. LEXIS 118355 (W.D. Ky. Aug. 21, 2013), *City of Ecorse v. United States Steel*, No. 07-cv-12131, 2008 U.S. Dist. LEXIS 19323 (E.D. Mich. Mar. 13, 2008), *White v. Burt Enters.*, 200 F.R.D. 641 (D.D.C. June 12, 2000), and *Maness v. Meyers*, 419 U.S. 449 (1974).[3]  Each of these cases, however, is

---

[3] All unreported cases are attached collectively as Exhibit C.

distinguishable from the case at hand with one crucial distinction: none of these cases involve the disclosure of confidential materials.[4]

Instead, this case closely resembles the *Ritchie* and *Quad/Graphics* cases discussed above, where both courts acknowledged that having the moving party disclose the information they sought to protect in their appeal would render the appeal moot.  *Ritchie*, 1992 U.S. Dist. LEXIS 16416, at *1; *Quad/Graphics*, 875 F. Supp. at 560.  If Methodist was required to comply with the Magistrate's order and turn over confidential settlement documents to Defendants, and this Court later ruled for Methodist on appeal, the irreparable harm would already have been done because Defendants would know the substance of the confidential Settlement Agreement. Requiring disclosure of the Settlement Agreement would undercut Methodist's timely appeal, causing Methodist irreparable harm.  Therefore, this Court should grant Methodist's Motion for Stay from Magistrate's Order Pending Appeal.

## CONCLUSION

This Honorable Court should grant Methodist's Motion for a stay from the Magistrate's Order  pending an appeal because Defendants will not be harmed by a stay, there is harm to any public interest in granting a stay, Methodist is likely to prevail on the merits on appeal, and Methodist will be irreparably harmed if a stay is not granted.

Should this Court rule against Methodist on appeal, Methodist will freely turn over the confidential Settlement Agreement at issue.  All Methodist seeks is to avoid irreparable harm by not disclosing that document until this Honorable Court has the opportunity to rule on the pending appeal of the Magistrate's Order.   Therefore, Methodist respectfully moves this Honorable Court to grant its Motion for Stay from Magistrate's Order Pending Appeal.

---

[4] Further, *Evans* did not even address whether a party appealing an order to produce discovery must produce the documents at issue while waiting for an appeal.

Respectfully submitted,

s/ Craig C. Conley
Craig C. Conley (# 19341)
Ormonde B. DeAllaume (# 26266)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-2303
cconley@bakerdonelson.com
odeallaume@bakerdonelson.com

*Attorneys for Non-Party Witness*
*Methodist Healthcare – Memphis Hospitals*

## CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.2(a)(1)(B), I hereby certify that, on November 21, 2013, counsel for Methodist conferred with counsel for Plaintiffs via e-mail concerning the contents of this Motion.

s/ Craig C. Conley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of November, 2013, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

s/ Craig C. Conley

# EXHIBIT A





Analysis
As of: Nov 21, 2013

**Fredericka Wagner, et al., Plaintiffs, v. Circle W Mastiffs, et al., Defendants. Craig W. Williamson, Plaintiff, v. American Mastiff Breeders Council, et al., Defendants.**

**Case No. 2:08-cv-431, Case No. 2:09-cv-0172**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

*2013 U.S. Dist. LEXIS 68349*

**May 14, 2013, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *Wagner v. Mastiffs, 2013 U.S. Dist. LEXIS 117203 (S.D. Ohio, Aug. 19, 2013)*

**PRIOR HISTORY:** *Wagner v. Circle W Mastiffs, 2012 U.S. Dist. LEXIS 168574 (S.D. Ohio, Nov. 28, 2012)*

**COUNSEL:** [*1] American Mastiff Breeders Council, Plaintiff (2:08-cv-00431-GCS-TPK), Pro se, Lucasville, OH.

Connie Hammond, doing business as Sycamore Creek Kennels, Plaintiff (2:08-cv-00431-GCS-TPK), Pro se, Londonderry, OH.

For Diane St. Martin, doing business as Hidden Acres Farm, Cameran Pridmore, doing business as Capell Creek Ranch and Kennels, Sandy Taylor, doing business as Deepwood Acres American Mastiffs, Plaintiffs (2:08-cv-00431-GCS-TPK): Debra J Horn, LEAD ATTORNEY, Alan N Hirth, Meyers, Roman, Friedberg & Lewis, Cleveland, OH; James Allison Wilson, Jr, Vorys Sater Seymour & Pease, Columbus, OH; Martha Brewer Motley, Vorys, Sater, Seymour & Pease LLP,

Columbus, OH.

Sandy Berger, doing business as American Mastiff, Plaintiff (2:08-cv-00431-GCS-TPK), Pro se, Imlay City, MI.

Kevin Ware, doing business as Orion Farms, Plaintiff (2:08-cv-00431-GCS-TPK), Pro se, Keymar, MD.

Melanie Ware, doing business as Orion Farms, Plaintiff (2:08-cv-00431-GCS-TPK), Pro se, Keymar, MD.

Jennifer Williamson, Defendant (2:08-cv-00431-GCS-TPK), Pro se, Fallon, NV.

Craig Williamson, Defendant (2:08-cv-00431-GCS-TPK), Pro se, Fallon, NV.

Jennifer Williamson, Counter Claimant (2:08-cv-00431-GCS-TPK), Pro se, Fallon, [*2] NV.

Craig Williamson, Counter Claimant (2:08-cv-00431-GCS-TPK), Pro se, Fallon, NV.

Craig W Williamson, Plaintiff

(2:09-cv-00172-GCS-TPK), Pro se, Fallon, NV.

American Mastiff Breeders Council, Defendant (2:09-cv-00172-GCS-TPK), Pro se, Lucasville, OH.

Sandy Berger, doing business as American Mastiff, Defendant (2:09-cv-00172-GCS-TPK), Pro se, Imlay City, MI.

Connie Hammond, doing business as Sycamore Creek Kennels, Defendant (2:09-cv-00172-GCS-TPK), Pro se, Londonderry, OH.

For Cameran Pridmore, doing business as Capell Creek Ranch and Kennels, Diane St Martin, doing business as Hidden Acres Farm, Sandy Taylor, doing business as Deepwood Acres American Mastiffs, Defendants (2:09-cv-00172-GCS-TPK): Debra J Horn, LEAD ATTORNEY, Alan N Hirth, Meyers, Roman, Friedberg & Lewis, Cleveland, OH; James Allison Wilson, Jr, Vorys Sater Seymour & Pease, Columbus, OH; Martha Brewer Motley, Vorys, Sater, Seymour & Pease LLP, Columbus, OH.

Tammy Venkler, doing business as Mystic American Mastiffs, Defendant (2:09-cv-00172-GCS-TPK), Pro se, Birdsboro, PA.

Kevin Ware, doing business as Orion Farms, Defendant (2:09-cv-00172-GCS-TPK), Pro se, Keymar, MD.

Melanie Ware, doing business as Orion Farms, Defendant [*3] (2:09-cv-00172-GCS-TPK), Pro se, Keymar, MD.

Candace Ware, Defendant (2:09-cv-00172-GCS-TPK), Pro se, Minocqua, WI.

For Does I thru XX, Defendant (2:09-cv-00172-GCS-TPK): James Allison Wilson, Jr, Vorys Sater Seymour & Pease, Columbus, OH.

**JUDGES:** Terence P. Kemp, United States Magistrate Judge. JUDGE SMITH.

**OPINION BY:** Terence P. Kemp

**OPINION**

ORDER

This matter is before the Court on a motion to compel filed by Diane St. Martin, Cameran Pridmore, and Sandy Taylor. The motion seeks an order compelling Craig and Jennifer Williamson and Circle W Mastiffs (the Williamsons) and Fredericka Wagner and Flying W Farms, Inc. (Ms. Wagner) to produce the settlement agreement they entered into resolving their claims in this case. Only Ms. Wagner and Flying W Farms have filed a response opposing this motion and the motion now has been fully briefed. For the following reasons, the motion to compel (#174) will be denied.

I.

This consolidated action has been pending in this Court for five years. Throughout that time, the factual and procedural history has been set forth many times in various orders and will not be repeated here. For purposes of the current motion, however, the following background is relevant.

These cases involve the [*4] sale of American Mastiff puppies. Case No. 2:08-cv-431 was filed by Fredericka Wagner, Flying W Farms, the American Mastiff Breeders' Council and others on May 6, 2008, against Circle W Mastiffs and Nevada residents Jennifer and Craig Williamson. According to the factual allegations of the complaint, Ms. Wagner and Flying W Farms created the American Mastiff dog breed. The complaint asserts claims under the Lanham Act, *15 U.S.C. §§1117-25*, for various alleged actions by the Williamsons which diluted the value of the American Mastiff breed and brand. The Williamsons and Circle W filed a counterclaim against only Ms. Wagner and Flying W for breach of contract, breach of the duty of good faith and fair dealing, fraudulent and negligent misrepresentation, implied and equitable indemnity, and contribution. By order dated March 12, 2010, the Court dismissed all counterclaims against Ms. Wagner and Flying W except those for fraud/fraudulent inducement and negligent misrepresentation.

In addition to filing a counterclaim in Case No. 2:08-cv-431, Mr. Williamson also originally filed Case No. 2:09-cv-172 in the United States District for the District of Nevada naming the plaintiffs in Case No. [*5] 2:08-cv-431 as defendants. By order dated March 9, 2009, the case was transferred to this District and was consolidated with Case No. 2:08-cv-431 by order dated March 26, 2009. Following an amendment to his complaint, Mr. Williamson asserted claims for violations of the Sherman Act, defamation and libel/slander per se,

fraud, intentional interference with a business relationship, and conspiracy. By order dated August 10, 2010, the Court dismissed all of Mr. Williamson's claims except the defamation and libel/slander per se claims and the intentional interference with a business relationship claim.

On February 21, 2013, a "Stipulation of dismissal of all claims between Fredericka Wagner and Flying W Farms, Inc. and Craig Williamson, Jennifer Williamson and Circle W Mastiffs only -- all other claims remain pending" was filed by Ms. Wagner on behalf of herself personally and as president of Flying Farms and the Williamsons, with Mr. Williamson signing as Circle W's authorized representative. In other words, following the settlement agreement, Mr. Williamsons' claims for defamation, libel/slander per se, and intentional interference with a business relationship claim remain pending against [*6] the remaining defendants in Case No. 2:09-cv-172. Further, the Lanham Act claim remains pending on behalf of the remaining plaintiffs in Case No. 2:08-cv-431. On that same date the stipulation was filed, Diane St. Martin, Cameran Pridmore, and Sandy Taylor -- who remain as plaintiffs in Case No. 08-431 and defendants in Case No. 09-172 -- filed the motion to compel currently before the Court.

II.

In the motion to compel, the moving parties, without any discussion of *Fed.R.Civ.P. 26*, contend that the settlement agreement is discoverable despite any claim of confidentiality. They assert that the settlement agreement is relevant for several reasons. First, they argue that they need to know how their potential liability may be limited by the settlement. As they explain it, there is a complete overlap of claims between the Williamsons' recovery from Wagner and the Williamsons' remaining claims against them. The moving parties argue that they do not want to be a source of double recovery for the Williamsons if the settlement with Ms. Wagner has made them whole with respect to some or all of their claims. Further, they maintain that allowing them access to the settlement agreement may promote [*7] the resolution of this matter. That is, they argue that knowing the terms of the settlement agreement will allow them to estimate more accurately the amount of the Williamsons' alleged damages. Finally, they argue that knowledge of the terms of the settlement agreement may help them evaluate Ms. Wagner's potential bias, interest and credibility. As they

see it, because she is the lead plaintiff, the head of the AMBC, and the "main target" of the Williamsons' claims, Ms. Wagner "is the key witness in this case." They suggest that they are entitled to discovery of the settlement agreement to the extent that it might provide evidence of something in the nature of a quid pro quo between Ms. Wagner and the Williamsons.

In response, Ms. Wagner explains that she has suffered a debilitating stroke which prevents her further participation in this matter and necessitated her entering into a settlement agreement with the Williamsons. She perceives that the moving parties are upset by her agreement to settle with the Williamsons, leaving them essentially to fend for themselves. She believes that their desire to gain access to the settlement agreement is intended as a punitive measure, especially [*8] since, from her perspective, none of the few remaining claims in this action involve her. This state of affairs, she argues, does not provide support for compelling disclosure of the settlement agreement.

On a more substantive level, Ms. Wagner contends that the motion to compel should be denied for various reasons. First, she asserts that because she is no longer a party to this action, she cannot be compelled to provide a copy of the settlement agreement, let alone such an agreement designated by the settling parties as confidential. Further, she argues that the agreement is not admissible under *Fed.R.Evid. 408* and not discoverable under *Fed.R.Civ.P. 26*.

Acknowledging, however, that courts have found settlement agreements subject to discovery upon a demonstration of relevance, Ms. Wagner asserts that the agreement here is not relevant for purposes of impeachment or determining liability. With respect to the issue of impeachment, Ms. Wagner argues that she will be unable to testify at trial and the settlement agreement cannot be used to impeach her deposition testimony offered prior to the settlement agreement so this issue provides no basis for a finding of relevance. Ms. Wagner recognizes [*9] the potential for bias or collusion raised by certain agreements, frequently termed as "Mary Carter" agreements, but merely states, without any elaboration, that "[n]o such agreements exist in this consolidated case." See Response, p.5.

On the issue of liability, Ms. Wagner contends that the settlement agreement has no bearing on the issue and the moving parties, who bear the burden on this issue,

have not demonstrated otherwise. As Ms. Wagner explains, to the extent that the moving parties seek access to the settlement agreement to assess the extent of their own liability and damages, such an assessment is not impacted by the terms of her settlement with the Williamsons. She asserts that this is not a personal injury case involving joint and several or contribution liability so double recovery simply is not possible here. Rather, she continues, the Williamsons' remaining claims in Case No. 09-172 against the moving parties are based only on Cameran Pridmore's allegedly tortious actions. In light of this, she argues, there is no overlap of claims because the settlement agreement addresses only the direct transactions between herself and the Williamsons. She has submitted the settlement [*10] agreement for the Court's in camera review, at the same time acknowledging, to some extent, that the document is not privileged.

In reply, the moving parties contend that Ms. Wagner remains a party to this case because the stipulation of dismissal was filed without the consent of the required parties and they do not consent to it. Additionally, they argue that Ms. Wagner remains an active party in this case as the president and statutory agent, or controlling member, of AMBC.

In addressing Ms. Wagner's more substantive arguments, the moving parties contend that the settlement agreement is discoverable under the liberal standards of *Rule 26*. They note that courts in both this District and the Northern District have found settlement agreements relevant to the issue of damages. To the extent that Ms. Wagner argues that there is no issue of set-off here because this is not a set-off action, they assert that Ohio law holds otherwise. In support of this position, they cite *Ohio Revised Code §2307.28*, and Celmer v. Rodgers, D.O., 2005 WL 3610478 (Trumbull Co. App. Dec. 29, 2005), in which the court held that "[s]etoff of settlement funds has been recognized as a means to protect against [*11] the danger of a double recovery in cases where settlement agreements have been entered into between co-defendants." On this point, they contend that, contrary to Ms. Wagner's position, the Williamsons' remaining claims are directed at all defendants in Case No. 2:09-cv-172, even to the extent that they address the conduct of Cameran Pridmore. They also note that the Lanham Act claim remains pending in Case No. 2:08-cv-431 and that the Williamsons have indicated their intention to seek attorneys' fees against all parties.

As a result, they maintain, the claims against Ms. Wagner cannot be separated from the claims against them, thereby providing the potential for double recovery.

With respect to the issues of collusion or bias, the moving parties argue that they have no way of confirming the state of Ms. Wagner's health and that no evidentiary support has been provided to demonstrate that Ms. Wagner cannot appear for trial. Further, they dismiss her bare statement that no "Mary Carter" agreement exists here as insufficient to demonstrate lack of relevance. They again rely on cases where courts have found a settlement agreement relevant in circumstances similar to those here.

Finally, [*12] the moving parties contend that the settlement privilege is not applicable to a finalized settlement agreement. As a result, they argue that the Court should decline Ms. Wagner's invitation to conduct an in camera review.

III.

Briefly, at the outset, the Court notes that Ms. Wagner has raised the issue of *Fed.R.Evid. 408* in challenging the motion to compel. That rule, however, "governs admissibility rather than discoverability" and cannot be relied upon to prevent the production of the settlement agreement at the discovery stage. *Tanner v. Johnston, 2013 U.S. Dist. LEXIS 3512, 2013 WL 121158, *2 (D. Utah January 8, 2013)*. Ms. Wagner appears to recognize as much in her response. Consequently, as evidenced below, the Court will not be analyzing the issues presented by the current motion to compel in terms of admissibility under *Fed.R.Evid. 408*.

In *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 981 (6th Cir. 2003)*, the Sixth Circuit Court of Appeals recognized a "settlement privilege" which protects settlement negotiations from discovery but does not extend to the terms of the final agreement. In line with this decision, courts within this Circuit have compelled the disclosure of settlement [*13] agreements, including a breakdown of the claims actually settled and the settlement amounts. See, e.g., *Scheuer Hospital v. Lancaster Pollard & Co., 2012 U.S. Dist. LEXIS 160842, 2012 WL 5471135 (E.D. Mich. November 9, 2012)*; *Gardiner v. Kelowna Flightcraft, Ltd., 2011 U.S. Dist. LEXIS 55331, 2011 WL 1990564 (S.D. Ohio May 23, 2011)*; *Oberthaler v. Ameristep Corporation, 2010 U.S. Dist. LEXIS 37367, 2010 WL 1506908 (N.D.*

*Ohio April 13, 2010)*; *Thomas & Marker Const. Co. v. Wal-Mart Stores, Inc., 2008 U.S. Dist. LEXIS 93717, 2008 WL 3200642 (S.D. Ohio August 6, 2008).*

In doing so, courts have not been persuaded by any claim of confidentiality as grounds for precluding the disclosure of a settlement agreement. As explained by the court in Oberthaler:

> [A]greements are not protected from discovery simply because they have been denominated "confidential" by the parties. "[A] general concern for protecting confidential information does not equate to privilege [ ... ].[I]n the context of settlement agreements the mere fact that settling parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality."

*2010 U.S. Dist. LEXIS 37367, [WL] at *1*; [*14] see also *American Guar. and Liab. Ins. Co. v. CTA Acoustics, Inc., No. 05-80--KKC, 2007 U.S. Dist. LEXIS 26485, 2007 WL 1099620, at *4 (E.D. Ky. April 9, 2007)* ("the confidential settlement agreement is not privileged ... [and] is not protected from discovery simply because it has been denominated 'confidential' by the parties"). Rather, the analysis regarding discovery of a settlement agreement, like the one involved here, has focused on the issue of relevance under *Fed.R.Civ.P. 26.*

In light of the above, the only issue before the Court is that of relevance under *Fed.R.Civ.P. 26*. Because there is no issue of privilege here, the Court will not conduct the in camera review Ms. Wagner suggests. See *Gardiner, supra*; *Thomas & Marker, supra.*

Turning to *Rule 26*, the general principles involving the proper scope of discovery are well known. The Federal Rules of Civil Procedure authorize extremely broad discovery. *United States v. Leggett & Platt, Inc., 542 F.2d 655 (6th Cir. 1976)*, cert. denied *430 U.S. 945, 97 S. Ct. 1579, 51 L. Ed. 2d 792 (1977)*. Therefore, *Fed.R.Civ.P. 26* is to be liberally construed in favor of allowing discovery. *Dunn v. Midwestern Indemnity, 88 F.R.D. 191 (S.D. Ohio 1980)*. Any matter that is relevant,

in the sense that it reasonably [*15] may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, *Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499 (6th Cir. 1970)*, and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." *Coleman v. American Red Cross, 23 F.3d 1091, 1097 (6th Cir. 1994).*

Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with the litigation. *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)*. On the other hand, the Court has the duty to deny discovery directed to matters not legitimately within the scope of *Rule 26*, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. See *Herbert v. Lando, 441 U.S. 153, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979)*. Additionally, the Court has discretion to limit or even preclude discovery [*16] which meets the general standard of relevance found in *Rule 26(b)(1)* if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources. See *Fed.R.Civ.P. 26(b)(2)*. Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules. *Rule 26(b)* now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...." Upon a showing of good cause, however, the Court may permit broader discovery of matters "relevant to the subject matter involved in the action." Id.

There is no question that "'[t]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.'" *Guinn v. Mount Carmel Health Systems, 2010 U.S. Dist. LEXIS 85152, 2010 WL 2927254, *5 (S.D. Ohio July 23, 2010)* quoting *Clumm v. Manes, Case No. 2:08--cv--567, 2010 U.S. Dist. LEXIS 52454 (S.D.Ohio May 27, 2010)* (King,

J.); see also *Berryman v. Supervalu Holdings, Inc., 2008 U.S. Dist. LEXIS 93887, 2008 WL 4934007 (S.D. Ohio Nov.18, 2008)* [*17] ("At least when the relevance of a discovery request has been challenged the burden is on the requester to show the relevance of the requested information.") (internal citation omitted). When the information sought appears to be relevant, the party resisting production has the burden of establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm. See *Vickers v. General Motors Corp., 2008 U.S. Dist. LEXIS 75359, 2008 WL 4600997, *2 (W.D. Tenn. September 29, 2008)*.

With respect to confidential settlement agreements specifically, the Court notes that there is some authority for application of a heightened relevancy standard for discovery. See, e.g., *Bottaro v. Hatton Assocs., 96 F.R.D. 158 (D.C.N.Y. 1982)*; *In re Flat Glass Antitrust Litigation, 2013 U.S. Dist. LEXIS 56086, 2013 WL 1703864 (W.D. Pa. April 19, 2013)*. For example, some courts have required the party seeking discovery "'to make a particularized showing that the documents relating to settlement agreements are relevant and likely to lead to the discovery of admissible evidence.'" *Flat Glass Antitrust Litigation, 2013 U.S. Dist. LEXIS 56086, [WL] at *1* (citation omitted). Other courts, however, [*18] have declined to apply such a heightened standard. See, e.g., *Tanner,2013 U.S. Dist. LEXIS 3512, 2013 WL 121158 at *3*; *ABF Capital Management v. Askin Capital, 2000 U.S. Dist. LEXIS 3633, 2000 WL 191698 (S.D.N.Y. Feb. 8, 2000)*. Ms. Wagner has not argued for the Court's application of a heightened relevancy standard here and has not cited to any controlling cases from this Circuit supporting the application of such a standard.

Turning to the moving parties' arguments regarding the settlement agreement, they contend that it is relevant to the issues of Ms. Wagner's bias and credibility as a witness and to the issue of damages. They also argue, to some degree, that its relevance arises from the potential that their knowledge of its contents will promote their own settlement in this matter.

A. Relevance as to Bias and Credibility

With respect to the issue of Ms. Wagner's bias and credibility, the Court notes that settlement agreements frequently are found to be discoverable in order to allow the requesting party to explore these issues with respect to witnesses. See, e.g., *Cadlerock Joint Venture, L.P. v. Royal Indemnity Company, 2012 U.S. Dist. LEXIS 18399, 2012 WL 443316 (N.D. Ohio Feb. 10, 2012)* (settlement agreement relevant to testifying witnesses' credibility and bias); [*19] *Goodyear Tire and Rubber Co. v. Dow Deutschland GMBJ & Co. OHG, 2009 U.S. Dist. LEXIS 100435, 2009 WL 3614959 (N.D. Ohio Oct. 28, 2009)*; *Tanner v. Johnston, 2013 U.S. Dist. LEXIS 3512, 2013 WL 121158, at *5-6*; *Transportation Alliance Bank, Inc. v. Arrow Trucking Co., 2011 U.S. Dist. LEXIS 120942, 2011 WL 4964034, *2 (N.D. Okla. October 19, 2011)*(settlement agreement relevant for purposes of exploring bias and credibility of important fact witness); see also *Thomas & Marker, 2008 U.S. Dist. LEXIS 93717, 2008 WL 3200642, at *2* (requesting party insisted employees of settling party would be called to testify at trial and settle agreement found relevant on issue of their credibility). Settlement agreements also have been found subject to discovery when there is the potential for a witness to testify in person at trial. See, e.g., *Meharg v. I-Flow Corporation, 2009 U.S. Dist. LEXIS 85931, 2009 WL 3032327, *6 (S.D. Ind. Sept. 18, 2009)*. On the other hand, courts have found a confidential settlement agreement not to be relevant to the issue of bias or credibility where there is a stated intention not to call particular witnesses at trial or no indication that particular witnesses will testify. See, e.g., *In re Flat Glass, 2013 U.S. Dist. LEXIS 56086, 2013 WL 1703864, at *1*; *Pamlab, L.L.C. v. Rite Aid Corporation, 2006 U.S. Dist. LEXIS 4620, 2006 WL 186199 (E.D. La. Feb. 7, 2006)*.

Here, Ms. [*20] Wagner was deposed prior to entering into the settlement agreement with the Williamsons. As a result, disclosure of the agreement to assist the moving parties with preparation for her deposition clearly is not necessary and the moving parties do not suggest otherwise. Rather, the focus of their argument as to credibility and bias is directed to Ms. Wagner's trial testimony. Ms. Wagner has represented to the Court, however, that she is in poor health and will not be able to participate in any trial of this matter. The moving parties take issue with this representation and note that no evidence has been presented in support. At the same time, however, the moving parties do not provide any evidence refuting this representation. Accordingly, the Court, at this point, presumes the truthfulness of Ms. Wagner's representations regarding her health. In light of this, as it stands now, this case does not present a situation where the potential bias or

Case 2:13-cv-02289-SHL-dkv   Document 51-1   Filed 11/21/13   Page 17 of 39   PageID 477

Page 7
2013 U.S. Dist. LEXIS 68349, *20

credibility of a trial witness is at issue. This fact easily distinguishes it from the circumstances of the numerous cases where courts somewhat routinely have ordered the disclosure of a settlement agreement. For this reason, the Court is not [*21] persuaded that, at this time, the settlement agreement is relevant to the issues of Ms. Wagner's credibility or bias. Consequently, the motion to compel will not be granted on this ground.

The Court notes that, as an aside, the moving parties mention that the settlement agreement also is relevant to the bias and credibility of the Williamsons. The Court does not find this suggestion persuasive given the Williamsons' posture in this consolidated action relative to the moving parties.

In reaching the above conclusion, the Court is aware of the significance of Ms. Wagner's role in these consolidated actions. Consequently, the moving parties are free to renew their motion to compel regarding the settlement agreement should circumstances change and should it become apparent that Ms. Wagner will provide live testimony at some future date.

B. Relevance as to Damages

The moving parties also argue that the settlement agreement is relevant to the issue of damages or, more specifically, a set-off analysis. Although they briefly reference the pending Lanham Act claim and Mr. Williamson's alleged intention to seek attorneys' fees relating to that claim, they argue the issue of set-off in terms of Ohio [*22] law only. In light of this, the Court understands their argument on the issue of set-off as directed specifically to the Williamsons' state law claims. In making their argument, they rely, without much elaboration, on *O.R.C. §2307.28*. That statute sets forth the effect of a release or a covenant not to sue or not to enforce judgment and provides that the claim against other tortfeasors is reduced by the amount of the consideration paid in exchange for the release. Eysoldt v. Proscan Imaging, 2011 WL 6885346 (Hamilton Co. Dec. 28, 2011); *Spalla v. Fransen, 188 Ohio App.3d 666, 2010 Ohio 3461, 936 N.E.2d 559 (Geauga Co. 2010)*.

According to the moving parties, there is a complete overlap of claims and potential for double recovery by the Williamsons that entitled them to learn the terms of the settlement agreement for purposes of set-off. To the contrary, Ms. Wagner argues that no potential for double recovery exists in this case because there is no overlap of claims. As Ms. Wagner sees it, the remaining claims relate most directly to the actions of Cameran Pridmore.

The Williamsons' three remaining claims are for defamation (Counts VI and VII) and intentional interference with a business relationship (Count IX). The [*23] moving parties argue that because these claims are directed against all defendants, including Ms. Wagner, there is a complete overlap of claims which cannot be separated. It may well be that the settlement agreement is relevant to the issue of set-off in this case. Further, the Court is aware that other courts in this District have found the potential for set-off sufficient to satisfy the relevance standard of *Rule 26* and have compelled the disclosure of settlement agreements in similar circumstances. See *Gardiner, supra*; *Thomas & Marker, supra*. Here, however, the moving parties have not addressed the issue with enough specificity in their current briefing to allow the Court to make a decision on this issue. That is, the moving parties, who, as discussed above, bear the burden on this issue, simply have not met that burden here. They have not, for example, set forth facts about the potentially overlapping claims that would show, or even make likely, that conduct engaged in by Ms. Wagner could form the basis for any claim against them, or that Ms. Wagner's and their actions necessarily combined to produce a single injury. Any conclusions on issues like these would, on the current record, [*24] be nothing more than speculation. Consequently, the motion to compel will not be granted on this ground at this time. However, the moving parties are free to renew their motion to compel if they are able to address this issue more specifically.

C. Relevance as to Potential Dispute Resolution

The moving parties' final argument is that the settlement agreement is relevant to the issue of dispute resolution because it will allow them to assess more accurately the Williamsons' current alleged damages. In making this argument in their motion, they rely on *White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364 (N.D. Ill. 2001)* where the court compelled disclosure of a settlement for, among other reasons, its belief that such disclosure would promote further settlement as well as judicial economy. Ms. Wagner does not specifically address this issue in her response and the moving parties have not raised it again in their reply so there is minimal briefing on this issue. To the extent that the moving parties may continue to rely on such an argument,

however, it is easily addressed.

Other courts addressing this issue have concluded that, simply because access to a settlement agreement may promote [*25] settlement or judicial economy, this potential does not make the agreement relevant. Rather, these courts have concluded that these arguments address the policy reasons in favor of disclosure of settlement agreements, rather than the issue of relevance. See, e.g., *Tanner, 2013 U.S. Dist. LEXIS 3512, 2013 WL 121158, at *6*; *ABF Capital Management, 2000 U.S. Dist. LEXIS 3633, 2000 WL 191698, at *2*; *Centillion Data Systems, Inc. v. Ameritech Corp., 193 F.R.D. 550 (S.D. Ind. 1999)*. The Court agrees that access to a settlement agreement for purposes of evaluation of settlement or negotiation strategy is not an issue directed to relevance. Consequently, the motion to compel will not be granted on this ground.

IV.

For the foregoing reasons, the motion to compel (#174) is denied.

V.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. *28 U.S.C. §636(b)(1)(A)*, *Rule 72(a), Fed. R. Civ. P.*; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven [*26] days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. *S.D. Ohio L.R. 72.3.*

/s/ Terence P. Kemp

United States Magistrate Judge

# EXHIBIT B





Positive
As of: Nov 21, 2013

IN RE: FLAT GLASS ANTITRUST LITIGATION. This document relates to:
JELD-WEN, INC. v. AGC AMERICA, INC., et al.

Misc. 9-180,MDL No. 1942,11-658

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

*2013 U.S. Dist. LEXIS 56086*

April 19, 2013, Decided
April 19, 2013, Filed

**PRIOR HISTORY:** *Jeld-Wen, Inc. v. AGC Am. (In re
Flat Glass Litig.), 2013 U.S. Dist. LEXIS 3699 (W.D. Pa.,
Jan. 10, 2013)*

**COUNSEL:** [*1] For JELD-WEN, INC., Plaintiff:
Christopher G. Emch, Michael K. Vaska, LEAD
ATTORNEYS, PRO HAC VICE, Foster Pepper PLLC,
Seattle, WA; Deborah A. Crabbe, LEAD ATTORNEY,
Foster Pepper PLLC, Seattle, WA; John C. Evans, LEAD
ATTORNEY, Specter Specter Evans & Manogue,
Pittsburgh, PA; Richard J. Kilsheimer, LEAD
ATTORNEY, PRO HAC VICE, Kaplan Fox &
Kilsheimer LLP, New York, NY; Andrew M. Rink, PRO
HAC VICE, JELD-WEN, inc., Klamath Falls, OR;
Robert N. Kaplan, PRO HAC VICE, Kaplan, Kilsheimer
& Fox, New York, NY.

For AGC AMERICA, INC., AGC FLAT GLASS
NORTH AMERICA, INC., Defendants: George E.
McGrann, LEAD ATTORNEY, Schnader, Harrison,
Segal & Lewis, Pittsburgh, PA; Jeremy J. Calsyn, Sam
Lehr, LEAD ATTORNEYS, PRO HAC VICE, Kathleen

W. Bradish, Washington, DCCleary Gottlieb Steen &
Hamilton LLP, Washington, DC; Mark Leddy, LEAD
ATTORNEY, Cleary, Gottlieb, Steen & Hamilton,
Washington, DC.

For GUARDIAN INDUSTRIES CORPORATION,
Defendant: Corey C. Watson, LEAD ATTORNEY, PRO
HAC VICE, Kirkland & Ellis LLP, Los Angeles, CA;
Donna M. Doblick, Reed Smith, Pittsburgh, PA; Tammy
Ann Tsoumas, LEAD ATTORNEY, PRO HAC VICE,
Kirkland and Ellis, Los Angeles, CA.

For PILKINGTON NORTH AMERICA, INC.,
PILKINGTON [*2] HOLDINGS INC., Defendants:
Barbara T. Sicalides, LEAD ATTORNEY, Pepper
Hamilton, Philadelphia, PA; Daniel J. Boland, Michael J.
Hartman, Pepper Hamilton LLP, Philadelphia, PA.

**JUDGES:** Donetta W. Ambrose, Senior United States
District Judge.

**OPINION BY:** Donetta W. Ambrose

## OPINION

### MEMORANDUM ORDER

Before the Court is Defendant's Motion to Compel discovery of a settlement agreement entered into by Plaintiff and dismissed Defendant PPG. Defendant contends that the settlement amount is relevant as evidence of an offset to damages against the remaining Defendants, and as to potential bias or prejudice of PPG witnesses who might testify at trial. Opposing the Motion, Plaintiff contends that it does not intend to call any PPG witnesses to trial, which will occur in Oregon, and that it is willing to produce the settlement agreement, if necessary, after a verdict is rendered in Oregon.

According to *Federal Rule of Civil Procedure 26(b)*, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." In turn, *Federal Rule of Evidence 401* defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence  [*3] to the determination of the action more probable or less probable than it would be without the evidence." Discovery must be "reasonably calculated to lead to the discovery of admissible evidence." *Fed. R. Civ. P. 26(b)(1). Fed. R. Evid. 408*, which makes settlement agreements inadmissible under certain circumstances, rests on a strong policy of encouraging the settlement of disputes. *Sweeten v. Layson's Home Improvements, Inc., No. 4-2771, 2007 U.S. Dist. LEXIS 28826, at *7 (M.D. Pa. Apr. 19, 2007)*. Thus, "the principles underlying *Fed. R. Evid. 408* and *Fed. R. Civ. P. 26* are in conflict." *Fidelity Fed. Sav. & Loan Ass'n v. Felicetti, 148 F.R.D. 532, 534 (E.D. Pa. 1993)*.

The mere fact that settling parties have agreed to maintain the confidentiality of their agreement does not automatically serve to shield the agreement from discovery. We note that several courts have addressed the question of whether a non-settling party should have access to a settlement agreement that is confidential by agreement of the signatories, as is the case here. "None of these courts have blithely permitted discovery, but rather require some heightened showing of

relevance or need."

*Sippel Dev. Co. v. W. Sur. Co., No. 5-46, 2007 U.S. Dist. LEXIS 27644, at *6 (W.D. Pa. Apr. 13, 2007)*  [*4] (citations omitted).

Because public policy favors the settlement of disputes, courts have imposed on the party seeking discovery of a confidential settlement agreement the burden "to make a particularized showing 'that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence.'" *Key Pharmaceuticals, Inc. v. ESI-Lederle, Inc., No. 96-1219, 1997 U.S. Dist. LEXIS 13328, at *8 (E.D. Pa. Aug. 29, 1997)*.

In this case, neither of the grounds for Defendant's Motion is sufficiently compelling. First, although a confidential settlement agreement may be relevant to witness bias, Defendant contends only that the agreement at issue is relevant to the bias of "any PPG witnesses" that might be called at trial. Broad assertions, without more, are insufficient to obtain discovery of a confidential release. See *Doe v. Methacton Sch. Dist., 164 F.R.D. 175, 176 (E.D. Pa. 1995)*. Moreover, Plaintiff has stated its intention not to call any PPG witnesses at trial. Second, Courts within this Circuit have refused to permit discovery of confidential settlement agreements [*5] on grounds that the amount will result in a set-off of damages, because set-off may be addressed after a verdict has been entered. *Dutton v. Todd Shipyards Corp., No. 9-62916, 2009 U.S. Dist. LEXIS 107936 (E.D. Pa. Nov. 17, 2009)*. Although the extent of Defendant's liability is certainly relevant to potential settlement, relevance to settlement negotiations is not relevant to the subject matter of the action, as contemplated by applicable rules and standards.

AND NOW, this 19th day of April, 2013, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Compel is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court

# EXHIBIT C





Cited
As of: Nov 21, 2013

## UNITED STATES OF AMERICA v. ROBERT W. RITCHIE, ETC.

## NO. CIV-3-92-610

## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

### *1992 U.S. Dist. LEXIS 16416*

### October 7, 1992, Filed

**JUDGES:** [*1] HULL

**OPINION BY:** THOMAS G. HULL

**OPINION**

### *ORDER*

Defendant Robert W. Ritchie has moved, pursuant to *Rule 8, Federal Rules of Appellate Procedure*, for a stay of judgment in this case pending his appeal to the United States Court of Appeals for the Sixth Circuit. [Doc.4].

In order to be entitled to a stay, Mr. Ritchie must show: 1) a likelihood that he will prevail on the merits of his appeal; 2) irreparable injury unless the stay is granted; 3) that there is no substantial harm to other persons as a result of the stay; and 4) that there is no harm to the public interest.

Obviously, no substantial harm will come to the IRS if a stay is granted, nor will the public interest be affected. Mr. Ritchie points out that if he now complies with the IRS summons, irreparable injury may occur. First, if the Sixth Circuit should later rule in his favor, it

will be impossible to repair the harm done to his John Doe clients. In addition, to be protected from possible disciplinary proceedings, Mr. Ritchie claims he needs a "final order, not subject to review" before he reveals information his clients have requested he keep secret. He relies upon Advisory Ethics Opinion 90-A-414.

The only difficult question concerns [*2] the likelihood of success on the merits of the appeal. The Sixth Circuit has recently indicated that, to justify granting a stay, a movant need not always establish a high probability of success. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the moving party] will suffer absent the stay." *Michigan Coalition v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991)*.

Since this case is one of first impression in this district and involves a very serious legal question, and since there is a real possibility of irreparable injury if the stay is denied, the motion is hereby **GRANTED.**

The judgment of this Court, entered on September 11, 1992 is hereby **STAYED,** pending appeal to the United States Court of Appeals for the Sixth Circuit.

1992 U.S. Dist. LEXIS 16416, *2


ENTER:                                                UNITED STATES DISTRICT JUDGE

THOMAS G. HULL

# EXHIBIT D





Positive
As of: Nov 21, 2013

**CHANDRA EVANS, Plaintiff, v. WALGREEN COMPANY, Defendant.**

**No. 09-2491**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION**

*2011 U.S. Dist. LEXIS 72192*

**July 5, 2011, Decided**
**July 5, 2011, Filed**

**SUBSEQUENT HISTORY:** Magistrate's recommendation at *Evans v. Walgreen Co., 2011 U.S. Dist. LEXIS 115160 (W.D. Tenn., Aug. 16, 2011)*

**COUNSEL:** [*1] For Chandra Evans, Plaintiff, Counter Defendant: Darrell J. O'Neal, LEAD ATTORNEY, LAW OFFICE OF DARRELL J. O'NEAL, Memphis, TN; Aubrey Pittman, THE PITTMAN LAW FIRM, PC, Dallas, TX; Kristin Kay Schroeder, PRO HAC VICE, THE PITTMAN LAW FIRM, PC, Dallas, TX.

For Walgreen Company, Defendant: J. Gregory Grisham, LEAD ATTORNEY, Frank L. Day, LEITNER WILLIAMS DOOLEY & NAPOLITAN-Memphis, Memphis, TN.

For Walgreen Company, Counter Claimant: J. Gregory Grisham, LEAD ATTORNEY, LEITNER WILLIAMS DOOLEY & NAPOLITAN-Memphis, Memphis, TN.

**JUDGES:** SAMUEL H. MAYS, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** SAMUEL H. MAYS, JR.

**OPINION**

**ORDER DENYING DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO STRIKE**

Before the Court is Defendant Walgreen Company's May 25, 2011 Appeal of the Magistrate Judge's Denial of Defendant's Motion to Strike Specific Statements Asserted in Plaintiff's Affidavits Respectively Filed on October 15, 2010 and November 14, 2010. (Def.'s Appeal of the Magistrate Judge's Denial of Def.'s Mot. to Strike Specific Statements Asserted in Pl.'s Affs. Respectively Filed on October 15, 2010 and November 14, 2010, ECF No. 121.) ("Walgreens Appeal") Plaintiff Chandra Evans ("Evans") responded [*2] in opposition on June 3, 2011. (Pl.'s Resp. to Def.'s Objections to Magistrate Judge Tu M. Pham's May 16, 2011 Order, ECF No. 126.) ("Evans' Resp.") For the following reasons, Walgreen Company's objections to the Magistrate Judge's order are OVERRULED.

**I. Background**

On November 24, 2010, Walgreen Company ("Walgreens") filed a motion to strike certain statements in Evans' affidavits and Evans' additional statements of facts set forth in her responses to Walgreens' motions for summary judgment. (Def.'s Mot. to Strike Specific Statements Asserted in Pl.'s Affs. Respectively Filed on October 15, 2010 and November 14, 2010 and Statements of Fact Asserted in Documents 62 and 63 in Violation of the Local Rules of this Court, ECF No. 66.) ("Walgreens Mot. to Strike") Evans responded in opposition on November 29, 2010. (Pl.'s Resp. and Mem. in Opp'n to Def.'s Mot. to Strike Portions of Pl.'s Affs., ECF No. 67.) The Court referred Walgreens' motion to the Magistrate Judge for a determination. (Order of Reference, ECF No. 69.)

On May 16, 2011, the Magistrate Judge denied Walgreens' motion. (Order Denying Walgreens Company's Mot. to Strike, ECF No. 120.) ("Magistrate Judge's Order") He found that [*3] Evans' statements in her affidavits relating to "coercion" by Walgreens, her reasons for moving to Memphis, whether she signed or acknowledged any agreements with Walgreens, and Walgreens' replacing her with a Caucasian employee did not directly contradict her deposition testimony and declined to strike those statements. (See id. at 4-13.) He also declined to strike Evans' statement of additional facts. (See id. at 13-14.)

Walgreens appealed to this Court on May 25, 2011. (Walgreens Appeal 20.) In its appeal, Walgreens argues that the Magistrate Judge's legal conclusions are contrary to law and that Evans' statements in her affidavits should be struck because they contradict her deposition testimony. (See id. at 2-19.) In her response to Walgreens' appeal, Evans disagrees, arguing that there are no inconsistencies between her deposition testimony and her affidavits and that the Magistrate Judge was correct. (See Evans' Resp. 1-15.)

**II. Standard of Review**

"When a party objects to a magistrate judge's ruling on a non-dispositive matter, the district judge 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009)* [*4] (quoting *Fed. R. Civ. P. 72(a)*); accord *Bell v. Ameritech Sickness & Accident Disability Benefit Plan, 399 F. App'x 991, 997 n.5 (6th Cir. 2010)* ("Under *28 U.S.C. § 636(b)(1)(A)*

, a district judge may refer a nondispositive pretrial matter to a magistrate to hear and decide. The magistrate judge must then issue an 'order stating the decision.' Unlike the 'recommended disposition' that a magistrate judge issues on a dispositive motion, this order is binding. The parties may object to the order, but it remains binding except to the extent that the district court modifies or sets aside any part of the order that is clearly erroneous or contrary to law.") (citations omitted); *Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003)* ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures." (citing *28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)*)); *United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001)* ("A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A)." (citing *United States v. Raddatz, 447 U.S. 667, 673, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980)))*.

"The [*5] 'clearly erroneous' standard applies only to factual findings made by the Magistrate Judge, while [his] legal conclusions will be reviewed under the more lenient 'contrary to law' standard." *Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d at 605* (quoting *Gandee v. Glaser, 785 F. Supp. 684, 686 (S.D. Ohio 1992)*, aff'd, *19 F.3d 1432 (6th Cir. 1994))*. "A district court's review under the contrary to law standard is plenary, and it may overturn any conclusions of law which contradict or ignore applicable precepts of law . . . Thus, [a district court] must exercise its independent judgment with respect to a Magistrate Judge's legal conclusions." *Id. at 605-06* (quoting *Gandee, 785 F. Supp. at 686*) (internal quotation marks omitted).

**III. Analysis**

Walgreens argues that certain portions of Evans' affidavits should be struck: (1) allegedly conclusory statements in paragraphs 14 and 18 of Evans' affidavits; (2) Evans' statements in paragraphs 14 and 18 of her affidavits that Puamuh Ghogomu ("Ghogomu"), an in-house counsel for Walgreens who works in the employee relations department, told her what to write in a statement Evans provided to Walgreens; (3) Evans' statements in her affidavits about [*6] her reasons for moving to Memphis; and (4) Evans' statements in paragraph 4 of her affidavits that she did not sign or acknowledge an agreement about her bonus. (See Walgreens Appeal 4-19.) Evans disagrees and argues that

2011 U.S. Dist. LEXIS 72192, *6

the Magistrate Judge correctly denied Walgreens' motion to strike. (See Evans' Resp. 1-15.)

### A. Allegedly Conclusory Statements in Paragraphs 14 and 18 of Evans' Affidavits

Walgreens argues that paragraphs 14 and 18 of Evans' affidavits contain conclusory statements that the Court should not consider as part of its summary judgment analysis. (See Walgreens Appeal 5.) The portions of paragraphs 14 and 18 to which Walgreens objects state:

> I was led by Ghogomu to believe that if I did [meet with Steve Walker and Jacob Tibbe and provide statements to them] everything would be fine, and I would be allowed to continue to work at Walgreens.
>
> . . .
>
> My statement was coerced by Walgreen's management, including Ghogomu who gave me legal advice as to whether to prepare the statement . . . .

(Aff. of Chandra Evans ¶¶ 14, 18, ECF No. 62-1; Aff. of Chandra Evans ¶¶ 14, 18, ECF No. 63-1.)

As a threshold matter, Walgreens does not appear to have expressly made this argument to the Magistrate [*7] Judge in its motion to strike. (See Walgreens Mot. to Strike 1-2; Mem. in Supp. of Def.'s Mot. to Strike Specific Statements Asserted in Pl.'s Affs. 1-13, ECF No. 66-1.) The Magistrate Judge did not address Walgreens' argument in his order. (See Magistrate Judge's Order 1-14.) Because "[t]his Court cannot address arguments on objection to a nondispositive pretrial order unless the Magistrate Judge had occasion to address them," Walgreens has waived this argument. *Hann v. Michigan, No. 05-CV-71347, 2007 U.S. Dist. LEXIS 87604, 2007 WL 4219384, at *3 (E.D. Mich. Nov. 29, 2007)* (citation omitted).

Regardless, Evans' statements explain her motivations for taking certain actions, providing context for issues in this case. They are not her only evidence in opposing Walgreens' summary judgment motions. Walgreens' argument that these statements should be struck because they are irrelevant is not well-taken. (See Walgreens Appeal 5.)

### B. Evans' Statements in Paragraphs 14 and 18 of Affidavits that Ghogomu Told Her What to Write in Statement

Walgreens argues that Evans' statements in paragraphs 14 and 18 of her affidavits that Ghogomu told her what to write in a statement she provided to Walgreens should be struck because they [*8] directly contradict her deposition testimony. (See id. 5-12.) Alternatively, Walgreens argues that the statements are an attempt to create a sham issue of fact and should be disregarded. (See id. at 5, 12-13.)

Evans states in paragraphs 14 and 18 of her affidavits:

> During the conversations with me, Ghogomu repeated to me what others were saying about what allegedly happened during the incidents we discussed. He told me his [sic] is what he wanted me to include in my written statement. He told me that I should meet with Steve Walker and Jacob Tibbe and provide these statements to these men. I was led by Ghogomu to believe that if I did that everything would be fine, and I would be allowed to continue to work at Walgreens.
>
> . . .
>
> My statement was coerced by Walgreen's management, including Ghogomu who gave me legal advice as to whether to prepare the statement and what should be included in it.

(Aff. of Chandra Evans ¶¶ 14, 18, ECF No. 62-1; Aff. of Chandra Evans ¶¶ 14, 18, ECF No. 63-1.) As the Magistrate Judge noted, Evans was not asked during her deposition whether Ghogomu told her what information to include in her written statement, why she agreed to provide the written statement, and [*9] whether she felt she would be able to keep her job if she provided a statement. (See Magistrate Judge's Order 6; see also Walgreens Appeal 5-10; Evans Dep., ECF No. 66-4.)

"[A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn

testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006)* (citation omitted). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* (citation omitted). "If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Id.* (citation omitted); accord *O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 593 (6th Cir. 2009)*. When a party who was not directly questioned about an issue supplements incomplete deposition testimony with a sworn affidavit, "[s]uch an affidavit fills a gap left open by the moving party and thus provides [*10] the district court with more information, rather than less, at the crucial summary judgment stage." *Aerel, S.R.L., 448 F.3d at 907*.

Here, the Magistrate Judge correctly found that paragraphs 14 and 18 of Evans' affidavit do not contradict her deposition testimony. (See Magistrate Judge's Order 6.) This is not a case of direct contradiction, as when a deponent states a fact during her deposition and denies that fact in her post-deposition affidavit. See, e.g., *White v. Baptist Mem'l Health Care Corp., No. 08-2478, 2011 U.S. Dist. LEXIS 30406, 2011 WL 1100242, at *6 (W.D. Tenn. Mar. 23, 2011)* (finding direct contradiction and disregarding part of a plaintiff's affidavit where the plaintiff stated during her deposition that she recorded in an exception log when she did not receive a full lunch break and asserted in a post-deposition affidavit that she "did not know [she] could claim payment for meal breaks when [she] was interrupted and did not receive [her] entire break").

Walgreens has not demonstrated that the Magistrate Judge's order denying its motion to strike the statements in paragraphs 14 and 28 of Evans' affidavits is clearly erroneous or contrary to law. Walgreens also has not demonstrated that [*11] the Magistrate Judge erred in concluding that Evans' affidavit is not an attempt to create a sham fact issue. Therefore, Walgreens' objections to those aspects of the Magistrate Judge's order are overruled. See *Bell, 399 F. App'x at 997 n.5*; *Baker, 67 F. App'x at 310*; *Curtis, 237 F.3d at 603*; *Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d at 605*; see also *O'Brien, 575 F.3d at 593*; *Aerel, S.R.L., 448 F.3d at 908*.

**C. Evans' Statements in Affidavits About Reasons for**

**Moving to Memphis**

Walgreens argues that Evans' statements in her affidavits and memoranda about her reasons for moving to Memphis should be struck because they directly contradict her deposition testimony. (See Walgreens Appeal 13-16.) Evans states in her affidavits:

> I was recruited to come and work in Memphis by Walgreens representative Eugene Hoover, who made promises to me to convince me to leave North Carolina and come to Memphis.

> Mr. [*12] Hoover discussed the sign-on bonus and relocation with me and never informed me of any obligation to repay the bonuses if Walgreens terminated me. Hoover also informed me that Walgreens would employ me as a pharmacist for at least three years since it was providing me with the sign-on bonuses.

> In reliance on Walgreens' representation, I moved from North Carolina to Memphis in or about August 2006. I graduated from pharmacy school in December 2006 and became a licensed pharmacist in January 2007.

> In or about 2006, while a resident of the State of North Carolina, I had a lengthy conversation with Eugene Hoover wherein after he discussed with me the bonus and other benefits, he told me I would work in the East district of Memphis for three (3) years once I arrived in Memphis. Hoover never told me that there was any expectation that any compensation provided to [me] would ever have to be repaid.

> Based on Mr. Hoover's contractual promises, I chose to uproot from my family and move to Memphis to work with Walgreen.

(Aff. of Chandra Evans ¶¶ 3-5, ECF No. 46-1; Aff. of Chandra Evans ¶¶ 3, 5-6, ECF No. 62-1; Aff. of Chandra Evans ¶¶ 3, 5-6, ECF No. 63-1.)

Evans testified during her deposition that [*13] she did not recall or remember many of the details of the conversations she had with Hoover or other Walgreens representatives. (See Magistrate Judge's Order 8; see also Walgreens Appeal 14-16; Evans Dep., ECF No. 66-4.) When asked, "[W]hat prompted you to, I guess, take an option to come to Memphis versus staying in North Carolina," Evans responded, "There was no particular reason." (Evans. Dep. 148:1-4.) She also said that there were no particular advantages in moving to Memphis and that Hoover made no promises to her about "working at this particular store or this district." (See id. 148:5-11, 149:8-14.)

The Magistrate Judge is correct that Evans' statements in her affidavits do not directly contradict her deposition testimony. (See Magistrate Judge's Order 8.) Unlike White, Evans never affirmatively stated a fact during her deposition and then asserted the opposite in a post-deposition affidavit. See *White, 2011 U.S. Dist. LEXIS 30406, 2011 WL 1100242, at *6*. The statements in her affidavits are not an attempt to create a sham fact issue. Walgreens has not demonstrated that the Magistrate Judge's order denying its motion to strike Evans' statements about her reasons for moving is clearly erroneous or contrary [*14] to law. Therefore, Walgreens' objections to that aspect of the Magistrate Judge's order are overruled. See *Bell, 399 F. App'x at 997 n.5*; *Baker, 67 F. App'x at 310*; *Curtis, 237 F.3d at 603*; *Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d at 605*; see also *O'Brien, 575 F.3d at 593*; *Aerel, S.R.L., 448 F.3d at 908*.

### D. Evans' Statements in Paragraphs 4 and 8 of Affidavits that She Did Not Sign or Acknowledge an Agreement About Bonus

Walgreens argues that Evans' statements in her affidavits denying that she signed or acknowledged an agreement about her bonus should be struck because they directly contradict her deposition testimony. (See Walgreens Appeal 16-18.) Evans stated in her affidavits:

> I did not sign the documents that are attached to Defendant's counterclaim.

> The first time I saw the alleged written bonus document was during the course of this litigation. I did not sign or acknowledge this agreement.

(Aff. of Chandra Evans ¶ 8, ECF No. 46-1; Aff. of Chandra Evans ¶ 4, ECF No. 62-1; Aff. of Chandra Evans ¶ 4, ECF No. 63-1.) Evans testified during her deposition that she did not remember receiving a copy of the agreement or signing any agreements with Walgreens. (See Magistrate Judge's [*15] Order 11-12; see also Walgreens Appeal 17; Evans Dep., ECF No. 66-4.)

The Magistrate Judge is correct that Evans' statements in her affidavits do not directly contradict her deposition testimony. (See Magistrate Judge's Order 11-12.) Evans never testified that she did or did not sign the bonus agreement. (See, e.g., id.; Evans Dep., ECF No. 66-4.) The statements in her affidavits are not an attempt to create a sham fact issue. Walgreens has not demonstrated that the Magistrate Judge's order denying its motion to strike Evans' statements in her affidavits that she did not sign or acknowledge an agreement about her bonus is clearly erroneous or contrary to law. Therefore, Walgreens' objections to that aspect of the Magistrate Judge's order are overruled. See *Bell, 399 F. App'x at 997 n.5*; *Baker, 67 F. App'x at 310*; *Curtis, 237 F.3d at 603*; *Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d at 605*; see also *O'Brien, 575 F.3d at 593*; *Aerel, S.R.L., 448 F.3d at 908*.

### IV. Conclusion

For the foregoing reasons, Walgreens' objections to the Magistrate Judge's order are OVERRULED. The statements in Evans' affidavits that Walgreens challenges do not directly contradict her deposition testimony and [*16] do not constitute sham issues.

So ordered this 5th day of July, 2011.

/s/ Samuel H. Mays, Jr.

SAMUEL H. MAYS, JR.

UNITED STATES DISTRICT JUDGE





Cited
As of: Nov 21, 2013

**DELORNE MARKEITH GUIDEN, Plaintiff v. LEATT CORPORATION, Defendant**

**CIVIL ACTION NO. 5:10-CV-00175**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, PADUCAH DIVISION**

*2013 U.S. Dist. LEXIS 118355*

**August 20, 2013, Decided
August 21, 2013, Filed**

**COUNSEL:** [*1] For Delorne Markeith Guiden, Plaintiff: C. Thomas Miller, Jonathan R. Oliver, Whitlow, Roberts, Houston & Straub, PLLC, Paducah, KY; Evan D. Williams, Roseville, CA.

For Leatt Corporation, Defendant: Julie Ann Tennyson, Richard L. Walter, LEAD ATTORNEYS, Boehl Stopher & Graves, LLP - Paducah, Paducah, KY.

**JUDGES:** Thomas B. Russell, Senior Judge.

**OPINION BY:** Thomas B. Russell

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Leatt Corporation's (Leatt) "Motion to Alter or Amend Magistrate Judge's Opinion at Docket Number 67." (Docket No. 69.) In its instant Motion, Leatt objects to a discovery order of the Magistrate Judge that granted Plaintiff Delorne Markeith Guiden's motion to compel production of certain deposition transcripts and expert reports. In essence, Leatt argues that the Magistrate erred in determining the relevancy of the propounded discovery, did not correctly apply the facts to the protective-order issue, and failed to properly weigh the burden and expense of production against the likely benefit. Guiden has responded, (Docket No. 74), and Leatt has replied, (Docket No. 77). This matter is now ripe for adjudication. For the reasons that follow, Leatt's Motion will [*2] be DENIED.

BACKGROUND

The Court previously referred this matter to the Magistrate Judge for ruling on all discovery motions. (*See* Docket No. 57.) At issue here is the Magistrate Judge's Order of April 30, 2013, in which the Magistrate Judge granted Guiden's motion to compel Leatt to produce certain deposition transcripts and expert reports from other personal injury lawsuits concerning the same or similar Leatt products as is at issue in this litigation. (Docket No. 67.) The Magistrate Judge referred to this

discovery material as the "Prior Cases Documents." (Docket No. 67, at 1-2.) The Magistrate Judge began by noting Leatt's objections to producing the requested discovery "on the grounds that they are (1) irrelevant; (2) barred by protective orders granted in the prior cases; (3) unreasonably cumulative or duplicative, and Guiden could take the deposition of these witnesses; and (4) the burden of producing the Prior Case Documents outweighs the benefits." (Docket No. 67, at 2.) The Magistrate Judge then proceeded to address each of Leatt's arguments against production.

First, the Magistrate Judge concluded that the Prior Cases Documents sought by Guiden are relevant. (Docket No. 67, [*3] at 2.) Citing *Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 380 (W.D. Ky. 2007)*, the Magistrate Judge found that Leatt, as the party resisting production, bore the burden of showing that the material sought was not relevant. (Docket No. 67, at 3.) The Magistrate Judge then addressed Leatt's argument that the discovery sought was not relevant because "all accident scenarios are different and are not comparable," concluding:

> Even assuming that all accidents are different, the performance of a brace in one accident may be indicative of how that brace would perform in a similar accident. Additionally, to the extent a deponent discusses manufacturing techniques, materials used, or other production specifics that overlap between braces, that testimony would be relevant. Finally, Plaintiff does present evidence that the other lawsuits against Leatt involve similar injuries and motorcycles accidents.
>
> In short, the Prior Case Documents fall under the "broad" scope of discovery. Unless a privilege or other excuse applies, the Prior Case Documents are discoverable by Guiden.

(Docket No. 67, at 3 (citations omitted) (citing *Lewis v. ACB Bus. Servs., 135 F.3d 389 (6th Cir. 1998))*.)

Second, [*4] the Magistrate Judge proceeded to discuss the four factors courts typically consider when asked to compel discovery that potentially conflicts with a protective order issued by another court. (Docket No.

67, at 4-5.) After addressing each of these factors, the Magistrate Judge concluded that the Prior Cases Documents are not barred from production by another court's protective orders. (Docket No. 67, at 4.)

Third, the Magistrate Judge found that Leatt had not met its burden of establishing that the discovery sought was unreasonably cumulative or duplicative. (Docket No. 67, at 5.) The Magistrate Judge explained that "[p]revious depositions may expose inconsistencies in statements, open new lines of questioning, and disclose witnesses that Guiden may be interested in depositing." (Docket No. 67, at 6.) Thus, the Magistrate Judge concluded that the Prior Case Documents are not unreasonably cumulative or duplicative and that those documents serve a purpose separate from Guiden's own depositions. (Docket No. 67, at 5.)

Fourth, the Magistrate Judge found that the burden of producing the Prior Cases Documents does not outweigh the benefit of producing those documents. (Docket No. 67, at 6.)

Accordingly, [*5] the Magistrate Judge ultimately granted Guiden's motion to compel and ordered that Leatt produce the requested discovery within 21 days. (Docket No. 67, at 6-7.) Fourteen days later, on May 14, 2013, Leatt filed its instant Motion to Alter or Amend the Magistrate Judge's ruling. (Docket No. 69.) at 6-7.) Fourteen days later, on May 14, 2013, Leatt filed its instant Motion to Alter or Amend the Magistrate Judge's ruling. (Docket No. 69.) at 6-7.) Fourteen days later, on May 14, 2013, Leatt filed its instant Motion to Alter or Amend the Magistrate Judge's ruling. (Docket No. 69.)[1]

> 1   The Court further notes that at present, it appears Leatt has not yet complied with the Magistrate Judge's Order and, despite filing its instant Motion, has not specifically filed a motion to stay enforcement of the Magistrate Judge's Order.

STANDARD OF REVIEW

This matter was referred to the Magistrate Judge pursuant to *28 U.S.C. § 636*, which Congress specifically enacted to relieve the burden of the federal courts by permitting assignment of certain duties to magistrate judges. *Gomez v. United States, 490 U.S. 858, 869-70, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989). Section 636(b)* identifies the powers that may be assigned to magistrates

by the [*6] district court. It also sets out the applicable standard of review for objections to the ruling of a Magistrate Judge on such assigned matters. See *28 U.S.C. § 636(b)* ("A judge of the court may reconsider any pretrial matter under subparagraph (A) [relating to nondispositive orders] where it has been shown that the magistrate's order is clearly erroneous or contrary to law."). In *United States v. Curtis*, the Sixth Circuit explained:

> Thus, *§ 636(b)* creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall apply a "clearly erroneous or contrary to law" standard of review for the "nondispositive, preliminary measures of *§ 636(b)(1)(A)*." *United States v. Raddatz, 447 U.S. 667, 673, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980)*. Conversely, "dispositive motions" accepted from *§ 636(b)(1)(A)*, such as motions for summary judgment or for the suppression of evidence, are governed by the *de novo* standard. *Id. at 674*.

*237 F.3d 598, 603 (6th Cir. 2001)*. The language of *Fed. R. Civ. P. 72* "has implemented this statutory provision." *Callier v. Gray, 167 F.3d 977, 980 (6th Cir. 1999)*. The relevant portion of *Rule 72* provides in *subsection (a)* that [*7] this Court shall consider objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Fed. R. Civ. P. 72(a)*.

This Circuit holds that this standard of review is a limited one. *See Massey v. City of Ferndale, 7 F.3d 506, 509 (6th Cir. 1993)* ("When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review.") (citing *28 U.S.C. § 636(b)(1)(A)*); *see generally* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure*, § 3068 (West 2007) (*Rule 72* is designed to implement the legislative mandate of *Section 636(b)(1)*, the provision in the 1976 amendments to the Act that clarified and expanded the authority that a district court may delegate to a magistrate judge in pretrial matters.).

Several decisions from the courts of this circuit discuss the "clearly erroneous" and the "contrary to law" standard found in *§ 636(b)(1)(A)* and *Rule 72(a)*. In *Tri-Star Airlines, Inc. v. Willis Careen Corp. of L.A.*, our sister district [*8] court for the Western District of Tennessee explained:

> A judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with 'a definite and firm conviction that a mistake has been committed.' *Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir. 1985)*. Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or the only conclusion that can be drawn from the evidence. Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable. *Id.*

*75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999)*; *see also In re Search Warrants Issued Aug. 29, 1994, 889 F. Supp. 296, 298 (S.D. Ohio 1995)* ("Review under *Rule 72(a)* provides 'considerable deference to the determination of the magistrates.' A finding is clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been committed." (citations omitted)).

Numerous [*9] other federal courts have commented on the discretion afforded to magistrate judges under *Rule 72(a)* when resolving the discovery disputes. *See e.g., Carmona v. Wright, 233 F.R.D. 270, 276 (N.D.N.Y. 2006)* ("Because the nondispositive review standard is highly deferential, magistrate judges have broad discretion to regulate nondispositive matters, and reversal is warranted only if that discretion is abused. Although legal authority may support an objection, the critical inquiry is whether there is legal authority that supports the magistrate's conclusion, in which there is no abuse of discretion. That reasonable minds may differ on the wisdom of a legal conclusion does not mean it is clearly erroneous or contrary to law."); *Neighborhood Dev.*

*Collaborative v. Murphy*, 233 F.R.D. 436, 438 (D. Md. 2005) ("Court[s] have consistently found discovery motions to be non-dispositive within the meaning of *Rule 72(a)*. A district court owes substantial deference to a magistrate judge in considering a magistrate judge's ruling on a non-dispositive motion." (citations omitted)); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005) ("The party seeking to reverse a magistrate [*10] judge's ruling concerning discovery bears a heavy burden, in part because the magistrate judge is afforded broad discretion in these matter."); *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) ("A magistrate judge is accorded wide discretion in addressing non-dispositive motions. A court may not reverse, modify, or vacate a magistrate judge's order adjudicating a nondispositive motion unless that order is clearly erroneous or contrary to law. This is so even if we would have decided the issue differently."); *Estates of Ungar & Ungar, ex rel. Strichman v. Palestinian Auth.*, 325 F. Supp. 2d 15, 25 (D.R.I. 2004) ("In conducting . . . [its] review, the district court must refrain from second guessing the magistrate judge's pre-trial discovery rulings."); *EEOC v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) ("A magistrate judge's resolution of discovery disputes deserves substantial deference and is overruled only if there is an abuse of discretion."); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997) (remarking that the deferential standard of review under *Rule 72(a)* is "especially appropriate where the magistrate judge has managed [*11] [a] . . . case from the outset and developed a thorough knowledge of the proceedings.").

A different standard applies when the district court examines the legal conclusions of a magistrate judge. The legal conclusions of a magistrate judge "are reviewed under the plenary 'contrary to law' standard." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), affirmed, 19 F.3d 1432 (6th Cir. 1994)). Legal conclusions of the magistrate judge that contradict or ignore applicable precepts of law found in the Constitution, statutes, or case precedent may be overturned. *Gandee*, 785 F. Supp. at 686 (citing *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983)). Accordingly, a district court must exercise its independent judgment with respect to the legal conclusions of a magistrate judge on review pursuant to *Fed. R. Civ. P. 72(a)*. *Id.* (citing *Hawkins v. Ohio Bell*

*Tel. Co.*, 93 F.R.D. 547, 551 (S.D. Ohio 1982), affirmed, 785 F.2d 308 (6th Cir. 1986)); see also *In re Natural Gas Commodities Litig.*, 232 F.R.D. 208, 211 (S.D.N.Y. 2005) ("An order may be deemed 'contrary to law' when it 'fails to apply [*12] or misapplies relevant statutes, case law, or rules of procedure.'") (citing *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

Furthermore, the filing of an objection does not automatically stay a Magistrate Judge's order to produce discovery. See *City of Ecorse v. U.S. Steel*, 2008 U.S. Dist. LEXIS 19323, 2008 WL 686241, at *1 (E.D. Mich. Mar. 13, 2008). "Merely filing a motion for such relief does not excuse the moving party from fully complying with the order appealed from until a court grants a stay and relieves the party of its obligation to comply with a challenged order." *Id.* (quoting *Am. Rock Salt Co.*, 371 F. Supp. 2d at 360; see also *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 124 F.R.D. 75, 78-79 (S.D.N.Y. 1989) (finding that the filing of objections to a magistrate judge's order does not automatically stay the order). See generally *Maness v. Meyers*, 419 U.S. 449, 458, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

DISCUSSION

In [*13] their instant Motion, Leatt raises five principal challenges to the Magistrate Judge's Order: (1) the Magistrate Judge did not make a determination whether the material sought appeared to be relevant and, in failing to do so, improperly assigned the burden to Leatt to establish that the discovery being sought was outside the scope of relevance; (2) the Magistrate Judge incorrectly applied the facts to the protective-order issue; (3) the Magistrate Judge improperly applied the relevance standard to the question whether the discovery sought was cumulative or duplicative; (4) the Magistrate Judge erred in concluding that the burden and expense were outweighed by the likely benefit; and (5) the Magistrate Judge's opinion is unclear. (Docket No. 69-1, at 6-13.) The Court will briefly address each in turn.

I.

First, the Magistrate Judge's analysis of relevancy

was neither clearly erroneous nor contrary to law. Leatt's contends: "As a threshold matter, the Court must determine whether 'the material sought appears to be relevant.' The Court did not make that determination in this case." (Docket No. 69-1, at 6 (quoting *Invesco, 244 F.R.D. at 380*).) Leatt further argues that because the Magistrate [*14] Judge failed to determine whether the discovery appeared to be relevant, he erred by not assigning the burden to Guiden to show that the discovery sought was, in fact, relevant. Leatt's argument is without merit. The Magistrate Judge expressly stated in the first heading of his discussion: "**The Prior Cases Documents Sought by Guiden are Relevant.**" (Docket No. 67, at 2.) The Magistrate Judge thus determined not only that the material *appeared* to be relevant but also that it *was* relevant. It follows that the Magistrate Judge properly assigned the burden to Leatt, as the party resisting production, to demonstrate that the requested discovery "does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosures." *Invesco, 244 F.R.D. at 380.* Accordingly, the Court finds that the Magistrate Judge's conclusion was neither clearly erroneous nor contrary to law.

II.

Second, the Magistrate Judge's analysis of the protective-order issue was neither clearly erroneous nor contrary to law. Leatt's principal contention here is that the Magistrate Judge failed to accord proper deference [*15] and comity to a protective order entered by the Northern District of Ohio in the case *Barrington v. Leatt Corp.,* No. 5:11CV2759. (Docket No. 60-3, at 13-15.) In *Barrington,* the plaintiff sought a "sharing" protective order that would allow him to share discovery with counsel for similarly situated plaintiffs in other matters. (*See* Docket No. 60-3, at 13.) The court denied that request, finding that the plaintiff had failed to demonstrate a need to share the confidential information that would be provided in discovery with similarly situated plaintiffs in other cases. (Docket No. 60-3, at 15.) Thus, the particular issue there was whether that plaintiff could share the confidential information produced by Leatt with other plaintiffs. Even according all due deference and comity to the Northern District of Ohio, its adjudication of that issue is inapposite here because the protective order in that case considered the sharing issue solely from the perspective of whether the

*Barrington* plaintiff should be permitted to share information with other plaintiffs. In the case at hand, Guiden is not requesting discovery from the *Barrington* plaintiff or any other non-Leatt party, which would be [*16] the only way Guiden could run afoul of the Northern District of Ohio's protective order.

Furthermore, since briefing was completed on Leatt's instant Motion, this Court entered an Agreed Protective Order governing the designation and disclosure of confidential information disclosed in this case, (Docket No. 28), which should serve to alleviate any further concerns Leatt may have over producing discovery it wishes to remain confidential. Accordingly, the Court is satisfied that the Magistrate Judge's analysis of the protective-order issue was neither clearly erroneous nor contrary to law.

III.

Third, the Magistrate Judge's analysis of whether the discovery sought by Guiden is unreasonably cumulative or duplicate was neither clearly erroneous nor contrary to law. The arguments now advanced by Leatt appear to be the exact same arguments previously considered and rejected by the Magistrate Judge. The Magistrate Judge did not abuse his discretion in rejecting those arguments, and the Court finds no basis to suggest that the Magistrate Judge's decision was clearly erroneous or contrary to law.

IV.

Fourth, the Magistrate Judge's analysis of whether the burden and expense outweigh the likely benefit [*17] was neither clearly erroneous nor contrary to law. The Magistrate Judge noted that his Order granting Guiden's motion to compel "pertains to deposition transcripts and expert reports that already exist in the specific lawsuits listed below" before expressly concluding that the production sought was not overly burdensome. The Magistrate Judge further noted that Leatt's duty to supplement its discovery responses, should further documents be created in other litigation, is governed by *Fed. R. Civ. P. 26(e)(2).* The Magistrate Judge then declined to preemptively address disputes over such production, stating, "[s]hould a dispute arise over production [of] additional documents, the Court will address it when there is an actual controversy." (Docket No. 67, at 6.)

In its instant Motion, Leatt repeats verbatim the arguments it previously made to the Magistrate Judge. (*Compare* Docket No. 69-1, at 11-13, *with* Docket No. 60, at 10-12.) Those arguments were considered and implicitly rejected by the Magistrate Judge's April 30 Order. The Magistrate Judge did not abuse his discretion in finding Leatt's arguments unpersuasive. Accordingly, the Court finds no basis to conclude that the Magistrate Judge's [*18] decision is clearly erroneous or contrary to law.

V.

Fifth, Leatt closes by arguing that the Magistrate Judge's opinion is unclear because it: "does not address the difference between current and former employees. Leatt believes that it only addressed current employees." (Docket No. 69-1, at 13.) The Court reads no such distinction in the Magistrate Judge's Order, which plainly states, without qualification, that "Leatt shall produce from each case listed below (a) the deposition transcripts and exhibits of *each employee actually deposed.*" (Docket No. 67, at 6 (emphasis added).)

VI.

As a final matter, the Court notes that Leatt has not filed a motion to stay enforcement of the Magistrate Judge's Order and, as of the time Guiden responded to

Leatt's instant Motion, had not produced the discovery ordered by the Magistrate Judge. Leatt thus is in violation of that Order at this time. *See, e.g., City of Ecorse, 2008 U.S. Dist. LEXIS 19323, 2008 WL 686241, at *1.*

CONCLUSION

Therefore, having considered the Magistrate Judge's Order and Leatt's instant Motion, and having found that the Magistrate Judge's decision to grant Plaintiff Guiden's motion to compel was neither clearly erroneous nor contrary to law;

IT IS HEREBY ORDERED [*19] that Defendant Leatt Corporation's "Motion to Alter or Amend Magistrate Judge's Opinion at Docket Number 67," (Docket No. 69), is DENIED. Leatt shall comply with the Magistrate Judge's Order by immediately producing the discovery materials as ordered by the Magistrate Judge.

IT IS SO ORDERED.

Date: August 20, 2013

/s/ Thomas B. Russell

**Thomas B. Russell, Senior Judge**

**United States District Court**





Analysis
As of: Nov 21, 2013

CITY OF ECORSE, Plaintiff, vs. UNITED STATES STEEL, Defendant.

CIVIL ACTION NO. 07-cv-12131

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

*2008 U.S. Dist. LEXIS 19323*

March 13, 2008, Decided
March 13, 2008, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted by, in part *City of Ecorse v. United States Steel, 2009 U.S. Dist. LEXIS 13648 ( E.D. Mich., Feb. 23, 2009)*

**PRIOR HISTORY:** *City of Ecorse v. United States Steel, 2007 U.S. Dist. LEXIS 88343 ( E.D. Mich., Dec. 3, 2007)*

**COUNSEL:** [*1] For Ecorse, City of, Plaintiff: George D. Lyons, LEAD ATTORNEY, Brandy and Lyons, Detroit, MI; David F. Greco, Donald J. Gasiorek, Gasiorek, Morgan, Farmington Hills, MI.

For United States Steel, Defendant, Counter Claimant: Mark W. McInerney, Sara E. Hopkins, LEAD ATTORNEYS, Clark Hill (Detroit), Detroit, MI.

For Ecorse, City of, Counter Defendant: George D. Lyons, LEAD ATTORNEY, Brandy and Lyons, Detroit, MI; David F. Greco, Donald J. Gasiorek, Gasiorek, Morgan, Farmington Hills, MI; Michael J. Sharpe, Detroit, MI.

**JUDGES:** MAGISTRATE JUDGE MONA K. MAJZOUB. DISTRICT JUDGE JOHN CORBETT O'MEARA

**OPINION BY:** MONA K. MAJZOUB

**OPINION**

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS AND TO EXTEND DEADLINE TO REVIEW DISCOVERY MATERIALS IN DEFENDANT'S POSSESSION; (sic) CUSTODY OR CONTROL OF DEFENDANT'S ATTORNEYS (DOCKET NO. 37)**

These matters come before the Court on Plaintiff's Motion for Sanctions and to Extend Deadline to Review Discovery Materials in Defendant's Possession; (sic) Custody or Control of Defendant's Attorneys filed on December 18, 2007. (Docket no. 37). Defendant filed a Response in Opposition to Plaintiff's "Motion for Sanctions and to Extend Deadline to Review Discovery Material in Defendant's [*2] Possession; Custody or

2008 U.S. Dist. LEXIS 19323, *2

Control of Defendant's Attorney (sic)" on January 2, 2008. (Docket no. 39). The motions were referred to the undersigned for hearing and determination pursuant to *28 U.S.C. 636(b)(1)(A)*. (Docket no. 45). The Court disposes with oral argument on this Motion. E.D. Mich. LR 7.1(e). (Docket no. 46).

This case originated in Wayne County Circuit Court and was removed to this Court by Defendant on the basis of diversity jurisdiction. *28 U.S.C. § 1332*. Plaintiff brought suit seeking unpaid annual fees, building permit fees, plan review fees and penalties it alleges are due pursuant to Plaintiff's ordinances. Plaintiff also seeks a constructive trust for unpaid fees and penalties and makes a demand for an inspection and accounting, a demand for an order to show cause why a receiver should not be appointed as to construction projects at Defendant steel company, and makes claims alleging common law conspiracy, conspiracy to violate the Michigan Building Code and Plaintiff's ordinance and unjust enrichment. Defendant counter-claims for declaratory relief under *28 U.S.C. § 2201* and *Fed. R. Civ. P. 57*.

Plaintiff filed a Motion to Compel Discovery on October 19, 2007. (Docket [*3] no. 20). The Court conducted a hearing on November 28, 2007. On December 3, 2008 the Court entered an Order granting Plaintiff's Motion to Compel in part and ordering Defendant "to provide three dates to Plaintiff's counsel for reviewing the documents which Defendant has specified in its Responses to Plaintiff's First Discovery Requests. Defendant is to make the documents available on or before December 19, 2007." (Docket no. 35). On December 17, 2007 Defendant filed an objection to the Order. (Docket no. 36). On December 18, 2007 Plaintiff filed its Motion for Sanctions and to Extend Deadline to Review Discovery Materials. (Docket no. 37).

Plaintiff alleges that Defendant did not comply with the December 3, 2007 Order and did not make the documents available for review. Defendant argues that because it objected to that portion of the Court's order which required it to permit review of the documents, "that portion of the December 3 order is not effective unless and until it is affirmed by the District Court." (Docket no. 39 P 3). Defendant argues that "the objected-to portion of the December 3 order is effectively stayed as a result of U.S. Steel's objection." (Docket no. 39 P 4). Defendant [*4] provides no legal authority for this assertion.

"Merely filing a motion for such relief does not excuse the moving party from fully complying with the order appealed from until a court grants a stay and relieves the party of its obligation to comply with a challenged order." *American Rock Salt Co. v. Norfolk Southern Corp., 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005) (citing Maness v. Meyers, 419 U.S. 449, 458, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975)); see also Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb, Inc., 124 F.R.D. 75, 78-79 (S.D.N.Y. 1989)* (filing objections to a magistrate's order does not automatically stay the order). Defendant did not move to stay the December 3, 2007 Order and no stay has been granted by the Court on this matter. The Court will order Defendant to comply with the Court's December 3, 2007 Order by the date set forth below. *See Fed. R. Civ. P. 37; Concrete Materials Corp. v. C.J. Mahan Constr. Co., 110 F.3d 63 (6th Cir. Mar. 28, 1997)* (unpublished).

Plaintiff also moves for sanctions, alleging that Defendant's counsel has engaged in "unreasonable and vexatious conduct" "committed in bad faith" by failing to comply with the Court's Order and failing to make the documents available for [*5] Plaintiff's review. (Docket no 37). *28 U.S.C. § 1927* provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *28 U.S.C. § 1927*. In this circuit, "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney" under this section. *Jones v. Continental Corp., 789 F.2d 1225, 1230 (6th Cir. 1986)*. Furthermore, pursuant to *Federal Rule of Civil Procedure 37*, the Court has broad discretion to make such orders as are just to redress discovery abuse, including awarding the reasonable expenses, including attorneys fees and costs incurred in making a motion to compel discovery.

Defendant provided no legal basis for its assertion that it was not required to comply with the Court's order of December 3, 2007 and its refusal to comply with the Order needlessly multiples  the proceedings in this action. [*6] However, the Court will decline for the moment Plaintiff's invitation to assess sanctions for two reasons. First, Plaintiff did not provide a certification that it in good faith conferred with or attempted to confer with

Defendant in an effort to resolve this issue without Court action [1]. *Fed. R. Civ. P. 37(d)*, *E.D.Mich. LR 7.1*. Second, counsels' and the parties' actions throughout this case with regard to discovery have been characterized by the failure to timely respond to discovery without action by the Court. It is behavior that benefits no one, does considerable disservice to the parties, and wastes Court resources. In light of this behavior by both parties and Plaintiff's failure to seek Defendant's concurrence or cooperation prior to filing this Motion, the Court in its discretion will decline to award any sanctions, costs, or attorney fees in this matter. However, the Court orders Defendant to make the documents at issue available as set forth below. Any further failure by Defendant to make available the documents in accordance with the Court's order will result in this Court ordering Defendant to pay Plaintiff's reasonable expenses incurred in bringing this motion.

> 1  Plaintiff's [*7] Motion references an Exhibit 1 which purports to be a letter from Plaintiff's attorneys to Defendant's attorney requesting a date and time to review the documents. This exhibit was not filed with the Court. Plaintiff was notified by the Court that the exhibit was not provided but Plaintiff has not yet filed the exhibit.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Sanctions and to Extend Deadline to Review Discovery Materials in Defendant's Possession; (sic) Custody or Control of Defendant's Attorneys (docket no. 37) is **GRANTED in part** and Defendant will provide on or before March 21, 2008 three dates occurring prior to April 04, 2008 when the documents which Defendant specified in its Responses to Plaintiff's First Discovery Requests will be available to Plaintiff's counsel for review.

**NOTICE TO THE PARTIES**

Pursuant to *Fed. R. Civ. P. 72(a)*, the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under *28 U.S.C. § 636(b)(1)*.

Dated: March 13, 2008

s/ Mona K. Majzoub

MONA K. MAJZOUB

UNITED STATES MAGISTRATE JUDGE