IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

VS.

                                      NO.:   2:13-cv-02289 JPM-dkv

                                      JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and,
MARK P. CLEMONS,

      Defendants.

## RESPONSE OF DEFENDANTS, PEDIATRIC ANESTHESIOLOGISTS, P.A., AND BABU RAO PAIDIPALLI, M.D., TO METHODIST HEALTHCARE – MEMPHIS HOSPITALS' MOTION FOR STAY FROM MAGISTRATE'S ORDER PENDING APPEAL

      COME NOW defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D., by and through their counsel of record and submit the following Response to Methodist Healthcare – Memphis Hospitals' Motion and Memorandum of Law For Stay From Magistrate's Order Pending Appeal, and state as follows:

### FACTS AND PROCEDURAL HISTORY

      Plaintiffs, Daniel and Helen Lovelace, assert a claim against Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli, M.D., and Mark D. Clemons, M.D., for alleged medical malpractice, allegedly resulting in the death of plaintiffs' son, Brett Lovelace, and plaintiffs also assert a claim against the defendants for negligent infliction of emotional distress based upon the alleged

medical malpractice claim.  The claim is based on care provided by defendants at Methodist Le

Bonheur Children's Medical Center, 50 N. Dunlap, Memphis, Tennessee, on March 12, 2012,

allegedly resulting in Brett Lovelace's death on March 14, 2012.  In defendants' Answer (ECF

13, paragraph 3), defendants deny any medical negligence on their part and deny that they

caused injury to, and the subsequent death of the patient, Brett Lovelace.  In their Answer (ECF

13, paragraph 21), defendants assert fault against non-parties, Kelly Kish, a nurse employed with

Methodist Healthcare – Memphis Hospitals (hereinafter "Methodist"), and Methodist, based on

Kelly Kish's nursing negligence in her care provided to the patient, Brett Lovelace, and

negligence by other personnel of Methodist responsible for the care provided to the patient.

Kelly Kish has admitted she was negligent in an "Agreed Order", entered with the Tennessee

Board of Nursing on February 20, 2013, which is a public record filed with the Tennessee

Secretary of State, which resulted in Kelly Kish's nursing license being revoked.  A copy of this

"Agreed Order" is attached as Exhibit A.  In their Answer, Defendants allege that the negligent

acts and omissions of Kelly Kish and Methodist Healthcare – Memphis Hospitals caused the

injury to, and death of Brett Lovelace.  (ECF 13, par. 21, pp. 6 – 9.)

Prior to filing this lawsuit, the plaintiffs engaged in mediation with Methodist in

December, 2012.  Methodist has admitted that Methodist settled plaintiffs' claim against it and

that "Methodist and Plaintiffs entered into a Confidential Settlement Agreement and Release on

or about December 19, 2012."  (ECF 33-1, page 2.)  The amount of the settlement and the other

terms of the settlement entered into between plaintiffs' and Methodist, such as the scope of the

release by plaintiffs, remain unknown to defendants.

Defendants alleged in their Answer that the settlement amount plaintiffs received from

Methodist Healthcare – Memphis Hospitals constitutes a reduction in or set-off against whatever

damages plaintiff might otherwise have in this cause pursuant to T.C.A. 29-26-119 and have

further alleged that if any medical bills were "written off" or extinguished pursuant to a

settlement agreement or otherwise, then such bills are not recoverable as damages. (ECF 13, par.

33, pp. 12 – 13.)

Defendants further alleged in their Answer that if the proof shows that plaintiff's release

includes Methodist's agents, actual or apparent, that such release constitutes a release as to any

and all claims against these defendants. (ECF 13, par. 32, p. 12.)

On August 15, 2013, Defendants filed and served a subpoena *duces tecum* on Methodist

Healthcare – Memphis Hospitals (hereinafter "Methodist"), a copy of which is attached hereto as

Exhibit B, seeking to obtain documents described therein, listed as item numbers 1 – 5 in the

attachment to the subpoena. Methodist filed a motion and supporting memorandum of law,

seeking to quash Defendants' subpoena or for a protective order, as to item numbers 1, 3, 4 and 5

in the subpoena. (ECF 33, ECF 33-1.) Plaintiffs "joined in" Methodist's motion. The motion

was referred to the Magistrate for determination. (ECF 35.) Defendants filed a Response and a

supporting Memorandum of Law in opposition to Methodist's motion. (ECF 38, ECF 39.) On

October 21, 2013, the Magistrate entered an order denying in part, and granting in part,

Methodist's motion. The order denied Methodist's motion as to item number 1 (printouts of

monitoring equipment information pertaining to the patient whose care is at issue); item number

2 (medical records of the patient); item number 3 (Methodist's logs which indicate the persons

who were present in the PACU during the time the patient was treated there); and item number 5

(settlement and release agreement entered into by the plaintiffs and Methodist). The order

granted in part and denied in part, Methodist's motion as to item number 4 (the personnel file of

Kelly Kish).

The only part of the Magistrate's order to which Methodist filed objections was the Magistrate's denial of Methodist's motion to quash item number 5 in the subpoena - the settlement and release documents entered into by the plaintiffs and Methodist. The only grounds asserted by Methodist in its motion to quash, as it pertains to the settlement agreement and release documents, was that the subpoena "seeks confidential information from a non-party." (ECF 33-1, p. 3.) However, Methodist's sole argument and ground for its objection to and appeal of the Magistrate's order is that the confidential settlement agreement is allegedly not relevant under a "heightened relevancy standard for discovery of confidential settlement agreements" (ECF 46, pp. 2 – 4), which is a totally new argument Methodist did not make to the Magistrate.

Pursuant to the Magistrate's October 21, 2013 Order, Methodist was ordered to produce all of the documents subpoenaed except for a portion of Kelly Kish's personnel file, and was ordered to produce these documents within fourteen (14) days after a Protective Order was entered to govern production of the documents. The parties and Methodist agreed to the provisions of a Protective Order and the Magistrate entered the Protective Order on November 4, 2013. (ECF 45.) Accordingly, Methodist was obligated to produce the documents ordered by the Magistrate by November 18, 2013. On November 18, 2013, counsel for defendants notified counsel for Methodist, and requested the status of Methodist's production of the documents, since the deadline for production was that day; defendants' counsel also advised Methodist's counsel that day that based on defendants' counsel's research, Methodist's Objections to the Magistrate's Order did not stay the Magistrate's Order, particularly with regard to the documents ordered to be produced by the Magistrate which Methodist had not objected to on appeal. Methodist's counsel responded by agreeing to produce the documents ordered to be produced

4

except for the settlement agreement, and Methodist did produce all the documents ordered to be produced except for the settlement agreement, within one week after the deadline provided in the order, the last documents having been received by defendants' counsel on November 25, 2013. Attached as Collective Exhibit "C" are copies of the e-mails between defense counsel and Methodist's counsel on November 18, 2013, which discuss the status of production of the documents and the case law that provides that an appeal of a Magistrate's Order does not operate to stay the Magistrate's order, and copies of Methodist's counsel's transmittal letters for the documents produced.

Methodist's Memorandum of Law in support of its Motion For Stay asserts that Methodist has offered and continues to offer to provide defendants with a redacted copy of the settlement agreement in question, redacted so as not to reflect the settlement amount. Defendants submit that such assertion in Methodist's Memorandum is not a part of the record and is not relevant to the pending motion. However, since Methodist has raised this issue, Defendants would show that Methodist's "offer" to provide Defendants a redacted copy of the settlement agreement was made after entry of the Magistrate's order on October 21, 2013, which required production of the settlement agreement and did not call for redaction of the document, and Defendants would further show that a condition implicit in Methodist's "offer" to provide a redacted copy of the settlement agreement is that defendants would not pursue obtaining a complete copy of the settlement agreement. In any event, the fact is that Methodist has not produced to Defendants or to the Court, a copy of the settlement agreement between plaintiffs and Methodist, redacted or otherwise, and  Defendants and the Court have no way of knowing what the settlement agreement states since it has not been produced.

## LAW AND ARGUMENT

### I.

### STANDARD OF REVIEW

The Court has recently set Methodist's Objections to the Magistrate's Order for a telephonic hearing on December 16, 2013. Therefore, Methodist's Motion For Stay From The Magistrate's Order may soon be rendered moot. However, if not rendered moot, defendants would submit that Methodist's Motion For Stay From The Magistrate's Order should be reviewed by the Court based on the following principles.

First, it is clear that under federal case law an appeal of a Magistrate's Order entered pursuant to Rule 72(a), Federal Rules of Civil Procedure, as is the case here, does not stay the effect of the order pending an appeal, absent a stay of the order. *Evans v. Walgreen Company*, 2011 U.S. Dist. LEXIS 72182 (W.D. Tenn. July 5, 2011); *Guiden v. Leat Corporation*, 2013 U.S. Dist. LEXIS 118355 (W.D. Kent. August 20, 2013); *City of Ecorse v. United States Steel*, 2008 U.S. Dist. LEXIS 19323 (E.D. Mich. March 13, 2008); *White v. Burt Enterprises*, 200 F.R.D. 641 (D. Col. June 9, 2000); and *Maness v. Meyers*, 419 U.S. 449 (1974).

Secondly, a motion for stay of a Magistrate's order should be granted sparingly. *HEI Resources East OMG Joint Venure v. Evans*, 2009 U.S. Dist. LEXIS 10294 (D. Colo. Feb. 3, 2009); *Copic Insurance Company v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 36476 (D. Colo. March 11, 2010).

Thirdly, the Federal Rules of Civil Procedure do not state what the standard of review is for a motion for stay of a Magistrate's order. The cases cited by Methodist with regard to the standard of review all involve appeals of a district court's order to the Court of Appeals. *See* Methodist's Memorandum Of Law, p. 2. However, the same standard applied by the federal

appellate courts has been applied by district courts when reviewing a motion for stay of a

Magistrate's order.  See *Copic Insurance Company v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist.

LEXIS 36476 (D. Colo. March 11, 2010).  This standard is a four-part test:  (1) the likelihood of

success on appeal; (2) the threat of irreparable harm if the stay is not granted; (3) the absence of

harm to opposing parties if the stay is not granted; and (4) any risk of harm to the public interest.

*Copic, supra*, p. 2. Defendants submit that the four-part test favors a denial of Methodist's

motion for a stay.

      First, it is unlikely that Methodist will succeed on its Objections. Defendants rely on their

Response to Methodist's Objections filed in this cause and incorporate the same arguments

herein by reference.  (ECF 49, pp. 2 – 10.)

      Secondly, it is unlikely that Methodist will suffer irreparable harm if the stay is not

granted.  The Protective Order entered by the Court governs the production of documents by

Methodist, including the settlement agreement.  The terms of this Protective order were

expressly agreed to by all parties and by Methodist, and provide as follows:

> 1.    Except with prior written consent of counsel of all parties and Methodist, all documents ordered to be produced shall be disclosed only as follows:
>
> > (a) to the parties and counsel of record for the respective parties including their office and clerical staff who are working on this litigation under the supervision of counsel of record;
> >
> > (b) expert witnesses or consultants engaged by a party to assist in the prosecution or defense of the action;
> >
> > (c) the Court, the Court's staff, witnesses, and the jury;
> >
> > (d) the Mediator(s) who mediate this litigation, and
> >
> > (e) Commercial copy service companies.
>
> . . . .
>
> *3.    All parties and persons to whom any of Methodist's documents are*

> *disclosed are authorized only to review such documents in connection with this action and are precluded from disclosing the documents or information contained therein to any person other than the persons described in paragraph 1 above, and from using the documents and said information for any personal or business purposes. No person receiving or reviewing such documents shall disclose them or their contents to any person other than those authorized by this Order and for the purposes specified in this Order.*
>
> 4.   *At the conclusion of this litigation, the documents produced by Methodist shall be returned to Methodist's counsel or destroyed with confirmation of destruction being provided to Methodist's counsel.*
>
> 5.   The provisions of this Order shall survive and remain in full force and effect after the conclusion of this litigation. The Court retains jurisdiction to construe and enforce the provisions of this Order.

(ECF 45, emphasis supplied.)

Based on the terms of the Protective Order, all of Methodist's documents, including its settlement agreement with plaintiffs, are to be kept confidential and are not to be disclosed to others not involved in this litigation. Methodist fails to describe with any particularity why disclosure of its settlement with plaintiffs, which cannot be disclosed to any persons not involved in this litigation, would cause it any injury.

Thirdly, defendants could very well suffer harm if a stay is granted. The parties have scheduled depositions of the parties and other fact witnesses. The deposition of Defendant, Dr. Padipalli, is scheduled for December 10, 2013; Kelly Kish's deposition and the depositions of other treating health care providers are presently scheduled for January 8, 2014, and the depositions of the plaintiffs and plaintiffs' family members are scheduled for January 15, 2014. Dr. Clemons' deposition remains to be scheduled and there are other fact witnesses who may be deposed. However, the deadline for completing all fact discovery is February 9, 2014. Defendants' ability to examine Kelly Kish, the plaintiffs, and potentially others, would be

negatively affected if a stay were granted and defendants were not provided a copy of the settlement agreement between plaintiffs and Methodist in advance of these depositions.

Fourthly, denying a stay will not harm the public interest in any way and granting a stay may have the adverse effect of delaying preparation of this case for trial.

## **CONCLUSION**

Based on the foregoing points and authorities, defendants respectfully submit that the four factor test militates against Methodist's motion for a stay pending this Court's determination of the Objections, and therefore, Methodist's motion for a stay should be denied.

Respectfully submitted,

THE HARDISON LAW FIRM, P.C.

By:     s/David M. Cook
        DAVID M. COOK (5362)
        ALBERT G. MCLEAN (5150)
        Attorney for Defendants,
        Pediatric Anesthesiologists, P.A. and
        Babu Rao Paidipalli, M.D.
        119 S. Main Street, Suite 800
        Memphis, Tennessee 38103
        (901) 525-8776
        dcook@hard-law.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the Court's electronic filing system upon:

Mark Ledbetter, Esq.
Halliburton & Ledbetter
Attorney for Plaintiffs
254 Court Avenue
Suite 305
Memphis, TN 38103

J. Kimbrough Johnson, Esq.
Marcy Dodds Magee, Esq.
Attorneys for Defendant, Mark P.
Clemons, M.D.
Thomason, Hendrix, Harvey, Johnson &
Mitchell, PLLC
2900 One Commerce Street
Memphis, TN 38103


Craig C. Conley, Esq.
Ormonde B. DeAllaume, Esq.
Baker, Donelson, Bearman, Caldwell
& Berkowitz, P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Mary M. Bers, Esq.
Stephanie A. Bergmeyer, Esq
Office of the Attorney General and Reporter
For the State of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207


this 4th day of December, 2013.

s/David M. Cook_____
DAVID M. COOK

RECEIVED

2013 FEB 22 PM 3: 21

SECRETARY OF STATE

### BEFORE THE TENNESSEE BOARD OF NURSING

In The Matter of:                )
                                 )
**KELLY KISH**                   )
R.N. License Number 99584        )     Docket Number 17.19-118516A
                                 )
**Respondent**                   )
                                 )

### AGREED ORDER

The State of Tennessee, by and through the Office of General Counsel and the Respondent, Kelly Kish, R.N., (Respondent), by and through her attorney, hereby stipulate and agree, subject to approval by the Tennessee Board of Nursing (Board), to the following:

#### I.   Authority and Jurisdiction

The Board regulates and supervises nurses licensed to practice pursuant to Tennessee Code Annotated Section (TENN. CODE ANN. §) 63-7-101, *et seq.* (Code), including the discipline of licensees, as well as those who are required to be licensed, who violate the Code and the Rules promulgated by the Board, Official Compilation of Rules and Regulations of the State of Tennessee (TENN. COMP. R. & REGS.), 1000-01-.01, *et seq.* (Rules). The Board enforces the Code and Rules to promote and protect the health, safety and welfare of the public; accordingly, it is the policy of the Board to require strict compliance with the law and to apply the law to preserve the quality of nursing care provided in Tennessee.

#### II.   Stipulations of Fact

1.   Respondent has been at all times pertinent hereto licensed by the Board as a registered nurse in the State of Tennessee, having been granted license number 99584 on June 14, 1994, which currently has an expiration date of April 30, 2014. Respondent's registered nurse license bears a multistate privilege to practice nursing in states which have entered into the Interstate Nurse Licensure Compact.



**EXHIBIT**

_A_

2. Respondent was employed as a registered nurse by LeBonheur Children's Hospital in Memphis, Tennessee from about February 11, 2008 through about March 23, 2012.

3. On or about March 12, 2012, Respondent was assigned to care for a 12-year-old male patient ("the patient") who was in the post anesthesia care unit (PACU) following a tonsillectomy/adenoidectomy. The patient was the only patient assigned to Respondent during the approximately 90 minutes the patient was in the PACU.

4. The patient was stable upon transfer from the operating room to the PACU.

5. The patient's mother and father were present in the PACU with the patient.

6. Upon arrival to the PACU, the patient positioned himself prone, with his legs drawn up under him, buttocks in the air, arms crossed over his head, and his face down on the mattress. At no time did Respondent attempt to change the patient's position.

7. Upon the patient's arrival into the PACU, Respondent made an initial assessment but chose not to place the patient on a cardiac monitor, as permitted by hospital policy.

8. Respondent placed a pulse oximeter on the patient, but the oximeter worked only intermittently, and Respondent did not notify anyone of the problem and did not replace the device.

9. At no time did Respondent attempt to speak with or rouse the patient, despite charting a rating of 9 out of 10 on the Aldrete scale. Such a score would indicate, among other things, full breathing, high oxygen saturation, full consciousness, good circulation, and lively activity and motor control. Respondent admitted that she never roused or checked on the patient to make these ratings, but instead charted based on her observation of the patient's status when he initially entered the PACU. Among other things, Respondent charted the patient's level of consciousness as "arousable on calling" from the time he entered the PACU up until the "Harvey" code, indicating an unresponsive patient, was called, as

detailed below.

10. Throughout her time caring for the patient, Respondent documented oxygen saturations that were not reflected on the print-out. Respondent documented, for example, 100% oxygen saturation when the monitor read only "artifact" or levels below 25%.

11. Respondent documented a series of assessments approximately every 15 minutes that the patient was in the PACU during the patient's first hour, then every 30 minutes thereafter, as dictated by hospital policy. In her assessments Respondent documented, in addition to the Aldrete scores noted above, breath sounds and readings from an automated blood pressure cuff.

12. At one point, the patient was heard making snoring and/or gasping noises, which the patient's parents brought to Respondent's attention. Respondent discussed the sounds with the parents, and Respondent states she also discussed the sounds with a physician. Respondent did not take any further action in response to these noises.

13. Approximately 30 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 118 over 56. Approximately 45 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 106 over 53. Approximately 60 minutes after the patient was admitted to the PACU, Respondent charted that the patient's blood pressure was 84 over 42. Respondent did not take any action in response to these changes in the patient's blood pressure.

14. Approximately 90 minutes after the patient was admitted to the PACU, Respondent left to obtain fluids for the patient. Upon her return, the patient's father asked Respondent for help turning the patient, as the patient's leg appeared blue. When the patient was turned supine, he was noted to be deeply cyanotic, apneic, and pulseless. CPR was initiated, and a "Harvey" code, indicating a nonresponsive patient, was called.

3

15. While the patient was eventually resuscitated, he suffered severe anoxic brain injury and died approximately 48 hours later.

16. During the patient's time in the PACU, Respondent accessed Facebook and at least one other social media website using a hospital computer.

17. On or about March 23, 2012, Respondent resigned in lieu of termination.

### III.   Stipulated Grounds for Discipline

18. The Stipulations of Fact are sufficient to establish that Respondent has violated the following statutes or rules, for which disciplinary action by the Board is authorized, TENN. CODE ANN. § 63-7-101, *et seq.* and TENN. COMP. R. & REGS., 1000-01-.01, *et seq.*

19. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of TENN. CODE ANN. § 63-7-115 (a)(1): The board has the power to deny, revoke or suspend any certificate or license to practice nursing or to otherwise discipline a licensee upon proof that the person:

    (C)   Is unfit or incompetent by reason of negligence, habits or other cause;

    (F)   Is guilty of unprofessional conduct.

20. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of Rule 100-01-.-.13(1) TENN. COMP.R.REGS., RULE 1000-01-.-.13(1):

    (a)   Intentionally or negligently causing physical or emotional injury to a patient;

    (c)   Abandoning or neglecting a patient requiring nursing care.

21. The facts stipulated in paragraphs eight (8) through eleven (11) constitute a violation of Rule 100-01-.-.13(1) TENN. COMP.R.REGS., RULE 1000-01-.-.13(1) (a):

    (b)   Failure to maintain a record for each patient which accurately reflects the nursing problems and interventions for the patient and/or failure to maintain a record for each patient which accurately reflects the name and title of the nurse providing care;

(w)  Engaging in acts of dishonesty which relate to the practice of nursing.

### IV.    Stipulated Disposition

For the purpose of avoiding further administrative action with respect to this cause, Respondent agrees to the following:

22. It is hereby ordered that Respondent's Tennessee nursing license number 99584 is **REVOKED** and her multistate privilege to practice in any other party state is **VOID**.

23. Respondent must pay the actual and reasonable costs of prosecuting this case, pursuant to TENN. CODE ANN. §§ 63-7-115(d) and 63-1-144 and Rule 1000-01-.04(11) of the TENN. COMP. R. & REGS., to the extent allowed by law.  These costs will be established by an Assessment of Costs prepared by counsel for the Department.  The Assessment of Costs shall not exceed one thousand dollars ($1,000.00) and shall be paid in full within twelve months from the issuance of the Assessment of Costs.

24. Each condition of discipline herein is a separate and distinct condition.  If any condition of this Order, or any application thereof, is declared unenforceable in whole, in part, or to any extent, the remainder of this Order, and all other applications thereof, shall not be affected. Each condition of this Order shall separately be valid and enforceable to the fullest extent permitted by law.

### V.    Representations of Respondent

25. Respondent understands and admits the allegations, charges, and stipulations in this Order.

26. Respondent understands the rights found in the Code, the Rules, and the Uniform Administrative Procedures Act, TENN. CODE ANN. §§ 4-5-101 through 4-5-404, including the right to a hearing, the right to appear personally and by legal counsel, the right to confront and cross-examine witnesses who would testify against Respondent, the right to testify and present evidence on Respondent's own behalf, including the issuance of

5

subpoenas to compel the attendance of witnesses and the production of documents, and the right to appeal for judicial review. Respondent voluntarily waives these rights in order to avoid further administrative action.

27. Respondent agrees that presentation of this Order to the Board and the Board's consideration of it and all matters divulged during that process shall not constitute unfair disclosure such that the Board or any of its members become prejudiced requiring their disqualification from hearing this matter should this Order not be ratified. All matters, admissions, and statements disclosed during the attempted ratification process shall not be used against the Respondent in any subsequent proceeding unless independently entered into evidence or introduced as admissions.

28. Respondent also agrees that the Board may issue this Order without further process. If the Board rejects this Order for any reason, it will be of no force or effect for either party.

### VI.   Notice

29. This revocation is formal disciplinary action and will be reported to the Health Integrity and Protection Data Bank (HIPD).

30. Costs shall be paid by submitting a certified check, cashier's check, or money order payable to the State of Tennessee. Costs payments must include the Respondent's name and this case number, 201200757, on the instrument of payment and shall be mailed or delivered to:

> Office of Investigations
> Attn: Disciplinary Coordinator
> Tennessee Department of Health
> 227 French Landing, Suite 201
> Nashville, Tennessee 37243

**APPROVED FOR ENTRY:**

_Kelly Kish_

Kelly Kish
R.N. License Number 99584
Respondent

2/19/13
**DATE**


_Donna L. Boyce_

Donna L. Boyce
Adams and Reese LLP
Brinkley Plaza
80 Monroe Ave, Suite 700
Memphis, Tennessee 38103
(901) 525-3234
Attorney for Respondent

2/19/13
**DATE**


_Marc R. Guilford_

Marc R. Guilford (BPR # 025419)
Assistant General Counsel
Tennessee Department of Health
Office of General Counsel
220 Athens Way, Suite 210
Nashville, Tennessee 37243
(615) 741-1611

2/20/13
**DATE**

---

### Approval by the Board

Upon the agreement of the parties and the record as a whole, this **CONSENT ORDER** was approved as a **FINAL ORDER** by a majority of a quorum of the Tennessee Board of Nursing at a public meeting of the Board and signed this 20th day of February, 2013.

**ACCORDINGLY, IT IS ORDERED** that the agreements of the parties will, and hereby do, become the Final Order of the Board.

Chairperson/Acting Chairperson
Tennessee Board of Nursing

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon the Respondent, Kelly Kish through her counsel, Donna L. Boyce, Adams and Reese, 80 Monroe Ave, Suite 700, Memphis, Tennessee 38103, by delivering same in the United States regular mail and United States certified mail, number 7012 1640 0002 3421 5150 return receipt requested, with sufficient postage thereon to reach its destination.

This 22nd day of February, 2013.

_____
Marc R. Guilford
Assistant General Counsel

## CERTIFICATE OF FILING

This Order was received for filing in the Office of the Tennessee Secretary of
State, Administrative Procedures Division, and became effective on the _____
day of _____ , 20____ .

Thomas G. Stovall
Director, Administrative Procedures Division

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Tennessee

| | |
|---|---|
| DANIEL LOVELACE AND HELEN LOVELACE | ) |
| *Plaintiff* | ) |
| v. | ) |
| PEDIATRIC ANESTHESIOLOGISTS, P.A., DR. | ) |
| BABU RAO PAIDIPALLI & DR. MARK P. CLEMONS | ) |
| *Defendant* | ) |

Civil Action No.   2:13-cv-02289 dvk

(If the action is pending in another district, state where:
                                                                    )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Methodist Healthcare-Memphis Hospitals d/b/a Methodist LeBonheur Children's Hospital c/o Craig Conley,
Attorney for Methodist-LeBonheur, 165 Madison Ave., 20th Floor, Memphis, TN 38103

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: all documents and things described in the attached Exhibit "A".

| Place: In lieu of appearance, please mail copies of documents and things to David M. Cook & Albert G. McLean, Attorneys, 119 S. Main, Suit 800, Memphis, TN 38103 | Date and Time:  08/28/2013 10:00 am |
|---|---|

   ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  *8-8-13*

| CLERK OF COURT | OR | *Albert M. McLean* |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D._____ , who issues or requests this subpoena, are:
David M. Cook and Albert G. McLean, Attorneys, 119 S. Main St., Suite 800, Memphis, TN 38103;
dcook@hard-law.com and amclean@hard-law.com; (901) 525-8776

**EXHIBIT**

**B**

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:13-cv-02289 dvk

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   Methodist Lebonheur Childrens

was received by me on *(date)*   8-8-13 .   Hospital

☑ I served the subpoena by delivering a copy to the named person as follows:   X Sheila Griesheimer

on behalf of Craig Conley   Legal Sec

_____   on *(date)*   8-15-13  ; or   3:50

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:  8-15-13                      M Huddles
                                   _____
                                         *Server's signature*

                                   M Huddleston, PPS
                                   _____
                                         *Printed name and title*

                                   _____
                                         *Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Exhibit "A" to Subpoena *Duces Tecum*

(1)     All print-outs and all other documents containing any data, vital signs, values, readings, and other information recorded by any monitoring equipment utilized in the care of Brett Lovelace in the Post Anesthesia Care Unit (PACU) at LeBonheur Children's Medical Center, 50 North Dunlap, Memphis, Tennessee 38107, on March 12, 2012;

(2)     Any and all medical records, including x-rays and billing records pertaining to Brett S. Lovelace, DOB:        1999; SS#:        8891;

(3)     Any and all logs, including print-outs of any computer log, and any paper log, for the Post Anesthesia Care Unit (PACU) at LeBonheur Children's Hospital, for March 12, 2012;

(4)     Any and all documents which comprise or are contained in the personnel file of Kelly Kish, former employee; and

(5)     Any and all documents evidencing any settlement agreement entered into between Daniel and Helen Lovelace and Methodist Healthcare – Memphis Hospitals and/or Methodist LeBonheur Children's Hospital pertaining to any claim of Daniel and Helen Lovelace, individually, and/or as parents of Brett Lovelace, deceased, and any and all documents evidencing any release of claims against any person, by Daniel and Helen Lovelace, individually, and/or as parents of Brett Lovelace, deceased.

        Attached hereto is a copy of the requesting attorney's HIPAA-compliant letter to Daniel and Helen Lovelace, parents and representative of Brett Lovelace, deceased, c/o of their attorney, dated June 28, 2013, to which no objection has been made.



# THE HARDISON LAW FIRM, P.C.
### LEE A. HARDISON, Jr. (1915-1983)

ALBERT G. MCLEAN

Tennessee Supreme Court Rule 31 Listed Mediator

119 South Main Street, Suite 800
Memphis, Tennessee 38103-3685
Telephone (901) 525-8776
Telecopier (901) 525-8790
www.thehardisonlawfirm.com
amclean@hard-law.com

June 28, 2013
VIA U.S. MAIL AND
FACSIMILE TRANSMISSION

Mr. Daniel Lovelace and Mrs. Helen Lovelace
Parents of Brett Lovelace, Deceased
c/o P. Mark Ledbetter, Esq.
Halliburton & Ledbetter
254 Court Avenue
Suite 305
Memphis, TN 38103

Re:   **Lovelace v. Paidipalli,** *et alia*
      U. S. District Court #2:13-cv-02289-JPM-dkv
      HLF File No.:   212-18673

Dear Mr. and Mrs. Lovelace:

This letter is being sent in conformity with 45 C.F.R. 164.500 *et. seq.* including, but not limited to, 45 C.F.R. 164.512. Our firm is representing the defendants, Pediatric Anesthesiologists, P.A., and Babu Rao Paidipalli, M.D., in the above-captioned matter. We will be requesting from Methodist Healthcare – Memphis Hospitals d/b/a Le Bonheur Children's Medical Center the following documents: "(1) the entire records pertaining to the healthcare of Brett S. Lovelace, including, but not limited to, all medical records, psychiatric reports, psychiatric and/or psychological evaluations, histories, notes, consents, charts, photographs, reports, lists, summaries, lab results, autopsy records, correspondence, billing records, any other itemization of medical expenses, receipts, reports, any and all diagnostic/radiographic films and reports of same; (2) all print-outs and all other documents containing any data, vital signs, values, readings, and other information recorded by any monitoring equipment utilized in the care of Brett Lovelace in the Post Anesthesia Care Unit (PACU) at Le Bonheur Children's Medical Center, 50 North Dunlap, Memphis, Tennessee 38103 on March 12, 2012 and (3) any and all logs, including print-outs of any computer log, and any paper log, for the Post Anesthesia Care Unit (PACU) at Le Bonheur Children's Medical Center for March 12, 2012."

We will be requesting the aforesaid documents pertaining to the care of Brett Lovelace by issuing a subpoena or subpoenas *duces tecum* to Methodist Healthcare – Memphis Hospitals d/b/a Le Bonheur Children's Medical Center and requesting that it permit copying of, or that it provide copies, of such documents to the undersigned, with an affidavit of a custodian of such documents to authenticate such documents. Further, upon receipt of said documents, we will

Page 2
June 28, 2013

provide a copy of said documents to you through your attorneys, and to other counsel in this matter if they should want copies, at no cost except for cost of duplication /copying. We further agree that the aforesaid documents/protected health information will not be utilized for any purpose other than issues related to the above-referenced litigation for which this information is requested. Further, after a reasonable time after the conclusion of this litigation, our copies of said documents will be destroyed.

If you object to release of the above-referenced documents/protected health information, or the method of obtaining said documents/protected health information, I must ask you, by and through your counsel, to file an objection with the Court in which this action is pending, with a copy to David M. Cook and me, stating any objection you may have. If you (through your attorney) have not responded to David M. Cook and me, or filed an objection with the Court within ten (10) days from the date of this letter, I will assume that you have no objections to our filing and serving such subpoena(s) for the above-referenced documents and requesting copies of such documents with an affidavit of the custodian thereof, and will proceed accordingly. If you have any questions regarding this notice, please contact your attorney, P. Mark Ledbetter.

Yours very truly,

THE HARDISON LAW FIRM, P.C.

ALBERT G. MCLEAN

AGM:sh

cc:    Babu Rao Paidipalli, M.D.
       Pediatric Anesthesiologists, P.A. (c/o Beverly Smith)

## ET AL LEGAL SERVICES, INC.

100 NORTH MAIN SUITE 920

Memphis, TN 38103

Phone: (901) 543-9300 - Fax: (901) 543-9333

# AFFIDAVIT OF SERVICE

State of Tennessee
County of Shelby
General Sessions Court

I, Marian Huddleston    , first being duly sworn, make oath as follows: I have personally  served the document(s) on the recipient:

| | |
|---|---|
| COURT: | U S District |
| DOCUMENTS: | Subpoena Duces Tecum |
| RECIPIENT: | Methodist Healthcare-Memphis Hospitals d/b/a Methodist LeBonheur Chilren's Hospital c/o Craig Conley Accepted by Sheila Griesheimer - Legal Secretary |
| DOCKET #: | 2:13-cv-02 |
| DATE OF SERVICE | 8/15/2013 |
| TIME SERVED: | 3:50 PM |
| ADDRESS OF SERVICE: | 165 Madison Avenue, 20th Floor Memphis, TN |

I have served said document(s) in compliance with all the laws of the State of Tennessee and the rules of the courts.

I have further notified the recipient that this matter is set for a hearing at the place stated on the document(s).

Hearing Date: 8/28/2013at  10:00 AM

Marian Huddleston    .Private Process Server

Sworn and subscribed before me this date: ____8/16/2013____

My commission expires: 06/01/2014

T Badolato

Friday, August 16, 2013

**Albert McLean**

| | |
|---|---|
| **From:** | Albert McLean |
| **Sent:** | Monday, November 18, 2013 10:43 PM |
| **To:** | 'Deallaume, Ormonde' |
| **Cc:** | Conley, Craig; David Cook |
| **Subject:** | RE: Lovelace, Daniel & Helen (Brett Spencer Lovelace, dec.) v. Rao Paidipalli, M.D., et al.: |

Thanks, Ormonde and Craig.
Al

Albert G. McLean
The Hardison Law Firm, P.C.
119 S. Main Street, Suite 800
Memphis, TN 38103
Tel  (901) 525-8776
Fax (901) 525-8790
amclean@hard-law.com


**From:** Deallaume, Ormonde [mailto:odeallaume@bakerdonelson.com]
**Sent:** Monday, November 18, 2013 6:56 PM
**To:** Albert McLean
**Cc:** Conley, Craig; David Cook
**Subject:** Fwd: Lovelace, Daniel & Helen (Brett Spencer Lovelace, dec.) v. Rao Paidipalli, M.D., et al.:

Al,
The medical records, monitor print outs and staffing logs went out today. We will get the personnel file and billing records to you as soon as possible. We will take a look at the case law sited below as to the settlement agreement.

Ormonde

Sent from my iPhone

Begin forwarded message:

> **From:** "Conley, Craig" <cconley@bakerdonelson.com>
> **Date:** November 18, 2013, 11:03:40 AM CST
> **To:** "Deallaume, Ormonde" <odeallaume@bakerdonelson.com>
> **Subject: FW: Lovelace, Daniel & Helen (Brett Spencer Lovelace, dec.) v. Rao Paidipalli, M.D., et al.:**


> **From:** Albert McLean [mailto:amclean@hard-law.com]
> **Sent:** Monday, November 18, 2013 10:35 AM
> **To:** Conley, Craig
> **Cc:** David Cook; Tracie Smith
> **Subject:** Lovelace, Daniel & Helen (Brett Spencer Lovelace, dec.) v. Rao Paidipalli, M.D., et al.:
>
> Craig, per my voicemail to you just now, this is to request that you please advise the status of Methodist's production of the documents in this case, which the Magistrate's order requires be produced by *today* (within 14 days of entry of the Protective Order, which was entered on November 4, 2013).  I realize Methodist has filed an Objection to the Magistrate's order with regard to one part of

1

**EXHIBIT**

the order - Methodist's production of the confidential settlement agreement and release, but there was no objection filed with regard to the other documents ordered to be produced. Further, it is my reading of applicable federal case law that an objection to a Magistrate' order rendered under FRCP 72(a) does NOT stay the Magistrate's order and therefore all documents ordered to be produced per the Magistrate's order are required to be produced at this time. *Evans v. Walgreen Company*, 2011 U.S. Dist. LEXIS 72182 (W.D. Tenn. July 5, 2011); *Guiden v. Leat Corporation*, 2013 U.S. Dist. LEXIS 118355 (W.D. Kent. August 20, 2013); *City of Ecorse v. United States Steel*, 2008 U.S. Dist. LEXIS 19323 (E.D. Mich. March 13, 2008); *White v. Burt Enterprises*, 200 F.R.D. 641 (D. Col. June 9, 2000); and *Maness v. Meyers*, 419 U.S. 449 (1974).

Would you please advise ASAP, as we are presently preparing for our client's deposition and we need the documents now.

Thanks.
Al

Albert G. McLean
The Hardison Law Firm, P.C.
119 S. Main Street, Suite 800
Memphis, TN 38103
Tel  (901) 525-8776
Fax (901) 525-8790
amclean@hard-law.com

---

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this communication (including in any attachments and, if this communication is by email, then in any part of the same series of emails), such advice was not intended or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

# BAKER DONELSON
### BEARMAN, CALDWELL & BERKOWITZ, PC

2000 FIRST TENNESSEE
BUILDING
165 MADISON AVENUE
MEMPHIS, TENNESSEE 38103

PHONE:   901.526.2000
FAX:      901.577.2303

www.bakerdonelson.com

REC'D NOV 2 5 2013

ORMONDE B. DEALLAUME, ATTORNEY
Direct Dial: 901.577.8160
Direct Fax: 901.577.0778
E-Mail Address: odeallaume@bakerdonelson.com

November 22, 2013

<u>VIA US MAIL</u>

David Cook
Al McLean
The Hardison Law Firm
119 South Main Street, Suite 800
Memphis, TN 38103

Re:   Lovelace v. Paidipalli, et al.

Dear David and Al:

Pursuant to the subpoena issued to Methodist Healthcare-Memphis Hospitals in the referenced matter, please find the billing records and redacted personnel file.

Best regards,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

Ormonde B. Deallaume, Attorney

OBD:dh

Enclosure

cc: Craig Conley

ALABAMA     FLORIDA     GEORGIA     LOUISIANA     MISSISSIPPI     TENNESSEE     TEXAS     WASHINGTON, D.C.

# BAKER DONELSON
BEARMAN, CALDWELL & BERKOWITZ, PC

RECD NOV 19 2013

2000 FIRST TENNESSEE
BUILDING
165 MADISON AVENUE
MEMPHIS, TENNESSEE 38103

PHONE:  901.526.2000
FAX     901.577.2303

www.bakerdonelson.com

ORMONDE B. DEALLAUME, ATTORNEY
Direct Dial: 901.577.8160
Direct Fax: 901.577.0778
E-Mail Address: odeallaume@bakerdonelson.com

November 18, 2013

**VIA US MAIL**

David Cook
Al McLean
The Hardison Law Firm
119 South Main Street, Suite 800
Memphis, TN 38103

      Re:    Lovelace v. Paidipalli, et al.

Dear David and Al:

      Pursuant to the subpoena issued to Methodist Healthcare-Memphis Hospitals in the referenced matter, please find a CD containing the medical records of Brett Lovelace, copies of monitor printouts and staffing logs for the PACU on the date in question. The billing records and redacted personnel file with be forthcoming

      Best regards,

      BAKER, DONELSON, BEARMAN,
      CALDWELL & BERKOWITZ, PC

      Ormonde B. DeAllaume
            by dh

OBD:dh

Enclosure

cc: Craig Conley

ALABAMA    FLORIDA    GEORGIA    LOUISIANA    MISSISSIPPI    TENNESSEE    TEXAS    WASHINGTON, D.C.