## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESESEE
## WESTERN DIVISION

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

     Plaintiffs,

Vs.

          No. 2:13-cv-02289-JPM-dkv
          JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

     Defendants,

And

STATE OF TENNESSEE,

     Defendant-Intervenor.

---

### MEMORANDUM OF FACTS AND LAW IN SUPPORT OF
### MOTION OF DEFENDANTS, PEDIATRIC ANESTHESIOLOGISTS, P.A.,
### AND BABU RAO PAIDIPALLI, FOR QUALIFIED PROTECTIVE ORDER

---

COME NOW defendants, Pediatric Anesthesiologists, P.A. ("Pediatric Anesthesiologists") and Babu Rao Paidipalli, M.D., ("Dr. Paidipalli"), by and through their counsel of record and file their Memorandum of Law in Support of their Motion For Qualified Protective order, in support of which defendants would state and show as follows:

## FACTS AND PROCEDURAL HISTORY

This is a medical malpractice lawsuit in which plaintiffs, Daniel and Helen Lovelace, assert a claim for medical malpractice against Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli, M.D., and Mark D. Clemons, M.D., and also assert a claim against these defendants for negligent infliction of emotional distress based upon alleged medical malpractice in the care provided to plaintiffs' son, Brett Lovelace, at Methodist Le Bonheur Children's Medical Center, 50 N. Dunlap, Memphis, Tennessee, on March 12, 2012, allegedly resulting in Brett Lovelace's death on March 14, 2012. (ECF 1, paragraphs 8 – 12.)  Defendants deny any medical negligence on their part and deny that they caused injury to, and the subsequent death of the patient, Brett Lovelace. (ECF 13, paragraph 3.)  In their Answer defendants further allege that non-party Kelly Kish, a nurse employed with Methodist Healthcare – Memphis Hospitals (hereinafter "Methodist") at the time of the incident, and Methodist, based on the acts and omissions of Kelly Kish and other personnel of Methodist responsible for the care provided to the patient, were negligent in their care of the patient, causing injury to and the death of the patient, Brett Lovelace. (ECF 13, paragraph 21.)  Without identifying the patient's name, Kelly Kish has admitted her negligence in this matter by stipulating to the facts contained in an "Agreed Order" entered with the Tennessee Board of Nursing on February 20, 2013, resulting in the revocation of Kelly Kish's nursing license.  This "Agreed Order" is a public record, having been filed with the Tennessee Secretary of State, and a copy of the order is attached hereto as Exhibit "A".

Defendants, Pediatric Anesthesiologists, P.A., and Babu Rao Paidipalli, have

moved this Court, pursuant to Tenn. Code Ann. § 29-26-121(f), for the entry of a qualified protective order, as stated in a proposed order attached hereto as Exhibit "B". This order would allow the defendants and their attorneys to obtain protected health information regarding the patient, Brett Lovelace, otherwise protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 or "HIPAA" and all other applicable state and federal statutes, rules and regulations, during interviews conducted outside the presence of the plaintiffs and plaintiffs' counsel with the following treating healthcare providers:

1. Kelly Kish, R.N., Methodist nurse responsible for monitoring the patient in the PACU;
2. Wayne Sutter, EMT, Methodist EMT who observed the patient in the PACU prior to the "Code" event;
3. Elesia Turner, Risk Manager, Methodist Le Bonheur Children's Hospital, believed to have knowledge concerning the monitor printout downloaded from the PACU monitoring equipment;
4. Mark Bugnitz, M.D., patient's treating pediatrician during the admission in question;
5. Elizabeth Hinson, R.N., Methodist nurse believed to have provided care to the patient prior to and during the admission in question;
6. Margaret Yoste, R.N., Methodist nurse believed to have provided care to the patient during the admission in question; and
7. Dr. Mark Clemons, M.D., physician who performed the patient's surgery during the admission in question.

The healthcare providers listed above are thought to possess relevant information as defined by the Tennessee Rules of Civil Procedure. The protected health information to be disclosed pursuant to the attached qualified protective order would only be disseminated for the purposes of and during the course of this litigation. The attached proposed order would in no way restrict the right of the defendants or counsel for the defendants from conducting interviews outside the presence of the plaintiff and the

plaintiff's counsel with the defendants' own present or former employees, partners, or owners concerning the present healthcare liability action.

## LAW AND ARGUMENT

In accordance with Tenn. Code Ann. § 29-26-121(f), defendants respectfully submit that they are entitled to the entry of the attached qualified protective order allowing them to interview, outside the presence of the plaintiffs and the plaintiffs' counsel, the patient's healthcare providers listed above.

Effective July 1, 2012, Tenn. Code Ann. § 29-26-121(f), provides as follows:

(f)(1)  Upon the filing of any "healthcare liability action," as defined in Section 29-26-101(a)(1), the named defendant(s) may petition the court for a qualified protective order allowing the defendant(s) and their attorneys the right to protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by Section 29-26-101(a)(2).  Such petition *shall* be granted under the following conditions:

> (A) The petition must identify the treating healthcare providers(s) for whom the defendant(s) seek a qualified protective order to conduct an interview;

> (B) The claimant may file an objection seeking to limit or prohibit the defendant(s) or the defendant(s)' counsel from conducting the interviews, *which may be granted only upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure*; and

> (C) The qualified protective order shall expressly limit the dissemination
>
> of any protected health information to the litigation pending before the court.

Tenn. Code Ann. § 29-26-121(f) (emphasis supplied).

The Act provides that it shall take effect July 1, 2012, and shall apply to all

healthcare liability actions commenced on or after July 1, 2012, the public welfare requiring it. *Id.* This action was filed on May 8, 2013, and the foregoing provisions are therefore applicable to this lawsuit.

Tenn. Code Ann. § 29-26-121(f) was amended this year but, per the Compiler's Notes, the statute as amended applies to healthcare liability actions commenced on or after July 1, 2013. Accordingly, the 2013 amendments do not appear to be applicable to the instant case, and the applicable statute is the above-quoted statute, which was in effect at the time of the filing of suit. However, the 2013 amendments to the statute are salutary and provide additional protection to the patient and are agreeable to Defendants, and therefore have been incorporated into the Defendants' proposed Qualified Protective Order.

Based on the allegations in the Complaint and the defenses alleged in Defendants' Answer, counsel for Defendants reasonably believe that the healthcare providers listed herein above possess information relevant to the instant lawsuit. Accordingly, Defendants respectfully submit that the Court should enter a Qualified Protective Order permitting counsel for Defendants to interview the health care providers identified above, outside the presence of plaintiffs and plaintiffs' counsel.

Similar Qualified Protective Orders have been granted by judges of the Circuit Court of Tennessee in accordance with Tenn. Code Ann. § 29-26-121(f). Attached hereto as Exhibits "C" and "D" are copies of two such orders entered by the Circuit Court of Tennessee For the Thirtieth Judicial District At Memphis, and attached as Exhibit "E" is a copy of an order entered by the Circuit Court of Tennessee For The Twenty-Fourth

Judicial District At Camden.

## CONCLUSION

Based on the foregoing facts and law, Defendants request that this Court enter a Qualified Protective Order, in accordance with Tenn. Code Ann. § 29-26-121(f), permitting counsel for Defendants to interview the health care providers identified above, outside the presence of plaintiffs and plaintiffs' counsel.

Respectfully submitted,

THE HARDISON LAW FIRM, P.C.

By:  s/David M. Cook
     DAVID M. COOK (5362)
     ALBERT G. MCLEAN (5150)
     Attorney for Defendants,
     Pediatric Anesthesiologists, P.A. and
     Babu Rao Paidipalli, M.D.
     119 S. Main Street, Suite 800
     Memphis, Tennessee 38103
     (901) 525-8776
     dcook@hard-law.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the Court's electronic filing system upon:

Mark Ledbetter, Esq.
Halliburton & Ledbetter
Attorney for Plaintiffs
254 Court Avenue
Suite 305
Memphis, TN 38103

J. Kimbrough Johnson, Esq.
Marcy Dodds Magee, Esq.
Attorneys for Defendant, Mark P. Clemons, M.D.
Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC
2900 One Commerce Street
Memphis, TN 38103

Stephanie A. Bergmeyer, Esq.
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202-0207

this 6th day of December, 2013.

s/David M. Cook
DAVID M. COOK

RECEIVED

2013 FEB 22 PM 3: 21

SECRETARY OF STATE

BEFORE THE TENNESSEE BOARD OF NURSING

In The Matter of:                               )
                                                )
**KELLY KISH**                                  )
R.N. License Number 99584                       )       Docket Number 17.19-118516A
                                                )
**Respondent**                                  )
                                                )

## AGREED ORDER

The State of Tennessee, by and through the Office of General Counsel and the Respondent, Kelly Kish, R.N., (Respondent), by and through her attorney, hereby stipulate and agree, subject to approval by the Tennessee Board of Nursing (Board), to the following:

### I.   Authority and Jurisdiction

The Board regulates and supervises nurses licensed to practice pursuant to Tennessee Code Annotated Section (TENN. CODE ANN. §) 63-7-101, *et seq.* (Code), including the discipline of licensees, as well as those who are required to be licensed, who violate the Code and the Rules promulgated by the Board, Official Compilation of Rules and Regulations of the State of Tennessee (TENN. COMP. R. & REGS.), 1000-01-.01, *et seq.* (Rules). The Board enforces the Code and Rules to promote and protect the health, safety and welfare of the public; accordingly, it is the policy of the Board to require strict compliance with the law and to apply the law to preserve the quality of nursing care provided in Tennessee.

### II.   Stipulations of Fact

1. Respondent has been at all times pertinent hereto licensed by the Board as a registered nurse in the State of Tennessee, having been granted license number 99584 on June 14, 1994, which currently has an expiration date of April 30, 2014. Respondent's registered nurse license bears a multistate privilege to practice nursing in states which have entered into the Interstate Nurse Licensure Compact.



**EXHIBIT**

*A*

2.  Respondent was employed as a registered nurse by LeBonheur Children's Hospital in Memphis, Tennessee from about February 11, 2008 through about March 23, 2012.

3.  On or about March 12, 2012, Respondent was assigned to care for a 12-year-old male patient ("the patient") who was in the post anesthesia care unit (PACU) following a tonsillectomy/adenoidectomy.  The patient was the only patient assigned to Respondent during the approximately 90 minutes the patient was in the PACU.

4.  The patient was stable upon transfer from the operating room to the PACU.

5.  The patient's mother and father were present in the PACU with the patient.

6.  Upon arrival to the PACU, the patient positioned himself prone, with his legs drawn up under him, buttocks in the air, arms crossed over his head, and his face down on the mattress.  At no time did Respondent attempt to change the patient's position.

7.  Upon the patient's arrival into the PACU, Respondent made an initial assessment but chose not to place the patient on a cardiac monitor, as permitted by hospital policy.

8.  Respondent placed a pulse oximeter on the patient, but the oximeter worked only intermittently, and Respondent did not notify anyone of the problem and did not replace the device.

9.  At no time did Respondent attempt to speak with or rouse the patient, despite charting a rating of 9 out of 10 on the Aldrete scale.  Such a score would indicate, among other things, full breathing, high oxygen saturation, full consciousness, good circulation, and lively activity and motor control.  Respondent admitted that she never roused or checked on the patient to make these ratings, but instead charted based on her observation of the patient's status when he initially entered the PACU.  Among other things, Respondent charted the patient's level of consciousness as "arousable on calling" from the time he entered the PACU up until the "Harvey" code, indicating an unresponsive patient, was called, as

2

detailed below.

10. Throughout her time caring for the patient, Respondent documented oxygen saturations that were not reflected on the print-out.  Respondent documented, for example, 100% oxygen saturation when the monitor read only "artifact" or levels below 25%.

11. Respondent documented a series of assessments approximately every 15 minutes that the patient was in the PACU during the patient's first hour, then every 30 minutes thereafter, as dictated by hospital policy.  In her assessments Respondent documented, in addition to the Aldrete scores noted above, breath sounds and readings from an automated blood pressure cuff.

12. At one point, the patient was heard making snoring and/or gasping noises, which the patient's parents brought to Respondent's attention.  Respondent discussed the sounds with the parents, and Respondent states she also discussed the sounds with a physician. Respondent did not take any further action in response to these noises.

13. Approximately 30 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 118 over 56.  Approximately 45 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 106 over 53.  Approximately 60 minutes after the patient was admitted to the PACU, Respondent charted that the patient's blood pressure was 84 over 42.  Respondent did not take any action in response to these changes in the patient's blood pressure.

14. Approximately 90 minutes after the patient was admitted to the PACU, Respondent left to obtain fluids for the patient.  Upon her return, the patient's father asked Respondent for help turning the patient, as the patient's leg appeared blue.  When the patient was turned supine, he was noted to be deeply cyanotic, apneic, and pulseless.  CPR was initiated, and a "Harvey" code, indicating a nonresponsive patient, was called.

3

15. While the patient was eventually resuscitated, he suffered severe anoxic brain injury and died approximately 48 hours later.

16. During the patient's time in the PACU, Respondent accessed Facebook and at least one other social media website using a hospital computer.

17. On or about March 23, 2012, Respondent resigned in lieu of termination.

### III.    Stipulated Grounds for Discipline

18. The Stipulations of Fact are sufficient to establish that Respondent has violated the following statutes or rules, for which disciplinary action by the Board is authorized, TENN. CODE ANN. § 63-7-101, *et seq.* and TENN. COMP. R. & REGS., 1000-01-.01, *et seq.*

19. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of TENN. CODE ANN. § 63-7-115 (a)(1): The board has the power to deny, revoke or suspend any certificate or license to practice nursing or to otherwise discipline a licensee upon proof that the person:

    (C)    Is unfit or incompetent by reason of negligence, habits or other cause;

    (F)    Is guilty of unprofessional conduct.

20. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of Rule 100-01-.-.13(1) TENN. COMP.R.REGS., RULE 1000-01-.-.13(1):

    (a)    Intentionally or negligently causing physical or emotional injury to a patient;

    (c)    Abandoning or neglecting a patient requiring nursing care.

21. The facts stipulated in paragraphs eight (8) through eleven (11) constitute a violation of Rule 100-01-.-.13(1) TENN. COMP.R.REGS., RULE 1000-01-.-.13(1) (a):

    (b)    Failure to maintain a record for each patient which accurately reflects the nursing problems and interventions for the patient and/or failure to maintain a record for each patient which accurately reflects the name and title of the nurse providing care;

4

(w)  Engaging in acts of dishonesty which relate to the practice of nursing.

## IV.    Stipulated Disposition

For the purpose of avoiding further administrative action with respect to this cause, Respondent agrees to the following:

22.  It is hereby ordered that Respondent's Tennessee nursing license number 99584 is **REVOKED** and her multistate privilege to practice in any other party state is **VOID**.

23.  Respondent must pay the actual and reasonable costs of prosecuting this case, pursuant to TENN. CODE ANN. §§ 63-7-115(d) and 63-1-144 and Rule 1000-01-.04(11) of the TENN. COMP. R. & REGS., to the extent allowed by law.  These costs will be established by an Assessment of Costs prepared by counsel for the Department.  The Assessment of Costs shall not exceed one thousand dollars ($1,000.00) and shall be paid in full within twelve months from the issuance of the Assessment of Costs.

24.  Each condition of discipline herein is a separate and distinct condition.  If any condition of this Order, or any application thereof, is declared unenforceable in whole, in part, or to any extent, the remainder of this Order, and all other applications thereof, shall not be affected. Each condition of this Order shall separately be valid and enforceable to the fullest extent permitted by law.

## V.    Representations of Respondent

25.  Respondent understands and admits the allegations, charges, and stipulations in this Order.

26.  Respondent understands the rights found in the Code, the Rules, and the Uniform Administrative Procedures Act, TENN. CODE ANN. §§ 4-5-101 through 4-5-404, including the right to a hearing, the right to appear personally and by legal counsel, the right to confront and cross-examine witnesses who would testify against Respondent, the right to testify and present evidence on Respondent's own behalf, including the issuance of

5

subpoenas to compel the attendance of witnesses and the production of documents, and the right to appeal for judicial review.  Respondent voluntarily waives these rights in order to avoid further administrative action.

27. Respondent agrees that presentation of this Order to the Board and the Board's consideration of it and all matters divulged during that process shall not constitute unfair disclosure such that the Board or any of its members become prejudiced requiring their disqualification from hearing this matter should this Order not be ratified.  All matters, admissions, and statements disclosed during the attempted ratification process shall not be used against the Respondent in any subsequent proceeding unless independently entered into evidence or introduced as admissions.

28. Respondent also agrees that the Board may issue this Order without further process.  If the Board rejects this Order for any reason, it will be of no force or effect for either party.

## VI.   Notice

29. This revocation is formal disciplinary action and will be reported to the Health Integrity and Protection Data Bank (HIPD).

30. Costs shall be paid by submitting a certified check, cashier's check, or money order payable to the State of Tennessee.  Costs payments must include the Respondent's name and this case number, 201200757, on the instrument of payment and shall be mailed or delivered to:

Office of Investigations
Attn: Disciplinary Coordinator
Tennessee Department of Health
227 French Landing, Suite 201
Nashville, Tennessee 37243

6

**APPROVED FOR ENTRY:**

_Kelly Kish_

Kelly Kish
R.N. License Number 99584
Respondent

_2/19/13_
DATE


_Donna L. Boyce_

Donna L. Boyce
Adams and Reese LLP
Brinkley Plaza
80 Monroe Ave, Suite 700
Memphis, Tennessee 38103
(901) 525-3234
Attorney for Respondent

_2/19/13_
DATE


_Marc R. Guilford_

Marc R. Guilford (BPR # 025419)
Assistant General Counsel
Tennessee Department of Health
Office of General Counsel
220 Athens Way, Suite 210
Nashville, Tennessee 37243
(615) 741-1611

_2/20/13_
DATE

---

### Approval by the Board

Upon the agreement of the parties and the record as a whole, this **CONSENT ORDER** was approved as a **FINAL ORDER** by a majority of a quorum of the Tennessee Board of Nursing at a public meeting of the Board and signed this ___20th___ day of ___February___, 2013.

**ACCORDINGLY, IT IS ORDERED** that the agreements of the parties will, and hereby do, become the Final Order of the Board.

_____
Chairperson/Acting Chairperson
Tennessee Board of Nursing

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon the Respondent, Kelly Kish through her counsel, Donna L. Boyce, Adams and Reese, 80 Monroe Ave, Suite 700, Memphis, Tennessee 38103, by delivering same in the United States regular mail and United States certified mail, number 7012 1640 0002 3421 5250 return receipt requested, with sufficient postage thereon to reach its destination.

This _22nd_ day of _February_, 2013.

_____

Marc R. Guilford
Assistant General Counsel

## CERTIFICATE OF FILING

This Order was received for filing in the Office of the Tennessee Secretary of State, Administrative Procedures Division, and became effective on the _22ND_ day of _February_ , 20_13_.

_Thomas G. Stovall_

Thomas G. Stovall
Director, Administrative Procedures Division

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESESEE
## WESTERN DIVISION

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

Vs.

                                    No. 2:13-cv-02289-JPM-dkv
                                    JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

      Defendants,

And

STATE OF TENNESSEE,

      Defendant-Intervenor.

### [DEFENDANTS' PROPOSED] QUALIFIED PROTECTIVE ORDER

This matter came before the Court on the Motion of Defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, for Qualified Protective Order, and Defendants' supporting memorandum of facts and law, and the entire record in this cause. It appears to the Court that Defendants' motion is well taken and that Defendants are entitled to the entry of a qualified protective order as stated hereinafter.

Pursuant to Tenn. Code Ann. Section 29-26-121(f), Defendants, Babu Rao Paidipalli and Pediatric Anesthesiologists, P.A., and their attorneys, may obtain protected



health information regarding Bret Lovelace, including information otherwise protected

from disclosure by the Health Insurance Portability and Accountability Act of 1996 or

"HIPAA" and all other applicable state and federal statutes, rules and regulations, during

interviews conducted outside the presence of the plaintiffs and plaintiffs' counsel with the

following healthcare providers:

1. Kelly Kish, R.N., Methodist nurse responsible for monitoring the patient in the PACU;
2. Wayne Sutter, EMT, Methodist EMT who observed the patient in the PACU prior to the "Code" event;
3. Elesia Turner, Risk Manager, Methodist Le Bonheur Children's Hospital, believed to have knowledge concerning the monitor printout downloaded from the PACU monitoring equipment;
4. Mark Bugnitz, M.D., patient's treating pediatrician during the admission in question;
5. Elizabeth Hinson, R.N., Methodist nurse believed to have provided care to the patient prior to and during the admission in question;
6. Margaret Yoste, R.N., Methodist nurse believed to have provided care to the patient during the admission in question; and
7. Dr. Mark Clemons, M.D., physician who performed the patient's surgery during the admission in question.

The Court further orders that the following conditions shall govern any *ex parte*

defense counsel/treating physician/caregiver interview, in accordance with Tenn. Code

Ann. Section 29-26-121(f)(1)(c):

a.  The Protected Health  Information disclosed pursuant to this Qualified

Protective Order shall only be disseminated and used for the purposes of and during the

course of this healthcare liability action, and shall not be disseminated to any person(s)

other than the defense attorneys, their staff members, the parties, experts utilized in this

case, and trial support vendors utilized in this case.

b.  All Protected Health Information obtained during any *ex parte* conference,

and all copies of documents containing such information obtained during any such interview shall be returned to the healthcare provider or shall be destroyed at the conclusion of this lawsuit.

  c. Any and all *ex parte* meeting(s) with defense counsel and treating healthcare providers are strictly voluntary on the part of the treating healthcare providers and nothing in this Order is intended to imply that the treating healthcare providers cannot refuse any request for *ex parte* meetings with defense counsel.

  IT IS SO ORDERED.

_____
JUDGE

Date: _____

## IN THE CIRCUIT COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

DEBRAH THOMPSON-REID

     Plaintiff,

v.

DMC-MEMPHIS, INC., d/b/a
DELTA MEDICAL CENTER,

     Defendant.

Docket No. CT-001673-13
Division VIII

## QUALIFIED PROTECTIVE ORDER

Pursuant to Tenn. Code Ann. § 29-26-121(f), the Defendant and its attorneys may obtain protected health information regarding Debrah Thompson-Reid, including information otherwise protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 or "HIPAA" and all other applicable state and federal statutes, rules and regulations, during interviews conducted outside the presence of the Plaintiff and Plaintiff's counsel with the following healthcare providers:

1. Methodist South

2. Regional Medical Center

3. Baptist East

4. Dr. Jessie McGhee

5. Methodist Central

6. Dr. Stephen Bell

7. Dr. House

8. Memphis Surgery Center

1



9. Metro Memphis Medical

10. TLC Medical and Physical Therapy

11. OrthoNow, PLLC

The protected health information disclosed pursuant to this qualified protective order shall only be disseminated for the purposes of and during the course of this healthcare liability action, as defined by Tenn. Code Ann. § 29-26-101(a)(1), currently pending in Shelby County Circuit Court for the Thirtieth Judicial District at Memphis and styled Debrah Thompson-Reid v. DMC-Memphis, Inc. d/b/a Delta Medical Center Docket No. CT-001673-13, Div. VIII. All persons to whom confidential information is disseminated pursuant to this qualified protective order are precluded from further disseminating the information for purposes not associated with this lawsuit. This qualified protective order shall remain in effect throughout the course of this pending litigation.

_____
JUDGE

DATE ___9-19-13___

A TRUE COPY ATTEST.
JIMMY MOORE, Clerk
Q. Well _____ D.C.

Approved for entry:


JONATHAN T. MARTIN (#20194)
AARON T. CASSAT (BPR# 025311)
Attorneys for Defendant, DMC-Memphis, Inc.
d/b/a Delta Medical Center
119 South Main Street, Suite 800
Memphis, Tennessee 38103
(901) 525-8776 – Telephone



JOHN MICHAEL BAILEY (#26401)
KRISTY L. BENNETT (#30016)
Kristy L. Bennett
Attorneys for Plaintiff
5978 Knight Arnold Road, Suite 400
Memphis, TN 38115
(901) 529-1010 – Telephone

3

IN THE CIRCUIT COURT OF TENNESSEE FOR THE
THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

WILLIE JACKSON,

     Plaintiff,

     v.                                    Docket No. <u>CT-004961-12</u>
                                           Division VI

TENET HEALTHSYSTEM BARTLETT,
INC. d/b/a ST. FRANCIS HOSPITAL –
BARTLETT

     Defendant,

STATE OF TENNESSEE,

     Defendant-Intervenor.

---

## ORDER GRANTING DEFENDANTS' JOINT
## MOTION FOR QUALIFIED PROTECTIVE ORDER

---

     **THIS CAUSE** came to be heard upon the Joint Motion of Defendants for Qualified Protective Order on Friday, September 27, 2013. Upon consideration of the filings submitted by all parties, oral argument and the entire record in this cause, this Court finds that the motion is well taken and should be granted with several conditions.

     **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the defendants' counsel should be permitted to meet ex parte with the following health care providers:

     1.   Dr. James Dismukes (SFH-Bartlett admission physician for 2/6/11

           admission);

     2.   Dr. Wessam Ballouk (SFH-Bartlett renal consult physician for 2/6/11

           admission);



EXHIBIT

D

3. Dr. Owen B. Tabor, Jr. (SFH-Bartlett IV infiltration consult physician for 2/6/11 admission);

4. Dr. David Gibson (SFH-Bartlett above the knee amputation surgeon for 2/6/11 admission);

5. Dr. Keith Mosher, Jr. (SFH-Bartlett ER physician for 2/6/11 admission);

6. Dr. Jonathan J. Ellichman, (SFH-Bartlett admitting physician for 2/6/11 admission);

7. Dr. Fernando Herrera (SFH-Bartlett surgeon consult physician for 2/6/11 admission);

8. Dr. Maureen A. Smithers (SFH-Bartlett cardiology consult physician for 2/6/11 admission);

9. Dr. Donald Sullivan (HealthSouth Rehab Memphis Attending physician for 2/24/11 admission);

10. Dr. Darrin Lyons (HealthSouth Rehab Memphis consult physician for 2/24/11 admission);

11. Dr. Joe Weinstein (Cardiologist to plaintiff prior to SFH-Bartlett admission of 2/6/11);

12. Dr. Mohamad K. Moughrabieh (Pulmonary consult for Methodist Hospital-North admission of 3/2/11);

13. Dr. Edmond Owen, Jr. (Vascular consult for Methodist Hospital-North admission of 3/2/11);

14. Dr. Ben Gipson (Surgery consult for Methodist Hospital-North admission of 3/2/11).

2

This Court further orders that the following conditions shall be issued in conjunction with any ex parte defense attorney / treating physician or caregiver interview:

1. All Protected Health Information obtained during these ex parte conferences shall be used only in conjunction with this particular lawsuit and shall not be disseminated to any third parties other than the defense attorneys' staff members, vendors, clients and experts.

2. All Protected Health Information obtained during these ex parte conferences shall be destroyed at the conclusion of this lawsuit.

3. All ex parte meetings with defense counsel and treating physicians / caregivers are strictly voluntary on the part of the treating physicians / caregivers, and nothing in this Order is intended to imply that the treating physicians / caregivers cannot refuse any requests for ex parte meetings with defense counsel.

4. Defense attorneys may conduct no ex parte meetings with treating physicians / caregivers until after November 11, 2013.

The protected health information disclosed pursuant to this qualified protective order shall only be disseminated for the purposes of and during the course of this healthcare liability action, as defined by Tenn. Code Ann. § 29-26-101(a)(1), currently Willie Jackson v. Tenet HealthSystem Bartlett, Inc. d/b/a Saint Francis Hospital – Bartlett, docket number CT-004961-12. All persons to whom confidential information is disseminated pursuant to this qualified protective order are precluded from further disseminating the information for purposes not associated with this lawsuit. This

3

qualified protective order shall remain in effect throughout the course of this pending
litigation.

A TRUE COPY ATTEST

JIMMY MOORE, Clerk

BY _____ D.C.

Judge: _Jerry Stokes_____

Date: _10-28-13_____

Approved for entry:

_Michael Skouteris (by JAM w/perm.)_
WILLIAM B. WALK, JR. (BPR #13989)
BRYAN M. MEREDITH (BPR #26876)
Attorneys for Plaintiff
One Commerce Square, Suite 2200
Memphis, TN 38103
(901) 312-9160

MICHAEL C. SKOUTERIS (BPR #17566)
Attorney for Plaintiff
Morgan Keegan Tower
50 North Front Street, Suite 920
Memphis, TN 38103
(901) 526-2254

JONATHAN T. MARTIN (BPR #20194)
JOSHUA A. HILLIS (BPR #024493)
Attorneys for Defendant
119 South Main Street, Suite 800
Memphis, TN  38103
(901) 525-8776

4

*Stephanie Bergmeyer (by JHT w/ perm.)*

STEPHANIE A. BERGMEYER (BPR #27096)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20707
Nashville, TN 37202
(615) 741-6828

**FILED**

AUG 2 9 2013

SAM RAINWATERS
BENTON CO. CIRCUIT CLERK

11:00 A.M.

**IN THE CIRCUIT COURT OF TENNESSEE**
**FOR THE TWENTY-FOURTH JUDICIAL DISTRICT AT CAMDEN**

LEIGHA WOODS, individually, and as           )
mother of Dane Woods, deceased,              )
                                             )
                Plaintiff,                   )
                                             )
vs.                                          )          No. 12-CV-76
                                             )
TOBY ANDREW HAMPTON, M.D. aka                )          JURY DEMANDED
TOBY A. HAMPTON, M.D.; TOBY ANDREW           )
HAMPTON aka TOBY A. HAMPTON, dba             )
TRI-COUNTY FAMILY MEDICINE & URGENT )
CARE; TRI-COUNTY FAMILY MEDICINE             )
& URGENT CARE; and VIRGINIA M.               )
PEEBLES, A.P.N.,                             )
                                             )
                Defendants.                  )

---

## QUALIFIED PROTECTIVE ORDER

---

Pursuant to Tennessee Code Annotated § 29-26-121(f), the Defendants and their

attorneys, may obtain all protected health information by conducting interviews, outside the

presence of claimant or claimant's counsel, with the following treating healthcare providers[1]

regarding their care and treatment of Dane Woods and/or Leigha Woods: K. Threet, RN;

Sheila Hastings, NE; Steven L. Cannaday, FNP; Dennis Wieck, MD; Graham Roberts, MD;

L. Richardson, NA; B. Patterson, RN; C. Allman, RN; Scott Whitby, MD; Debra Selby, MD;

Sheila Fitzpatrick, RN; Heather Larkins, RN; Allison Blackburn, RN; Holly Marlar, PA; Candi

Inman, MA; Mitzi Lamberth, RN; Timothy Ashmore, MD; N. Lee, RN; W. Harper, RN; John

Blankenship, MD; W. Romine, RN; T. Melton, EMT, S. Pfeifer, EMT, S. Floyd; Amy

---

[1] As defined by Tenn. Code Ann. § 29-26-101.

-1-



EXHIBIT

E

49500-73543

McMaster, MD; Steve Cantrell, MD; Thomas Deering, MD; Susan Crookham, CS; Karen

Cline-Parhamovich, DO; Linda Thompson, MD; and any other physicians, nurses, or other

medical providers who were involved in the care and treatment of Dane Woods and/or

Leigha Woods on or after August 1, 2010.  Defendants and their counsel may discuss all

treatment rendered by these providers regardless of the date of treatment. Regarding any

medical providers who are not specifically named in this Order but who were involved in the

care or treatment of Dane Woods and/or Leigha Woods on or after August 1, 2010, if

Defendants intend to seek interviews with such subsequently identified providers, then

Defendants shall provide Plaintiff's counsel with the providers' names at least fifteen (15)

days before Defendants contact the providers about potential meetings with them.  Should

Plaintiff choose to file a motion with this Court to have the Court determine whether

interview(s) with subsequently identified providers is appropriate pursuant to T.C.A. 29-26-

121, such motion shall be filed within seven (7) days of receiving notification by defense

counsel of their intent to contact such provider(s), and the interview(s) shall be delayed until

this Court makes such determination.

Disclosure of protected health information by a healthcare provider in response to

this Order shall be deemed a permissible disclosure under Tennessee law, any Tennessee

statute or rule of common law notwithstanding.  This Order also allows for the disclosure of

health information otherwise protected by the Health Insurance Portability and

Accountability Act of 1996, or "HIPAA," and applicable state and federal statutes, rules and

regulations.

The protected health information disclosed pursuant to this Order shall only be

disseminated for the purposes of and during the course of this lawsuit.  All persons to

49500-73543

whom confidential information is disseminated under this Order are precluded from further disseminating the information for purposes not associated with this lawsuit.

Nothing in this Order shall be construed as restricting in any way the right of defendants or defendants' counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendants' own present or former employees, partners, or owners concerning this action.

Participation in any interviews by medical providers pursuant to this Order shall be voluntary. This Order shall remain in effect until the conclusion of this litigation.

IT IS SO ORDERED.

JUDGE

DATE 8/22/13

-3-

49500-73543

APPROVED FOR ENTRY:

TIMOTHY G. WEHNER (BPR #15711)
ASHLEY D. CLEEK (BPR # 23562)
*Attorneys for Defendant Virginia M. Peebles, A.P.N.*
105 South Highland Avenue
P. O. Box 1147
Jackson, TN  38302-1147
(731) 423-2414


*(w/ permission by Ashly Cleek)*

JEFFREY S. ROSENBLUM
MATTHEW T. MAY
ROSENBLUM & REISMAN PC
80 Monroe Avenue, #950
Memphis, TN  38103

MARK N. GELLER
NAHON SAHAROVICH & TROTZ PLLC
488 South Mendenhall Road
Memphis, TN  38117

*Attorneys for Plaintiff*


*(by Ashly Cleek permission.)*

THOMAS A. WISEMAN III
KIMBERLY G. SILVUS
Wiseman Ashworth Law Group PLC
511 Union Street, Suite 800
Nashville, TN  37219-1743

MR. HOWARD HAYDEN
Wiseman Ashworth Law Group, PLC
5050 Poplar Avenue, Suite 2413
Memphis, TN 38157-2413

*Attorneys for Defendants Toby Andrew Hampton, M.D. a/k/a Toby A. Hampton,*
*M.D.; Toby Andrew Hampton a/k/a Toby A. Hampton d/b/a Tri-County Family*
*Medicine & Urgent Care and Tri-County Family Medicine & Urgent Care*

-4-

49500-73543

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of this pleading or document was served upon counsel of record by mailing postage prepaid to such counsel:

Mr. Jeffrey S. Rosenblum
ROSENBLUM & REISMAN PC
80 Monroe Avenue, #950
Memphis, TN  38103

Mr. Mark N. Geller
NAHON SAHAROVICH & TROTZ PLLC
488 South Mendenhall Road
Memphis, TN  38117

*Attorneys for Plaintiff*

Mr. Thomas A. Wiseman III
Ms. Kimberly G. Silvus
Wiseman Ashworth Law Group PLC
511 Union Street, Suite 800
Nashville, TN  37219-1743

Mr. Howard Hayden
Wiseman Ashworth Law Group, PLC
5050 Poplar Avenue, Suite 2413
Memphis, TN 38157-2413

*Attorneys for Defendants Toby Andrew Hampton, M.D. a/k/a Toby A. Hampton, M.D.; Toby Andrew Hampton a/k/a Toby A. Hampton d/b/a Tri-County Family Medicine & Urgent Care and Tri-County Family Medicine & Urgent Care*

This the 22 day of ___Aug.___, 2013.

-5-