IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

    Plaintiffs,

VS.                                                NO.:  2:13-cv-02289 dkv
                                                        JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI ; and,
MARK P. CLEMONS,

    Defendants.

## PLAINTIFFS' MEMORANDUM OF FACTS AND LAW IN OPPOSITION TO MOTION OF DEFENDANTS, PEDIATRIC ANESTHESIOLOGISTS, P.A. AND BABU RAO PAIDIPALLI, FOR QUALIFIED PROTECTIVE ORDER

COME NOW Plaintiffs, DANIEL LOVELACE and HELEN LOVELACE, individually, and as Parents of BRETT LOVELACE, deceased, by and through their counsel of record, and file this Memorandum of Facts and Law in Opposition to Motion of Defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, for Qualified Protective Order, in which Plaintiffs state and show as follows:

### FACTS AND PROCEDURAL HISTORY

On March 12, 2012, Plaintiffs' decedent, and son, Brett Lovelace, age 12, was treated at LeBonheur Children's Hospital in Memphis, Tennessee and underwent a tonsillectomy and adenoidectomy, which surgery was performed by Defendant, Mark P. Clemons. In that procedure, anesthesia was administered to Plaintiffs' decedent by Defendant, Pediatric Anesthesiologists, P.A. personnel, including Defendant, Babu Rao Paidipalli.

1

Following what was to be a minor surgery, twelve-year-old Brett Lovelace was transported to the LeBonheur recovery room or PACU [post-anesthesia care unit], where Defendants were chargeable and responsible for his pre- and post-operative care, when he sustained a medical injury on March 12, 2012 and subsequently died on March 14, 2012. The parties culpable or negligent in causing Brett Lovelace's injury and consequent death due to asphyxia include the following:

a. Pediatric Anesthesiologists, P.A.;

b. Babu Rao Paidipalli; and,

c. Mark P. Clemons.

Plaintiffs, Daniel Lovelace and Helen Lovelace, husband and wife, and parents of twelve-year old Brett Lovelace, were present and actively seeking immediate post-surgical care for their son in the LeBonheur PACU. The Plaintiffs witnessed not only the inadequate care rendered to Brett Lovelace, but also witnessed his suffocation and subsequent death due to the substandard care rendered by Defendants, and those under their supervision, direction and control.

## **LAW AND ARGUMENT**

By this Motion, Defendants now seek to engage in *ex parte* communications with six of Brett Lovelace's "treating healthcare providers." In particular, Defendants seek to interview:

1. Kelly Kish, R.N., Methodist Nurse;

2. Wayne Sutter, EMT;

3. Mark Bugnitz, M.D., ICU Pediatrician at Methodist;

4. Elizabeth Hinson, R.N., Methodist Nurse;

5. Margaret Yoste, R.N., Methodist Nurse; and

6. Dr. Mark P. Clemons, ENT Physician who performed surgery, co-defendant.

2

Following what was to be a minor surgery, twelve-year-old Brett Lovelace was transported to the LeBonheur recovery room or PACU [post-anesthesia care unit], where Defendants were chargeable and responsible for his pre- and post-operative care, when he sustained a medical injury on March 13, 2012 and subsequently died on March 14, 2012. The parties culpable or negligent in causing Brett Lovelace's injury and consequent death due to asphyxia include the following:

    a. Pediatric Anesthesiologist, P.A.;

    b. Babu Rao Paidipalli; and,

    c. Mark P. Clemons.

Plaintiffs, Daniel Lovelace and Helen Lovelace, husband and wife, and parents of twelve-year-old Brett Lovelace, were present and actively seeking immediate post-surgical care for their son in the LeBonheur PACU. The Plaintiffs witnessed not only the inadequate care rendered to Brett Lovelace, but also witnessed his suffocation and subsequent death, due to the substandard care rendered by Defendants, and those under their supervision, discretion and control.

## LAW AND ARGUMENT

By this Motion, Defendants now seek to engage in ex parte communications with six of Brett Lovelace's "treating healthcare providers." In particular, Defendants seek to interview:

    1. Kelly Kish, R.N., Methodist Nurse;

    2. Wayne Sutter, EMT;

    3. Mark Bugnitz, M.D., ICU Pediatrician at Methodist;

    4. Elizabeth Hinson, R.N., Methodist Nurse;

    5. Margaret Yoste, R.N., Methodist Nurse; and

    6. Dr. Mark P. Clemons, ENT Physician who performed surgery, co-Defendant.

2

[Previously, Elesia Turner, Risk Manager, Methodist, was included, but has since been deleted from this list.] The only one of the six (6) individuals that is a party is Dr. Mark P. Clemons. Although Defendants state that the healthcare providers listed are thought to possess relevant information, five (5) of them are non-parties who treated Brett Lovelace as a patient. As non-parties, Plaintiffs do not object to their depositions, subpoenas of medical records, and any other open discovery permitted and governed by the Federal Rules of Civil Procedure that affords due process to Plaintiffs. Further, a deposition of Dr. Clemons may be taken, as he is a Co-Defendant. Plaintiffs do, however, respectfully object to the Defendants' request to obtain such discovery outside the presence of a recording device or Plaintiffs or their counsel.

Accordingly, this Court should deny Defendants' Motion for Protective Order and prohibit Defendants from participating in *ex parte* communications with these six (6) individuals, absent protection via recordings of those communications provided to or allowed to be made by Plaintiffs.

Defendants have already obtained full and complete relevant medical information comprised of all medical records of the Plaintiffs' decedent from all prior to the filing of their Motion. [D.E. 59].

**LAW AND ARGUMENT**

I. THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT CONTROLS IN REGARD TO THE INFORMAL CONTACT BETWEEN LITIGANTS AND MEDICAL PROVIDERS BECAUSE HIPAA CONFLICTS WITH TENNESSEE LAW.

Congress enacted the Health Insurance Portability and Accountability Act of 1996 (HIPAA) to formulate national standards for medical patient protection. Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996). Under the authority of 42 U.S.C. § 1320(d), Health and Human Services promulgated 45 C.F.R. §160 and 164, which established regulations for the disclosure of protected health information. See 45 C.F.R. § 160, 164.

Pursuant to these regulations, a medical provider cannot disseminate a patient's medical information in litigation without obtaining a court order or the patient's express consent. See 45 C.F.R. §164.512(e) (2013). These regulations for dissemination are intended as a federal floor for privacy protection. See Citizens for Health v. Leavitt, 428 F.3d 167, 174 (3rd Cir. 2005). Thus, HIPAA controls all disclosures of individually identifiable health information unless a state law is more stringent than the privacy standard imposed by HIPAA. See 45 C.F.R. § 160.203.

Tennessee law lowers the privacy standards determined by HIPAA. T.C.A. § 29-26-121(f) (2013). The only way that a patient can object to the *ex parte* discussion is by showing good cause "that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure." Id. Otherwise, a Defendant's motion for *ex parte* communication will be granted. Id. It can hardly be said that a plaintiff being forced to show "good cause" is a more stringent standard, or even a standard on the same level, as the protection provided by HIPAA. Where HIPAA sets a floor, as here, and Tennessee law is below that floor or threshold, HIPAA controls.

Tennessee courts recognize that where there is a conflict between a state law and a federal law, the federal law must prevail. See State v. Scarbrough, 181 S.W.3d 650, 655 (Tenn. 2005). Additionally, when an issue is quasi-federal in nature such as this, the decisions from federal courts are given more deference, even were this case not a diversity suit in federal court. See Kelly v. Woodlee, 133 S.W.2d 473, 475 (Tenn. 1939).

Moreover, the United States Congress has expressly mandated that HIPAA "shall supersede any contrary provision of State law..." absent a few limited exceptions not applicable hereto. 42 U.S.C. §1320(d)-7(a)(l) (2013). Thus, to the extent T.C.A. § 29-26-121(f) lowers HIPAA's privacy standards, Tennessee law must yield to HIPAA.

4

This exact issue was recently heard by the Georgia Supreme Court in <u>Moreland</u> v. <u>Austin</u>, 670 S.E.2d 68 (Ga. 2008). A defendant in <u>Moreland</u> sought *ex parte* communications with the plaintiff's deceased husband's physicians without the presence of the plaintiff. Under Georgia law, defense attorneys could informally contact treating physicians and orally communicate with them about plaintiff's medical condition. <u>Id</u>. at 71. The Georgia Supreme Court considered whether HIPAA preempted state law. <u>Id</u>.

The court found that "HIPAA affords patients more control over their medical records when it comes to informal contacts between litigants and physicians" than Georgia law did. <u>Id</u>. HIPAA required physicians to protect the private health information of their patients, unless their patients were given reasonable notice and an opportunity to object. <u>Id</u>. HIPAA required physicians to protect the private health information of their patients, unless their patients were given reasonable notice and an opportunity to object. <u>Id</u>. Georgia law did not afford protections as stringent as HIPAA. <u>Id</u>. Thus, in <u>Moreland,</u> it was held that HIPAA was more stringent and must govern *ex parte* communications between defense counsel and healthcare providers. <u>Id</u>. at 72.

In this case, Tennessee law is in the same posture as the Georgia law was in <u>Moreland</u>. <u>Id</u>. at 71. The law at issue, <u>viz</u>, T.C.A. § 29-26-121(f), does not aim to <u>protect patient privacy</u>. Protective Orders only "protect[s] a party or person from annoyance, embarrassment, oppression, or undue burden or expense..." and require the plaintiff to show good cause in support of their motion to stop the order from being granted. F.R.C.P., Rule 26(c) [Protective Orders]; T.C.A. § 29-26-121(f). It is obvious that forcing a plaintiff to show "good cause" is not a more stringent standard favoring privacy than the protection mandated by HIPAA. Thus, Tennessee law allowing *ex parte* communications between treating physicians and defense counsel must be regulated by HIPAA and not Tennessee law.

Even though the Lovelaces filed a lawsuit, the medical privacy interest in their son's treatment is the most important of all the competing interests. "A patient's expectation that his or her medical records will remain private has constitutional, statutory, and decisional protection in Tennessee." McNeil v. Cooper, 241 S.W.3d 866, 894-95 (Tenn. Ct. App. 2007). His privacy interests must be protected above all else. HIPAA provides the Lovelaces more protection than Tennessee law; thus, HIPAA controls in this case. HIPAA's controlling privacy mandate precludes *ex parte* communications between the physicians and defense counsel in the manner described by Tenn. Code Ann. §§ 29-26-121(f).

II. THE *EX PARTE* COMMUNICATIONS BETWEEN THE LISTED MEDICAL PROVIDERS AND DEFENSE COUNSEL SHOULD NOT BE GRANTED BECAUSE THE LISTED PROVIDERS DO NOT POSSESS RELEVANT INFORMATION.

The Defendants filed a motion for a qualified protective order permitting *ex parte* communication of protected health information with the six (6) listed medical providers outside the presence of claimant or claimant's counsel under T.C.A. § 29-26-121(f). Subpart B of this provision permits a plaintiff to file an objection seeking to limit or prohibit the defendant from conducting these interviews. T.C.A. §§ 29-26-121(f)(1)(B) (2013). The objection "may be granted only upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure." Id. The legislature did not define the term "relevant" nor does a review of the case law (there is none in Tennessee) provide any guidance in determining what was intended in this subpart.

Here the Plaintiffs allege that good cause exists for denying the Defendants' motion, because the information that could be gathered in *ex parte* communication would not be relevant evidence. The medical providers who have been named by the defense have documented their medical care in the medical records and charts or administrative pleadings that have already been provided to or obtained by Defendants. Moreover, Plaintiffs have not objected to the taking of depositions or the

6

use of subpoenas of all medical records. There is no other relevant information to be gathered from these providers apart from the information that was already provided or could be obtained through these formal discovery procedures. Thus, under Rules 26, 30 and 33, as well as Rule 45, of the Federal Rules of Civil Procedure, there is good cause to deny the Defendants' motion due to the lack of relevant information to be gained from the informal *ex parte* communication and the availability of alternative procedures.

III.    IF THE COURT GRANTS THE MOTION ALLOWING *EX PARTE* COMMUNICATIONS, PLAINTIFFS REQUEST THAT THEY AND THEIR ATTORNEY BE ALLOWED TO ATTEND THE MEETINGS OR THAT ALL COMMUNICATIONS BETWEEN MEDICAL PROVIDERS AND DEFENSE COUNSEL BE RECORDED AND PROVIDED TO PLAINTIFFS.

The Lovelaces and their counsel should be allowed to attend each meeting between the medical providers listed and defense counsel, or they should be provided with a recorded copy of each meeting, any written notes from the medical providers to the Defendants, and written notes from the Defendants to the medical providers. There is no attorney-client privilege attached to *ex parte* communications with treating physicians and nurses regarding the Plaintiff; thus, all of the said communications are discoverable. Since parties can ask witnesses about all such communications with opposing counsel in depositions, the Plaintiff should be afforded the right to a recording of each meeting between a listed medical provider and the Defendants, and all documents related to any such meetings. The Plaintiff is not requesting the work product of the Defendants' attorneys that relates to the meetings, unless it is given to or read to the medical providers. This will avoid the inevitable witness deposition testimony of "I kept no notes" or "I do not recall" which is otherwise inevitable after such secret meetings are held.

This Response is fully consistent with the letter and spirit of HIPAA protections. HIPAA privacy rules require that "when using or disclosing protected health information or when requesting protected information from another covered entity, a covered entity must make reasonable efforts to

7

use of subpoenas of all medical records. There is no other relevant information to be gathered from these providers apart from the information that was already provided or could be obtained through those formal discovery procedures. Thus, under Rules 26, 30 and 33, as well as Rule 45, of the Federal Rules of Civil Procedure, there is good cause to deny the Defendants' motion due to the lack of relevant information to be gained from the informal ex parte communication and the availability of alternative procedures.

III. IF THE COURT GRANTS THE MOTION ALLOWING *EX PARTE* COMMUNICATIONS, PLAINTIFFS REQUEST THAT THEY AND THEIR ATTORNEY BE ALLOWED TO ATTEND THE MEETINGS OR THAT ALL COMMUNICATIONS BETWEEN MEDICAL PROVIDERS AND DEFENSE COUNSEL BE RECORDED AND PROVIDED TO PLAINTIFFS.

The Lovelaces and their counsel should be allowed to stand each meeting between the medical providers listed and defense counsel, or they should be provided with a recorded copy of each meeting, any written notes from the medical providers to the Defendants, and written notes from the Defendants to the medical providers. There is no attorney-client privilege attached to ex parte communications with treating physicians and nurses regarding the Plaintiff; thus, all of the said communications are discoverable. Since parties can ask witnesses about all such communications with opposing counsel in depositions, the Plaintiff should be afforded the right to a recording of each meeting between a listed medical provider and the Defendants, and all documents related to any such meetings. The Plaintiff is not requesting the work product of the Defendants' attorneys that relates to the meetings, unless it is given to or read to the medical providers. This will avoid the inevitable witness deposition testimony of "I kept no notes" or "I do not recall" which is otherwise inevitable after such secret meetings are held.

This Response is fully consistent with the letter and spirit of HIPAA protections. HIPAA privacy rules mandate that "When using or disclosing protected health information or when requesting protected information from another covered entity, a covered entity must make reasonable efforts to

7

limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 C.F.R. §164.502(b)(1). The Defendants and the medical providers seek to discuss *ex parte* private, protected information about Brett Lovelace. Congress has deemed such information worthy of safeguarding.

Thus, the Plaintiff should have access to a record or transcript of any contact or meetings held by Defendants with the six (6) listed medical providers. This would enable Plaintiffs to object to the disclosure or the use of protected information beyond any minimum necessary disclosure. If these interviews are not recorded or the Plaintiffs are not allowed to attend them, Plaintiffs have no way of knowing that Brett Lovelace's private health information is only disclosed to the minimum extent necessary nor would Plaintiffs have the opportunity to object to overly broad disclosures.

Moreover, HIPAA privacy rules provide that a patient has a right to receive an account of disclosures of protected health information made by a covered entity within a period of six years prior to the date the accounting is requested. 45 C.F.R. §164.528(a)(1). The covered entity has sixty days after the request to provide (a) the date of disclosure, (b) the name and address of the person or entity receiving the disclosure, (c) a description of the protected health information disclosed, and (d) state the basis for the disclosure. 45 C.F.R. §164.528(b)-(c).

Allowing the Plaintiffs' counsel to attend or requiring the use of a tape recorder to be part of the *ex parte* communications would make the transmission of the information discussed in the meetings more efficient and accurate. The Plaintiffs will not have to rely upon the physician's or nurse's memory to relay the information; there will not be a temptation by the medical providers to withhold information; or to give inconsistent or inaccurate statements; the medical providers' time and resources will not have to be duplicated; and the problem of medical personnel refusing to talk with plaintiff's counsel will be averted. Additionally, there is no preclusion to the allowance of recording devices or the attendance by the Plaintiff set forth in T.C.A. § 29-26-121(f). Overall,

8

limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 C.F.R. §164.502(b)(1). The Defendants and the medical providers seek to discuss ex parte private, protected information about Brett Lovelace. Congress has deemed such information worthy of safeguarding.

Thus, the Plaintiff should have access to a record or transcript of any contact or meetings held by Defendants with the six (6) listed medical providers. This would enable Plaintiffs to object to the disclosure or the use of protected information beyond any minimum necessary disclosure. If these interviews are not recorded or the Plaintiffs are not allowed to attend them, Plaintiffs have no way of knowing that Brett Lovelace's private health information is only disclosed to the minimum extent necessary nor would Plaintiffs have the opportunity to object to overly broad disclosures.

Moreover, HIPAA privacy rules provide that a patient has a right to receive an account of disclosures of protected health information made by a covered entity within a period of six years prior to the date the accounting is requested. 45 C.F.R. §164.528(a)(1). The covered entity has sixty days after the request to provide (a) the date of disclosure, (b) the name and address of the person or entity receiving the disclosure, (c) a description of the protected health information disclosed, and (d) state the basis for the disclosure. 45 C.F.R. §164.528(b)(4).

Allowing the Plaintiffs' counsel to attend or requiring the use of a tape recorder to be part of the ex parte communications would make the transmission of the information discussed in the meetings more efficient and accurate. The Plaintiffs will not have to rely upon the physician's or nurse's memory to relay the information; there will not be a temptation by the medical providers to withhold information, or to give inconsistent or inaccurate statements; the medical providers' time and resources will not have to be duplicated; and the problem of medical personnel refusing to talk with Plaintiff's counsel will be avoided. Additionally, there is no preclusion to the allowance of recording devices or the attendance by the Plaintiff set forth in T.C.A. § 29-26-121(f). Overall,

allowing Plaintiff's counsel and/or a tape recorder to be a part of these *ex parte* communications will be more effective and fair for all parties concerned, including the six (6) listed providers.

Permitting the attendance of Plaintiffs or a recording of the *ex parte* conversations will be fair to both parties and consistent with the federal privacy protection structure of HIPAA. The Defendants will nonetheless be able to informally speak with Brett Lovelace's medical providers, and the Lovelace family will be certain that their son's private health information is protected and only disclosed to the minimum extent necessary.

## CONCLUSION

The Defendants' Motion for a Protective Order should be denied. The informal *ex parte* communication rule set forth in T.C.A. § 29-26-121(f) is preempted by HIPAA privacy protections. HIPAA controls in this case, because Tennessee law is not more stringent than the rules promulgated by Health and Human Services. Moreover, there is good cause to deny the motion because the six (6) listed medical providers do not possess relevant health information. All the information that would be shared or discussed in the *ex parte* communications is available in the medical records or through a formal discovery process, which records Defendants already have, it is believed. If, however, the Court grants the Defendants' motion, Plaintiffs request that they and their attorney be allowed to attend each conference or that all *ex parte* communications be recorded and that such recordings and memoranda be provided to Plaintiffs. These safeguards would ensure that Brett Lovelace's health information is protected in accordance with federally-mandated HIPAA privacy protections.

Based upon the foregoing facts and law, Plaintiffs request that this Court enter an Order denying Defendants' request for a Qualified Protective Order, in accordance with T.C.A. § 29-26-121(f), or set reasonable terms upon which said interviews may be undertaken. A sample Order denying a similar motion in Floyd T. Simpkins v. Lebanon HMA, LLC; et al., In the Circuit Court for Wilson County, Tennessee at Lebanon, Docket No.: 2013-CV-211, is attached hereto as Exhibit "A".

Dated: January 7, 2014                Respectfully submitted,

**HALLIBURTON & LEDBETTER**

/s/P. Mark Ledbetter

MARK LEDBETTER    AR# 74175
Attorney for Plaintiffs    TN#17637
254 Court Avenue, Suite 305
Memphis, TN 38103
(901) 523-8153-phone
(901) 523-8115-fax
Mark794@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January, 2014, I electronically filed the above with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to The Hardison Law Firm, and the firm of Thomas, Hendrix, Harvey, Johnson & Mitchell. The undersigned hereby certifies that Robert E. Cooper, Jr., Attorney General for the State of Tennessee, has been served by U.S. Mail, postage prepaid, at his address listed below:

David M. Cook - #5362
Albert G. McLean - #5150
The Hardison Law Firm, P.C.
119 S. Main Street, Suite 800
Memphis, TN 38103-3685
Phone: 901.525.8776
Email: dcook@hard-law.com
Email: amclean@hard-law.com
Attorneys for Defendants,
Pediatric Anesthesiologists, P.A. and
Babu Rao Paidipalli, M.D.

J. Kimbrough Johnson - #7953
Marcy Dodds Magee – 19360
Margaret Cooper - #26250
Thomas, Hendrix, Harvey, Johnson & Mitchell, PLLC
Attorneys for Defendant, Mark P. Clemons, M.D.
2900 One Commerce Square
40 S. Main Street
Memphis, TN 38103
Phone: 901.525-8721
Fax: 901.525-6722
Email: Johnsonk@thomasonlaw.com
Email: MageeM@thomasonlaw.com

Robert E. Cooper, Jr.
Attorney General for the State of Tennessee
Office of the Attorney General
425 5th Avenue North
Nashville, TN 37243
Phone: (615) 741-3491
Fax: (615) 741-2009

s/P. Mark Ledbetter
Mark Ledbetter, Certifying Attorney

11