## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESESEE
## WESTERN DIVISION

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

Vs.                                       No. 2:13-cv-02289-JPM-dkv
                                            JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

      Defendants,

and

STATE OF TENNESSEE,

      Defendant-Intervenor.

## DEFENDANTS PEDIATRIC ANESTHESIOLOGISTS, P.A., AND BABU RAO PAIDIPALLI'S REPLY TO PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR QUALIFIED PROTECTIVE ORDER

COME NOW the defendants, Pediatric Anesthesiologists, P.A., and Babu Rao Paidipalli, by and through their undersigned counsel of record, and for their Reply to Plaintiffs' Response And Memorandum Of Law In Opposition To Defendants' Motion For Qualified Protective Order state as follows:

### FACTS

The facts and procedural history stated in Defendants' Memorandum Of Facts And Law In Support of Defendants' Motion For Qualified Protective Order, (ECF 59-1),

are incorporated by reference.   Subsequent to the filing of Defendants' Motion For Qualified Protective Order, Methodist filed a Motion For Protective Order to prevent *ex parte* communications between defendants and Elesia Turner, Risk Manager for Methodist Le Bonheur Children's Hospital.  Since *ex parte* communications permitted by T.C.A. 29-26-121(f) are purely voluntary on the part of the healthcare provider, defendants did not oppose Methodist's Motion For Protective Order and accordingly an order was entered precluding *ex parte* communications between defendants and Elesia Turner.  Thus, the defendant's Motion For Protective Order seeks an order of the Court permitting defendants to have *ex parte* communications with the six other healthcare providers identified in defendant's motion who are:  (1) Kelly Kish, R.N., the Methodist nurse responsible for monitoring the patient in the PACU; (2) Wayne Sutter, EMT, Methodist EMT who observed the patient in the PACU prior to the "Code" event; (3) Mark Bugnitz, M.D., Brett Lovelace's treating pediatrician during the admission in question; (4) Elizabeth Hinson, R.N., Methodist nurse who provided care to the patient prior to and during the admission in question; (5) Margaret Yoste, R.N., a Methodist nurse who provided care to the patient during the admission in question; and (6) Mark Clemons, M.D., the physician who performed the patient's surgery during the admission in question.  Defendants attach hereto as Exhibit 1 their revised proposed Qualified Protective Order, which just includes the above-named six (6) providers.

## LAW AND ARGUMENT

Plaintiffs' Response And Memorandum Of Facts And Law in opposition to Defendants' Motion For Qualified Protective Order asserts three alleged grounds (all of which are denied by defendants):

(1)      The  Health  Insurance  Portability  And  Accountability  Act  (HIPAA)
preempts T.C.A. 29-26-121(f);

(2)      The listed medical providers do not possess relevant information; and

(3)      If  a  qualified  protective  order  is  granted,  the  *ex parte*  communications
between the medical providers and defense counsel should be recorded and provided to
plaintiffs.

Defendants  would  show  that  none  of  the  above-stated  three  grounds  asserted  by
plaintiffs are meritorious and that Defendants' Motion For Qualified Protective Order
should be granted as requested by defendants.

## I.
### T.C.A. 29-26-121(f) IS NOT PREEMPTED BY HIPAA

There is no preemption by federal law in this matter.  Tennessee Code Annotated
section 29-26-121(f) does not stand as an obstacle to the purpose of The Health Insurance
Portability and Accountability Act of 1996 (hereinafter "HIPAA").

The federal preemption doctrine is grounded in the Supremacy Clause of Article
VI of the United States Constitution and holds that the laws of the United States are the
supreme law of the land such that state laws that interfere with or are contrary to federal
law are a nullity.  Illinois Cent. Gulf R. Co. v. Tenn. Public Serv. Com'n, 736 S.W.2d
112, 114 (Tenn. Ct. App. 1987).  The critical question in any preemption analysis is
whether Congress intended the federal law to supersede the state law, and the analysis
begins with a strong presumption against preemption:

> In  all  pre-emption  cases,  and  particularly  in  those  in  which  Congress  has
> "legislated… in a field which the States have traditionally occupied,"… we "start
> with the assumption that the historic police powers of the States were not to be
> superseded by the Federal Act unless that was the clear and manifest purpose of
> Congress."

3

<u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485 (1996) (citations omitted). "[This] approach is consistent with both the federalism concerns and the historic primacy of state regulation of matters of health and safety." <u>Id.</u>; <u>see also</u> <u>Webb v. Roberson</u>, No. W2012-02120-COA-R9-CV, 2013 Tenn. App. LEXIS 261, at 34-35 (Tenn. Ct. App. April 17, 2013). ("The courts, however, are reluctant to presume that preemption of state laws has occurred... A preemption inquiry begins by focusing upon the federal statutory language, with consideration given to the entire statutory scheme... The inquiry must attempt to reconcile the federal and state laws,... rather than to seek out conflict where none clearly exists.") <u>Id.</u> (internal citations omitted).

Accordingly, in considering the Plaintiffs' argument that the intent of Congress was to preempt any state statutory or regulatory scheme, this Court should start with the assumption that the:

> States' historic powers are not superseded by federal law unless that is a clear and manifest purpose of Congress... expressed in the terms of the statute itself. Absent explicit preemptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulations is 'so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it', if 'the Act of Congress... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject' or if the goals 'sought to be obtained' and the 'obligations imposed' reveal a purpose to preclude state authority.

<u>Wisconsin Public Intervener v. Mortier</u>, 501 U.S. 597, 604-605 111 S.Ct. 2476, 115 L.Ed. 2d 532 (1991) (citations and quotations omitted) (The Court held the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), did not preempt local governmental regulation of pesticide use.)

Congress' primary objective when enacting HIPAA was to improve the

"efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." South Carolina Medical Ass'n v. Thompson, 327, F.3d 346, 348 (4th Cir. 2013) (quoting the preamble to the Administrative Simplification provisions). In doing so, Congress sought to establish privacy regulations for those persons who have access to individually identifiable medical information and who conduct electronic health care transactions. Graham v. Fleissner Law Firm, No. 1:08-CV-00031, 2008 WL 2169512, at *3 (E.D. Tenn. May 22, 2008).

To address the privacy concerns, Congress directed the Department of Health and Human Services ("HHS") to adopt federal privacy protections for individually identifiable health information. HHS responded by promulgating regulations known collectively as the "Privacy Rule." In short, the Privacy Rule regulates the disclosure of protected health information by "covered entities"; the Rule essentially prevents the use or disclosure of protected health information by a "covered entity" without a valid authorization or other lawful process. A "covered entity" is defined as (1) a health plan; (2) a health care clearinghouse; or (3) a health care provider. 45 C.F.R. § 160.103.

The Privacy Rule, however, does not circumvent or otherwise interfere with the discovery of relevant health information in the context of civil litigation. HIPAA does not prevent the discovery of protected health information in civil litigation. As stated in the commentary to the Rule, HHS did "not intend to disrupt current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected health

5

information." 65 Fed. Reg. 82462, 82530.

In fact, the Privacy Rule expressly permits the use and disclosure of protected health information in the course of *any* judicial proceeding. The use and disclosure of health information may be had pursuant to a HIPAA-compliant authorization (45 C.F.R. §§ 164.502(a)(1)(iv), 164.508), or in response to an order of the court, a subpoena, discovery request "or other lawful process." See 45 C.F.R. § 164.512(e). As applied to the disclosure of health information in litigation, therefore, HIPAA is purely procedural; the Act "create[d] a procedure for obtaining authority to use medical records in litigation." Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004).

Thus, as a baseline matter, HIPAA does not prohibit a defendant from obtaining information from a treating provider so long as the defendant obtains a court order. This is precisely what the Tennessee Health Care Liability Act calls for and what these defendants request.

While the Plaintiffs have relied on a Georgia state court decision, Moreland v. Austin, 670 S.E. 2d 68 (Ga. 2008), the Plaintiffs have failed to note that a case in the United States District Court, Western District of Tennessee includes an exhaustive analysis of the propriety of *ex parte* communications, and concluded that HIPAA does not prohibit *ex parte* communications between treating physicians and defense counsel.

In Wade v. Vabnick-Wener, Judge Vescovo surveyed the nation's case law with respect to this issue. See Ella G. Alexander Wade v. Felice A. Vabnick-Wener, M.D., 922 F. Supp. 2d 679 (W.D. Tenn. July 2, 2010). In Wade, the Court noted that HIPAA would "contradict" state laws if (1) a person could not comply with both simultaneously or (2) the state law was an obstacle to HIPAA. Id. at p. 9-10. Here, the state law does

not make it impossible to comply with HIPAA, nor does it stand as an obstacle to the accomplishment of the Privacy rule. The opposite is true.

Judge Vescovo noted that "Courts have differed as to whether HIPAA allows for *ex parte* communications between counsel and health care providers." Id. at 688. Judge Vescovo then explained the general bases for each opposing argument, ultimately concluding that "the exceptions to HIPAA's privacy rules allow defense counsel to conduct *ex parte* interviews with plaintiff's treating physicians after first securing, or attempting to secure, a qualified protective order consistent with the regulations." Id. at 690.[1] In coming to this conclusion, Judge Vescovo noted the language of the HIPAA provisions, which allow disclosure of the protected health information when the statutory safeguards (i.e., the protective Order) has been met. Id. The protective order prevents the misuse of protected health information. Id.

Further, the Tennessee Court of Appeals in Webb v. Roberson, 2013 Tenn. App. LEXIS 261 (Tenn. Ct. App. April 17, 2013), appeal denied 2013 Tenn. LEXIS 1085 (Tenn., Dec. 23, 2013), also held that T.C.A. § 29-26-121(f) is not preempted by HIPAA. This Tennessee Court of Appeals decision provides a well-reasoned and thorough discussion as to why HIPAA does not preempt T.C.A. § 29-26-121. In Webb, the Tennessee Court of Appeals held that a covered entity under HIPAA can comply with the requirements of both T.C.A. § 29-26-121 and HPAA and that the Tennessee law does not impede the accomplishment or execution of HIPAA's purposes. Id. at 42. Therefore, T.C.A. § 29-26-121 does not contain contrary provisions subject to preemption. Id. The holding in Webb has been followed by trial courts in Tennessee when granting Motions

---

[1] The Wade opinion goes on to analyze whether Alsip is consistent with HIPAA. Because the Tennessee Health Care Liability Act legislatively overrules Alsip, that portion of the opinion is inapplicable to this discussion.

for Qualified Protective Orders brought by defendant healthcare providers. See Exhibits C, D, E to Memorandum In Support Of Defendants' Motion For Qualified Protection Order (ECF 59-1). See also Exhibits 2, 3, 4, 5, and 6 attached hereto, which are five (5) other qualified protective orders entered in Tennessee Circuit Court cases, which are respectively, Woodruff v. Walker, Circuit Court of Madison County, Tennessee, No. C-13-62, Div. II, May 8, 2013; Rogers v. Parkridge Medical Center, Inc., Circuit Court of Hamilton County, Tennessee, No. 12C929, May 22, 2013; Owens v. Parkridge Medical Center, Inc., Circuit Court of Hamilton County, Tennessee, July 2, 2013; Bible v. University Orthopedic Clinic, Inc., Circuit Court of Knox County, Tennessee, No. 2-28-13, September 26, 2013; and Hungerford v. Ray, Circuit Court of Hamilton County, Tennessee, No. 13C531, Jan. 10, 2014.

Thus, in Tennessee, the federal courts and the Tennessee Court of Appeals have concluded that HIPAA does not prohibit *ex parte* communications between physicians and defense counsel, so long as defense counsel obtains a protective order consistent with HIPAA. Judge Vescovo's opinion and the opinion in Webb should conclusively end the analysis. Nevertheless, the Western District's Wade opinion and the Tennessee Court of Appeals' Webb opinion are consistent with cases from other jurisdictions. See Smith v. American Home Products Corp., 855 A.2d 608 (N.J. 2004); Arons v. Jutkowitz, 9 N.Y. 3d. 393 (N.Y. 2007); Holmes v. Nightingale, 158 P.3d 1039, 1041 (Ok. 2007); Baker v. Wellstar Health systems, Inc., 703 S.E.2d 601, 603-05 (Ga. 2010); Holman v. Rasak, 785 N.W.2d 98 (Mich. 2010), and Thomas v. 1156729 Ontario, Inc., 2013 U.S. Dist. LEXIS 153898 (E.D. Mich., Oct. 28, 2013).

In Smith v. American Home Products Corp., 855 A.2d 608 (NJ 2004), the

8

Superior Court of New Jersey considered whether HIPAA preempts New Jersey law, as set forth within Stempler v. Speidell, 495 A.2d 857 (N.J. 1985) and N.J.S.A. 2A:84A-22.4, allowing defendants to engage in *ex parte* communications with a plaintiff's treating physicians when that plaintiff places his or her medical condition in question. Smith, 855 A.2d at 620.      Finding HIPAA does not preclude such *ex parte* communications, the Superior Court of New Jersey offered the following analysis:

> Nowhere in HIPAA does the issue of *ex parte* interviews with treating physicians, as an informal discovery device, come into view. The court is aware of no intent by Congress to displace any specific state court rule, statute or case law (e.g., Stempler) on *ex parte* interviews. As for this state's informal discovery practices, congressional intent seems not to intrude in New Jersey's general authority over its judicial and administrative proceedings. HIPAA under 45 CFR 164.512(e) allows a covered entity to disclose protected health information without written authorization of the patient or an opportunity for the patient to agree or object to the disclosure during judicial proceedings under certain circumstances such as a court order, discovery request, or subpoena. Otherwise, the covered entity or physician in the instant case must receive satisfactory assurances that the party seeking the protected health information has made reasonable efforts to secure a qualified protective order from the court.
>
> …
>
> Because the informal discovery is not expressly addressed under HIPAA, the courts should be governed by state law, in the case of New Jersey as set forth by our Supreme Court. Therefore, *ex parte* interviews as a form of informal discovery may proceed as permitted under Stempler in line with N.J.S.A. 2A:84A-22.4. Because the disclosure is limited in scope, the Stempler interviews do not conflict with the general principles of HIPAA.

Id., at 622-623.

In Arons v. Jutkowitz, the Court of Appeals of New York considered the impact of HIPAA on the informal discovery of health care professionals, or *ex parte* communications, allowed under New York law. Arons, 9 N.Y.3d 393, 411 (N.Y. 2007).

The <u>Arons</u> court ultimately concluded HIPAA does not preempt New York law, stating:

> [W]here 'there is a State provision and no comparable or analogous federal provision, or the converse is the case,' there is no possibility of preemption because in the absence of anything to compare 'there cannot be… a contrary requirement' and so 'the stand-alone requirement – be it State or federal – is effective.' As a result, <u>there can be no conflict between New York law and HIPAA on the subject of <em>ex parte</em> interviews of treating physicians because HIPAA does not address this subject.</u> Accordingly, the Privacy Rule does not prevent this informal discovery from going forward, it merely superimposes procedural prerequisites. As a practical matter, this means that the attorney who wishes to contact an adverse party's treating physician must first obtain a valid HIPAA authorization or a court or administrative order; or must issue a subpoena, discovery request or other lawful process with satisfactory assurances relating to either notification or a qualified protective order.

<u>Id.</u>, p. 415-16 (internal citations omitted and emphasis added.)

Likewise, in <u>Holman v. Rasak</u>, the Supreme Court of Michigan considered whether HIPAA preempts Michigan law allowing defense counsel in medical malpractice actions to seek *ex parte* interviews with plaintiff's treating physicians, and in doing so considered the analysis of the <u>Arons</u> court, finding:

> <u><em>Ex parte</em> interviews are permitted under Michigan law, and nothing in HIPAA specifically precludes them.</u> Because it is possible for defense counsel to insure that any disclosure of protected health information by the covered entity complies with 45 CFR 164.512(e) by making 'reasonable efforts to obtain a qualified protective order, HIPAA does not preempt Michigan law concerning *ex parte* interviews.

<u>Holman v. Rasak</u>, 785 N.W.2d at 106 (emphasis added).  When reaching this conclusion, the Supreme Court of Michigan offered the following explanation.

> While HIPAA is obviously concerned with protecting the privacy of individuals' health information, it does not enforce that goal to the exclusion of all other interests.  Rather, it balances the protection of individual privacy with the need for disclosure in some situations… Given HIPAA's interest in balancing the need for disclosure in certain contexts with the importance of individual privacy, we cannot conclude that *ex parte* interviews are 'contrary' to the objectives of HIPAA as long as the interviews are sought according to the specific requirements of 45

> CFR 164.512(e).  Because we conclude that HIPAA does not preempt
> state law, we affirm the judgment of the Court of Appeals.

Id., p. 108

Other jurisdictions, applying rationale similar to that used in Smith, Arons and

Holman have reached similar conclusions.  See Holmes, 158 P.3d at 1041, 1047 (holding

a court order permitting oral communication with health care providers does not

contravene HIPAA's confidentiality requirements); see also Baker, 703 S.E.2d at 603-05

(finding "in order for defense counsel to informally interview plaintiff's treating

physicians, they must first obtain a valid authorization, or court order or  otherwise

comply with the provisions of  45 CFR 164.512(e)" and "the use of carefully crafted

orders specifying precise parameters within which *ex parte* interviews may be conducted

will serve to enforce the privacy protections afforded under state law and advance

HIPAA's purposes while at the same time preserving a mode of informal discovery that

may be helpful in streamlining litigation").

Plaintiffs rely on case law from Georgia, Moreland v. Austin, *supra*, to

purportedly support their position that HIPAA preempts T.C.A. § 29-26-121.  An

analysis of the Georgia case cited by the plaintiffs in their Response, however, shows that

it does not actually support plaintiffs' position.  A careful reading of Moreland reveals

that the Georgia Supreme Court held that HIPAA only preempted Georgia law because

there was no requirement in place in Georgia for obtaining a qualified protective order

before engaging in *ex parte* communications with treating physicians.  Moreland, 670

S.E. 2d at 734.  If the defendant in a Georgia medical malpractice action obtains a

qualified protective order from the court which meets the requirements of HIPAA, then

*ex parte* communications with treating physicians are allowed.  Id.  This holding was

upheld in the Georgia Supreme Court case of <u>Baker v. Wellstar Health System</u>, 703

S.E.2d 601 (Ga. 2010), in which the Georgia Supreme Court held that Georgia

defendants could engage in communications with treating physicians if they first obtained

a qualified protective order. <u>Id</u>. at 337.  By doing do, Georgia defendants would meet the

requirements set forth in HIPAA. <u>Id</u>.

In Tennessee, before any *ex parte* meeting is conducted under section 29-26-

121(f), a court must issue a "qualified protective order allowing the defendant or

defendants and their attorneys the right to obtain protected health information during

interviews, outside the presence of claimant or claimant's counsel, with the relevant

patient's treating 'healthcare providers.'" T.C.A. § 29-26-121(f)(1).  The order must

expressly limit the dissemination of the protected health information to the litigation

pending before the court.  T.C.A. § 29-26-121(f)(1)(C).  Section 29-26-1221(f) is,

therefore, not "contrary" to HIPAA, but completely consistent with HIPAA; the federal

law calls for an order limited in scope, and the state law delivers.

Thus, the preemption doctrine is not triggered here because section 29-26-121(f)

requires strict compliance with HIPAA.  Section 29-26-121(f) is no more or less stringent

than HIPAA.  Rather, the statute is completely consistent with HIPAA.  <u>See</u> <u>Webb v.</u>

<u>Roberson</u>, 2013 Tenn. App. LEXIS at 38 (holding that T.C.A. § 29-26-121 is not a

"contrary" provision to HIPAA and not subject to preemption).

T.C.A. 29-26-121(f) seeks to allow both plaintiffs and defendants in a medical

malpractice action equal footing and still protect the claimant's privacy.  It seeks to do

nothing more than what is allowed under HIPAA.  The information sought must be

relevant in accordance with Tennessee Rules of Civil Procedure.  The information sought

in this case is certainly relevant, as it is undisputed that the individuals listed in the

Motion for Protective Order are physicians and nurses who cared for and treated Brett

Lovelace during the admission in question in this case.

## II.
### THE MEDICAL PROVIDERS IDENTIFIED IN DEFENDANTS' MOTION POSSESS RELEVANT INFORMATION.

Plaintiffs argue that the health care providers listed within defendants' Motion For

Qualified Protective Order do not possess relevant information, but such assertion by

plaintiffs is based on a fallacious premise that because the providers' care is documented

in medical records, their knowledge of the facts that could be obtained by interviews is

irrelevant. Obviously, medical records are not intended to be a recording of every fact

that the recording provider may have knowledge of, and as is known by the Court and

attorneys who have tried medical malpractice cases, medical records, particularly

electronic medical records, do not include every fact that relates to the care of a patient.

Furthermore, medical records do not routinely include the providers' opinions as to

certain issues in a medical malpractice case, such as "standard of care" and "causation"

issues, although such providers may very well have opinions regarding such issues based

on their knowledge of the facts of the case. In any event, based on the medical records,

all the health care providers listed within defendants' attached Proposed Qualified

Protective Order provided care to Brett Lovelace during the admission in question, and

clearly possess information relevant to the care provided to Brett Lovelace, which is in

issue in this case. It should be noted that T.C.A. 29-26-121(f)(1) provides that the

"claimants may file an objection seeking to limit or prohibit the defendant or defendants'

counsel from conducting the interview, which [objection] may be granted *only upon good*

*cause shown that a treating health care provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure...*" T.C.A. 29-26-121(f)(1)(B). (Emphasis implied). Thus, the plaintiff has the burden of showing that the treating health care providers identified in defendants' motion do not possess relevant information, which plaintiff has failed to do. Accordingly, this Court should enter the Qualified Protective Order as proposed by the defendants attached here as Exhibit 1.

### III.
### THE COURT SHOULD NOT IMPOSE RESTRICTIONS ON *EX PARTE* COMMUNICATIONS BETWEEN MEDICAL PROVIDERS AND DEFENSE COUNSEL, EXCEPT FOR THE RESTRICTIONS SPECIFICALLY REQUIRED BY T.C.A. 29-26-121(f)

As demonstrated by the language of the statute, none of the restrictions suggested by plaintiffs' counsel on page 7-9 of Plaintiffs' Memorandum Of Law, are found in T.C.A. 29-26-121(f). It is important to note that the legislature did require certain restrictions and provisions in Qualified Protective Orders, which are included in defendants' proposed order. Specifically, "the qualified protective order shall expressly limit the dissemination of any protected health information" and must "expressly provide that participation in any such interview by a treating healthcare provider is voluntary." See T.C.A. § 29-26-121(f)(1)(C)(i-ii). The legislature clearly contemplated what restrictions or requirements, if any, were needed for Qualified Protective Orders. If the legislature felt that additional restrictions were necessary, it had an opportunity to include those in the latest amendment. In Shelburne v. Frontier Health, 126 S.W.3d 838, 843 (Tenn. 2003), the Tennessee Supreme Court stated, "When construing statutes, we are required to ascertain and effectuate the legislative intent and purpose of the statues.... Legislative intent must be derived from the plain and ordinary meaning of the statutory

14

language if the statute is devoid of ambiguity". In <u>Romine v. Fernandez</u>, 124 S.W.3d

599, 606 (Tenn. Ct. App. 2003), the Tennessee Supreme Court stated, "When interpreting

a statute, we are to assume that the legislature used each word in the statute purposely,

and that the use of these words conveys some intent and has a meaning and purpose....

[I]t is an axiom of our law that courts are to give the language used by the legislature its

natural and ordinary meaning."

      If plaintiffs' suggested restrictions were included in a qualified protection order,

the statute would be stripped of its intended purpose and would force the "interviews" to

be in a more rigid, formal and deposition-like setting.  This would place the defendants at

a serious disadvantage in preparing for trial since the plaintiffs are free to conduct

informal, unrecorded meetings with the treating physicians without imposition or cost of

a court reporter for the interview.  Furthermore, defendants' counsel would be far more

reluctant to discuss with any of the treating providers all facts and opinions the providers

may have in this case if the interview were recorded or if plaintiffs' counsel were

permitted to attend the interviews.  If the restrictions suggested by plaintiffs were

included in the Court's order permitting *ex parte* interviews, defendants would, as a

practical matter, be forced to just take the providers' depositions to discover the same

information, which would be unfair since the information is readily available to

plaintiffs' counsel without taking a deposition.  The restrictions suggested by plaintiffs

would rob the defendants of their right to conduct *ex parte* interviews as contemplated by

T.C.A. § 29-26-121.

      Further, if such interviews were required to be recorded, the plaintiffs would have

the opportunity to access the transcripts of these communications, allowing plaintiffs'

counsel access to the protected work product of the defendants.  Further, Defendant's questions during such *ex parte* interviews would likely include questions that relate to the defendants' defense theories.  This would allow plaintiffs the ability to determine the defendants' trial strategies, which would be manifestly unfair to the defendants.

## CONCLUSION

Based on the foregoing facts and law, defendants request that this Court enter a Qualified Protective Order as provided in T.C.A. 29-26-121(f), permitting counsel for defendants to interview the health care providers identified hereinabove, outside the presence of plaintiffs and plaintiffs' counsel, as stated in Defendants' proposed order, a copy of which is attached hereto as Exhibit 1.

Respectfully submitted,

THE HARDISON LAW FIRM, P.C.

By:    s/Albert G. McLean
      ALBERT G. MCLEAN (5150)
      Attorney for Defendants,
      Pediatric Anesthesiologists, P.A. and
      Babu Rao Paidipalli, M.D.
      119 S. Main Street, Suite 800
      Memphis, Tennessee 38103
      (901) 525-8776
      amclean@hard-law.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the Court's electronic filing system upon:

Mark Ledbetter, Esq.
Halliburton & Ledbetter
Attorney for Plaintiffs
254 Court Avenue
Suite 305
Memphis, TN 38103

J. Kimbrough Johnson, Esq.
Marcy Dodds Magee, Esq.
Attorneys for Defendant, Mark P.
Clemons, M.D.
Thomason, Hendrix, Harvey, Johnson &
Mitchell, PLLC
2900 One Commerce Street
Memphis, TN 38103

Stephanie A. Bergmeyer, Esq.
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202-0207

this 30th day of January 2014.

s/Albert G. McLean
ALBERT G. MCLEAN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESESEE
## WESTERN DIVISION

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

     Plaintiffs,

Vs.
                                    No. 2:13-cv-02289-JPM-dkv
                                    JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

     Defendants,

And

STATE OF TENNESSEE,

     Defendant-Intervenor.

---

### [DEFENDANTS' PROPOSED] QUALIFIED PROTECTIVE ORDER

---

This matter came before the Court on the Motion of Defendants, Pediatric

Anesthesiologists, P.A. and Babu Rao Paidipalli, for Qualified Protective Order, and

Defendants' supporting memorandum of facts and law, and the entire record in this

cause. It appears to the Court that Defendants' motion is well taken and that Defendants

are entitled to the entry of a qualified protective order as stated hereinafter.

Pursuant to Tenn. Code Ann. Section 29-26-121(f), Defendants, Babu Rao

Paidipalli and Pediatric Anesthesiologists, P.A., and their attorneys, may obtain protected



health information regarding Bret Lovelace, including information otherwise protected

from disclosure by the Health Insurance Portability and Accountability Act of 1996 or

"HIPAA" and all other applicable state and federal statutes, rules and regulations, during

interviews conducted outside the presence of the plaintiffs and plaintiffs' counsel with the

following healthcare providers:

1. Kelly Kish, R.N., Methodist nurse responsible for monitoring the patient in the PACU;
2. Wayne Sutter, EMT, Methodist EMT who observed the patient in the PACU prior to the "Code" event;
3. Mark Bugnitz, M.D., patient's treating pediatrician during the admission in question;
4. Elizabeth Hinson, R.N., Methodist nurse believed to have provided care to the patient prior to and during the admission in question;
5. Margaret Yoste, R.N., Methodist nurse believed to have provided care to the patient during the admission in question; and
6. Dr. Mark Clemons, M.D., physician who performed the patient's surgery during the admission in question.

The Court further orders that the following conditions shall govern any *ex parte*

defense counsel/treating physician/caregiver interview, in accordance with Tenn. Code

Ann. Section 29-26-121(f)(1)(c):

a. The Protected Health Information disclosed pursuant to this Qualified

Protective Order shall only be disseminated and used for the purposes of and during the

course of this healthcare liability action, and shall not be disseminated to any person(s)

other than the defense attorneys, their staff members, the parties, experts utilized in this

case, and trial support vendors utilized in this case.

b. All Protected Health Information obtained during any *ex parte* conference,

and all copies of documents containing such information obtained during any such

interview shall be returned to the healthcare provider or shall be destroyed at the conclusion of this lawsuit.

   c.   Any and all *ex parte* meeting(s) with defense counsel and treating healthcare providers are strictly voluntary on the part of the treating healthcare providers and nothing in this Order is intended to imply that the treating healthcare providers cannot refuse any request for *ex parte* meetings with defense counsel.

   IT IS SO ORDERED.


   _____
   JUDGE

   Date:  _____

74568-MRP

IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE **FILED**
FOR THE TWENTY-SIXTH JUDICIAL DISTRICT AT JACKSON

JOSHLIN RENEE WOODRUFF,
By and through her Conservator
And Mother, DOROTHY COCKRELL,

     **Plaintiff,**

vs.

ARMIE WALKER, M.D. and WEST
TENNESSEE OB/GYN SERVICES a/k/a
WEST TENNESSEE OB/GYN CLINIC

     **Defendants.**

MAY 0 8 2013

KATHY BLOUNT, CIRCUIT COURT CLERK

DEPUTY CLERK

A.M. 3:58 P.M.

NO. C-13-62, DIV. II
JURY DEMANDED

---

## QUALIFIED PROTECTIVE ORDER UNDER
## TENNESSEE CODE ANNOTATED § 29-26-121(f)

---

Pursuant to Tennessee Code Annotated § 29-26-121(f), Defendants Armie Walker,

M.D. and West Tennessee OB/GYN Services a/k/a West Tennessee OB/GYN Clinic (West

Tennessee Medical Group, Inc.), and their attorneys, may obtain protected health

information regarding patient Joshlin Renee Woodruff during informal interviews, outside

the presence of Plaintiff or her counsel, with the following treating healthcare providers of

Joshlin Renee Woodruff: Nathan Hoeldke, M.D., Lucius Wright, M.D., Thomas Head, M.D.,

Christopher Rickman, M.D., Henry West, M.D., Elliott Roberts, M.D., Dana Hager, M.D.,

Keith Wainscott, M.D., Priscilla Sioson-Aherrea, M.D., Tracy Townes-Bougard, M.D.,

Robert Gilroy, M.D., John Crocker, M.D., Christopher Cherry, M.D., Thomas Ellis, M.D.,

David Watlington, M.D., Michael Martindale, M.D., Ron Taylor, M.D., Timothy Hutchison,

M.D., Tommy Wood, M.D., Greg Mitchell, M.D., Michael Revelle, M.D., Susan Frances,

M.D., Karl Misulis, M.D., Jennifer Delk, RN, Jennifer Johnson, RN, Anna McIntyre, RN,



April Jones, RN, Gina Sims, RN, Christy Smith, RN, Samantha Martin, RN, Julie Cupples, RN, M. Scott, RN, A. Williams, RN, Darla Capp, RN, E. Alexa, CRNA, Dana Thorne, RN, A. Adams, RT, S. Lowery, RN, Lisa Johnson, RN, Mary Foust, RN, and any other physicians, nurses, therapists, or other medical providers who were involved in the patient's care or treatment on or after June 21, 2009. Defendants and their counsel may discuss all treatment rendered by these providers regardless of the date of treatment. Regarding any medical providers who are not specifically named in this Order but who were involved in the patient's care or treatment on or after June 21, 2009, if Defendants intend to seek interviews with such unnamed providers, then Defendants shall provide Plaintiff's counsel with the providers' names at least fifteen (15) days before Defendants contact the providers about any potential meetings with them.

Disclosure of protected health information by a healthcare provider in response to this Order shall be deemed a permissible disclosure under Tennessee law, any Tennessee statute or rule of common law notwithstanding. This Order also allows for the disclosure of health information otherwise protected by the Health Insurance Portability and Accountability Act of 1996, or "HIPAA," and applicable state and federal statutes, rules and regulations.

Protected health information disclosed pursuant to this Order shall only be disseminated for the purposes of and during the course of this lawsuit. All persons to whom confidential information is disseminated under this Order are precluded from further disseminating the information for purposes not associated with this lawsuit. Any written or recorded protected health information obtained during the course of any interviews

pursuant to this Order shall be returned to the healthcare provider or destroyed at the end of this litigation.

Nothing in this Order shall be construed as restricting in any way the right of a defendant or a defendant's counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning this action.

Participation in any interviews by medical providers pursuant to this Order shall be voluntary. This Order shall remain in effect until the conclusion of this litigation.

IT IS SO ORDERED.

_____
JUDGE

_____
DATE   May 8th, 2013

APPROVED FOR ENTRY:

RAINEY, KIZER, REVIERE & BELL, PLC

_____
MARTY R. PHILLIPS (No. 14990)
CRAIG P. SANDERS (No. 22268)
105 S. Highland Avenue
Jackson, TN 38301
731-425-4955
*Attorneys for Defendant Armie Walker, M.D.*

*Michael Lawson w/ perm.*
_____
C. Michael Lawson (No. 4715)
3200 West End Avenue, Suite 500
Nashville, TN 37203
615-851-7263

Terrance McNabb (No. 2592)
James Omer and Associates
2212 Eighth Avenue South

A TRUE COPY ATTEST
KATHY BLOUNT, CIRCUIT COURT CLERK
_____ D.C.

3

Nashville, TN 37204
615-255-5555
*Attorneys for Plaintiffs*

*Patrick Rogers   w/perm.*

Mr. Patrick W. Rogers (No. 16877)
Rainey, Kizer, Reviere & Bell, PLC
105 S. Highland Avenue
Jackson, TN  38301
731-423-2414
*Attorney for Defendant West TN OB/GYN*

## CERTIFICATE OF SERVICE

Comes now the undersigned and certifies that a true copy of this document has been served on the following counsel via U. S. regular mail:

C. Michael Lawson
3200 West End Avenue, Suite 500
Nashville, TN 37203

Terrance McNabb
James Omer and Associates
2212 Eighth Avenue South
Nashville, TN 37204
*Attorney for Plaintiffs*

Mr. Patrick W. Rogers
Rainey, Kizer, Reviere & Bell, PLC
105 S. Highland Avenue
Jackson, TN  38301
*Attorney for Defendant West TN OB/GYN*

This the 8th day of May 2013.

IN THE CIRCUIT COURT OF HAMILTON COUNTY, TENNESSEE
ELEVENTH, JUDICIAL DISTRICT

| | | |
|---|---|---|
| JEAN ROGERS, individually and as surviving spouse of J. L. ROGERS, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 12C929 |
| vs. | ) | |
| | ) | DIVISION II |
| PARKRIDGE MEDICAL CENTER, INC. d/b/a PARKRIDGE MEDICAL CENTER, and also d/b/a PARKRIDGE HEALTH SYSTEM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Defendant/Intervenor. | ) | |
| | ) | |

FILED IN OFFICE
13 MAY 22 PM 3: 10
PAULA T. THOMPSON, CLERK
BY _____
DC

| | | |
|---|---|---|
| DAVID OWENS, individually and as Personal or Representative of the Estate of LINDA LEE OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 12C1397 |
| vs. | ) | |
| | ) | DIVISION II |
| PARKRIDGE MEDICAL CENTER, INC. d/b/a PARKRIDGE MEDICAL CENTER, ANESTHESIOLOGISTS ASSOCIATE, P.C., CHATTANOOGA BONE AND JOINT SURGEONS, P.C. and W. DAVID BRUCE, M.D., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Defendant/Intervenor. | ) | |
| | ) | |

## ORDER

Defendants in these cases have filed motions for protective orders allowing their counsel to have

ex-parte communications with the Plaintiffs' treating physicians. Plaintiffs argue that such

communications violate HIPPA which preempts any state law to the contrary.

Defendants are proceeding under T.C.A. § 29-26-121(f), which went into effect in 2012. The Tennessee statute provides that defense counsel may conduct ex-parte interviews with treating physicians if they first obtain a protective order from the Court. The statute goes on to provide that the Court will grant the protective order, unless it is shown that the treating physician possesses no relevant information. There has been no such showing in these cases.

The Court finds that the provisions of T.C.A. § 29-26-121(f) do not conflict with HIPPA. Therefore, under these circumstances, the preemption question does not even arise.

Therefore, it is Ordered that:

1.  Defendants' motions for protective orders are **Granted**;

2.  defense counsel will prepare and submit protective orders compliant with te requirements of T.C.A. § 29-26-121(f).

ENTERED this 22nd day of May, 2013.

W. Jeffrey Hollingsworth, Judge

### CLERK CERTIFICATE

The undersigned hereby certifies that a copy of this order has been mailed to all parties or counsel to all parties in this cause.

This 22nd day of May, 2013.

PAULA T. THOMPSON, CLERK

BY: Underwood D C

cc:   Stephanie A. Bergmeyer, Esq.
      Jimmy W. Bilbo, Esq.
      H. Dean Clements, Esq.
      Arthur P. Brock, Esq.
      Richard A. Smith, Esq.

IN THE CIRCUIT COURT OF HAMILTON COUNTY, TENNESSEE

DAVID A. OWENS, individually and as Personal   )
Representative of the Estate of LINDA LEE OWENS,   )
                                       )
                         Plaintiff     )          NO. 12-C-1397
                         BY_____     )
v.                                     )          DIVISION II
                                       )
PARKRIDGE MEDICAL CENTER, INC., d/b/a PARKRIDGE   )
MEDICAL CENTER; ANESTHESIOLOGISTS ASSOCIATED,   )          JURY DEMAND
P.C.; CHATTANOOGA BONE AND JOINT SURGEONS, P.C.;   )
and W. DAVID BRUCE, M.D.               )
                                       )
                         Defendants    )

---

## QUALIFIED PROTECTIVE ORDER FOR DEFENSE EX PARTE INTERVIEW
## WITH DR. WINIFRED MANDA AND DR. DANIEL SMITH

UPON MOTION of the Defendants and this Court's Order of May 22, 2013, pursuant to

Tenn. Code Ann. § 29-26-121(f), through this Qualified Protective Order, it is hereby

ORDERED, ADJUDGED and DECREED that the law firm of Spears, Moore, Rebman &

Williams and the law firm of Robinson, Smith & Wells, as attorneys for the Defendants in this

matter, shall be allowed, pursuant to Tenn. Code Ann. § 29-26-121(f), to obtain protected health

information during interviews, outside the presence of claimant or claimant's counsel, with the

treating healthcare providers:

    (1)    Dr. Winifred Manda, 1949 Gunbarrel Road, Suite 230, Chattanooga, TN,

           37421; and

    (2)    Dr. Daniel Smith, Specialists in Pulmonary Care, 1032 McCallie Avenue,

           Suite 300, Chattanooga, TN, 37403.

Ct-Book/Page II-126/961

This Qualified Protective Order expressly limits the dissemination of any protected health information to the litigation pending before the Court.

It is further ORDERED, ADJUDGED and DECREED that Spears, Moore, Rebman & Williams and Robinson, Smith & Wells shall only use the protected health information of Linda Lee Owens for the purposes of this litigation, and that any protected health information obtained as part of *ex parte* interviews with Dr. Manda and Dr. Smith will be destroyed at the conclusion of the litigation.

It is further ORDERED, ADJUDGED and DECREED that the disclosure of protected health information by a healthcare provider in response to this Qualified Protective Order under Tenn. Code Ann. § 29-26-121 shall be deemed an admissible disclosure under Tennessee law.

This Order shall expire upon disposition of this case and the law firm of Spears, Moore, Rebman & Williams and the law firm of Robinson, Smith & Wells shall be prohibited from using this Order thereafter.

ENTER this 2d day of July, 2013.

_____
CIRCUIT COURT JUDGE

APPROVED FOR ENTRY:

**BILBO LAW OFFICE, P.C.**
P.O. Box 62
Cleveland, TN  37364-0062
Telephone:  423/476-3556
Facsimile:  423/476-3551

By: _Jimmy Bilbo by Stacy Archer w/ express permission_
    Jimmy W. Bilbo, BPR #11048
    Brent McIntosh, BPR #030259
    Attorneys for Plaintiff

**SPEARS, MOORE, REBMAN & WILLIAMS**
P.O. Box 1749
Chattanooga, TN  37401-1749
Telephone:  423/756-7000
Facsimile:  423/756-4801

By: *Brie Stewart by Stacy Archer w/ express permission*
      H. Dean Clements, BPR #14793
      Brie A. Stewart, BPR #26021
      Attorneys for Defendant,
      Parkridge Medical Center, Inc.,
      d/b/a Parkridge Medical Center


**SPEARS, MOORE, REBMAN & WILLIAMS**
P.O. Box 1749
Chattanooga, TN  37401-1749
Telephone:  423/756-7000
Facsimile:  423/756-4801

By: *Art Brock by Stacy Archer w/ express permission*
      Arthur P. Brock, BPR #14189
      Attorneys for Defendant,
      Anesthesiologists Associated, P.C.


**ROBINSON, SMITH & WELLS**
Republic Centre, Suite 700
633 Chestnut Street
Chattanooga, TN  37450
Telephone:  423/756-5051
Facsimile:  423/266-0474

By: *Stacy Archer*
      Richard A. Smith, BPR #010618
      Stacy Lynn Archer, BPR #021368
      Attorneys for Defendants,
      Chattanooga Bone and Joint Surgeons, P.C.,
      and W. David Bruce, M.D.


kac/070113/RAS/SLA/
BRUCEOWENS.QUALIFIED PROTECTIVE AGREED ORDER

## IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

2013 SEP 26 PM 4 20

KNOX COUNTY CIRCUIT, CIVIL
SESSIONS & JUVENILE COURT
CATHERINE SHANKS, CLERK

| | |
|---|---|
| **CAROL L. BIBLE** | ) |
| *Plaintiff* | ) |
| | ) |
| **v.** | ) No. 2-28-13 |
| | ) |
| **UNIVERSITY ORTHOPEDIC CLINIC,** | ) |
| **INC., and JONATHAN N. DEGNAN, M.D.,** | ) |
| | ) |
| *Defendants* | ) |

## QUALIFIED PROTECTIVE ORDER FOR TREATING HEALTHCARE PROVIDERS

## PURSUANT TO T.C.A. §29-26-121 (f)(1)

Upon Motion of the defendants, University Orthopedic Clinic, Inc. and Jonathan Degnan, M.D., and separate Motion of the plaintiff, Carol Linda Bible, pursuant to Tennessee Code Annotated §29-26-1-121(f)(1), it is hereby ORDERED:

1.  The Defendant and/or their attorneys may conduct one informal interview with the Plaintiff's treating physician, Brian S. Edkin, M.D., if the treating physician chooses to do so, outside the presence of Plaintiff's counsel pertaining to matters relevant to the pending litigation.

2.  The Plaintiff and/or their attorneys may also conduct one informal interview with the Plaintiff's treating physician, Brian S. Edkin, M.D., if the treating physician chooses to do so, outside the presence of Defendants or their counsel pertaining to matters relevant to the pending litigation. Communication with Dr. Edkin by Ms. Bible's counsel shall not constitute a violation of the Tennessee Rules of Professional Conduct, Rule 4.2 however, all communications with Dr. Edkin shall be limited to matters relevant to the pending litigation.

3.  Nothing in this Order shall be construed as compelling the above mentioned health care provider to speak to any party in an informal interview.



4. This Order expressly limits the dissemination of any protected health information of Carol Linda Bible to the litigation pending before this Court as stated in T.C.A. §29-26-121(f)(C) and any protected health information that was obtained during the course of any such interview, including copies of any notes and records, shall be destroyed at the end of the litigation.

5. To the extent any health care provider provides any medical records of the Plaintiff that have not previously been disclosed, those records shall be treated as documents provided under the Medical Record Authorization and shall be promptly furnished to the opposing counsel.

ENTERED this _26th_ day of September, 2013.


JUDGE DEBORAH C. STEVENS
CIRCUIT COURT DIV. III

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify pursuant to Rule 58.02 TRCP that a copy of this ORDER has been served upon the following counsel of record and case parties by First Class U.S. Mail:

Loring E. Justice
B. Chadwick Rickman
11911 Kingston Pike
Suite 201
Knoxville, TN 37934

James H. London
Mark Castleberry
Erin Williams
607 Market St.
Suite 900
Knoxville, TN 37902

FILED IN OFFICE

14 JAN 10 PM 2:36

PAULA T. THOMPSON, CLERK

BY 

BRUCE HUNGERFORD and
JILL HUNGERFORD,

          Plaintiffs

vs.

BOBBY LULL RAY, M.D.,
CHRISTY M. COUEVAS, C.R.N.A.,
ANESTHESIOLOGISTS ASSOCIATED, P.C.
and PARKRIDGE MEDICAL CENTER, INC.
d/b/a PARKRIDGE MEDICAL CENTER,

          Defendants

\*  NO. 13C531

\*  IN THE CIRCUIT COURT OF

\*  HAMILTON COUNTY,

\*  TENNESSEE

\*  DIVISION III

## O R D E R

    This cause is before the Court on the motions of defendants to permit them to conduct interviews with treating health care providers pursuant to T.C.A. 29-26-121(f). The parties have briefed extensively the intent of the statute and the constitutional issues before the Court. Having reviewed the applicable law and the arguments of counsel, the Court finds T.C.A. 29-26-121(f) constitutional in that it does not violate the right of privacy protected by the United States Constitution and the Tennessee Constitution. Further, it does not violate the Equal Protection or Due Process clauses of these constitutions and does not violate Article 1, Section 20, of the Tennessee Constitution.

    The statute applies specifically to a "health care liability action" and provides that the court may upon petition from the defendants enter a Qualified Protective Order allowing the defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating health care providers as defined by section 29-26-101(a)(2). The legislature imposed conditions to the

granting of the petition. Those treating health care providers from whom the defendants seek a Qualified Protective Order to conduct an interview must be specifically identified, the claimant has the opportunity to file an objection seeking to limit or prohibit the conduct of those interviews which will be granted only if that provider does not possess relevant information and the information to be disseminated is limited to the litigation pending before the Court.

This statute is of the nature appropriately left to the legislature. The Court does not find the type of information the statute addresses infringes on any fundamental right of the claimant and there is no compelling reason to warrant a constitutional protection. Further, the Court finds under the rational basis test the statute bears a rational relationship to a legitimate government purpose and the Court finds the application of the statute to the pending action, which was filed April 12, 2013, after the July 1, 2012 effective date of the legislation. The filing of the lawsuit brings into play the provisions of this statute. It is not applied retroactively, but prospectively.

Accordingly, the Court finds the motions must be sustained.

ENTER this _10_ day of _January_, 2014.

_L. MARIE WILLIAMS, JUDGE_
CIRCUIT COURT - DIVISION III

**CLERK'S CERTIFICATE**

The undersigned hereby certifies that a copy of this order has been served on all parties or counsel to all parties in this cause.

This _10th_ day of _Jan_, 2014.

PAULA T. THOMPSON, CLERK

By: _Rumfelt_, D.C.

cc: Richard Smith
Paul Kaufman
J. Dean Clements
Stephanie Bergmeyer

-2-