IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

---

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as
Parents of BRETT LOVELACE, deceased,

    Plaintiffs,

vs.                                            NO.:   2:13-cv-02289 dkv
                                                      JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and,
MARK P. CLEMONS,

    Defendants.

---

## PLAINTIFFS' PARTIAL MOTION IN LIMINE TO EXCLUDE DEFENDANT, MARK P. CLEMONS', PROPOSED EXPERT WITNESS TESTIMONY OF JEROME THOMPSON, M.D., JAY WERKHAVEN, M.D., DIANNE DOWDY, R.N. AND EDWARD L. BRUNDICK, III

---

Come the Plaintiffs, Daniel Lovelace and wife, Helen Lovelace, Individually, and as Parents of Brett Lovelace, deceased, by counsel, and for their Partial Motion In Limine to Exclude Defendant, Mark P. Clemons', Proposed Expert Witness Testimony of Jerome Thompson, M.D., Jay Werkhaven, M.D., Dianne Dowdy, R.N., and Edward L. Brundick, III at Trial and Brief, states:

### INTRODUCTORY STATEMENT

According to the Complaint, this litigation arose on March 12, 2012 due to the medical negligence of Defendants, Babu Rao Paidipalli and Mark P. Clemons, and Dr. Paidipalli's group, Pediatric Anesthesiologists, P.A. This suit was filed by the parents of Brett Lovelace, deceased, who are Daniel Lovelace and Helen Lovelace. Brett Lovelace, 12 years of age, entered Le

Bonheur Children's Hospital in Memphis, Tennessee on March 12, 2012, to undergo a tonsillectomy and adenoidectomy.  The surgery was performed by Defendant, Mark P. Clemons; at the time, general anesthesia was administered to Brett Lovelace by Defendants, Babu Rao Paidipalli and Pediatric Anesthesiologists, P.A.  The acts of negligence in this case arose in the O.R., during surgery, as well as in the PACU (Post-Anesthesia Care Unit or recovery room) afterwards.  [See Expert Witness Report of Jason D. Kennedy, M.D., Exhibit F attached hereto.]  Defendants, Babu Rao Paidipalli and Mark P. Clemons, have both admitted that (a) Brett Lovelace should have been on supplemental oxygen at all times; and (b) that such a patient should not be allowed to lie on his face on the gurney in the PACU or recovery room.

Due to a lack of oxygen, Brett suffered anoxic encephalopathy and died because of the substandard medical care of the Defendants.  The positional asphyxia suffered by Brett Lovelace in the PACU, which led to anoxic encephalopathy was due to Brett being positioned on his face on the gurney while still under the effect of anesthesia; his knees were bent under his chest/diaphragm; he was in a prone position in which his lungs and upper airways, viz., diaphragm, mouth, and nose, were compromised and obstructed; in fact, his mouth and nose were not patent to observers when he arrived in the PACU;  his position was due to or compounded by the errors of the Defendants, who bungled the "hand-off" to the PACU nurse by leaving the patient without supplemental oxygen in the above-described prone, knees-to-chest position on his face.  After coding in the PACU, Brett Lovelace died two (2) days later at Le Bonheur Children's Hospital from the anoxic encephalopathy that he suffered in the PACU as a result of a tonsillectomy gone bad.

The primary objections to the listed defense expert witnesses here are that they contradict statements under oath of the Defendant, Clemons, their patron, so as to revive his defense; they

express opinions outside their respective areas of expertise and assert legal opinions; they also offer opinions that lack reliability under any stated methodology, lack peer-review support, demonstrate no established rate-of-error, which opinions are also not shown to be generally accepted in the relevant medical community. Moreover, the opinions are "for this litigation" only, and are, thus, deficient.

1.     Attached hereto is Defendant's Expert Disclosures containing the opinions of Jerome Thompson, M.D. [Exhibit A]. Three (3) of such opinions should be excluded at the trial of this case under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Rules 701-703, F.R.E. The following opinions of the witness should be excluded: (A) the witness states that the patient was provided supplemental oxygen; (B) the witness states that Defendant "met the standard of care"; and (C) the witness stated that Defendant had no post-surgical responsibility to the patient for breathing or otherwise. These opinions are to be excluded for the following reasons:

**DAUBERT[1] PROFILE OF OPINION**

| TEST | EVALUATION |
|---|---|
| Are opinions based upon scientific or medical evidence which has been tested under a reliable methodology that had been established? | No. No scientific evidence used; the opinions are contradicted by the record; no testing done; no known or reliable methodology stated. The witness does not cite current guidelines and offers mere ipse dixit. Opinion (A) is contrary to the medical records of Brett Lovelace which state that he was transported and arrived at the PACU on "Room Air," which means without supplemental oxygen. [Kish Dep. 136:15-16][Exhibit E]; in fact, it was very common to use supplemental oxygen at all times during a procedure of the type that Brett Lovelace had [Kish Dep. 143: 20-23] [Exhibit E]. Opinion (B) which states that Defendant met the standard of care lacks any stated scientific basis. Further, Dr. Clemons agreed that the lateral position a/k/a the Recovery Position, not the one in which the patient died in this case, was the common or good position for the patient. [Clemons Dep. 44:1-24; 45:1-22][Exhibit E]. Nurse Kish testified that the position in which Dr. Clemons left the patient was neither the common position nor the customary position for such patients and was not normal. [Kish Dep. 139:4-18; 140:1-7][Exhibit E]. Further, Dr. Clemons did not verify that supplemental oxygen was used but testified that it was customary to use same, which testimony under oath established the local practice or custom |

---

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-597 (1993).

| | |
|---|---|
| | of doing so. [Clemons Dep. 25:21-24][Exhibit E]. Nurse Kish agreed that supplemental oxygen was very common, but not used here. [Kish Dep. 143:20-23; 136:15-16] [Exhibit E]. Opinion (C) states a legal opinion regarding a physician's "responsibility" to a patient. This opinion expresses a legal conclusion and is, therefore, inadmissible. Rules 701-703, F.R.E. Further, it is at variance with the responsibility of Dr. Clemons to not abandon the patient. Also, there is no medical or scientific support for this opinion but there is ample support for the contrary proposition that the Defendant had a post-surgical responsibility to Brett Lovelace. <u>Pediatric Otolaryngology Principles and Practice Pathways</u>, Wetmore, *et al.*, @ 585-586 [Exhibit E]: the indications for tonsillectomy include airway obstructions and sleep-disordered breathing, symptoms suffered by Brett Lovelace; thus, Brett's airway obstructions and sleep-disordered breathing were conditions under Clemons' care at all times before, during and after the surgery; @ 595, *Id.* Under "Airway Obstructions/Respiratory Complications," the same text states the duty of Clemons after a tonsillectomy to be clear: "Many children are not immediately better following tonsil and adenoid surgery, and some actually may be worse. <u>Necessary respiratory support includes supplemental oxygen</u>, suctioning, <u>repositioning the child</u>, and occasional use of a nasal airway. <u>Failure of improvement</u> with this support is <u>an indication for more intensive postoperative observation in an intensive care unit</u>." Thus, Opinions (A) – (C), which lack any medical or factual basis in the evidence, are contrary to sound medical practices, which required Clemons to be active and to supervise the patient after surgery. Such duties include steps to be taken to <u>provide oxygen to the patient and to reposition the patient to assure his breathing</u> by keeping his airways unobstructed. |
| Were opinions subjected to peer-review or publication? | No. Opinions (A) – (C) list no scientific or medical bases. |
| Was a potential rate-of-error known for these opinions? | No. He gives his opinions only. |
| Are the opinions generally accepted in the scientific community? | No. They are, in fact, contrary to the testimony of witnesses present when the events transpired, including Clemons! |
| Was the expert's research in the field conducted independent of litigation? | No. All challenged opinions are specific to this case. Opinions (A) – (C) are merely legal opinions and, where not, *e.g.*, Opinion (B), are contrary to fact. |

      2.     Attached hereto is Defendant's Expert Disclosures containing the opinions of Jay Werkhaven, M.D. [Exhibit B]. Three (3) of his opinions should be excluded prior to trial under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and Rules 701-703, F.R.E. The following opinions of the witness should be excluded: (A) Defendant had no duty to monitor patient's breathing; (B) Defendant met the standard of care; (C) Defendant had no duty to the patient to order him moved or repositioned. These opinions are to be excluded for the following reasons:

## DAUBERT[2] PROFILE OF OPINIONS

| TEST | EVALUATION |
|---|---|
| Are opinions based upon scientific evidence which has been tested under a reliable methodology that had been established? | No. No scientific or medical evidence used or cited to support Opinions (A) – (C); no testing done; no known methodology stated. The witness does not cite current tests, records, texts, guidelines, etc. These are "legal" conclusions, not scientific or medical opinions. "Duty" and "responsibility" are non-medical terms that are "legal conclusions" that the witness is not permitted to state. In Opinion (A), the witness states that Clemons had no <u>duty</u> to monitor the patient's breathing. On the contrary, Dr. Clemons admitted that it was customary for supplemental oxygen to be provided and used with such patients. [Clemons Dep. 25:21-24; 45:15-24; 46:1] [Exhibit E]. However, despite it being customary or standard for supplemental oxygen to be placed or ordered on the patient, no supplemental oxygen was placed on Brett Lovelace at the time he arrived in the PACU, nor ordered by Clemons. [Kish Dep. 136:15-16] [Exhibit E]. Nurse Kish agreed that it was common for supplemental oxygen to be provided. [Kish Dep. 143:20-23] [Exhibit E]. Additionally, Opinion (B) that Defendant met the standard of care, while lacking in any details or scientific or medical support, ignores the fact that the position in which the patient was left, viz. knees bunched under chest, face and nose on the gurney (as opposed to being to his side), was contrary to the one that Clemons admitted was a good position, viz., placed to his side. [Clemons Dep. 44:1-24; 45:1-22] [Exhibit E]. Further, Nurse Kish testified that the position in which Brett Lovelace was left, and which position was approved by Dr. Clemons, was not a normal or customary one and was one that she <u>had never seen</u>. [Kish Dep. 139:4-18; 140:1-7] [Exhibit E]. Opinion (C), which expresses a legal opinion rather than reciting any facts relative to the duty to maintain Brett Lovelace's airway by placing him in a position so that he could breathe, is contrary to testimony of Clemons to the effect that a lateral semi-Fowler position was a good position and was the one commonly used. [Clemons Dep. 44:1-24; 45:1-22] [Exhibit E]. <u>Pediatric Otolaryngology Principles and Practice Pathways</u>, Wetmore, et al., @ 585-586 [Exhibit E] states: the indications for tonsillectomy include airway obstructions and sleep-disordered breathing, symptoms of the sort suffered by Brett Lovelace; thus, Brett's airway obstructions and sleep-disordered breathing were conditions under Clemons' continuing duty of care at all times before, during and after the surgery; @ 595, <u>Id.</u> Under "Airway Obstructions/Respiratory Complications," the same text further states the duty of Clemons after a tonsillectomy to be clear: "Many children are not immediately better following tonsil and adenoid surgery, and some actually may be worse. <u>Necessary respiratory support includes supplemental oxygen</u>, suctioning, <u>repositioning the child</u>, and occasional use of a nasal airway. <u>Failure of improvement</u> with this support is <u>an indication for more intensive postoperative observation in an intensive care unit</u>." Thus, Opinions (A) – (C), which lack any factual basis drawn from the evidence, are also not consistent with sound medical practices, which required Clemons to be active and to supervise the patient after surgery. Such duties include steps to be taken to <u>provide oxygen</u> and even to <u>reposition the patient</u> to assure their airways are safe and they are breathing. In sum, the witness did not use reliable methods, his |

---

[2] <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 593-597 (1993).

Case 2:13-cv-02289-SHL-dkv   Document 127   Filed 08/08/14   Page 6 of 13   PageID 1308

|  |  |
|---|---|
|  | credentials notwithstanding; he ignored the eyewitness accounts of the parents and the medical records that show that Brett Lovelace was admitted by Clemons to the PACU on "room air," lacking the standard supplemental oxygen that Defendant Clemons agreed was needed; he contradicts physical facts and photos taken at the time of the events that show Brett Lovelace "on his face" with no supplemental oxygen being provided. [Exhibit E]. |
| Were opinions subjected to peer-review or publication? | No. They are "legal," conclusory and are pure advocacy. |
| Was a potential rate-of-error known for these opinions? | No. He gives opinions only. |
| Are the opinions generally accepted in the scientific or medical community? | No. No reference or source material was cited. |
| Was the expert's research in the field conducted independent of litigation? | No. All challenged opinions are specific to this case. |

       3.      Attached hereto is Defendant's Expert Disclosure containing the opinions of Diane Dowdy [Exhibit C]. Seven (7) of Dowdy's opinions warrant exclusion at the trial of this case, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Rules 701-703, F.R.E. [*Note*: Opinions (A) – (F) may not be used by Clemons as proof, as such were barred by the Order Granting Plaintiffs' Motion to Strike the Certificate of Good Faith of Defendant, Mark P. Clemons, M.D., Under T.C.A. § 29-26-122, (b) and (c) [D.E. 118], wherein the Court held, inter alia, "that the affirmative defense of non-party fault is stricken from the Answer of Mark P. Clemons, M.D. (June 2, 2014, D.E. 118, Vescovo, U.S.M.J.). Opinions (A) – (F) support the stricken affirmative defense and, therefore, are to be excluded here for this added reason. [Moreover, any other opinions of the witness Dowdy that blame a third-party, although not listed, should be excluded for the same reason.]

      Otherwise, under Daubert, supra, the following opinions of Dowdy should be stricken: (A) Nurse Kish did not put on cardiac monitor, which was negligent; (B) the failure to raise the head of the bed was negligent; (C) the patient's head was to the side, which was safe; (D) Nurse Kish failed to respond to patient gasps; (E) no other providers were guilty of a deviation of care;

6

(F) physicians may rely on a PACU nurse; and (G) it was safe to leave the patient prone. These opinions are to be excluded for the following reasons:

**DAUBERT[3] PROFILE OF OPINION**

| TEST | EVALUATION |
|---|---|
| Are opinions based upon scientific or medical evidence which has been tested and by use of a methodology which has been tested? | No. The witness is a nurse; however, she chiefly renders medical and legal opinions for which she lacks a license or statutory authority (T.C.A. § 29-26-115), and which opinions are condemned by Rules 701-703, F.R.E. No scientific evidence was used; no testing done; no known methodology stated. The witness does not cite the prevailing and current in-service rule or standard at Le Bonheur, which does not require a cardiac monitor nor does she cite or use records from the patient's charts. She also contradicts the Defendant, her patron. Opinions (A) – (G) all suffer a lack of evidence, testing or any established authority or methodology of the witness to so opine. [A nurse, she is not permitted to render "standard-of-care" opinions pertaining to physicians]. |
| Were her opinions subjected to peer-review or publication? | No. Opinions (A) – (G) are totally unsupported by any peer-reviewed evidence cited in support by the witness. Pure _ipse dixit_. |
| Was a potential rate-of-error known or stated for these opinions? | No. All opinions are subject to this flaw. |
| Are her opinions generally accepted in the scientific community? | No. She is a nurse and exceeds the bounds and limits of her expertise; she contradicts Drs. Clemons and Paidipalli and weighs testimony, serving as a selective "fact-finder." All of her opinions lack a basis in the record and the professional credentials to sustain them; her opinions contradict witnesses and selectively "skew" facts in a manner not acceptable to courts under Daubert. Opinions (A) – (G), suffer these defects. She, in fact, "adjudicates" fault without the use of any bases or authorities to support her "legal" opinions. These are unscientific opinions that are not generally accepted by any known scientific community. |
| Was the expert's research in the field conducted independent of litigation? | No. All challenged Opinions, _viz._, (A) – (G), are specific to this case. Dowdy is a mere nurse and exceeds her training, licensure and renders opinions "for this litigation," which unqualified opinions are contrary to fact, testimony and the records. Even her nursing opinions lack evidentiary support in the record. |

4.   Attached hereto is Defendant's Expert Disclosures containing the opinions of Edward L. Brundick, III [Exhibit D]. Brundick's opinions should be stricken before trial of this case under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Rules 701-703, F.R.E. All opinion testimony of Brundick should be stricken that is based upon fields in

---

[3] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-597 (1993).

which he lacks expertise, viz. (i) psychology, (ii) career planning, (iii) learning disabilities, (iv) one's likelihood of having children, which opinions also lack peer-review support, credentials, and scientific basis or evidentiary support from those fields. Brundick provides no established rate-of-error; his opinions are not based upon data generally accepted by economists, and he uses only case-specific, "for this litigation only," factors, most of which are non-economic and, therefore, dehors the witness' area of "professed expertise." The witness had never previously qualified or been employed as an expert in these non-economic disciplines, or served as an actual economist.

In sum, his stated opinions warrant exclusion for the following reasons:

**DAUBERT[4] PROFILE OF OPINIONS**

| TEST | EVALUATION |
|---|---|
| Are opinions based upon scientific, mathematical or economic evidence which has been tested and by use of a methodology which has been tested? | No. No scientific, mathematical or economic evidence was used or determinative in the areas questioned; no testing done; no known methodology is stated. The witness does not cite current standards, nor does he properly use measurements or records from the decedent; he bases his opinions on anecdote and assumptions that are not scientific or which are outside any claimed area of expertise (economist). For expert testimony to be admissible: (1) it must be grounded in some specialized knowledge of the expert, and; (2) it must be helpful to the trier of fact. Brundick, who has never testified before as an expert, is a certified investment management analyst and a certified financial planner. He has a Bachelor's and Master's in Business Administration and a law degree. He is not a medical, psychological, or vocational expert. He has no medical or vocational training or work experience. He did not interview Brett. Nonetheless, Brundick opines that Brett, because of his learning disabilities, would not receive any college education or bachelor's degree educational attainment, and that Brett would not likely graduate from high school. His opinions are solely based upon what defense attorneys told him or a review of various documents. First, Brundick does not have the specialized training or knowledge to enable and qualify him to testify on the impact of Brett Lovelace's learning disabilities upon his likely future educational attainment, nor does he cite as a basis for his opinion any credible source or methodology. Second, Brundick's opinion is not helpful to the trier of fact since jurors can read the various documents that Brundick read, and arrive at their own conclusions. Third, Brundick relies on statistics for his opinion on the proper calculation of Brett's loss, but he has no degree or background in mathematics, statistical analysis, or in economic forecasting. Fourth, his conclusion that Brett Lovelace will have children, likewise, is unscientific ipse dixit. |

---

[4] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-597 (1993).

|  | His sole area of expertise is investments. |
|---|---|
| Were opinions subjected to peer-review or publication? | No. His opinions are based upon psychological, learning disability and career information of the sort in which the witness has no credentials or expertise sufficient to bridge the gap between anecdote, fact and an expert economist's opinion. He has soared too far afield from any discipline that might tether him to prior work, education or a job, to be credible. Pure ipse dixit. |
| Was a potential rate-of-error known for these opinions? | No. He gives opinions only. He states no rate-of-error. He ignores Daniel Lovelace's testimony that Brett Lovelace was a "math genius," concluding that he would never finish high school, despite testimony to the contrary from his parents, who were then home-schooling him. |
| Are the opinions generally accepted in the scientific community? | No. By definition, an economist is not a psychologist, vocational expert, or learning disability expert, or special ed. teacher. The witness expressed opinions that are outside his area of professed expertise [economist], which are mere advocacy. He draws a broken line to connect his unproven assumptions to his foregone conclusions. |
| Was the expert's research in the field conducted independent of litigation? | No. All challenged opinions are specific to this case. Brundick is an investment counselor, is no economist, and lacks expertise in the very matters upon which his opinions rest, viz., child psychology, learning disabilities, and special ed. training. |

      5.     The above opinions of Jerome Thompson, M.D., Jay Werkhaven, M.D. Dianne Dowdy, R.N. and Edward L. Brundick, III, are highly improper, amount to "fact-filters," are unsupported, and lack any foundation in science, mathematics, psychology, economics or medicine. Further, the opinions of Dowdy, which should be stricken as raising an affirmative defense that was previously stricken [blaming third parties], and Brundick exceed the bounds of their stated areas of expertise; therefore, all such opinions should be excluded at the trial of this case, under the following authorities:

        a.     Daubert, supra;

        b.     Rules 701-703, Federal Rules of Evidence;

        c.     Masters v. Norfolk Southern Ry. Co., 2012 WL 393805 (W.D. Pa. 2012) [held, experts may not "filter facts"];

        d.     Robb v. Burlington Northern & Santa Fe Ry. Co., 100 F.Supp.2d 867,

   872-874 (N.D. Ill. 2000) [held, testimony that simply omits or skews facts is unreliable, unhelpful and inadmissible as expert testimony];

e. <u>Kimble v. Earle M. Jorgenson Company</u>, 358 Ill. App.3d 400, 404-410, 830 N.E.2d 814, 819-822, 294 Ill. Dec. 402 (Ill. App. 2005) [held, testimony that is no different than what a juror could have determined should be stricken];

f. <u>Barbera v. 40 Broad Delaware</u>, 29 Misc. 3d 1231(A), 2010 WL 4983062 (N.Y. City Civ. Ct.) [held, expert testimony is excluded that is "within the ken of the typical juror," as it lacks scientific authority and is based upon no body of scientific data];

g. <u>Oddi v. Ford Motor Co.</u>, 284 F.3d 136, 159 (3rd Cir. 2000) [held, expert's evidence is not necessary … if … the primary facts can be accurately and intelligibly described to the jury];

h. <u>Reedy v. CSX Transp., Inc.</u>, 2007 WL 1469047, *3 (W.D. Pa. May 18, 2007) [held, experts are not to "fact-filter" the evidence to support a party] [attached hereto as Exhibit E];

i. <u>Polzo v. County of Essex</u>, 196 N.J. 569, 960 A.2d 375 (N.J. 2008) [held, bald conclusions that are "net opinions" are not admissible as expert testimony];

j. <u>Jackson v. City of Pittsburgh</u>, 2010 WL3222137 (W.D. Pa. 2010) [unreported] [held, expert opinions that are offered that are more akin to advocacy or legal arguments, subvert the court's and jury's functions; credibility assessments of other witnesses are also improper expert

10

    testimony; expert opinion that is rife with advocacy and improper legal conclusions should be stricken] [attached hereto as Exhibit E]; and

  k. <u>Nashville Railway & Light Company v. W.H. Harrison, et al.</u>, 5 Tenn.App. 22, 1927 WL 2104 (Tenn.Ct.App.) [held, an expert witness may not be allowed to testify as to matters which are accorded to the common every day observation of ordinary persons].

 6. <u>Judicial Estoppel, Estoppel by Oath</u>.  Defendant, Mark P. Clemons, under <u>Werne v. Sanderson</u>, 954 S.W.2d 742 (Tenn. App. 1997), should be judicially estopped to assert in his defense of this case that supplemental oxygen was not a standard requirement for Brett Lovelace in transit to, as well as in, the PACU, as Dr. Clemons testified in his deposition, under oath, that such was the standard.  He testified that patients, to his memory, always rolled out of the O.R. with supplemental oxygen.  Moreover, he reaffirmed this on several occasions.  [Clemons Dep. 45:15-24; 46:11] [Exhibit E].  <u>See also</u> <u>Stearns Coal & Lumber Co. v. Jamestown R. Co.</u>, 141 Tenn. 203, 208, S.W. 334 (1919); <u>In the Matter of the Guardianship of R.D.M.</u>, 306 S.W.3d 731 (Tenn. App. 2010); <u>County of Obion v. McKinnis</u>, 211 Tenn. 183, 364 S.W.2d 356, 357 (1962); <u>Ryan v. Stanger Investment Co.</u>, 620 S.W.2d 505 (Tenn. App. 1981); <u>Werne v. Sanderson</u>, 954 S.W.2d 742, 745 (Tenn. App. 1997); <u>Bubis v. Blackman</u>, 435 S.W.2d 492 (Tenn. App. 1968); <u>Pruitt v. Cantrell</u>, 264 S.W.2d 793 (Tenn. 1954).  The twin doctrines of judicial estoppel and estoppel by oath, bar Defendant's experts listed above from offering testimony to the effect that supplemental oxygen was not customary, required or standard for patients like Brett Lovelace at Le Bonheur. Further, Defendant's experts should likewise be judicially estopped and bound under estoppel by oath not to assert that the prone, face-down position of the Plaintiff, Brett Lovelace, in the PACU, was consistent with ordinary care or was in fact safe.  Dr. Clemons, in

his deposition, admitted under oath that the proper position for Brett Lovelace to have been in would have been a lateral position or on his side, not on his face, as did Dr. Paidipalli. [Clemons Dep. 44:1-15; 45:4-14 [Exhibit E]; Paidipalli Dep. 48:11-16 [Exhibit E]. No expert witness or counsel should be permitted to raise a defense or assert an argument or opinion to the contrary of what Defendant previously testified to under oath in this case. Stearns, supra; et al.

    7.    Adoption by Reference. Under Federal Rules of Civil Procedure 10(c), "a statement in a pleading may be adopted by reference ... in any other pleading or motion." Plaintiffs adopt in its entirety herein by reference Plaintiffs' Motion for Partial Summary Judgment and Brief [D.E. 124] under Rule 10 as a part of this Motion and assert that all of the expert proof tendered by Defendant Clemons should be deemed moot or stricken, and is otherwise barred by the failure of Defendant Clemons to timely answer or otherwise respond to Plaintiffs' First Request for Admissions Propounded to all Defendants.

    WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Daniel Lovelace and wife, Helen Lovelace, Individually, and as Parents of Brett Lovelace, as Movants, pray that the Court rule and order in limine that Defendant, Mark P. Clemons' proffered experts, Jerome Thompson, M.D., Jay Werkhaven, M.D., Dianne Dowdy, R.N. and Edward L. Brundick, III, not be permitted to testify by Opinion as to the matters detailed in Paragraphs 1 - 7, supra, upon the authority and precedents herein cited.

## REQUEST FOR HEARING ON MOTION

    Plaintiffs, pursuant to Rules 103, 104 and 105, F.R.E., pray for a hearing on this Motion so as to determine which Opinions that are addressed by this Motion should be excluded or restricted at trial.

Respectfully submitted,

/s/ Mark Ledbetter
Mark Ledbetter (#17637)
HALLIBURTON & LEDBETTER
254 Court Avenue - Suite 305
Memphis, TN 38103
(901) 523-8153-phone
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been properly served upon all counsel of record identified below via the Court's ECF filing system this 8th day of August, 2014:

J. Kimbrough Johnson/Marcy Dodds Magee/Margaret Cooper
2900 One Commerce Square
40 S. Main Street
Memphis, TN 38103
Attorneys for Mark Clemons
901/525-8721-phone
jjohnson@lewisthomason.com
mmagee@lewisthomason.com
mcooper@lewisthomason.com


Brad Gilmer/Jerry Potter/Karen Koplon/David Cook
The Hardison Law Firm
119 S. Main Street, Suite 800
Memphis, TN 38103
Attorneys for Babu R. Paidipalli and Pediatric Anesthesiologists, P.A.
901/525-8776 – phone
Bgilmer@hard-law.com
jpotter@hard-law.com
kkoplon@hard-law.com
dcook@hard-law.com

/s/ Mark Ledbetter
Mark Ledbetter, Certifying Attorney

13