IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESESEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

    Plaintiffs,

Vs.                                                   No. 2:13-cv-02289 dkv
                                                    JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

    Defendants.

**DEFENDANTS', PEDIATRIC ANESTHESIOLOGISTS, P.A.,
AND BABU RAO PAIDIPALLI, M.D.'S MOTION TO EXCLUDE OPINIONS OF
PLAINTIFF'S DESIGNATED EXPERT WITNESSES JASON KENNEDY, M.D.
AND ROBERT E. MARSH UNDER F.R.E 702/*DAUBERT* AND
MEMORANDUM OF LAW IN SUPPORT OF MOTION**

Come now the defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D., by and through counsel of record, and in support of this Motion to Exclude Experts under F.R.E 702/*Daubert* would show to the Court as follows:

**BACKGROUND**

This is a medical malpractice lawsuit in which plaintiffs, Daniel and Helen Lovelace, assert a claim for medical malpractice against Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli, M.D., (a pediatric anesthesiologist) and Mark D. Clemons, M.D. (an otolaryngologist), and also assert a claim against these defendants for negligent infliction of emotional distress based upon alleged medical malpractice in the care provided to plaintiffs' twelve year old son, Brett Lovelace, at Methodist Le Bonheur Children's Medical Center,

1

following a tonsillectomy/adenoidectomy surgery on March 12, 2012, allegedly resulting in Brett Lovelace's death on March 14, 2012.  (ECF 1, paragraphs 8 – 12.)   Defendants deny any medical negligence on their part and deny that they caused injury to, and the subsequent death of the patient, Brett Lovelace. (ECF 13, paragraph 3.)  Plaintiffs settled with Methodist LeBonheur pre-suit based upon the egregious care rendered by a nurse in the recovery room, which included fraudulent documentation of the child's vital signs and playing on Facebook and another website while charged with monitoring the child. The nurse's license was later revoked as a result of her actions.

Plaintiffs designated their only standard of care expert, Jason Kennedy, M.D., an adult cardiovascular anesthesiologist, on April 9, 2014.  Dr. Kennedy's discovery deposition was taken by the defendants on June 25, 2014.  Plaintiff also disclosed a damages expert, Robert E. Marsh, CPA.  Mr. Marsh's discovery deposition was taken by the defendants on June 9, 2014.

In accordance with the "Order Granting Defendants' Unopposed Motion for Extension of Discovery Deadlines First Amended Scheduling Order" entered in the cause on January 22, 2014, (ECF 89), Motions to Exclude Experts under F.R.E. 702/Daubert Motions shall be filed by August 9, 2014.  Defendants now therefore move to exclude opinions of Plaintiffs' experts, Jason Kennedy, M.D. and Robert E. Marsh, CPA, on the grounds that their opinions are unreliable under the case of *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 286 (1993) and Rule 702 of the Federal Rules of Evidence.  Defendants seek exclusion because their opinions are outside of their respective areas of expertise, offer opinions that lack reliability under any stated methodology, lack peer-review support, demonstrate no established rate of error, which opinions are also not shown to be generally accepted in the relevant medical community and are "for this litigation" and thus deficient.  Because these opinions are lacking in

trustworthiness pursuant to Rule 703 of the Federal Rules of Evidence, Defendants contend that the opinions set forth below should be excluded from the trial of this case.

In support of excluding testimony of Plaintiffs' experts under *Daubert*, defendant relies upon the sworn deposition testimony of Dr. Kennedy and Mr. Marsh, excerpts of which are attached as an exhibit to this Motion.

## ARGUMENT

As gatekeeper, the Court must ensure that a witness has the requisite ability to give expert testimony. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In *Daubert*, the Court determined that Rule 702 of the Federal Rules of Evidence allotted to the trial judge the task of determining whether an expert's testimony is admissible. Daubert, 509 U.S. at 597, 113 S.Ct. at 2799. The Court held that "general acceptance" was not indicative of the admissibility of scientific evidence. *Id.* The Court also noted that with determining whether expert testimony is admissible, the trial judge must determine that the testimony "rests on a reliable foundation and is relevant to the task at hand." *Id.*

The United States Supreme Court expanded its analysis of the admissibility of scientific evidence in *General Electric Company v. Joiner*, 522 U.S. 136, 118 S.Ct. 512 (1997). The Court noted:

> [N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

3

*Joiner*, 522 U.S. at 146, 118 S.Ct. 519.  The Court thus held that a district court's decision to admit or exclude scientific evidence would be measured by the abuse of discretion standard. Id.  Hence, it is within a trial or district court's discretion to conclude that expert testimony is inadmissible.

In *Kumho Tire Company, Ltd. v. Carmichael*, the United States Supreme Court expanded the trial court's duty to measure all expert testimony for reliability and relevance. 526 U.S. 137, 119 S.Ct.1167 (1999).  The Court disagreed with the Eleventh Circuit's holding that *Daubert* factors may only be considered when an "expert 'relies on the application of scientific principles' but not where an expert relies 'on skill- or experience-based observations.'"  *Kumho*, 526 U.S. at 151, 119 S.Ct. at 1176.  The Court responded by writing, "[w]e do not believe that Rule 702 creates a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts.  Life and the legal cases that it generates are too complex to warrant so definitive a match."  *Id.*  The Court stated that the trial judge must have a great amount of discretion in determining whether an expert's testimony is reliable.  *Id.* at 151, 1176.  Hence, if the trial or district court has doubts as to the admissibility of evidence, as long as these doubts are reasonable, there is no abuse of discretion.  *Id.* at 153, 1177.

In a medical malpractice case, the plaintiff must prove by expert testimony: 1) the standard of care in the defendant's specialty; 2) a deviation from the standard; 3) and an injury caused by the deviation.  Tenn. Code Ann. § 29-26-115.  Medical malpractice cases typically involve a dispute over the diagnosis, treatment or other scientific matters.  *Peete v. Shelby County Health Care Corp.*, 938 S.W.2d 693 (Tenn. Ct. App. 1996).  Thus, expert testimony is required.

Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and the many cases that followed, and provides that a qualified expert may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the fact of the case;

Fed. R. Evid. 702.

Rule 703 of the Federal Rules of Evidence states if the facts or data relied upon by the expert would otherwise be inadmissible; the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703

### *Basis for Exclusion of Opinions of Dr. Kennedy*:

Defendant avers that certain opinions of Dr. Kennedy should be excluded at trial under Rule 702 of the Federal Rules of Evidence. Dr. Kennedy is not a pediatric anesthesiologist like Dr. Paidipalli. He admits in his deposition that he does not put children to sleep, or wake them up, and thus he had adopted positions and opinions that are for this litigation only and are thus deficient under *Daubert*.

Dr. Kennedy is an adult cardiac anesthesiologist in Nashville. He takes care of "adult patients undergoing cardiac anesthesia and adult patients undergoing critical care." He also takes care of adult patients in the ICU. Dr. Kennedy has only been a licensed practicing anesthesiologist since June 2010-less than two years prior to the date in question, March 18, 2012. (See Expert Witness Report of Jason Kennedy, Exhibit 1). He does "not work in the department of pediatric anesthesiology." (See Deposition of Jason Kennedy, Exhibit 2, P. 8, l. 11-20.) He does not take care of pediatric patients like 12 year old Brett Lovelace who have

5

surgery. His practice concerns adults with cardiac problems-not children that have had throat surgery.

He is not certified as a pediatric anesthesiologist by any organization. (See Curriculum Vitae of Jason Kennedy, Exhibit 3.)  Dr. Kennedy has no specialized training in pediatric anesthesiology.   (See Exhibit 2, p. 25 l. 8-12).   In fact, he has no interest in pediatric anesthesiology.  (See Exhibit 2, p. 27 l. 22-25)

Dr. Kennedy's opinions, therefore, were developed for the purposes of this litigation. He had to research textbooks to develop his opinions of the standard of care for Dr. Paidipalli. While Dr. Kennedy asserts that he reviewed Miller's Anesthesia generally, and "two or three pediatric-specific textbooks" to formulate his opinions in the case, he could not and did not even identify with any specificity the title, chapters, authors, or studies to which he referred. He admitted that these texts themselves were not authoritative on the issues of the pediatric anesthesiology rendered in this case. P.12, l. 12-p.13 l. 23. Dr. Kennedy cites three sources in his expert report that he apparently had to rely upon to determine what the standard of care was in the case to drfat his report since he has no experience with children like Brett Lovelace. (See Exhibit 1, fn. 2-3.)

He conducted no testing relative to his opinions in this case. (See Exhibit 1). He has given no lectures or presentations specific to pediatric anesthesiology.  (See Exhibit 2, P. 32, l. 24-25).  He has not authored any peer reviewed study or paper. (See Exhibit 3.)  Dr. Kennedy has not authored any articles or studies, whatsoever, on pediatric anesthesiology or post surgical complications involving children or throat surgery. (See Exhibit 3). In fact, his only publication as an anesthesiologist was in a text and concerns "intraoperative monitoring of patients' cardiac function in during cardiopulmonary bypass." (See Exhibit 2, p. 10, l. 10-13). This case involves a tonsillectomy/adenoidectomy in a 12 year old child-not an adult cardiac patient.

Dr. Kennedy has never been qualified as an expert witness before. This is his first case to attempt to testify as an expert witness in any court. (See Exhibit 2, p. 40, l. 12-20.)

As seen from his complete lack of training and experience with this type of patient and surgery, his testimony would not assist the trier of fact as required and should be excluded. He has developed opinions solely for the purposes of this litigation.

### *Basis for Exclusion of Opinions of Robert Marsh, CPA:*

Defendants aver that Mr. Marsh must be excluded as an expert for the following reason – his testimony regarding economic damages resulting from the alleged injury lacks any basis that adequately supports his conclusions – an analytical gap exists between the data and the opinion offered. Defendants are not asserting that Mr. Marsh is not an expert within the meaning of Rule 702, but his testimony should be excluded because the basis for the witness's opinion, i.e. testing, research, studies, or experience-based observations, does not adequately support the expert's conclusions. *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997). His opinions lack peer-review support, credentials and scientific basis or evidentiary support from those fields. Moreover, his opinions provide no established rate of error; and his opinions are not based upon data generally accepted by economists.

Mr. Marsh failed to properly use measurements or records from the decedent; he bases his opinions on anecdote and assumptions that not scientific or which are outside any claimed area of expertise (economist). Mr. Marsh is a professional witness who makes a living reviewing cases in litigation. His opinions are solely based upon an average white male and fails to take into account the specific information that was available to him regarding Brett's learning issues. He gives assumptions upon assumption, failing to take into consideration how this child and this child's family fit into the equation.

For instance, Mr. Marsh has asserted that the plaintiffs have suffered an economic loss as a result of the death of their son. However, all his calculations are derived from assumptions of what the future may have held for Brett Lovelace – i.e. – whether he would have even completed high school, let alone trade school or even college. Marsh's testimony reads as follows:

> **Q:   And so you didn't factor in his mental or educational accomplishments, or lack therof. Is that a fair statement.**
> **A:   That's correct. I treated him as the average statistical individual and provided earnings for a range of different education attainments.**

(See Deposition of Robert E. Marsh, pg. 12, lines 2-8, attached hereto as Exhibit 4.) Mr. Marsh also stated that he was aware that Brett Lovelace was home schooled but admittedly stated:

> **A:   ..I'm simply not an expert on home school, and there's not a whole lot of statistics with regard to education attainment of those who are home schooled that I feel comfortable relying on it.**

(See Exhibit 4, pg. 33, lines 6-10).

Moreover, Mr. Marsh gives assumptions of potential earnings based upon the assumption that Brett would have completed high school, yet he failed to take into consideration that Brett failed kindergarten, and by the time he was in sixth grade he could only read on a second grade level. (See Exhibit 4, pg. 34, lines 6-24.    Dr. Marsh admits that he could have prepared a potential earnings range in his calculations for people who have not graduated high school but didn't make such calculations in his report presumably because his potential earnings would have been lower. (See Exhibit 4 pg. 36, lines 8-11).

The trial court, as the gatekeeper of proof, must ensure that the basis for the witness's opinion adequately supports the expert's conclusions. Marsh is relying on assumptions, not fact. In the present case, there is no data that can support the opinions offered by Marsh. Moreover, the opinion evidence is connected to the existing data only by the *ipse dixit* of the expert. Marsh

8

admits that he has had to make numerous assumptions to arrive at his calculations that are less than certain. Mere inferences are insufficient to create a straightforward connection between the expert's knowledge and the basis for the opinion – an analytical gap exists. As such, Marsh's speculative opinions on economic loss should be excluded.

## CONCLUSION

Defendants' respectfully urge the Court to grant this FRE Rule 702/*Daubert* challenge to Plaintiffs' experts, Dr. Kennedy and Mr. Marsh, and rule that they not be permitted to testify by opinion as to the matters set out above.

By: s/ W. Bradley Gilmer
JERRY O. POTTER (4284)
W. BRADLEY GILMER (21490)
KAREN S. KOPLON (16282)
Attorneys for Defendants, Pediatric
Anesthesiologists, P.A. and
Babu Rao Paidipalli, M.D.
THE HARDISON LAW FIRM, P.C.
119 S. Main Street, Suite 800
Memphis, Tennessee 38103
(901) 525-8776
jpotter@hard-law.com
bgilmer@hard-law.com
kkoplon@hard-law.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the Court's electronic filing system upon:

| | |
|---|---|
| Mark Ledbetter, Esq.<br>Halliburton & Ledbetter<br>Attorney for Plaintiffs<br>254 Court Avenue<br>Suite 305<br>Memphis, TN 38103 | J. Kimbrough Johnson, Esq.<br>Marcy Dodds Magee, Esq.<br>Attorneys for Defendant, Mark P. Clemons, M.D.<br>Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC<br>2900 One Commerce Street<br>Memphis, TN 38103 |

this 9th day of August, 2014.

                                                s/ W. Bradley Gilmer
                                                W. BRADLEY GILMER