# EXHIBIT B

Responses of Defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D., to Plaintiffs' First Set of Interrogatories and First Set of Request for Production of Documents Propounded to all Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

       Plaintiffs,

VS.                              NO.:    2:13-cv-02289 dkv
                                             JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and,
MARK P. CLEMONS,

       Defendants.

RESPONSES OF DEFENDANTS, PEDIATRIC ANESTHESIOLOGISTS, P.A./ AND BABU
RAO PAIDIPALLI, M.D., TO PLAINTIFFS' FIRST SET OF INTERROGATORIES AND
FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS
PROPOUNDED TO ALL DEFENDANTS

COME NOW the defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli,

M.D., by and through counsel, pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil

Procedure, and respond to the Plaintiffs' First Set Of Interrogatories And First Set Of Request Of

Production Of Documents Propounded To All Defendants, as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1:**     State the following:

     (a)     your name and address, including any business name and address;

     (b)     your professional degree and/or board certification, if any;

     (c)     the length of time you practiced medicine in the Memphis locale, and specifically

at LeBonheur Children's Medical Hospital prior to the date of March 12, 2012;

(d)     the specific service rendered by you to Brett Lovelace at LeBonheur Children's Hospital on March 12, 2012.

**RESPONSE**:

(a)     Babu Rao Paidipalli, M.D., and Pediatric Anesthesiologists, P.A., 50 North Dunlap Street, Memphis, Tennessee 38103;

(b)     Dr. Rao Paidipalli's professional degree and/or board certificate – see attached CV;

(c)     Dr. Paidipalli has been practicing medicine in Memphis, Tennessee continuously since 1979, and for that entire time he has practiced at Le Bonheur Children's Hospital;

(d)     Anesthesia services for a tonsillectomy and adenoidectomy for Brett Lovelace.

**INTERROGATORY NO. 2:**     Have your full rights and privileges to practice medicine or anesthesiology been suspended, revoked or terminated in any state or hospital since you started to practice medicine?   If the answer is yes, please state:

(a)     The reason why your full rights or privileges to practice medicine or any hospital association were suspended, revoked or terminated; and,

(b)     the name of the state or hospital that suspended, revoked or terminated your full rights or privileges to practice medicine.

**RESPONSE**: No.

**INTERROGATORY NO. 3:**     If you have ever been a defendant in a malpractice suit other than the present one, identify the case by name, court and docket number, and summarize the allegations against you and the outcome of the case, including the fact and terms of any settlement.

**RESPONSE**: Defendants, Babu Rao Paidipalli and Pediatric Anesthesiologists, P.A.,

object to this Interrogatory on the grounds that it is overly broad and that it requests information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Without waiving such objections, these defendants respond that they have both been named as defendants in the following cases:

Claimant: Jeremy Brown; date of loss - May 11, 1984; lawsuit filed May 10, 1985; disposed of on May 2, 1986 by confidential settlement between claimant and the defendants, in which a small payment was made by or on behalf of the defendants; the patient was a 4 year old male with known developmental delay who was undergoing hernia repair, and shortly after induction, the patient arrested and developed malignant hyperthermia, resulting in several days in the hospital, with no residual injury.

Claimant: Justin White; date of loss - June 15, 1995; lawsuit filed June 17, 1996; disposed of on March 19, 1997, by voluntary dismissal by plaintiff with no payment by or for defendants; the patient was a three month old male who underwent right inguinal hernia repair; the patient had a history of congenital heart defect and gastro- esophageal reflux; the infant moved during surgery, making the pulse oximeter and blood pressure cuff ineffective; the patient became apneic, was ventilated and intubated, but expired.

Claimant: Shanequa Price; date of loss – December 30, 1997; lawsuit filed – January 12, 1999; disposed of by voluntary dismissal by plaintiff with no payment by or for defendant; the patient was a 21 month old female with a history of complex coronary heart disease, with prior cardiac surgery and a history of seizures and developmental

3

delay; the child arrested during surgery and was resuscitated, but later developed respiratory complications and multi-system failure and expired.

Claimant:   Dale Danielson; Shelby County Circuit Court docket # 86343-9 T.D.; disposed of on August 17, 2004, by confidential settlement between the claimant and the defendants; the child was to undergo bilateral inguinal hernia repair, but arrested as anesthesia was commenced for unknown reasons and was resuscitated; the procedure was abandoned but completed later; the claim asserted neurological impairment.

Claimant: Emily Toarmina; Shelby County Circuit Court docket # CT-000012-07; date of loss - January 4, 2006; lawsuit filed – January 2, 2007; disposed of on August 5, 2008, by confidential settlement between the claimant and the defendants; the patient was a 21 year old female with a history of repaired tetralogy of Fallot, who underwent right femoral artery angioplasty; on extubation, the patient developed pulmonary edema and later multi-organ system failure requiring ventilation and dialysis; the patient recovered with no subsequent injury.

**INTERROGATORY NO. 4:**        Describe any and all medical treatment rendered to Brett Lovelace at any time on or prior to March 12, 2012, to include any previous medical history and/or medical treatment of Brett Lovelace, including any prognosis and diagnosis of any medical condition of Brett Lovelace, and any treatment or medication prescribed as a result thereof, to include the diagnosis and reason for the surgery of March 12, 2012.

**RESPONSE**: None.

4

**INTERROGATORY NO. 5:**        Describe in detail all medical or anesthesiology treatment rendered by you to Brett Lovelace specifically on March 12, 2012, from the first moment you saw Brett Lovelace up through and including the last moment you saw him on this date, including any specific instructions you left with any medical personnel assuming the care of Brett Lovelace upon your leaving the patient in the OR, PACU or ICU.

**RESPONSE:**  All treatment rendered by Dr. Paidipalli and Pediatric Anesthesiologists, P.A., is recorded in the medical records of Methodist Healthcare – Memphis Hospitals d/b/a Methodist LeBonheur Children's Hospital for the admission of Brett Lovelace on March 12, 2012, copies of which plaintiffs' have or which are as readily available, if not more available, to plaintiffs, and defendants refer plaintiffs to such medical records.

**INTERROGATORY NO. 6:**        Did you fail to fully extubate, awaken, stabilize, oxygenate, assess, and reposition the patient, Brett Lovelace, subsequent to the surgery of March 12, 2013?

**RESPONSE:** No.

**INTERROGATORY NO. 7:**        Did you abandon or leave the patient in a prone, knees-up fetal  position on a gurney where he remained for more than an hour and twenty minutes in that same position before he went into cardiac arrest? [See Ex. "B", attached to Plaintiff's Request for Admissions Propounded to All Defendants].

**RESPONSE:** No.

**INTERROGATORY NO. 8:**        State whether or not you personally observed or witnessed Brett Lovelace being on a gurney in the PACU in a prone position, face down with knees to chest, at any time subsequent to the T&A surgery on March 12, 2013?  [See Ex. "B", attached to Plaintiff's Request for Admissions Propounded to All Defendants].

**RESPONSE**: No.

If the answer is yes, state the exact time you saw him in such position and whether or not you took any steps or gave any instructions to any medical personnel cautioning them or expressing any concern over his being on his stomach in a prone position where he could not appropriately breathe.

**INTERROGATORY NO. 9:**     State what conversations, if any, were had by you with the parents of Brett Lovelace following the T&A surgery, or since March 12, 2012, and give a synopsis of any such conversation.

**RESPONSE**: Dr. Paidipalli recalls that he was present at a meeting with Dr. Bill May, Medical Director for Le Bonheur Children's Hospital, Kathie Krause, Nursing Vice-President, Le Bonheur, Rhonda Ellsworth, Director of the Le Bonheur Post Anesthesia Care Unit, Elesia Turner, Risk manager for Le Bonheur, and perhaps one or two other hospital personnel, and the plaintiffs, Daniel and Helen Lovelace, which took place the day following the incident involving Brett Lovelace. Dr. May stated to Mr. and Mrs. Lovelace, on behalf of Le Bonheur Hospital, that Dr. May was sorry for the tragic event that had happened, and that the hospital would be in touch with Mr. and Mrs. Lovelace when Mr. and Mrs. Lovelace were ready to meet again. Mr. and Mrs. Lovelace stated at that meeting that they had expressed concern about Brett Lovelace's condition to Kelly Kish, the nurse who was supposed to be monitoring Brett Lovelace in the PACU, and that Kelly Kish stated to them that Brett was OK. Mr. and Mrs. Lovelace also stated that Kelly Kish was using her computer to access Facebook when she was supposed to be monitoring Brett Lovelace. Mr. and Mrs. Lovelace also stated that after the incident, one of the nurses was laughing inappropriately while transferring Brett Lovelace to ICU. Mr. and Mrs.

Lovelace stated to Dr. Paidipalli that they had no criticism of Dr. Paidipalli, or words to that effect.

**INTERROGATORY NO. 10:**     Were you aware of the patient's pre-surgery history of respiratory problems, i.e., "mouth breather, snoring . . .", and, with that in mind, did you assess the patient to determine that he was fully awakened, fully extubated and oxygenated subsequent to the surgery and prior to leaving the patient in the care of the PACU nurse before leaving the area, or the hospital?

**RESPONSE**: Yes.

**INTERROGATORY NO. 11:**     If there were any reviews performed, including investigations undertaken, hearings held or reports prepared, by the hospital, its medical staff or any officer, committee or agency of the hospital or any public body or other person(s) concerning the subject incident of this Complaint, please state:

(a)     the name and position of the person(s) or committee that performed the review;

(b)     the date and time of each review;

(c)     the name, address, profession or professional relationship to you of all persons present at each review;

(d)     the nature and purpose of each review;

(e)      whether the review was recorded; and,

(f)     the name and address of each person who has any records concerning each review.

**RESPONSE**: See Response to Interrogatory Number 9.  Also, defendants respond that the only additional information they have in response to this interrogatory is that the only reviews performed, including investigations undertaken, hearings held or reports prepared, by the hospital, its medical staff or any officer, committee or agency of the hospital or any public body

or other persons concerning the care of Brett Lovelace for the hospital admission in question, so far as known to these defendants, are (1) the state investigation performed by the State of Tennessee Department of Nursing pertaining to the negligence of Kelly Kish, the nurse who was employed with Methodist Healthcare – Memphis Hospitals and who was supposed to be monitoring Brett Lovelace in the PACU, whose license was revoked due to her negligent care of the patient, Brett Lovelace, and (2) an internal investigation by Methodist Healthcare – Memphis Hospitals d/b/a Methodist LeBonheur Children's Hospital, which resulted in the resignation of Kelly Kish from employment with Methodist Healthcare – Memphis Hospitals, in lieu of her termination.  These defendants do not have knowledge of the information requested in subparagraphs (a) – (f), except as follows:

(a)      Regarding the State investigation: Shirley Pickering, State Nursing Board Investigator, 2979 Highway 45 Bypass, Number C, Jackson, Tennessee 38305, who investigated the facts on behalf of the Board of Nursing; Marc R. Guilford, Assistant General Counsel, Tennessee Department of Health, 220 Athens Way, Suite 210, Nashville, Tennessee, who was involved in the proceedings before the Board of Nursing, resulting in entry of an Agreed Order with the Tennessee Board of Nursing, revoking the license of Kelly Kish, which order is a matter of public record; Thomas G. Stovall, Director, Administrative Procedures Division, Office of the Secretary of State, 312 Rosa L. Parks Avenue, Snodgrass Tower, 8th Floor, Nashville, Tennessee 337243, whose name appears on the copy of the Agreed Order filed of record with the Tennessee Secretary of State; and Donna L. Boyce, attorney, Adams & Reese, LLP, Brinkley Plaza, 80 Monroe Avenue, Suite 700, Memphis, Tennessee 38103, who represented Kelly Kish in the proceedings before the Tennessee Board of Nursing; and regarding the internal investigation by Methodist Healthcare – Memphis Hospitals: Elesia Turner, RN, Risk Manager for Le Bonheur

8

Children's Hospital; Rhonda Ellsworth, Director of the PACU at Le Bonheur Children's

Hospital; Kathie Krause, Vice President, Nursing, Le Bonheur Children's Hospital; and Dr. Bill

May, Medical Director, Le Bonheur Children's Hospital, all of whom were involved in the

investigation of the facts subsequent to the incident;

      (b)     Unknown;

      (c)     Unknown;

      (d)     Unknown, except as stated above;

      (e)     Unknown; and

      (f)     Unknown, except possibly for the persons identified hereinabove.

     **INTERROGATORY NO. 12:**    If you claim that the alleged occurrence resulted

from the plaintiffs or plaintiff's decedent's own lack of care, set forth as fully and specifically as

you can what acts, conduct or omissions constitute such lack of due care.

     **RESPONSE**: No.

     **INTERROGATORY NO. 13:**    State the full name and address of each person

whom you expect to call as an expert witness at trial, and produce the following, to include

phone number and place of employment as well as the following information:

      a)     any reports received from such expert;

      b)     the amount of compensation of such expert and any memorandum reciting and setting forth such compensation;

      c)     the expert's curriculum vitae;

      d)     a listing of cases wherein such expert has previously testified, or given a deposition, for a period of ten years prior to their involvement in this case, to include style and jurisdiction and docket number;

      e)     If the expert has been employed for purposes of giving an opinion or testified in other cases for defendant, list the style and/or claimant's name as well as the jurisdiction and docket number;

f)      list any and all information supplied to the expert for any opinions

rendered in this case and/or to be offered at the time trial, and produce

copies of each.

**RESPONSE**: Defendants have not yet determined the expert witnesses whom

defendants expect to call as expert witnesses at trial but will provide the information pertaining

to such witnesses as required by the Federal Rules of Civil Procedure, at the time of proving

defendants' expert disclosures in accordance with the Scheduling Order entered by the Court.

**INTERROGATORY NO. 14:**      As to each expert identified in your answer to the

preceding Interrogatory, state:

a)      the subject matter and medical specialty on which each expert is expected
to testify;

b)      the substance of the facts and opinions to which the expert is expect to
testify; and,

c)      a summary of the grounds for each such opinion.

**RESPONSE**: Defendants have not yet determined the expert witnesses whom

defendants expect to call as expert witnesses at trial, but will provide the information pertaining

to such witnesses as required by the Federal Rules of Civil Procedure, at the time of providing

defendants' expert disclosures in accordance with the Scheduling Order entered by the Court.

**INTERROGATORY NO. 15:**      Please state the name of carrier(s), their address(es),

policy number(s), both excess and primary, of any liability insurance that is available to the

defendant to indemnify defendant for any losses claimed by the Plaintiffs in this case.

**RESPONSE**: Defendants have previously provided plaintiffs' counsel with the

information required to be provided pursuant to Federal Rules of Civil Procedure

26(a)(1)(A)(iv).

**INTERROGATORY NO. 15 (sic 16:)**      Have you attempted to use the HIPPAA (*sic* – HIPAA) authorization provided to you by Plaintiffs?

**RESPONSE (sic 16.)**      Objection; this interrogatory presumes incorrectly that a HIPAA-compliant authorization was provided by plaintiffs.  Without waiving such objection, defendants further respond that the documents provided to defendants by plaintiffs' counsel prior to suit, did not include a "HIPAA authorization", as such authorization failed to include two core elements required by 45 C.F.R. §164.508(c), as stated in Defendants' Motion To Dismiss For Failure To State A Claim.  Defendants further respond that they have not attempted to use the document purporting to be a HIPAA authorization provided to them by plaintiffs.

**INTERROGATORY NO. 16 (sic 17):**      State the title, year and source of clinical guidelines you assert support any affirmative defense you raise in this case for the treatment rendered by you in this matter.

**RESPONSE**:  Unknown at this time; to the extent that defendants may rely on any "clinical guidelines" or other documents in support of the affirmative defense alleging negligence on the part of Kelly Kish, and/or any other hospital personnel whose negligence caused or contributed to the death of the patient, Brett Lovelace, defendants will supplement this response at the appropriate time.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**    Attach a copy of your curriculum vitae or describe in detail your education, training, experience, published materials, service on boards and committees, continuing education and certifications, prior work and hospital affiliations, licenses and specialties.

**RESPONSE:**  See attached copy of Dr. Paidipalli's curriculum vitae.

**REQUEST NO. 2:**   Attach a complete copy of any written records or documents, medical notes or records, photographs, videos, statements, etc. that you have regarding the plaintiffs' decedent, Brett Lovelace, along with a typed transcription of any handwritten records.

**RESPONSE:**  Defendants object to this request to the extent that it purports to request any documents or notes that are privileged under the attorney client privilege and/or the work product privilege, including notes prepared by defendant at the request of defendant's counsel, and which were submitted by defendant to defendant's counsel, and are protected under the attorney-client privilege and the work product privilege.  Without waiving such objections, defendants further respond that they have copies of the documents identified in Defendants' Initial Disclosures previously served on counsel in this cause, which is incorporated herein by reference, and defendants will make available to plaintiffs for inspection and copying such documents on reasonable notice from plaintiffs' counsel.

**REQUEST NO. 3:**   Attach a copy of all documents that the plaintiffs signed consenting to any treatment or procedures performed or prescribed by you on Brett Lovelace, as well as a copy of any literature, material, pamphlets, instructions or other information or documents that you supplied to plaintiff.

**RESPONSE:**  The only documents responsive to this request are documents contained in the medical records of Methodist Le Bonheur Children's Hospital.

**REQUEST NO. 4:**        Produce any and all reports received from any expert(s), or your notes of any facts or opinions made during any communication with any expert, or the experts' notes of facts, opinions and summary of the grounds for his opinions, whether or not

they were consulted for in preparation to testify in the cause and/or it is anticipated that you will call them as a witness in the cause.

**RESPONSE**: Defendants object to the extent that this request calls for documents which are documents that are privileged under the work-product doctrine or attorney-client privilege and/or are beyond the scope of discovery under Federal Rule of Civil Procedure 26. Defendants will provide plaintiffs with all information and documents required to be provided under the Federal Rules of Civil Procedure with regard to any experts defendants may use at trial in accordance with Rule 26(a)(2), in accordance with the Scheduling Order. Without waiving such objections, defendants respond that there are no documents responsive to this request at this time, other than the attorney's notes of a conversation with a potential expert, which are absolutely protected and are non-discoverable under Rule 26(a)(4).

**REQUEST NO. 5:**   Produce a copy of any insurance policy(ies), insuring you against the losses asserted here, both primary and excess.

**RESPONSE**: Defendants have previously provided plaintiffs' counsel with copies of the documentation requested.

## **VERIFICATION**

STATE OF TENNESSEE

COUNTY OF SHELBY

Babu Rao Paidipalli, M.D., being first duly sworn, deposes and states that he has read the foregoing Responses To Plaintiffs' First Set Of Interrogatories And First Set of Request For Production Of Documents Propounded To All Defendants, that said Responses were prepared with the assistance and advice of counsel upon which he relies; that the information set forth herein, subject to inadvertent or undiscovered errors, is based on, and therefore necessarily limited by the existing records and information presently collected and thus far discovered in the course of preparation of these Responses; that consequently Babu Rao Paidipalli, M.D. aeserves the right to make any changes to these Responses if it appears that at any time that omissions or errors have been made thereon or that more information is available; and that subject to the limitations set forth herein, said Responses are true to the best of his knowledge, information and belief.

_____
BABU RAO PAIDIPALLI, M.D.

PEDIATRIC ANESTHESIOLOGISTS, P.A. BY:

_____
BABU RAO PAIDIPALLI, M.D., MEMBER

Sworn to and subscribed before me this ___1st___ day of _____, 2013.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

**My Commission Expires:**
**April 10, 2016**
_____

14

Respectfully submitted,

THE HARDISON LAW FIRM, P.C.

By: _____

DAVID M. COOK (5362)
ALBERT G. MCLEAN (5150)
Attorney for Defendants,
Pediatric Anesthesiologists, P.A. and
Babu Rao Paidipalli, M.D.
119 S. Main Street, Suite 800
Memphis, Tennessee 38103
(901) 525-8776
dcook@hard-law.com
amclean@hard-law.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the Court's electronic filing system upon:

Mark Ledbetter
Halliburton & Ledbetter
Attorney for Plaintiffs
254 Court Avenue
Suite 305
Memphis, TN 38103

Marcy Dodds Magee
Attorneys for Defendant, Mark P. Clemons, M.D.
Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC
2900 One Commerce Street
Memphis, TN 38103

this ___5th___ day of August, 2013.

_____
ALBERT G. MCLEAN

15

# CIRRICULUM VITAE

## B. RAO PAIDIPALLI, M.D.

**EDUCATION**

**High School**

| 1963 | B.Z.P.S. | India |
|---|---|---|

**Undergraduate**

| 1965 | PUC | New Science College Osmania University Hyderbad, India |
|---|---|---|

**Graduate/Medical**

| 1972 | M.B.B.S. | Kakatiya Medical College A.P., India |
|---|---|---|
| 1972-1973 | Rotating Internship | M.G.M. Hospital Warangal, India |
| 1973-1974 | Senior Housemanship | St. Mary Hospital Khammam, India |
| 1975-1976 | Preceptee in Surgery | North Charles Hospital Baltimore, Maryland |
| 1975-1976 | Flexible Internship | Ellis Hospital Schnectady, New York |
| 1976-1978 | Resident Anesthetist | University of Illinois at the Medical Center Chicago, Illinois |
| 1978-1979 Anesthesiology | Chief Resident | University of Illinois at the Medical Center Chicago, Illinois |

BOARD CERTIFICATION

American Board of Anesthesiology

MEDICAL LICENSURE

Tennessee #11984

SOCIETY MEMBERSHIPS

International Anesthesia Research Society

Tennessee Medical Society

Tennessee Society of Anesthesiogists

American Medical Association

American Society of Anesthesiologists

Memphis and Shelby County Medical Society

Memphis and Shelby County Society of Anesthesiologists

TEACHING ACTIVITIES

| 1978-1979 | Instructor | Abraham Lincoln School of Medicine Chicago, Illinois |
| 1979-1983 | Instructor | University of Tennessee, Memphis College of Medicine Memphis, Tennessee |
| 1983-Present | Assistant Professor | University of Tennessee, Memphis College of Medicine Memphis, Tennessee |

PROFESSIONAL ACTIVITIES

| 1988-Present | | Medical Director of Pediatric Anesthesiology LeBonheur Children's Medical Center Memphis, Tennessee |

| | |
|---|---|
| 1988-Present | Director of Operating Room and Recovery Room LeBonheur Children's Medical Center Memphis, Tennessee |
| 1983-1988 | Assistant Director of the Operating and Recovery Room LeBonheur Children's Medical Center Memphis, Tennessee |
| 1983-Present | PGY-2 Advisor |
| | Development Advisor to Undergraduate Curriculum in Pediatric Anesthesia |
| | Member –Oral Exam Panel for Resident Evaluation Process |

## HOSPITAL APPOINTMENTS

| | |
|---|---|
| 1979-1991 University of Tennessee, Memphis William F. Bowld Hospital Memphis, Tennessee | Active Staff |
| 1980-Present | Consulting Staff St. Jude Children's Research Hospital Memphis, Tennessee |
| 1982-Present | Consulting Staff Regional Medical Center at Memphis Memphis, Tennessee |
| 1983-Present | Active Staff LeBonheur Children's Medical Center Memphis, Tennessee |
| 1990-Present | Active Staff Lebonheur East Surgery Center Memphis,  Tennessee |
| 1996-Present | Courtesy Staff Methodist Hospitals Memphis, Tennessee |

## VISITING PROFESSORSHIPS AND INVITED LECTURES

American Society of Anesthesiologists Annual Meeting, San Francisco, California,   October, 1979.

American Societyof Anesthesiologists Annual Meeting, St. Louis, Missouri,October 1980.

Conference on Pediatric Anesthesia Problems, Memphis, Tennessee, May, 1981.

Anesthesiology Basic Science and Critical Care Symposium, New York, New York, June 1-5, 1981.

Tennessee Society of Anesthesiologists, Paris Landing, Tennessee, August 28-29, 1981.

Hypothermia and Circulatory Arrest Review Cases, LeBonheur Children's Medical Center, Conference on Pediatric Anesthesia Problems, May, 1981.

"Respiratory Physiology" – Lecture Series – University of Tennessee Lecture Series, August, 1981.

Anesthesiology Board of Reviews, New York University, March 22-26, 1982.

American Society of Anesthesiologists Annual Meeting, Las Vegas, Nevada, October 22-26, 1982.

"Hemodynamic Monitoring" – Lecture Series – University of Tennessee, Memphis, College of Medicine, Memphis, Tennessee, September, 1982

International Symposium on Auscultation and Phonocardiology, Sringer, Kashmir, India, August 16-18, 1983.

"Narcotics and Anesthesia", Department of Anesthesiology, Grand Rounds, University of Tennessee, Memphis, College of Medicine, February 1984.

"Congenital Heart Disease and Anesthetic Management", Department of Anesthesiology Grand Rounds, University of Tennessee, Memphis, College of Medicine, February, 1984.

"Malignant Hyperthermia", Department of Anesthesiology Grand Rounds. University of Tennessee, Memphis, College of Medicine, 1985.

Anesthesia for Neonatal Emergencies – Lecture Series – University of Tennessee, Memphis, College of Medicine, Memphis, Tennessee, 1986.

International Anesthesia Research Society Annual Meeting, Lake Buena Vista, Florida, March 1987.

California Society of Anesthesiologists, Anaheim, California, June 15-20, 1988.

Society Pediatric Anesthesia, Annual Meeting, San Francisco, 1991

Society Pediatric Annual Meeting, New Orleans, 1992.

World Telugu Convention, Long Island, 1993

Lloyd Nolan Hospital, Anesthesiology Update, Fairfield, Alabama, 1994

American Association of Physicians from India, 1995

Children's Hospital of Pittsburgh, International Symposium on Pediatric Airway, 1996.

Canadian Anaesthetists' Society 54th Annual Meeting, Vancouver, BC, 1997

General Risk Management Seminar, Memphis, 1998

Society of Airway Management, Cambridge, MA 1998

American Telugu Association 5th Annual Convention, Detroit, Michigan, 1998

13th Annual Glaucoma Symposium, Chapel Hill NC, 1999.

Telugu Association of North America Conference, Cincinnati, Ohio, 1999

Telugu Association of North America 2000 Convention, Atlanta, Georgia

Society Ambulatory Anesthesia, 15th Annual Meeting, Washington, DC 2000

General Risk Management Seminar, 2000

California Society Anesthesiologists Hawaiian Seminar, 2001

Advances in Medical Sciences, Philadelphia, PA 2001

Annual Update on Pediatric Cardiovascular Disease, 2003

Northwest Seminars Current Topics in Anesthesia, Yosemite National Par, CA 2003

ASA Annual Meeting, San Francisco, CA, 2003

General Risk Management, 2006

ASA Self Education and Evaluation Program, 2006