## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESESEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

Vs.                                     No. 2:13-cv-02289 dkv
                                        JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

      Defendants.

## RESPONSE OF DEFENDANT, MARK P. CLEMONS, M.D. TO PLAINTIFF'S PARTIAL MOTION <u>IN LIMINE</u> TO EXCLUDE PROPOSED EXPERT WITNESS TESTIMONY OF JEROME THOMPSON, M.D., JAY WERKHAVEN, M.D., DIANE DOWDY, RN AND EDWARD L. BRUNDICK, III

Come now the Defendant, Mark P. Clemons, M.D. ("Dr. Clemons") by and through counsel of record, and in response to Plaintiffs' Partial Motion in Limine to Exclude Proposed Expert Witness Testimony of Jerome Thompson, M.D., Jay Werkhaven, M.D., Diane Dowdy, RN and Edward L. Brundick, III would show to the Court as follows:

### <u>BACKGROUND</u>

This is a health care liability action in which Plaintiffs, Daniel and Helen Lovelace, assert a claim for medical malpractice against Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli, M.D., (a pediatric anesthesiologist) and Dr. Clemons (an otolaryngologist). Plaintiffs further assert a claim against this Defendant for negligent infliction of emotional distress based upon alleged medical malpractice in the care provided to Plaintiffs' twelve year old son, Brett

Lovelace, at Methodist Le Bonheur Children's Medical Center, following a tonsillectomy/adenoidectomy surgery on March 12, 2012, allegedly resulting in Brett Lovelace's death on March 14, 2012.  (ECF 1, paragraphs 8 – 12.)   Defendant denies any medical negligence on his part and that he caused injury to and the subsequent death of the patient, Brett Lovelace. (ECF 13, paragraph 3.)  Plaintiffs settled with Methodist LeBonheur pre-suit based upon the egregious care rendered by a nurse in the recovery room, which included fraudulent documentation of the child's vital signs and playing on Facebook and another website while charged with monitoring the child. The nurse's license was later revoked as a result of her actions.

On August 8, 2014, Plaintiffs moved in *limine* to exclude expert testimony under the case of *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 286 (1993) and Rules 701-703 of the Federal Rules of Evidence. (ECF 126).  Defendant received the motion on August 11, 2014, but to the extent that service is construed as being when Defendant was notified, Rule 11.2.3 of the Electronic Filing Policies and Procedures of the United States District Court for the Western District of Tennessee provides that "service by electronic means, even though immediate in nature, is treated the same as service by mail, so three (3) days are added to prescribed period to respond."   As such, service either by electronic means or when this Defendant actually received Plaintiffs' motion was on August 11, 2014.

Plaintiffs primary objections to the listed defense expert witnesses are that they "contradict statements under oath of the Defendant, Clemons, their patron, so as to revive his defense; they express opinions outside their respective areas of expertise and assert legal opinions; they also offer opinions that lack reliability under any stated methodology, lack peer-review support, demonstrate no established rate-of-error, which opinions are also not shown to

be generally accepted in the relevant medical community. Moreover, the opinions are 'for this litigation' only, and are, thus, deficient." (ECF 126; pages 2-3).

For the reasons discussed below, this Defendant respectfully urges the Court to deny Plaintiffs' motion.

## LAW AND ARGUMENT

### A.  Response to Plaintiffs' Daubert Challenges

District courts under *Daubert* and Rule 702 are charged to act as "gatekeepers" to ensure that the expert testimony presented to a jury is not only relevant under Rule 104 of the Federal Rules of Evidence, but also reliable.   In a medical malpractice case, expert testimony is required to establish the recognized standard of acceptable practice, whether the conduct of the defendant(s) has departed from that standard, and whether the deviation from the standard of care caused an injury. Tenn. Code. Ann. § 29-26-115.

Defendants aver that *Daubert* should not apply to expert testimony in a medical malpractice case.  Rather, the *Daubert* test should only be used when deciding the admissibility of novel scientific evidence.  Testimony regarding standard of care is based upon a medical expert's specialized medical knowledge from training and experience, not novel scientific evidence.

In *Dickenson v. Cardiac & Thoracic Surgery of East Tennessee, P.C.*, 388 F. 3d 976 (6th Cir. 2004), the Sixth Circuit analyzed the application of *Daubert* in a medical malpractice case. Similar to the facts of the present case, *Dickenson* involved allegations that the plaintiff was extubated prematurely following heart bypass surgery. The plaintiff sued a cardiac/thoracic surgery group and pulmonologist alleging that as result of the patient's premature extubation,

3

plaintiff suffered brain damage.  The parties consented to trial before a magistrate judge.  After

the magistrate excluded testimony of plaintiff's medical experts pursuant to *Daubert*/FRE 702

and granted summary judgment to defendants, plaintiff appealed.

On Appeal, the Sixth Circuit noted that in excluding the expert, the district court

erroneously relied upon a belief that the "expert must demonstrate familiarity with accepted

medical literature and or published standards in these other areas of specialization in order for his

testimony to be reliable in the sense contemplated by Federal Rule of Evidence 702." *Id. at* 980.

The Court noted that Rule 702 expressly contemplates that experience can serve to qualify an

expert.  *Id.*  The Court went on to state:

> In sum, *Daubert's* role of "ensuring that the courtroom door remains closed to
> junk science," *Amorgianos v. AMTRAK,* 303 F. 2d 256, 267 (2d Cir. 2002), is not
> served by excluding testimony such as [the medical expert] that is supported by
> extensive relevant experience.  **Such exclusion is rarely justified in cases**
> **involving medical experts as opposed to supposed experts in the area of**
> **product liability.**  *See generally* Daniel W. Shuman, *Expertiens in Law,*
> *Medicine, and Health Care,* 26 J. Health Pol. Pol'y & L. 267 (2001)
> (characterizing the effect of *Daubert* and *Kumho Tire* cases on claims of medical
> expertise as "much ado about little," while noting that these cases have had a
> significant effect on toxic tort and product liability litigation).

*Dickenson,* 388 F. 3d at 982. (Emphasis added)

While Defendant deposed all of Plaintiffs' experts and appropriately inquired into the

background of the witnesses and the qualifications to offer the opinions expressed, Plaintiffs'

counsel chose not to take the depositions of any of Defendant's experts. As such, it is premature

for Plaintiffs to claim that Defendant's experts should be excluded under *Daubert* because "[t]he

witness[es] cite[s] no current standard, clinical guideline, text or authoritative source, nor does

[the witness] use reliable methods…"  Because the challenged witnesses were never deposed, the

methodology used in arriving at their opinions has not been fully explored   Moreover, as the

4

Sixth Circuit noted in *Dickenson*, the Court should not exclude a medical expert's testimony in a medical malpractice case that is based upon relevant experience.  *Id.*

In compliance with Rule 26 (a)(2), each Defense expert submitted a report setting forth a brief summary of their opinions and the facts relied upon in forming those opinions. (See Exhibit A – Rule 26(a)(2)(B) Expert Disclosures of Defendant Mark P. Clemons, M.D).  Each expert supplied a CV setting forth their qualifications and provided a general framework of the bases for their opinions.  Again, these experts have not been deposed so they have not been asked about the methodology used to arrive at their opinions; but all will rely upon their vast education, training and experience.  All of Defendant's experts are supremely qualified to testify based upon their specialized medical knowledge acquired through their training and experience.

Unlike Plaintiffs' anesthesia expert, Dr. Kennedy, whose practice is limited to adults (and mainly cardiac patients), Defendant's experts work exclusively with pediatric patients. A review of the curriculum vitae of pediatric otolaryngology experts, Dr. Thompson and Dr. Werkhaven, set forth their extensive qualifications and publications in the field of otolaryngology.  Dr. Thompson is the division head of Pediatric Otolaryngology at St. Jude Children's Research Hospital.  He has been board certified by the American Board of Otolaryngology since 1981. Dr. Thompson is also the Chair of the Department of Otolaryngology-Head and Neck Surgery at the University of Tennessee Health Science Center.

Dr. Werkhaven did a fellowship in Pediatric Otolaryngology (1988-89). He has been board certified with the American Board of Otolaryngology, Pediatric, since 1987.  Dr. Werkhaven has lectured on numerous occasions in pediatric otolaryngology and published extensively in the field as well.

Plaintiffs' *Daubert* motion attempts to challenge the opinions of Dr. Thompson and Dr. Werkhaven by relying on a single text—Pediatric Otolaryngology Principles and Practice Pathways—to establish to establish the recognized standard of care on the topic of the duty of a physician after the tonsillectomy and adenoidectomy surgery. Yet no expert has testified that this publication is a reliable and authoritative source that establishes the recognized standard of acceptable professional practice in this case pursuant to Tennessee Code Annotated § 29-26-115. Plaintiff has the burden of proof in a medical malpractice case to establish the standard of care through an expert, not an article or a practice guideline. Defendant avers that Plaintiff is attempting to improperly use *Daubert* in a medical malpractice case.

Defendant disclosed Diane Dowdy, RN to offer opinions in support of the comparative fault allegations raised by this Defendant against LeBonheur PACU nurse, Kelly Kish. Her CV produced with the disclosure sets forth her experience. (*See* Exhibit A). Plaintiffs' challenge Nurse Dowdy on the grounds that no scientific evidence was used, no testing done, and no known methodology was stated. Plaintiffs contend that the recognized standard of acceptable professional practice is not set forth in a guideline or hospital standard, but rather it is the education, training and experience of a medical expert that makes their testimony reliable in a medical malpractice case. She was not offered to give medical opinions as the Plaintiffs' challenge suggest, but instead, opine on the standard of care for nurses practicing in Memphis, Shelby County, Tennessee. Further, Nurse Dowdy has not been deposed, so the methodology used to arrive at her opinions has not fully been explored.

Finally, Plaintiffs challenge the opinions of economist, Edward Brundick, III. Mr. Brundick's opinions are both reliable and relevant. There can be no doubt but that Mr. Brundick is qualified. He holds not only a MBA, but also a law degree. His opinions are relevant to refute

the opinions of Plaintiffs' economist expert, Jay Marsh, who failed to take into consideration in his calculations the lost future earnings and the possibility, based upon Brett Lovelace's education records, that he likely would not have completed high school. On the other hand, Mr. Brundick's assumptions are reasonable and based upon the facts contained in Brett Lovelace's records. Plaintiffs argue that Mr. Brundick's opinions exceed his stated area of expertise, but again, they failed to depose the expert to explore his qualifications and experience.

> **B.**     **The principles of Judicial Estoppel and Estoppel by Oath do not apply to limit the opinions of Defendant's experts**

Plaintiffs contend that Dr. Clemons should be judicially estopped to assert two positions in his defense of the Plaintiffs' claims:  1) that supplemental oxygen was not required for Brett Lovelace in transit or in the PACU; and 2) that the positioning of Brett Lovelace in the prone or face down position while in the PACU was not a deviation from the standard of care.

In making this argument, Plaintiffs incorrectly rely upon Tennessee's doctrine of judicial estoppel.  Plaintiffs rely upon numerous Tennessee cases including, but not limited to, the case of *Werne v. Sanderson*, 954 SW2d 742 (Tenn. App. 1997) in support of the argument that Defendant should be judicially estopped to present expert proof of the opinions set forth above. However, this Tennessee case law is inapplicable in this Federal Court case. The Sixth Circuit has instead held, even in diversity actions, that federal law rather than state law governs the application of the doctrine of judicial estoppel in federal courts. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n. 4 (6th Cir. 1982). For example, the United States District Court for the Middle District of Tennessee applied federal law in *Hickory Specialties, Inc. v. Forest Flavors Int'; Inc.,* 12 F.Supp 2d. 760, 771 (M.D. Tenn. 1998):

> The doctrine of judicial estoppel raises questions of whether it is best classified as substantive or procedural and, hence, whether a federal court sitting in diversity should apply state or federal law. (internal citations

> omitted). Without addressing the nature of the doctrine - - whether it is a substantive or procedural doctrine - - the Sixth Circuit has determined that the doctrine raises primarily federal interests, and that federal law should therefore control. (internal citation omitted).

*Id.* Federal law controls because the essential function of judicial estoppel is to prevent intentional inconsistency. The object of the rule itself is to protect the judiciary, as an institution, from the perversion of judicial machinery. *Edwards*, at 599 (citing *Allen v. Zurich Ins. Co,*., 667 F.2d at 1167; *Konstantinidis v. Chen*, 626 F.2d at 939).

The United States Court of Appeals for the Sixth Circuit recently applied federal law to a legal malpractice claim in which the doctrine of judicial estoppel was raised. *Watkins v. Bailey*, 2012 U.S. App. LEXIS 10697, (6th Cir. May 25, 2012) (Attached hereto as "Exhibit B").[1]   The *Watkins* Court noted that the rule of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Although the contours of this doctrine are not defined, courts have identified several facts which inform the decision whether to apply the doctrine in a particular case. *Id.* The factors include the following: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has successfully persuaded a court to accept that party's earlier position, such that judicial acceptance in a later proceeding creates the perception that one of the two courts was misled; and (3) whether an unfair advantage or detriment would result. *Id.* (citing *New Hampshire*, at 750-51). Additional considerations may inform the doctrines' application in specific factual contexts. *Id.* In the case at bar, Plaintiff is unable to meet any of these burdens with respect to persuading this court to enforce the federal rule of judicial estoppel.

---

[1] The *Watkins* Court acknowledged that the district court had incorrectly relied on Tennessee's doctrine of judicial estopel, then applied the correct federal doctrine.

No inconsistencies exist at this stage of the litigation. Plaintiffs completely ignore the fact that the testimony of Dr. Clemons was not offered affirmatively taking a position on the standard of care that applies in this case. Rather, Dr. Clemons was being deposed by the Plaintiffs' counsel and was responding to questions asked, not about the standard of care, but what Dr. Clemons remembers having occurred in this case. Plaintiffs argue that because Dr. Clemons testified in his deposition that the proper position for Brett Lovelace to have been would have been a lateral position or on his side, Defendant's experts should not be permitted to express an opinion to the contrary. Defendant would also point out that he did not testify that the recognized standard of acceptable professional practice required Brett Lovelace to be in a lateral position or on his side as Plaintiffs' counsel suggests, but rather he did not order the patient be put in any particular position and the recovery room has their procedures with regards to the position that they put the patient in. *See* Clemons Depo. 44:16-24; 45:1-3. (Attached hereto as Exhibit C). Accordingly, what Plaintiffs point to as being contrary to the expert opinions is actually not.

Application of judicial estoppel is also improper due to no showing of the Plaintiffs that this Court has in any way judicially accepted this alleged "prior position." In fact, if anything, the Defendant has presented to the Court information completely consistent with their alleged "new position" through their expert reports. The integrity of the judicial process should not be viewed as in jeopardy simply because this Defendant made factual statements concerning the care and treatment of Plaintiff when asked in his deposition. Therefore, not only has there been no prior inconsistent position, but there has also been a complete lack of judicial acceptance.

Finally, this Defendant would obtain no unfair advantage were the doctrine deemed not to apply. This Defendant cannot enjoy an unfair advantage because the Defendant never affirmatively discussed the standard of care during the portions of his testimony to which

9

Plaintiffs cite. Furthermore, Plaintiffs intentionally chose not to depose any of the Defendant's experts about these opinions on the standard of care in this case. No additional considerations exist to support the application of the equitable doctrine of judicial estoppel in this case. The rationale underlying the theory of judicial estoppel is the preservation of the sanctity of the oath and the elimination of prejudice in the administration of justice. *Watkins*, at \*16 (quoting *McKay v. Owens*, 130 Idaho 148, 937 (Idaho 1997). This Defendant is not deliberately shifting his position to suit the exigencies of each particular phase of the case that may arise.

While Defendant maintains that the Plaintiffs have incorrectly relied upon Tennessee jurisprudence regarding judicial estoppel and estoppel by oath in a District court case, there has been no sworn statement offered by Defendant, which is inconsistent with the opinions of Defendant's experts. Additionally, no showing has been made of a judicial acceptance of such a position. Defendant enjoys no unfair advantage, and no additional circumstances exist to support the application of judicial estoppel. As such, this Court should deny Plaintiffs' Motion in Limine to preclude the Defendant from presenting proof that the positioning of Brett Lovelace in the prone or face down position while in the PACU was not a deviation from the standard of care.

## CONCLUSION

Based upon the foregoing, Defendant respectfully urges the Court to deny Plaintiffs' Partial Motion in Limine.

Respectfully submitted,

LEWIS THOMASON, PC


s/  *Marcy D. Magee*
J. KIMBROUGH JOHNSON (7953)
MARCY D. MAGEE (19360)
MARGARET F. COOPER (26250)
Attorneys for Defendant, Mark Clemons, M.D.
40 South Main Street, 29th Floor
Memphis, TN  38103
(901) 525-8721


## CERTIFICATE OF SERVICE


The undersigned hereby certifies that a copy of the foregoing has been properly served upon all counsel of record identified below via Notice through the Court's ECF filing system


Mr. Mark Ledbetter                    Mr. Jerry O. Potter
Halliburton & Ledbetter              W. Bradley Gilmer
254 Court Avenue, Suite 305       Karen S. Koplon
Memphis, TN 38103                   The Hardison Law Firm
                                              119 S. Main Street, Suite 800
                                              Memphis, TN  38103


This 25th day of August 2014.



s/*Marcy D. Magee*