# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESESEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

     Plaintiffs,

Vs.                                No. 2:13-cv-02289 dkv
                                     JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

     Defendants.

## RESPONSE OF DEFENDANT, MARK P. CLEMONS, M.D. TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF

Comes now the Defendant, Mark P. Clemons, M.D. ("Dr. Clemons"), by and through counsel of record, and responds in opposition to Plaintiffs' Motion for Partial Summary Judgment and Brief, and would state until the Court as follows:

Genuine issues of material fact remain to be litigated in this matter under Fed. R. Civ. Pro. 56 regarding Dr. Clemons pursuant to T.C.A. § 29-26-115 and therefore, Dr. Mark Clemons respectfully requests that Plaintiffs' Motion for Partial Summary Judgment be denied.

### HISTORY

This is a healthcare liability action in which Plaintiffs, Daniel and Helen Lovelace, assert a claim for medical malpractice against Dr. Mark Clemons (an otolaryngologist), Pediatric Anesthesiologists, P.A. and Dr. Babu Rao Paidipalli (a pediatric anesthesiologist) with regard to the care provided to Plaintiffs' son, Brett Lovelace, at Methodist Le Bonheur Children's Medical

Center, following a tonsillectomy/adenoidectomy surgical procedure on March 12, 2012 and allegedly resulted in Brett Lovelace's death on March 14, 2012. (ECF 1). Dr. Clemons denies any medical negligence on his part and denies that he caused any injury to or the subsequent death of the patient, Brett Lovelace. (ECF 11). Plaintiffs reached a confidential settlement with Methodist Le Bonheur pre-suit based upon the egregious care rendered by the recovery room nurse, Kelly Kish, R.N., which included fraudulent documentation of the child's vital signs and playing on Facebook and other social media websites while she was supposed to be monitoring the child one-on-one. The nurse's license was later voluntarily revoked as a result of her actions.

On July 3, 2013, Plaintiffs propounded discovery to all Defendants, including Requests for Admissions, which were extensive and voluminous in nature. (ECF 22). Likewise, all Defendants propounded discovery to Plaintiffs. Thereafter, correspondence was exchanged between both parties requesting extensions to discovery, and, in an effort to be cooperative, all parties agreed thereto. Because extensions had been reached by agreement, there were no motions to compel responses filed, nor any motions to deem requests admitted before responses were filed to the discovery. (ECF 40, 41, 47, 69, 86). During this time, all parties were also working together to schedule various depositions within the deadlines set forth in the Scheduling Order.

On May 9, 2014, Dr. Clemons filed Rule 26(a)(2)(b) Expert Disclosures which clearly demonstrate a genuine dispute as to material facts exists in the matter herein. (ECF 102, 104, 105, 106; also see collective **Exhibit A**). Additionally, the parties' depositions which have been taken in this matter, as well as the pleadings and medical records, exhibit factual discrepancies which must be decided by a jury.

## LAW AND ARGUMENT

Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, allows parties to move for summary judgment on claims or defenses of an opposing party. Fed. R. Civ. P. 56(a). Courts may grant summary judgment under limited circumstances "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The Supreme Court of the United States has recognized that Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In the aforementioned situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

In motions for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)) (alteration in original) (quotation marks omitted). The Supreme Court has stated that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Under the stringent burden imposed on the moving party in a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Courts may deny a

motion for summary judgment when "there is reason to believe that the better course would be to proceed to a full trial." *Id.*  The Court's role under F.R.C.P. 26 is limited to assessing the threshold issue of whether a genuine dispute exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In the matter at hand, there is an abundance of evidence which demonstrates a factual dispute exists, including the following:  the expert disclosures of Dr. Clemons (**Exhibit A**; ECF 102, 104, 105, 106), the depositions of all parties, including Dr. Clemons' (pertinent portions attached hereto as **Exhibit B**), the pertinent pleadings and the medical records of Brett Lovelace. (ECF 11, 69, 102, 104, 105, 106). Plaintiffs have identified only one (1) standard of care expert, Dr. Jason Kennedy, a non-pediatric anesthesiologist, in Nashville.  Dr. Kennedy admittedly does not profess expertise in otolaryngology (Dr. Clemons' specialty) and his criticisms primarily focus on co-Defendants.  In Dr. Kennedy's discovery deposition taken June 25, 2014, he is asked the following:

> Q.  "You're not qualified to give standard of care opinions as to the
>
> practice of otolaryngology?
>
> A.  I'm not an ENT surgeon, no, sir. (Pertinent portions of deposition
>
> of Dr. Kennedy attached hereto as **Exhibit C,** p. 53, 176-177).

Dr. Kennedy's sole criticism of Dr. Clemons is related to the patient's positioning in the recovery room after the patient had already been transferred to the care of the recovery room personnel. (ECF 98, 102, 104, 105, 106; see also **Exhibit C**).   Dr. Kennedy, acknowledged that Dr. Clemons was not responsible for extubating the patient, nor was he responsible for monitoring the patient once he was transferred to recovery.  There are no criticisms of Dr.

Clemons' actual surgical procedure. (ECF 98; see also **Exhibit C**, p. 53). Dr. Kennedy's limited

opinion of Dr. Clemons is as follows:

> "The surgeon, he also has a shared responsibility…, especially if
>
> he walked by and saw the patient in a position that's not conducive
>
> to appropriate airway support…to rectify the situation or make
>
> another physician, specifically the anesthesiologist, aware." (**Exhibit C**, p. 66)

There is a genuine issue which exists as to whether the patient was face down with his

head in the pillow as claimed by the Plaintiffs or whether his head was to the side as alleged by

the Defendants and supported by the testimony of the non-party recovery room nurse, Kelly

Kish, R.N.  (Pertinent portions of the deposition of Kelly Kish, R.N. attached hereto as **Exhibit**

**D,** p. 76, 119, 159-160).  Co-Defendant, Dr. Paidipalli, testified that it would be appropriate to

leave the patient in the prone position as long as the patient was breathing well and the vitals

looked good. (See **Exhibit E,** p. 20-23 attached).  Further, a possible dispute exists as to who

was responsible for the patient, including the patient's positioning, while in recovery.  (ECF 56,

98, 102, 104, 105, 106;  See also **Exhibits B, C, D.**)  Although Dr. Kennedy attempts to testify

that Dr. Clemons had some type of "shared" responsibility for the patient's breathing difficulties

which developed 90 minutes after the patient was transferred to the recovery room, if Dr.

Clemons saw the patient in a prone position, Dr. Kennedy ultimately testifies as follows:

> Q.  "and a PACU nurse is charged with the responsibility of monitoring
>
>     a patient's airway?
>
> A.  Agree." (See **Exhibit C**)
>
>               . . .
>
> Q.  "But I'm talking about the airway.  Isn't she charged with monitoring

the airway?

A.  Yes, sir." (See **Exhibit C**)

As aforementioned, all parties propounded discovery herein.  Both Plaintiffs' counsel and defense counsel requested additional time to file responses to the various discovery.  More specifically, defense counsel sent email correspondence requesting additional time to file responses on behalf of Dr. Clemons and specifically asked that Plaintiffs object to same if there was any issue with the extension requested since defense counsel was going to be in back-to-back jury trials, and there were no objections made by Plaintiffs' counsel to the requested extension. No motions were filed related to outstanding discovery, including the Requests for Admissions.  The responses to Requests for Admissions were filed by Dr. Clemons on December 20, 2013, without objection by Plaintiffs.  (ECF 69).   Therein, Dr. Clemons clearly states that he transferred Brett Lovelace from the operating room to the recovery room in stable condition and that once the transfer occurred, Le Bonheur recovery room personnel assumed responsibility for his care.  At the time that Brett Lovelace began developing breathing difficulties, Dr. Clemons had left the hospital.  He was not contacted about any problems or breathing abnormalities until after the code had been called for the patient more than an hour and one-half after his transfer to the recovery room occurred.  (ECF 69, 102, 104, 105, 106; **Exhibits B, C, D).**

Federal Rule of Civil Procedure 29 provides that the parties may stipulate to an extension of time for responses to discovery assuming it will not interfere with a Scheduling Order or trial. Herein, neither the Scheduling Order, nor trial date of January 20, 2015, was affected by the timing of the discovery responses.   All discovery was filed well in advance of the parties' depositions. Both Plaintiffs and Defendant requested additional time to respond to discovery due to time constraints related to other matters and both parties agreed to same.  Responses to the

Requests for Admissions were filed by Dr. Clemons without objection. (ECF 69).   These responses, coupled with other discovery responses of Dr. Clemons, depositions taken herein, including but not limited to the deposition of Dr. Clemons and the deposition of the LeBonheur recovery room nurse, Kelly Kish, R.N., along with the expert disclosures of Dr. Clemons, clearly demonstrate a genuine factual dispute exists herein, as to positioning of the patient and who, if anyone, was responsible for repositioning the patient.

## CONCLUSION

Because all evidence will be construed in favor of the non-moving party, herein Dr. Clemons, and all reasonable inferences must be drawn in the non-moving party's favor, Dr. Clemons respectfully requests that Plaintiffs' Motion for Partial Summary Judgment be denied and the parties proceed toward trial as genuine factual disputes exist for a jury to decide.

Respectfully submitted,

**LEWIS THOMASON, P.C.**

s/_____
J. KIMBROUGH JOHNSON (7953)
MARCY D. MAGEE (19360)
MARGARET F. COOPER (26250)
Attorneys for Defendant, Mark Clemons, M.D.
40 South Main Street, 29th Floor
Memphis, TN  38103
(901) 525-8721

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned hereby certifies that a copy of the foregoing has been properly served upon all counsel of record identified below via Notice through the Court's ECF filing system

| | |
|---|---|
| Mr. Mark Ledbetter | Mr. Jerry O. Potter |
| Halliburton & Ledbetter | W. Bradley Gilmer |
| 254 Court Avenue, Suite 305 | Karen S. Koplon |
| Memphis, TN 38103 | The Hardison Law Firm |
| | 119 S. Main Street, Suite 800 |
| | Memphis, TN  38103 |

This _____ day of September 2014.


                                      s/ _____

5644070