# EXHIBIT G

**JAY WERKHAVEN, M.D.**
**Vanderbilt University Medical Center**
**2200 Children's Way**
**Doctors Office Tower, 7ᵗʰ Floor**
**Nashville, Tennessee 37232**

J-54170

**May 9, 2014**

**EXPERT WITNESS REPORT**

**LOVELACE v. PEDIATRIC ANESTHESIOLOGISTS, P.A.;**
**BABU RAO PAIDIPALLI; and MARK P. CLEMONS**

I, Jay Werkhaven, M.D. have been retained to evaluate the medical treatment rendered by Mark Clemons, M.D. to Brett Lovelace on March 12, 2012, at LeBonheur Hospital. In 2012, I was licensed in Tennessee and a practicing otolaryngologist in Nashville, Tennessee, and was so licensed and practicing at least one year prior thereto. I am familiar with the recognized standard of acceptable professional practice for otolaryngologists in March, 2012, in Memphis, Tennessee. My qualifications are set forth in my *curriculum vitae.*

In forming my opinions, I reviewed the following:

1.      LeBonheur medical records of Brett Lovelace.

2.      Medical records of Dr. Clemons.

3.,     Deposition of Dr. Mark Clemons.

The **facts** I considered in forming opinions are as follows:

The patient, Brett Lovelace, age twelve (12) was obese and had a past history of asthma. He was admitted to LeBonheur on March 12, 2012, for a tonsillectomy and adenoidectomy which was performed by Dr. Mark Clemons. Pre-operatively, the patient was worked up and evaluated by the anesthesia personnel including Dr. Paidipalli. There were no problems intra-operatively, and Dr. Clemons completed the surgical aspects of the case.

When the case was over, the patient was extubated by anesthesia, which was responsible for monitoring respiratory status. The patient was placed on supplemental oxygen and taken from the operating room to recovery (PACU), where the patient was assigned to the recovery room nurse.

In the recovery room, Nurse Kish was assigned to this patient and remained at his bedside throughout. One of the responsibilities of the recovery room nurse is to evaluate the patient's respiratory status and maintain an airway. In addition to the nurse being present, the patient was hooked up to a pulse oximeter.

The patient remained in the recovery room for approximately ninety (90) minutes with no report or indication of respiratory problems, but after approximately ninety (90) minutes, it became apparent that the patient was in respiratory distress. No one called Dr. Clemons until after the code.

It is my opinion that Dr. Clemons complied with the recognized standard of acceptable professional practice for otolaryngologists in Memphis, Tennessee and similar communities with regard to the medical treatment he rendered to Brett Lovelace on March 13, 2012 in the following particulars:

1.     Dr. Clemons performed the surgical procedures of tonsillectomy and adenoidectomy in accordance with the standard of care, and there were no intra-operative problems or complications.

2.     Dr. Clemons appropriately relied upon the anesthesia personnel to evaluate the patient pre-operatively to administer anesthesia, to extubate the patient, and to monitor and assess the patient in recovery. A surgeon such as Dr. Clemons is not expected to perform the functions of an anesthesiologist.

3.      The patient was taken from the operating room to recovery (PACU), where the patient was assigned one-on-one with a recovery-room nurse, who remained at the patient's bedside throughout. This was a hospital function, and the surgeon, such as Dr. Clemons, was not required or expected to position the patient or monitor the patient while the patient was in the recovery room (PACU).

4.      The recovery room personnel were responsible for monitoring the patient which includes insuring that the airway is maintained and the patient is oxygenated. The patient was hooked up to a pulse oximeter, all of which are not functions to be performed by the surgeon such as Dr. Clemons.

5.      Dr. Clemons performed the surgery appropriately, and the standard of care did not require Dr. Clemons to monitor this patient in the recovery room (PACU), and Dr. Clemons was never contacted by anyone from the recovery room about this patient during the ninety (90) minutes between arrival in PACU and the respiratory code.

6.      Monitoring anesthesia and its after effects are not the surgeon's function or responsibility. Further, monitoring and insuring a functioning airway is the responsibility of the PACU personnel, not the surgeon.

7.      No medical treatment on the part of Dr. Clemons caused the patient, Brett Lovelace, to sustain injuries and damages which would not otherwise have occurred.

The opinions stated above regarding Dr. Clemons' compliance with the recognized standard of acceptable professional practice for otolaryngologists practicing in Memphis, Tennessee and similar communities in March, 2012, are based upon my education, training and experience based upon the medical records and testimony of Dr. Clemons.

I intend to provide expert testimony in connection with the treatment rendered by Dr. Clemons, but not as to any other healthcare provider.

Within the past four (4) years, I have not testified at trial, but have testified by deposition in one case styled _Evans_ vs. _Williams_, in the _Circuit_ Court of _Gibson County_.

My publications for the past ten (10) years are contained in my CV attached.

I follow the fee schedule imposed by Vanderbilt University Medical School for expert review and testimony. The hourly charge is basically $600.00 for review of cases and $7,500.00 per day for out-of-town court testimony.

JAY WERKHAVEN, M.D.

4841-6482-4152 v. 1

**JEROME WALTER THOMPSON, M.D., MBA**
**UT LeBonheur Pediatric Specialists**
**7945 Wolf River Blvd., Suite 220**
**Germantown, TN 38138**

**May 6, 2014**

**EXPERT WITNESS REPORT**

**LOVELACE v. PEDIATRIC ANESTHESIOLOGISTS, P.A.;**
**BABU RAO PAIDIPALLI; and MARK P. CLEMONS**

I, Jerome Thompson, M.D., have been retained to evaluate the medical treatment rendered by Mark Clemons, M.D. to Brett Lovelace on March 12, 2012, at LeBonheur Hospital. In 2012, I was licensed in Tennessee and practicing my speciality of Otolaryngology in Memphis, Shelby County, Tennessee, and was so licensed and practicing at least one year prior thereto. I am familiar with the recognized standard of acceptable professional practice as it existed in March, 2012, in Memphis, Tennessee.

I graduated from the University of California Medical School in 1976. I did an Internship at the University of California School of Medicine within the Department of Surgery from 1976 to 1977. Thereafter, I did my residency in Otolaryngology/Head and Neck Surgery at University of California School of Medicine. After completing my residency, I did an additional two years of pediatric ENT training at L.A. Children's Hospital. I have been board certified by the American Board of Otolaryngology since 1981. I am currently the Chair of the Department of Otolaryngology-Head and Neck Surgery at the University of Tennessee Health Science Center. I am also the division head of Pediatric Otolaryngology at St. Jude Children's Research Hospital. My additional qualifications are set forth in my *curriculum vitae* attached as Exhibit 1 to this report.

In forming my opinions, I reviewed the following:

1.      LeBonheur medical records of Brett Lovelace.

2.      Deposition of Dr. Mark Clemons.

3.      Dr. Mark Clemons' medical records.

4.      Complaint and Answer of Dr. Mark Clemons.

The facts I considered in forming opinions are as follows:

Brett Lovelace was admitted to LeBonheur on March 12, 2012, for a tonsillectomy and adenoidectomy, which was performed by Dr. Mark Clemons. Pre-operatively, appropriate risks were discussed. The patient was evaluated by the anesthesia personnel, including Dr. Paidipalli. The surgery was conducted as planned, and there were no complications intra-operatively.

When the surgery was finished, the patient was extubated by anesthesia, which was responsible for monitoring respiratory status. The patient was placed on supplemental oxygen and transported by anesthesia from the operating room to recovery (PACU), where the patient was assigned to the recovery room nurse, Kelly Kish, R.N. The patient was stable upon arrival to the PACU.

Nurse Kish assumed care of this patient upon arrival to the PACU and remained at his bedside while in recovery. One of the responsibilities of the recovery room nurse is to evaluate the patient's respiratory status and maintain the airway. The patient also had a pulse oximeter placed and vitals were to be taken and recorded by the PACU nurse every fifteen (15) minutes.

The patient remained in the recovery room for approximately ninety (90) minutes with no report of respiratory problems. After approximately ninety (90) minutes, it became apparent that the patient was in respiratory distress. No one called Dr. Clemons until after the code was initiated.

It is my opinion that Dr. Clemons complied with the recognized standard of acceptable professional practice for otolaryngologists in Memphis, Tennessee and similar communities with regard to the medical treatment he rendered to Brett Lovelace on March 12, 2012.   More specifically, Dr. Clemons complied with the standard of care based upon the following opinions:

1.      Dr. Clemons performed the tonsillectomy and adenoidectomy in accordance with the standard of care.   There were no intra-operative complications.

2.      Dr. Clemons appropriately relied upon the anesthesia personnel to evaluate the patient pre-operatively, to administer anesthesia, to extubate the patient, and to monitor the patient in recovery.  A surgeon such as Dr. Clemons is not expected to perform the functions of an anesthesiologist.

3.      The patient was taken from the operating room to recovery (PACU), where the patient was assigned 1:1 with a recovery room nurse.  The recovery room nurse, Kelly Kish, assumed care for the patient and remained at his bedside while in recovery.  This was a hospital function, and the surgeon, Dr. Clemons, was not required or expected to reposition the patient or monitor the patient while the patient was in the recovery room.

4.      The recovery room personnel were responsible for monitoring the patient, which included maintaining the airway.  The patient was hooked up to a pulse oximeter and vitals were being taken by the recovery room nurse.  All of these actions were the responsibility of the recovery room nurse, not Dr. Clemons.

5.      Dr. Clemons performed the surgery entirely appropriately. The standard of care did not require Dr. Clemons to monitor this patient in the recovery room (PACU).  Dr. Clemons was never contacted by anyone from the recovery room about this patient during the ninety (90) minutes between arrival in PACU and when the code was initiated.

Case 2:13-cv-02289-SHL-dkv   Document 139-7   Filed 09/15/14   Page 9 of 10   PageID 2546

6.      Monitoring anesthesia and its after effects are not the surgeon's function or responsibility.  Further, monitoring and ensuring an adequate airway is the responsibility of the PACU personnel, not the surgeon.

7.      Once Dr. Clemons completed the surgery in the operating room, he appropriately transferred the care of the patient to anesthesia.  Once anesthesia transported the patient to PACU, the recovery room nurse assumed responsibility for Brett Lovelace.

8.      No medical treatment on the part of Dr. Clemons caused the patient, Brett Lovelace, to sustain injuries and damages which would not otherwise have occurred.

The opinions stated above regarding Dr. Clemons' compliance with the recognized standard of acceptable professional practice for otolaryngologists practicing in Memphis, Tennessee and similar communities in March, 2012, are based upon my education, training and experience, and based upon the medical records, testimony of Dr. Clemons, and other afore-referenced documents.

I intend to provide expert testimony in connection with the treatment rendered by Dr. Clemons, but not as to any other healthcare provider.

The Publications I have authored within the past ten (10) years are set forth in my *curriculum vitae* attached as Exhibit 1.

Within the past four (4) years, I have not testified by deposition or at trial as an expert witness.

4

I follow the fee schedule imposed by Vanderbilt University Medical School for expert review and testimony.   The hourly charge is $ ___375.00___ for review of cases and $_500.00___ testifying.

_____
JEROME THOMPSON, M.D.

4844-5279-2090, v. 1