# EXHIBIT B

RECEIVED

2013 FEB 22 PM 3:21

SECRETARY OF STATE

**BEFORE THE TENNESSEE BOARD OF NURSING**

In The Matter of:                                    )
                                                     )
KELLY KISH                                           )
R.N. License Number 99584                            )
                                                     )   Docket Number 17.19-118516A
Respondent                                           )
                                                     )
                                                     )

**AGREED ORDER**

The State of Tennessee, by and through the Office of General Counsel and the Respondent, Kelly Kish, R.N., (Respondent), by and through her attorney, hereby stipulate and agree, subject to approval by the Tennessee Board of Nursing (Board), to the following:

**I.   Authority and Jurisdiction**

The Board regulates and supervises nurses licensed to practice pursuant to Tennessee Code Annotated Section (TENN. CODE ANN. §) 63-7-101, et seq. (Code), including the discipline of licensees, as well as those who are required to be licensed, who violate the Code and the Rules promulgated by the Board, Official Compilation of Rules and Regulations of the State of Tennessee (TENN. COMP. R. & REGS.), 1000-01-.01, et seq. (Rules). The Board enforces the Code and Rules to promote and protect the health, safety and welfare of the public; accordingly, it is the policy of the Board to require strict compliance with the law and to apply the law to preserve the quality of nursing care provided in Tennessee.

**II.   Stipulations of Fact**

1.   Respondent has been at all times pertinent hereto licensed by the Board as a registered nurse in the State of Tennessee, having been granted license number 99584 on June 14, 1994, which currently has an expiration date of April 30, 2014. Respondent's registered nurse license bears a multistate privilege to practice nursing in states which have entered into the Interstate Nurse Licensure Compact.



Δ π EXHIBIT 4

Deponent_____

Date_____Rptr.____
WWW.DEPOBOOK.COM

2.  Respondent was employed as a registered nurse by LeBonheur Children's Hospital in Memphis, Tennessee from about February 11, 2008 through about March 23, 2012.

3.  On or about March 12, 2012, Respondent was assigned to care for a 12-year-old male patient ("the patient") who was in the post anesthesia care unit (PACU) following a tonsillectomy/adenoidectomy. The patient was the only patient assigned to Respondent during the approximately 90 minutes the patient was in the PACU.

4.  The patient was stable upon transfer from the operating room to the PACU.

5.  The patient's mother and father were present in the PACU with the patient.

6.  Upon arrival to the PACU, the patient positioned himself prone, with his legs drawn up under him, buttocks in the air, arms crossed over his head, and his face down on the mattress. At no time did Respondent attempt to change the patient's position.

7.  Upon the patient's arrival into the PACU, Respondent made an initial assessment but chose not to place the patient on a cardiac monitor, as permitted by hospital policy.

8.  Respondent placed a pulse oximeter on the patient, but the oximeter worked only intermittently, and Respondent did not notify anyone of the problem and did not replace the device.

9.  At no time did Respondent attempt to speak with or rouse the patient, despite charting a rating of 9 out of 10 on the Aldrete scale. Such a score would indicate, among other things, full breathing, high oxygen saturation, full consciousness, good circulation, and lively activity and motor control. Respondent admitted that she never roused or checked on the patient to make these ratings, but instead charted based on her observation of the patient's status when he initially entered the PACU. Among other things, Respondent charted the patient's level of consciousness as "arousable on calling" from the time he entered the PACU up until the "Harvey" code, indicating an unresponsive patient, was called, as

2

detailed below.

10. Throughout her time caring for the patient, Respondent documented oxygen saturations that were not reflected on the print-out. Respondent documented, for example, 100% oxygen saturation when the monitor read only "artifact" or levels below 25%.

11. Respondent documented a series of assessments approximately every 15 minutes that the patient was in the PACU during the patient's first hour, then every 30 minutes thereafter, as dictated by hospital policy. In her assessments Respondent documented, in addition to the Aldrete scores noted above, breath sounds and readings from an automated blood pressure cuff.

12. At one point, the patient was heard making snoring and/or gasping noises, which the patient's parents brought to Respondent's attention. Respondent discussed the sounds with the parents, and Respondent states she also discussed the sounds with a physician. Respondent did not take any further action in response to these noises.

13. Approximately 30 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 118 over 56. Approximately 45 minutes after the patient was admitted to the PACU, Respondent documented the patient's blood pressure as 106 over 53. Approximately 60 minutes after the patient was admitted to the PACU, Respondent charted that the patient's blood pressure was 84 over 42. Respondent did not take any action in response to these changes in the patient's blood pressure.

14. Approximately 90 minutes after the patient was admitted to the PACU, Respondent left to obtain fluids for the patient. Upon her return, the patient's father asked Respondent for help turning the patient, as the patient's leg appeared blue. When the patient was turned supine, he was noted to be deeply cyanotic, apneic, and pulseless. CPR was initiated, and a "Harvey" code, indicating a nonresponsive patient, was called.

15. While the patient was eventually resuscitated, he suffered severe anoxic brain injury and died approximately 48 hours later.

16. During the patient's time in the PACU, Respondent accessed Facebook and at least one other social media website using a hospital computer.

17. On or about March 23, 2012, Respondent resigned in lieu of termination.

### III.   Stipulated Grounds for Discipline

18. The Stipulations of Fact are sufficient to establish that Respondent has violated the following statutes or rules, for which disciplinary action by the Board is authorized, TENN. CODE ANN. § 63-7-101, *et seq.* and TENN. COMP. R. & REGS., 1000-01-.01, *et seq.*

19. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of TENN. CODE ANN. § 63-7-115 (a)(1): The board has the power to deny, revoke or suspend any certificate or license to practice nursing or to otherwise discipline a licensee upon proof that the person:

    (C)   Is unfit or incompetent by reason of negligence, habits or other cause;

    (F)   Is guilty of unprofessional conduct.

20. The facts stipulated in paragraphs six (6) through thirteen (13), and paragraph sixteen (16) constitute a violation of Rule 100-01.-.13(1) TENN. COMP.R.REGS., RULE 1000-01.-.13(1):

    (a)   Intentionally or negligently causing physical or emotional injury to a patient;

    (c)   Abandoning or neglecting a patient requiring nursing care.

21. The facts stipulated in paragraphs eight (8) through eleven (11) constitute a violation of Rule 100-01.-.13(1) TENN. COMP.R.REGS., RULE 1000-01.-.13(1) (a):

    (b)   Failure to maintain a record for each patient which accurately reflects the nursing problems and interventions for the patient and/or failure to maintain a record for each patient which accurately reflects the name and title of the nurse providing care;

4

(w)   Engaging in acts of dishonesty which relate to the practice of nursing.

**IV.   Stipulated Disposition**

For the purpose of avoiding further administrative action with respect to this cause, Respondent agrees to the following:

22. It is hereby ordered that Respondent's Tennessee nursing license number 99584 is REVOKED and her multistate privilege to practice in any other party state is VOID.

23. Respondent must pay the actual and reasonable costs of prosecuting this case, pursuant to TENN. CODE ANN. §§ 63-7-115(d) and 63-1-144 and Rule 1000-01-.04(11) of the TENN. COMP. R. & REGS., to the extent allowed by law. These costs will be established by an Assessment of Costs prepared by counsel for the Department. The Assessment of Costs shall not exceed one thousand dollars ($1,000.00) and shall be paid in full within twelve months from the issuance of the Assessment of Costs.

24. Each condition of discipline herein is a separate and distinct condition. If any condition of this Order, or any application thereof, is declared unenforceable in whole, in part, or to any extent, the remainder of this Order, and all other applications thereof, shall not be affected. Each condition of this Order shall separately be valid and enforceable to the fullest extent permitted by law.

**V.   Representations of Respondent**

25. Respondent understands and admits the allegations, charges, and stipulations in this Order.

26. Respondent understands the rights found in the Code, the Rules, and the Uniform Administrative Procedures Act, TENN. CODE ANN. §§ 4-5-101 through 4-5-404, including the right to a hearing, the right to appear personally and by legal counsel, the right to confront and cross-examine witnesses who would testify against Respondent, the right to testify and present evidence on Respondent's own behalf, including the issuance of

subpoenas to compel the attendance of witnesses and the production of documents, and the right to appeal for judicial review. Respondent voluntarily waives these rights in order to avoid further administrative action.

27. Respondent agrees that presentation of this Order to the Board and the Board's consideration of it and all matters divulged during that process shall not constitute unfair disclosure such that the Board or any of its members become prejudiced requiring their disqualification from hearing this matter should this Order not be ratified. All matters, admissions, and statements disclosed during the attempted ratification process shall not be used against the Respondent in any subsequent proceeding unless independently entered into evidence or introduced as admissions.

28. Respondent also agrees that the Board may issue this Order without further process. If the Board rejects this Order for any reason, it will be of no force or effect for either party.

### VI.   Notice

29. This revocation is formal disciplinary action and will be reported to the Health Integrity and Protection Data Bank (HIPD).

30. Costs shall be paid by submitting a certified check, cashier's check, or money order payable to the State of Tennessee. Costs payments must include the Respondent's name and this case number, 201200757, on the instrument of payment and shall be mailed or delivered, to:

Office of Investigations
Attn: Disciplinary Coordinator
Tennessee Department of Health
227 French Landing, Suite 201
Nashville, Tennessee 37243

6

**APPROVED FOR ENTRY:**

_Kelly Kish_          2/19/13
Kelly Kish                 DATE
R.N. License Number 99584
Respondent

_Donna L. Boyce_       2/19/13
Donna L. Boyce           DATE
Adams and Reese LLP
Brinkley Plaza
80 Monroe Ave, Suite 700
Memphis, Tennessee 38103
(901) 525-3234
Attorney for Respondent

_Marc Guilford_         2/20/13
Marc R. Guilford (BPR # 025419)     DATE
Assistant General Counsel
Tennessee Department of Health
Office of General Counsel
220 Athens Way, Suite 210
Nashville, Tennessee 37243
(615) 741-1611

### Approval by the Board

Upon the agreement of the parties and the record as a whole, this CONSENT ORDER was approved as a FINAL ORDER by a majority of a quorum of the Tennessee Board of Nursing at a public meeting of the Board and signed this 20ᵗʰ day of February , 2013.

ACCORDINGLY, IT IS ORDERED that the agreements of the parties will, and hereby do, become the Final Order of the Board.

_____
Chairperson/Acting Chairperson
Tennessee Board of Nursing

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon the Respondent, Kelly Kish through her counsel, Donna L. Boyce, Adams and Reese, 80 Monroe Ave, Suite 700, Memphis, Tennessee 38103, by delivering same in the United States regular mail and United States certified mail, number 7012 1640 0002 3921 5159 return receipt requested, with sufficient postage thereon to reach its destination.

This 22nd day of February, 2013.

Marc R. Guilford
Assistant General Counsel

8

**CERTIFICATE OF FILING**

This Order was received for filing in the Office of the Tennessee Secretary of State, Administrative Procedures Division, and became effective on the 22ND day of _February_ , 20_13_.

_Thomas A Stovall JR_

Thomas G. Stovall
Director, Administrative Procedures Division