# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESESEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

Vs.                                                                No. 2:13-cv-02289 SHL-dkv
                                                                   JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

      Defendants.

## DEFENDANTS', PEDIATRIC ANESTHESIOLOGISTS, P.A., AND BABU RAO PAIDIPALLI, MD'S, OBJECTIONS TO PLAINTIFFS' PRETRIAL DISCLOSURES

Come now the Defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D., by and through counsel of record and submit objections to Plaintiffs' Pretrial Disclosures pursuant to Fed. R. Civ. P. 26 (a) (3) (B). Fed R. Civ. P. 26(a) (3) (B) allows for parties to serve and promptly file a list of the following objections to an opposing party's pretrial disclosures: (1) any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26 (a) (3) (A) (ii); and (2) any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26 (a) (3) (A) (iii)[1].

---

[1] An objection not so made – except for one under Federal Rule of Evidence 402 or 403 – is waived unless excused by the court for good cause.

**I.   These Defendants Object to the Admissibility of the following materials identified by Plaintiffs under Rule 26 (a) (3) (A) (iii)**

**1.   Photographs taken by Helen Lovelace in the PACU**

Plaintiffs identify multiple, often duplicative photographs of Brett Lovelace taken by Helen Lovelace during Brett's time Methodist LeBonheur Hospital. Defendants object to the use of these photographs at trial for a number of reasons, including that the photographs do not establish a specific time period of when the photos occurred, some are duplicative, and many are out of focus and blurred. Furthermore, they are inadmissible pursuant to Fed. R. Evid. 402 and 403.

Photographs are admissible as long as what they purport to depict is relevant to the issues *and substantial identity to relevant times and conditions is established.* Shahid v. Detroit, 889 F.2d 1543, 1546 (6th Cir. 1989) (citing United States v. Daniels, 377 F.2d 255, 258 (6th Cir. 1967). The judicial test is whether the proffered photograph is an accurate representation of the scene depicted. Id. (*citing* United States v. Hobbs, 403 F.2d 977, 978 (6th Cir. 1968).

The photographs of the deceased identified by Plaintiffs do not have time stamps. Defendants have no way of knowing at what time these photographs were taken in the PACU at Methodist LeBonheur. The timeline of events in the PACU is a critical component of this case. Without establishing substantial identity to relevant time period these photographs were taken, these Plaintiffs cannot lay the proper foundation to submit them into evidence. The photographs have been proffered to depict Brett Lovelace's positioning upon his parents' arrival into the PACU. That is unclear from the photos. Photographs have been suggested to depict the child's airway obstructed; however, the positioning is not even evident from the photos. Most of the photos in the PACU are just blurred, out of focus images. Defendants have on multiple occasions requested the original photo files to determine if they can be adjusted to be clearer or if the

2

images have been altered; yet, Plaintiff has refused to provide the same.  Furthermore, the photos do not present his positioning throughout the entire time in the PACU or during his transport from the operating room to the PACU; both critical issues in the case.  Contrary to testimonial evidence, Plaintiff alleges that the child arrived in the PACU positioned improperly and then stayed that way for 90 minutes. That is why, not only the time of the photos is critical, but the clarity of the images.

Even if the Plaintiff could lay the proper foundation for the photographs, the Court should exclude the photographs because they are misleading, will confuse the jury, are cumulative and their probative value is substantially outweighed by the danger of unfair prejudice.  The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: (1) unfair prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Any probative value in these photographs is substantially outweighed by the needless presentation of cumulative evidence. These photographs are entirely cumulative because they do not add anything of significance to the evidence and theories presented at trial. Expected testimony from the Plaintiffs at trial will establish their version of Brett's positioning throughout his stay in the PACU. The need for numerous unclear, untimed photographs to be placed into evidence to support this testimony is the very definition of cumulative evidence. The photographs also unfairly prejudice these Defendants because they suggest that Brett Lovelace remained in this position, without the ability to breathe, throughout his entire stay in the PACU. Such a depiction would be an incorrect presentation of the facts. Testimony will establish that the child's airway was not obstructed upon presentation in the PACU nor was it obstructed during

3

the entirety of the time in the recovery room. The use of these blurry, untimed photos will mislead the jury and confuse the issues. The Defendants therefore object to the use of these photographs of Brett in the PACU on the bases of F.R.E. 402 and 403.

### 2.   Photographs taken by Helen Lovelace of her son on other occasions

Defendants object to the photographs taken by Helen Lovelace of her son "on other occasions." Specifically, Defendants object to these photographs because they have not had the opportunity to view or inspect the photographs despite multiple requests made to Plaintiffs' counsel.  Federal Rule of Civil Procedure 26 (a) (3) (B) states that any objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of these photographs because they have not been provided to defendants.

### 3.   Photographs taken by Helen Lovelace of her son, Dr. Paidipalli, Dr. Clemons, Grace Freeman, Kelly Kish, and others at Le Bonheur Children's Medical Center before and after the surgery.

Plaintiffs identified numerous photographs of Brett Lovelace taken by his mother, Helen Lovelace both before and after surgery. Defendants object to the use of these photographs because they have not been properly authenticated, and their probative value would be greatly outweighed by their prejudicial effect and needlessly cumulative nature.

Photographs are admissible as long as what they purport to depict is relevant to the issues *and substantial identity to relevant times and conditions is established.* Shahid v. Detroit, 889 F.2d 1543, 1546 (6th Cir. 1989) (citing United States v. Daniels, 377 F.2d 255, 258 (6th Cir. 1967). The judicial test is whether the proffered photograph is an accurate representation of the scene depicted. Id. (*citing* United States v. Hobbs, 403 F.2d 977, 978 (6th Cir. 1968). Furthermore, the photographs must be relevant if they are to be admissible. Evidence is relevant

if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: (1) unfair prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The photographs taken by Helen Lovelace of her son, Dr. Paidipalli, Dr. Clemons, Grace Freeman, Kelly Kish, and others at Le Bonheur before and after surgery are not relevant to the issues in this lawsuit. The issues in this lawsuit concern allegations of medical negligence and thus center solely on the recognized standard of acceptable professional practice, a deviation from that recognized standard, and a causal connection between such a deviation and injury to the patient. Tenn. Code Ann. § 29-26-115. These photographs, numbering approximately eighty (80) in total, have zero relevance as to any of these burdens of which the Plaintiff is charged with proving. They depict facts that are of no consequence in determining the action.

Even if these photographs are relevant to the issue at hand, then the Court still must exclude them from trial due to the unfair prejudicial effect they will have on the Defendants. Specifically, the photographs depicting Brett Lovelace in the ICU following his cardiac arrest in the PACU are sad and would unfairly prejudice the Defendant. They depict the brain dead child lying in bed with family members kissing or lying with him. There is no purpose for these photos other than to appeal to the sympathies of the jury, which is prohibited. The probative value of these photographs would be miniscule in comparison to the unfairly emotional and prejudicial effect they would have on these Defendants.

Defendants further object to the use of the photographs of Brett Lovelace taken before the surgery based on their cumulative nature. These photographs make up the vast majority of the photographs taken by the Plaintiff while at LeBonheur and are cumulative. Close to fifty (50) photographs depict Brett Lovelace sitting in the pre-operating rooms while speaking with Dr. Clemons, Dr. Paidipalli, and several nurses. They contain no probative value regarding the issues in this case and any value they do have is substantially outweighed by the danger of needlessly presenting cumulative evidence.

Defendants therefore object to the use of photographs of Brett Lovelace taken by his mother, Helen Lovelace, both before and after surgery because they lack authentication, lack relevancy, and contain no probative value that is not substantially outweighed by the danger of unfair prejudice or needless cumulativeness.

### 4. Le Bonheur Children's Medical Center/Methodist Le Bonheur Healthcare medical bills;

In their pretrial disclosures, Plaintiffs identify the medical bills from Le Bonheur Children's Medical Center and Methodist Le Bonheur Healthcare. Defendants object to this disclosure on the grounds that these documents are completely irrelevant to the issues before the Court because any recovery of lost medical expenses must be supported by expert proof, and Plaintiff no supporting expert proof as to such a claim. Since Plaintiffs cannot prove medical expenses at trial, the medical bills are irrelevant. Even if relevant, the bills' prejudicial effect would greatly outweigh any probative value.

Under the Erie doctrine, the Court is bound to apply the substantive law of the state of Tennessee as if this action had been brought in a Tennessee state Court. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Pursuant to Tennessee law, Plaintiffs may recover only reasonable and necessary medical expenses. Once established as reasonable and necessary, the

Plaintiffs may collect expenses "paid or payable" on behalf of their son by Medicaid as well as any amounts "paid or payable" by Plaintiff. In relevant part, the statute reads as follows:

> In a health care liability action action…, the damages awarded may include… actual economic losses suffered by the claimant by reason of the personal injury including, but not limited to, cost of reasonable and necessary medical care… but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimants or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

Tenn. Code. Ann. § 29-26-119

Specifically, this Defendant avers that any claim for medical expenses should be excluded because Plaintiff's medical expert, Jason Kennedy, M.D., did not testify that any medical expenses were reasonable and necessary or give any such opinion as required by Tennessee case law (See Nash v. Carter, 1987 WL 19312 (Tenn. Ct. App. Nov. 4, 1987) (Attached as "Exhibit A"), Wheeler v. Cain, 459 S.W.2d 618 (Tenn. Ct. App. 1970), Garner v. Maxwell, 360 S.W.2d 64 (Tenn. Ct. App. 1962).

Furthermore, in the event that this Court determines that sufficient expert testimony exists, Plaintiffs are still only allowed to recover those medical expenses that were "paid or payable," and Plaintiffs have failed to delineate which medical expenses were paid and payable. As the Western District Court of Tennessee has interpreted, Tennessee law states that these Plaintiffs may not recover the amounts actually billed by their son's medical providers over and above the amounts "paid or payable." Nalawagan v. Dang, 2010 U.S. Dist. LEXIS 114576, 2010 WL 4340797 (W.D. Tenn. Oct. 27, 2010). The Tennessee statute contemplates the recovery of actual economic losses suffered by the claimant" including medical expenses, "but only to the extent of costs "not paid or payable." Id. Therefore, based on the plain meaning of the terms, it is

clear that medical expenses are limited to expenses already paid or such expenses yet to be paid, and not simply the amounts billed. Id.  It is suspected that LeBonheur did not collect or make any attempt to collect said medical expenses since its nurse was determined by the hospital to have caused the death of the child leading to its monetary settlement of all claims against it.  Plaintiff has made no showing of what, if any, expenses were paid by Plaintiff or remain payable.

Without the proof required by Tennessee law, Plaintiffs are unable to recover medical expenses at trial. Any introduction of hospital bills would therefore be completely irrelevant. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. Furthermore, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: (1) unfair prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Evidence displaying damages which the Plaintiffs are unable to recover must be considered irrelevant evidence. Even if such evidence is relevant, its probative value would be substantially outweighed by the danger of unfair prejudice. The evidence would also confuse and mislead the jury into thinking that the Plaintiffs can recover medical expenses when, according to Tennessee law, they are unable to do so without expert proof. Defendants therefore object to Plaintiffs' identification of the medical bills and request that this Court exclude such medical bills from being introduced at trial.

### 5.   Medical Illustrations prepared by MediVisuals, Inc.;

Defendants object to the medical illustrations prepared by MediVisuals, Inc. Specifically, Defendants object to these illustrations because they have not had the opportunity to view or

inspect the illustrations despite multiple requests made to Plaintiffs' counsel. Federal Rule of Civil Procedure 26 (a) (3) (B) states that any objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of these illustrations so that such an objection may be preserved.

### 6. Expert reports of Jason D. Kennedy, M.D., Frank J. Peretti, M.D., and Robert E. "Jay Marsh.

Plaintiffs identify the expert reports of their expert witnesses as exhibits that they may offer at trial. Defendants object to these reports because they are hearsay. Hearsay is a statement that the declarant does not make while testifying at the current trial or hearing which is offered in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801 (c) (1-2). "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion. Fed. R. Evid. 801 (a). Hearsay is not admissible unless any of the following provide otherwise: (1) a federal statute; (2) the Rules of Evidence; or (3) other rules prescribed by the Supreme Court. Fed. R. Evid. 802.

Expert reports prepared in anticipation of trial are generally inadmissible because they are considered hearsay. Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 729 (6th Cir. 1994) (citing Fed. R. Evid. 702 and 703). In Engebresten, the district court concluded that Rules 702 and 703 permitted the admission of expert reports at trial by stating that the experts could have referred to the exhibits during direct examination and therefore the defendant could properly move for their admission at a later time. Id. The Court of Appeals disagreed and held that Federal Rules 702 and 703 permitted the admission of expert opinion testimony and not opinions contained in documents prepared out of court. Id. Thus, the Court of Appeals held that the

district court's conclusion that Rules 702 and 703 permitted the admission of expert reports was erroneous.

The expert reports identified by Plaintiffs in their pretrial disclosures were prepared in anticipation of trial. Like the reports in <u>Engebretsen</u>, they constitute hearsay. None of the reports, therefore, are admissible under Rules 702 and 703, and the Court should exclude them from being introduced at trial. Defendants respectfully object to the use of these reports at trial, and move the Court to exclude them from evidence.

### 7. Jason D. Kennedy, M.D.'s reasons, bases, support and references

Plaintiffs identify a very broad list of exhibits entitled Jason Dr. Kennedy M.D.'s "reasons, bases, support, references" in their pretrial disclosures. Defendants object to this disclosure on the basis that it is extremely broad and could entail documents, support, and references which these Defendants have not had an opportunity to inspect or question Dr. Kennedy on during the discovery.  Defendants therefore object to the use of these potential items on said basis and that discovery in this case has passed. Additionally, Defendants object to the introduction of any learned treatises as exhibits at trial and any notes or other materials that constitute hearsay.

Federal Rule of Evidence 803 (18) states the following regarding the hearsay exception to learned treatises:

> A statement contained in a treatise, periodical, or pamphlet (is a hearsay exception) if:
>
> (A) The statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> (B) The publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

> If admitted, the statement may be read into evidence but not received as an exhibit.

Fed. R. Evid. 803(18).

Should sufficient testimony be elicited at this trial regarding any learned treatise, then this Defendant respectfully requests that the Court limit the use of the texts to being read to the jury and not published as exhibits. Federal Rule of Evidence 803 (18) and supporting case law specifically state that any statements from publications may be read into evidence but may not be received as exhibits. See MARSH v. TVA, 765 F.2d 145 (6th Cir. 1985) (citing Dawson v. Chysler Corp. 630 F.2d 950 (3d Cir. 1980); Garbincius v. Boston Edison Co., 621 F.2d 1171 (1st Cir. 1980)). Therefore these Defendants object to the introduction of any learned treatises as exhibits at trial.

Defendants also object to any notes or other writings in the file that constitute hearsay. Hearsay is a statement that the declarant does not make while testifying at the current trial or hearing which is offered in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801 (c) (1-2). "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion. Fed. R. Evid. 801 (a). Hearsay is not admissible unless any of the following provide otherwise: (1) a federal statute; (2) the Rules of Evidence; or (3) other rules prescribed by the Supreme Court. Fed. R. Evid. 802. Defendants therefore object any notes, or written materials constituting hearsay that do not fall within an exception to the Rule.

### 8. Frank J. Peretti, M.d.'s reasons, basis support, references, exhibits, notes, photographs, findings, and file

Plaintiffs also identify a very broad list of exhibits regarding the opinions of Frank J. Peretti, M.D. Plaintiffs state that they expect to offer Dr. Peretti's "reasons, basis, support,

references, exhibits, notes, photograph, findings, and file." Defendants object to this disclosure

on the basis that it is extremely broad and could entail documents, support, and references which

these Defendants have not had an opportunity to inspect or question Dr. Peretti on during

discovery. Defendants therefore object to the use of these potential items on said basis and that

discovery in this case has passed. Additionally, Defendants object to the introduction of any

autopsy photographs that Plaintiffs intend to introduce at trial and any notes or other materials

that constitute hearsay[2].

Evidence is relevant if it has any tendency to make a fact more or less probable than it

would be without the evidence and the fact is of consequence in determining the action. Fed. R.

Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. The court may also exclude

relevant evidence if its probative value is substantially outweighed by a danger of one or more of

the following: (1) unfair prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue

delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The autopsy photographs of Brett Lovelace are irrelevant as to whether these Defendants

violated the standard of care and/or caused an injury to Brett Lovelace that would not have

occurred otherwise. Even if somehow relevant, the probative value of these photographs is

substantially outweighed by the danger of unfair prejudice to these Defendants. The photographs

depict a dead child on an autopsy table. There is no purpose for these photos other than to appeal

to the sympathies of the jury, which is prohibited.

Defendants also object to any notes or other writings in the file that constitute hearsay.

Hearsay is a statement that the declarant does not make while testifying at the current trial or

hearing which is offered in evidence to prove the truth of the matter asserted in the statement.

Fed. R. Evid. 801 (c) (1-2). "Statement" means a person's oral assertion, written assertion, or

---

[2] Defendants also object to the introduction of any learned treatises into evidence pursuant to Fed. R. Evid. 803(18).

nonverbal conduct, if the person intended it as an assertion. Fed. R. Evid. 801 (a). Hearsay is not admissible unless any of the following provide otherwise: (1) a federal statute; (2) the Rules of Evidence; or (3) other rules prescribed by the Supreme Court. Fed. R. Evid. 802. Defendants therefore object any notes, or written materials in the file constituting hearsay that do not fall within an exception to the Rule.

### 9. Le Bonheur Children's Medical Center's procedures for the anesthesia services provided on March 12, 2012;

Defendants object to the procedures for anesthesia services identified by Plaintiffs' counsel in Plaintiffs' pretrial disclosures. Specifically, Defendants object to these procedures because they have not had the opportunity to view or inspect the procedures despite multiple requests made to Plaintiffs' counsel. Federal Rule of Civil Procedure 26 (a) (3) (B) states that any objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of these procedures on said basis and that discovery in this case has passed.

### 10. Summaries of fault and damages;

Defendants object to the summaries of fault and damages identified by Plaintiffs' counsel in Plaintiffs' pretrial disclosures. Specifically, Defendants object to these summaries because they have not had the opportunity to view or inspect the summaries despite multiple requests made to Plaintiffs' counsel. Federal Rule of Civil Procedure 26 (a) (3) (B) states that any objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of these summaries so that such an objection may be preserved. It is anticipated that any such summaries would also be

cumulative, argumentative, and unduly prejudicial and should, therefore, be excluded pursuant to Rule 403.

### 11. Timeline of Events Chart;

Defendants object to the timeline of events chart identified by Plaintiffs' counsel in Plaintiffs' pretrial disclosures. Specifically, Defendants object to this chart because they have not had the opportunity to view or inspect the chart despite multiple requests made to Plaintiffs' counsel. Federal Rule of Civil Procedure 26 (a) (3) (B) states that any objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of the chart so that such an objection may be preserved.

### 12. Definitions of glossary chart/boards;

Defendants object to the "definitions of glossary chart/boards" identified by Plaintiffs' counsel in Plaintiffs' pretrial disclosures. Specifically, Defendants object to these definitions because they have not had the opportunity to view or inspect the definitions despite multiple requests made to Plaintiffs' counsel. Federal Rule of Civil Procedure 26 (a) (3) (B) states that any objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of these summaries so that such an objection may be preserved.

### 13. Jury Instructions chart/boards;

Defendants object to the "jury instructions chart/boards" identified by Plaintiffs' counsel in Plaintiffs' pretrial disclosures. Specifically, Defendants object to these charts/boards because they have not had the opportunity to view or inspect the charts/boards despite multiple requests made to Plaintiffs' counsel. Federal Rule of Civil Procedure 26 (a) (3) (B) states that any

objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of these charts/boards so that such an objection may be preserved. It is anticipated that any such summaries would also be cumulative, argumentative, and unduly prejudicial and should, therefore, be excluded pursuant to Rule 403. It is not the province of the attorneys to instruct the jury-that is solely the province of Court. Any such presentation by Counsel would therefore, be improper.

### 14. Pulse oximeter; supplemental oxygen equipment; and patient dummy;

Defendants object to the pulse oximeter, supplemental oxygen equipment, and patient dummy identified by Plaintiffs' counsel in Plaintiffs' pretrial disclosures. Specifically, Defendants object to these items because they have not had the opportunity to view or inspect the items despite multiple requests made to Plaintiffs' counsel. Federal Rule of Civil Procedure 26 (a) (3) (B) states that any objection not made within 14 days after the filing of pretrial disclosures is waived unless excused by the court for good cause. Defendants therefore object to the use of these exhibits so that such an objection may be preserved.

### 15. A.S.A Nurse Anesthetist Scope of Practice and Rules;

Plaintiffs identify the "A.S.A Nurse Anesthetist Scope of Practice and Rules" in their pretrial disclosures.

Expert testimony as to the standard of care in the community cannot be replaced with the production of policies and procedures. *See* Flatt v. Claiborne County Hosp. & Nursing Home, 2010 Tenn. App. LEXIS 255 (Tenn. Ct. App. Apr. 8, 2010) (citing Geesling v. Livingston Reg'l Hosp. LLC, 2008 Tenn. App. LEXIS 738 (Tenn. Ct. App. Dec. 18, 2008)) (*see also* Richardson v. Miller, 44 S.W.3d 1, 25 (Tenn. Ct. App. 2000). Likewise, expert testimony cannot be replaced

with the production of guidelines. The standard of care, by statute, can instead only be presented by expert testimony. Shipley v. Williams, 350 S.W.3d 527, 532 (Tenn. 2011).

The probative value, if any, of references to these guidelines is clearly substantially outweighed by the danger of unfair prejudice. References to the existence and potential violation of rules and scopes of practice would cause confusion of the issues and mislead the jury into thinking that medicine is practiced in a "cook book" like method where the clinical judgment of a physician or CRNA is irrelevant. Such a result would encourage jurors to ignore standard of care arguments which are very clearly the focal point of Tennessee healthcare liability law. Tenn. Code Ann. § 29-26-115. Therefore, these Defendants object to Plaintiffs using the A.S.A Nurse Anesthetist Scope of Practice and Rules in any form during the duration of this trial because they do not establish the standard of care and are hence irrelevant to the matters at hand. Defendants object to this exhibit because it is completely irrelevant to the issues of this lawsuit and will confuse and mislead the jury regarding the standard of care. Furthermore, these items have not been provided in discovery despite requests.

Defendants also object to the introduction of the guidelines into evidence because the guidelines may constitute a learned treatise is established as reliable authority by an expert witness. Should sufficient testimony be elicited at this trial regarding any learned treatise, then this Defendant respectfully requests that the Court limit the use of the guidelines to being read to the jury and not published as exhibits. Federal Rule of Evidence 803 (18) and supporting case law specifically state that any statements from publications may be read into evidence but may not be received as exhibits. See MARSH v. TVA, 765 F.2d 145 (6th Cir. 1985) (citing Dawson v. Chysler Corp. 630 F.2d 950 (3d Cir. 1980); Garbincius v. Boston Edison Co., 621 F.2d 1171

(1st Cir. 1980)). Therefore these Defendants object to the introduction of any learned treatises as exhibits at trial.

### 16. Letters written by Allen Fincher, Finco Trucking and L. Dewane Weeks

Plaintiffs identify letters written by Allen Fincher, Finco Trucking and L. Dewane Weeks as exhibits that they may offer at trial. Defendants object to these letters on the grounds that they are hearsay and completely irrelevant. Hearsay is a statement that the declarant does not make while testifying at the current trial or hearing which is offered in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801 (c) (1-2). "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion. Fed. R. Evid. 801 (a). Hearsay is not admissible unless any of the following provide otherwise: (1) a federal statute; (2) the Rules of Evidence; or (3) other rules prescribed by the Supreme Court. Fed. R. Evid. 802.

The letters by Allen Fincher and L. DeWayne Weeks are the very definition of hearsay. The letters constitute written assertions by declarants who were not testifying at trial. Plaintiffs are offering the letters into evidence to prove the truth of the matter asserted in the statements. Furthermore, no exception to the hearsay rule applies to this document. Defendants have not and cannot cross examine these letters.  Therefore, pursuant to Rule 802, Defendants object to the use of this letter at trial and move to exclude it from evidence.

Defendants also object to the letters on the grounds that they are completely irrelevant. To assert that a 12 year old has set his future profession, as alleged in the letters, is completely nonsensical. Brett Lovelace cannot testify as to what his future plans were and thus, any assertion that two men in the trucking business make concerning the same is purely conjecture and inadmissible.

Additionally, even if these letters are relevant, their probative value is outweighed by their unfairly prejudicial effect. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. Furthermore, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: (1) unfair prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The letters by Allen Fincher and L. DeWayne Weeks are irrelevant to the issues in this lawsuit. The letters are therefore inadmissible. Even if the Court were to determine that the letters are relevant, it should still exclude them because the danger of unfair prejudice substantially outweighs any probative value they might contain because the letters are speculative in nature. Brett Lovelace was twelve (12) years old at the time of this incident. One letter bases Brett's ability to be employed at the age of eighteen (18) while the second letter bases Brett's employment at the age of twenty three (23). The letters further assume that Brett would have worked sixty (60) hours a week, fifty-two (52) weeks a year. These letters are speculative in nature. The very language of the letter suggests speculation as to whether Brett would have taken a job. Furthermore, the authors of these letters cannot guarantee if their business would still be open at the time of Brett's eighteenth or twenty third birthdays or even if a spot would be available at that time. The speculation in these letters amounts to danger of unfair prejudice to these Defendants that substantially outweighs any probative value the letter might contain, and the Court should exclude them as a result.

## II. These Defendants Object to the Plaintiffs' use of all or portions of the deposition of Kelly Kish

Plaintiffs identify the deposition of Kelly Kish as a deposition they anticipate using subject to the Court's ruling on objections stated in the depositions or otherwise under the Federal Rules of Evidence. Federal Rule of Civil Procedure 26 (a) (3) (B) allows a party to file an objection to the use under Rule 32(a) of a deposition designated by another party in its pretrial disclosures. Pursuant to this rule, Defendants object to the Plaintiffs' use of Kish's deposition because Kelly Kish is not a party to this action and has not shown to be unavailable pursuant to Federal Rule of Civil Procedure 32 (a) (4).

Rule 32 of the Federal Rules of Civil Procedure does not allow for depositions of witnesses, other than parties, to be used at trial for reasons other than impeachment unless those witnesses are unavailable at trial. In this case, Kelly Kish is not a party to the action. Therefore, her discovery deposition may only be used for impeachment unless she becomes unavailable at trial pursuant to the definition found in Fed. R. Civ. P. 32 (a) (4). These Defendants therefore object to the use of Kelly Kish's deposition at trial since she is currently available to testify live and is not a party to this case.

## III. These Defendants Object to the Admissibility of any testimony from the following witnesses identified by Plaintiffs under Rule 26 (a) (3) (A) (i)

1. Plaintiffs or family members identified in Defendants' discovery responses who filed malpractice claims against a Defendant, who have knowledge of prior errors.

Defendants object to Plaintiffs calling any witness who has previously filed malpractice claims against Dr. Paidipalli. In response to Plaintiffs' First Set of Interrogatories, Dr. Paidipalli identified five (5) previous malpractice claims that had been filed in which he was named as a defendant. Plaintiffs now wish to call the plaintiffs or family members of these prior lawsuits to

19

testify in this matter. Their testimony would be completely irrelevant as they have nothing to do with the case at hand.

An attempt to call Plaintiffs or family members who have previously filed malpractice claims against Dr. Paidipalli would only serve to introduce impermissible character evidence of Dr. Paidipalli. Such an attempt violates Federal Rule of Evidence 404. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404 (a) (1). Evidence of other wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404 (b) (1).

Moreover, the evidence is not automatically admissible even if it has been established that it is relevant for a purpose independent of the forbidden inference of propensity. Donathan v. Orthopaedic & Sports Med. Clinic, PLLC, 2009 U.S. Dist. LEXIS 99557 (E.D. Tenn. Oct. 26, 2009). Before admitting the prior acts into evidence, the district court must apply the balancing test found in Fed. R. Evid. 403 and make two determinations: (1) that the evidence is admissible for a proper purpose and (2) that the probative value of the evidence outweighs its potential prejudicial effects. Id. (citing United States v. Vance, 871 F.2d 572, 575 (6th Cir.), cert denied, 493 U.S.933 (1989).

Any testimony regarding these previous claims is irrelevant for multiple reasons and, even if relevant, such testimony's probative value would be substantially outweighed by the danger of unfair prejudice. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. Furthermore, the court may exclude relevant evidence if its probative value is substantially outweighed by a

danger of one or more of the following: (1) unfair prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Any testimony from plaintiffs or family members who have previously filed lawsuits against Dr. Paidipalli is completely irrelevant to the issues in this lawsuit for multiple reasons. First, these witnesses have no personal knowledge of the facts at issue in this lawsuit and therefore could not give competent testimony. Federal Rule of Evidence 602 states that a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. No evidence exists in this case of prior plaintiffs having any personal knowledge of the issues in this lawsuit. Secondly, these witnesses have no expert knowledge concerning the practice of a pediatric anesthesiologist; therefore, any testimony about "prior errors" is completely incompetent and inappropriate pursuant to Fed. R. Evid. 702. Thirdly, any prior plaintiff who entered into a confidential settlement agreement with Dr. Paidipalli is forbidden under the terms of such agreements from discussing the facts of those cases. Calling a witness to the stand to testify about matters contained in confidential settlement agreements is entirely inappropriate and will likely subject the witnesses to penalties under the settlement agreements. Finally, none of these prior lawsuits resulted in Dr. Paidipalli admitting fault or having a jury of his peers decide that he was at fault. Dr. Paidipalli to this day denies each and every allegation against him in these lawsuits, and to allow these witnesses to testify in the face of that fact would unfairly prejudice Dr. Paidipalli while confusing and misleading the jury.

Calling plaintiffs or family members who have previously filed malpractice claims against Dr. Paidipalli would result in the introduction of evidence that is impermissible under

multiple rules of evidence. Moreover, Plaintiff failed to identify any of these witnesses in discovery as fact witnesses. The Defendants therefore object to these witnesses and request that the Court exclude them from testifying at trial.

By:   W. Bradley Gilmer
JERRY O. POTTER (4284)
W. BRADLEY GILMER (21490)
KAREN S. KOPLON (16282)
Attorneys for Defendants, Pediatric
Anesthesiologists, P.A. and
Babu Rao Paidipalli, M.D.
THE HARDISON LAW FIRM, P.C.
119 S. Main Street, Suite 800
Memphis, Tennessee 38103
(901) 525-8776
jpotter@hard-law.com
bgilmer@hard-law.com
kkoplon@hard-law.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via U.S. Mail to all counsel of record identified below:

Mark Ledbetter, Esq.
Halliburton & Ledbetter
Attorney for Plaintiffs
254 Court Avenue
Suite 305
Memphis, TN 38103

J. Kimbrough Johnson, Esq.
Marcy Dodds Magee, Esq.
Attorneys for Defendant, Mark P.
Clemons, M.D.
Lewis, Thomason, King, Krieg &
Waldrop, P.C.
2900 One Commerce Street
Memphis, TN 38103

this 2nd day of January, 2014.

s/ W. Bradley Gilmer
W. BRADLEY GILMER