IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENESESEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

    Plaintiffs,

Vs.                                           No. 2:13-cv-02289 SHL - dkv
                                                          JURY TRIAL DEMANDED

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

    Defendants.

**DEFENDANTS' JOINT MOTION IN LIMINE NO. 11**

Come now the defendants, Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli, M.D., and Mark P. Clemons, M.D., by and through counsel of record, and move this Court in limine for an order prohibiting Plaintiffs, Plaintiffs' witnesses and Plaintiffs' counsel from offering testimony, mentioning during the trial, or otherwise communicating to the Court and jury, or to the prospective jurors, any statements or references concerning violations of guidelines, "safety rules," terminology regarding harm allegedly caused by these Defendants, or other healthcare providers or similar "scare tactics." Under the Erie doctrine, the Court is bound to apply the substantive law of the state of Tennessee as if this action had been brought in a Tennessee state Court. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). In support of this motion, these Defendants would show as follows:

**Claimant's Burden in Health Care Liability Actions – The Standard of Care**

The Tennessee Civil Justice Act of 2011 governs all health care liability claims in the State of Tennessee. The crux of any health care liability action lies in the Plaintiff's burden of proof which is set out in Tenn. Code Ann. § 29-26-115. According to Section 29-26-115, a plaintiff has the burden to prove the following:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standards; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115 (a)

Thus, a health care liability plaintiff must show that a defendant did not act with ordinary and reasonable care in accordance with the recognized standard in the same or similar specialty in the same or similar medical community during the time in question. Id. Tennessee courts have long reaffirmed that this standard is the appropriate and sole measure to determine whether a physician has been negligent. Shipley v. Williams, 350 S.W.3d 527 (Tenn. 2011).

In an action alleging negligence of a health care provider, competent evidence of the recognized standard of acceptable professional practice in the applicable profession is a prerequisite to recovery. Liability for malpractice therefore depends on whether or not the physician is lacking in and fails to exercise the reasonable degree of learning, skill, and experience that is ordinarily possessed by other of his profession. Dunham v. Stones River Hosp., Inc., 40 S.W.3d 47, 52 (Tenn. Ct. App. 2000) (*citing* Hurst v. Dougherty, 800 S.W.2d 183, 185 (Tenn. Ct. app. 1990); *see also* Ward v. United States, 838 F.2d 182 (6th Cir. Tenn.

1988); Watkins v. United States, 482 F. Supp. 1006 (M.D. Tenn. 1980)). The duty of a physician is to use his best judgment in the treatment of a patient. Ward, at 187. Under Tennessee law, a physician must exercise his best judgment regarding treatment, and is not guilty of malpractice if he chooses a course of treatment supported by other physicians in good standing. Id. at 187. The physician is not the insurer of the patient. Id. Rather, he is only liable for negligence, and negligence is not presumed from the fact that the treatment is unsuccessful. Id.

In determining the degree of learning and skill required of a medical practitioner in the treatment of a particular case, regard must be given to the state of medical science at that time. Ward, at 187. Evaluation of professional judgment must be based upon the facts available to the professional and the accepted practice among members of the profession. The reason for this crucial requirement centers on the state's interest in assuring that doctor charged with negligence in Tennessee receive a fair assessment of their conduct. Sutphin v. Platt, 720 S.W.2d 455, 458 (Tenn. 1986).

The term "recognized standard," therefore, means a standard recognized and accepted generally by the profession and not merely the particular standard of a single practitioner or group. Godbee v. Dimick, 213 S.W.3d 865, 896 (Tenn. Ct. App. 2006). The testimony of a physician as to what she or he would do or his or her opinion of what should have been done does not prove the statutory standard of medical practice. Lewis v. Hill, 770 S.W.2d 751, 754 (Tenn. Ct. App. 1988). Furthermore, what a majority of physicians in a community would consider to be reasonable medical care is not the meaning of the standard of care. Id. The standard of care is simply determined by whether a physician exercised the reasonable degree of learning, skill, and experience that is ordinarily possessed by others of his profession. Hurst v.

Dougherty, 800 S.W.2d 183 (Tenn. App. 1990); *see also* Crawford v. Family Vision Center, 1990 Tenn. App. LEXIS 810 (Tenn. Ct. App. Nov. 16, 1990).

The standard of care is the first burden of proof which the Plaintiff in any health care liability action must meet. In order to assure that a defendant physician charged with negligence receives a fair assessment of their conduct, the standard must take into account a physician's clinical judgment. The standard is not proved by a set of guidelines or by a textbook.

### The Reptile Theory - "Rule Breaking"

In an attempt to lower the burden which they are required to meet, Plaintiffs across Tennessee have attempted to rely on a new theory entitled "The Reptile Theory[1]." The theory was first introduced by well-known Plaintiff attorneys David Ball and Don Keenan in their book entitled Reptile: The 2009 Manual of the Plaintiff's Revolution. See David Ball & Don Keenan, Reptile: The 2009 Manual of the Plaintiff's Revolution, at 62 (2009). According to Ball and Keenan, the Reptile Theory purports to center on the primitive part of the human brain, affectionately referred to as "the reptile," which controls a person's survival instincts. The reptilian brain theory was aptly summarized by David Ball in his article Damages and the Reptilian Brain published by the American Association for Justice, a plaintiff's advocacy organization. Ball writes:

> Whenever anything can potentially affect those chances of survival--even a little--this most primitive thing in your head grabs full control of the entire brain. This includes control of your logical, emotional, and other decision-making resources. As soon as a survival danger crops up, the reptile rearranges the brain's priorities, placing the reptile's only concern--survival--on top.
>                              * * *
> We like to believe that we base our decisions on rationality and logic. Sorry. Logic is but a fragment of our brains' functioning. It controls little.
> When it comes to survival, logic is subservient to the reptile. When the two conflict, logic either adapts to the reptile's needs or is ignored. When people

---
[1] This name was given to the theory by the Plaintiffs' bar.

> make survival-related decisions, they obey the reptile--not logic, emotion, intuition, or abstract notions such as justice.
> And the reptile's imperative is that safer--even just a little safer--is the only acceptable choice.

David Ball, <u>Damages and the Reptilian Brain</u>, 45 Trial 24, 24 (Sept. 2009) (Exhibit "A"). Ball advocates "get[ting] the reptile on your side" in jury cases by showing the jury that the defendant's conduct represents a danger to the survival of the jurors and their families. Ball specifically writes as follows:

> First, you need to show that the reptile is in danger. When she detects a survival danger, the reptile protects her genes by impelling the juror to protect himself or herself and the community.
>
> In your case, the defendant's misconduct represents a danger that connects to the juror and his or her family.
>
> The second thing you need to show the reptile is that a full and fair damages verdict will diminish the danger for the juror and his or her family--that the proper verdict will enhance community safety by discouraging that kind of dangerous behavior and, conversely, that an improper verdict will not only allow but also encourage it.
>
> The result: The reptile sees a proper damages verdict as her best available choice for survival, *even if it affects her survival by only a very small amount*. So the reptile helps us in "small" cases as much as she does in "large" ones.

<u>Id.</u>

Authors have further identified and suggested trial techniques to "anger the reptile mind." "Rule breaking" is presented as one of these trial techniques. <u>See</u> Frank Costilla, Jr., <u>Underlying Principles that Motivate Jurors to Give</u>, Winter 2008 AAJ-CLE 237, p.2 (2008) (Exhibit "B"). Costilla writes that David Ball, whose article was mentioned previously, "tells us that the reptile brain perceives the primary purpose of rules as protection from harm. According to Ball, the reptilian brain, fearing that *rule breaking* by others will affect the reptile's own safety and security and endanger its offspring, is angered by the rule breaker and thus, becomes the enforcer

of sound rules." Id. (emphasis added). Costilla then notes, "If rule breaking produces anger in the reptilian mind, and if in the legal context anger can result in a higher damages verdict for the plaintiff, it is imperative to couch the defendant's liability in terms of rule breaking in any personal injury damages case." Id.

## The Reptile Theory is not the Law in Tennessee

The Reptile Theory is inconsistent with the law of Tennessee in multiple respects. First, the Reptile Theory advocates for the use of "guidelines" and "safety rules" to establish the standard of care. Guidelines do not establish such a standard under Tennessee law. Secondly, the Reptile Theory encourages plaintiff attorneys to appeal to the passion, prejudice, and sentiment of the jury through arguments such as the Golden Rule argument that asks jurors to put themselves in the plaintiffs' position. This appeal to juror emotions is impermissible under Tennessee law.

A. Guidelines do not establish the standard of care under Tennessee law pursuant to Tenn. Code Ann. § 29-26-115 (a).

The use of guidelines and safety rules persuades the jury to ignore the standard of care arguments. See Ball & Keenum, Reptile: The 2009 Manual of the Plaintiff's Revolution, at 62. Tennessee law, on the other hand, requires that the plaintiff prove the applicable "recognized standard of acceptable professional practice." Tenn. Code Ann. § 29-26-115 (a) (1). There is no reference in the statute to the term "safety rules." There is no reference in the statute to the term "guidelines." The standard of care, by statute, can instead only be presented by expert testimony. Shipley v. Williams, 350 S.W.3d 527, 532 (Tenn. 2011).

Expert testimony as to the standard of care in the community cannot be replaced with the production of internal hospital policy and procedure of their own. Flatt v. Claiborne County Hosp. & Nursing Home, 2010 Tenn. App. LEXIS 255 (Tenn. Ct. App. Apr. 8, 2010) (citing

6

Geesling v. Livingston Reg'l Hosp. LLC, 2008 Tenn. App. LEXIS 738 (Tenn. Ct. App. Dec. 18, 2008)) (*see also* Richardson v. Miller, 44 S.W.3d 1, 25 (Tenn. Ct. App. 2000). Likewise, expert testimony cannot be replaced with the production of guidelines. Because repeatedly referring to so called "safety rules" and "guidelines" instead of "the recognized standard of acceptable professional practice" would confuse and mislead the jurors by suggesting that the recognized standard of acceptable professional practice is published in a safety rule book similar to a codification of traffic laws, such references should be prohibited under Rule 403 of the Federal Rules of Evidence.

The probative value, if any, of references to safety rules and guidelines is clearly substantially outweighed by the danger of unfair prejudice. References to the existence and potential violation of safety rules and guidelines would cause confusion of the issues and mislead the jury into thinking that medicine is practiced in a "cook book" like method where the clinical judgment of a physician is irrelevant. Such a result would satisfy the goal of the Reptile Theory by encouraging jurors to ignore standard of care arguments. Therefore, Defendants request the Court to prohibit any references to guidelines or patient safety rules as they are irrelevant, prejudicial, and only presented to mislead the jury.

B. <u>Adherence to the Reptile Rule requires Plaintiffs to target the emotions of the jury and thus stray from their burden under Tenn. Code Ann. 29-26-115</u>

Appealing to the passion, prejudice, and sentiment of a jury is clearly impermissible under Tennessee law. Perkins v. Sadler, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991). The best example of this stance is seen through Tennessee's treatment of the "Golden Rule" argument. In Tennessee, Plaintiffs cannot use a "Golden Rule" argument while making statements to the jury whether in voir dire, opening statements, witness testimony, or closing argument. Roberts v. Federal Express Corp., 1996 Tenn. App. LEXIS 159 at *7 (Tenn. Ct. App., Mar. 14, 1996).

7

Therefore, any potential references by Plaintiffs' counsel to violations of patient safety rules, terminology regarding harm,[2] or similar "scare tactics" have no relevance to whether these Defendants complied with the standard of care. Such references would ask the jury to reach a decision based on passion, prejudice, or sentiment and not a proper evaluation of the facts of the case and how they relate to the controlling standard of care. Such references would be prejudicial, and should not be allowed. *See* Fed. R. Evid. 401-403.

These techniques should also be prohibited at trial because these techniques are admittedly designed to convince the jurors that the consequences of the defendant's conduct goes beyond the facts of the case and implicate the juror's safety and the safety of their families, and that they are in danger unless a large plaintiff's verdict is returned. These techniques constitute a not so subtle "golden rule" argument that asks the jurors to put themselves in the plaintiff's position, which are impermissible under Tennessee law. *See* City of Gallatin v. Jackson, No. 01-A-01-9005CV00160, 1991 WL 1051, at *4 (Tenn. Ct. App. Jan. 9, 1991) (noting that "Golden Rule" arguments are improper); *See also* Roberts v. Federal Express Corp., No. 02A01-9502-CV-00019, 1996 WL 114489, at * 3 (Tenn. Ct. App. March 14, 1996).

## CONCLUSION

Based on the above arguments, Defendants request that this Court enter an order prohibiting Plaintiffs, Plaintiffs' counsel, or Plaintiffs' witnesses from offering testimony, mentioning during the trial, or otherwise communicating to the Court and jury, or to the prospective jurors, any statements or references concerning violations of guidelines, "safety rules," terminology regarding harm allegedly caused by these Defendants, or other healthcare

---

[2] Other such terminology would include, but is not limited to, questions such as "what would the harm have been?" "What was the risk?", or "were you not concerned about [Plaintiff]'s safety?"

providers or similar "scare tactics." Allowing such testimony into evidence would enhance the goals of the Reptile theory which is impermissible under Tennessee law.

By: s/ W. Bradley Gilmer
JERRY O. POTTER (4284)
W. BRADLEY GILMER (21490)
KAREN S. KOPLON (16282)
Attorneys for Defendants, Pediatric
Anesthesiologists, P.A. and
Babu Rao Paidipalli, M.D.
THE HARDISON LAW FIRM, P.C.
119 S. Main Street, Suite 800
Memphis, Tennessee 38103
(901) 525-8776
jpotter@hard-law.com
bgilmer@hard-law.com
kkoplon@hard-law.com

By: s/Marcy D. Magee
J. KIMBROUGH JOHNSON (7953)
MARCY D. MAGEE (19360)
NATALIE M. BURSI (032017)
Attorneys for Defendant, Mark P. Clemons
LEWIS THOMASON
40 South Main Street, Suite 2900
Memphis, TN 38103
Phone: (901) 525-8721
KJohnson@LewisThomason.com
MMagee@LewisThomason.com
NBursi@LewisThomason.com

## CERTIFICATE OF CONSULATION

Pursuant to Local Rule 7.2(a)(1)(B), I hereby certify that on January 6th 2015, counsel for defendants, Babu Rao Paidipalli and Pediatric Anesthesiologists, P.A., consulted with Mark Ledbetter, counsel for plaintiffs, Daniel and Helen Lovelace, via e-mail concerning the contents of this motion, and that all counsel are unable to reach an accord as to all issues pertaining to this motion.

                                      s/W. Bradley Gilmer  
                                      W. BRADLEY GILMER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via U.S. Mail to all counsel of record identified below:

Mark Ledbetter, Esq.  
Halliburton & Ledbetter  
Attorney for Plaintiffs  
254 Court Avenue  
Suite 305  
Memphis, TN 38103

this 6th day of January, 2015.

                                      s/ W. Bradley Gilmer  
                                      W. BRADLEY GILMER