IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
_____

DANIEL LOVELACE and HELEN
LOVELACE, Individually, and as Parents of
BRETT LOVELACE, deceased,

      Plaintiffs,

vs.                                NO.:   2:13-cv-02289 dkv
                                          **JURY TRIAL DEMANDED**

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI ; and,
MARK P. CLEMONS,

      Defendants.

---

## PROPOSED JOINT PRE-TRIAL ORDER

---

      **COME NOW** the parties, Plaintiffs, Daniel Lovelace and Helen Lovelace, Individually, and as Parents of Brett Lovelace, deceased, and Defendants, Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli and Mark P. Clemons, by and through counsel of record and in advance of the Pre-Trial Conference, which will be held on January 13, 2015, before the Honorable Sheryl H. Lipman, United States District Judge for the Western District of Tennessee, Western Division, hereby submit the following Proposed Joint Pre-Trial Order. Present will be Mark Ledbetter, counsel for Plaintiffs; W. Bradley Gilmer, Jerry O. Potter, and Karen S. Koplon, counsel for Defendants, Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli; and Marcy Magee, J. Kimbrough Johnson and Natalie M. Bursi, counsel for Defendant, Mark P. Clemons, M.D..

1.    **PARTIES**: The caption above contains a complete listing of all parties that currently remain in the case.

2.     **JURISDICTIONAL ISSUES**: The parties do not dispute that jurisdiction is proper.

3.     **PENDING MOTIONS**: Currently there are no pending motions. The parties will file all Motions In Limine two (2) weeks prior to the trial of this matter, January 6, 2015 in accordance with the Notice of Re-Setting as issued by the Court.

4.     **SUMMARY OF CASE**:

**Plaintiffs' Proposed Statement to the Jury**

On March 12, 2012, Plaintiffs' decedent, and son, Brett Lovelace, age 12, was treated at LeBonheur Children's Hospital in Memphis, Tennessee and underwent a tonsillectomy and adenoidectomy, which surgery was performed by Defendant, Mark P. Clemons.  In that procedure, anesthesia was administered to Plaintiffs' decedent by Defendant, Pediatric Anesthesiologists, P.A. personnel, including Defendant, Babu Rao Paidipalli.

Following what was to be a minor surgery, twelve-year-old Brett Lovelace was extubated, then transported to the LeBonheur recovery room or PACU [Post-Anesthesia Care Unit].  Under the Defendants care he sustained a medical injury on March 12, 2012, and subsequently died on March 14, 2012.  The parties culpable or negligent in causing Brett Lovelace's injury and consequent death due to asphyxia include the following:

a.     Babu Rao Paidipalli;

b.     Mark P. Clemons; and,

c.     Pediatric Anesthesiologists, P.A.

**Defendants, Dr. Paidipalli and Pediatric Anesthesiologist, P.A's, Proposed Statement to the Jury**

This case involves allegations of medical malpractice in the care and treatment of Brett Lovelace following his tonsillectomy and adenoidectomy performed on March 12, 2012 at LeBonheur Children's Hospital. Dr. Clemons, an Otolaryngologist, performed the surgery under general anesthesia provided by anesthesiologist, Dr. Paidipalli and CRNA, Grace Freeman. The surgery itself was uneventful. The allegations of negligence involve the time period from the decision to extubate in the operating room until over 90 minutes later when Brett Lovelace coded in the recovery room. The Plaintiffs (the parents of Brett Lovelace) allege that the defendants were negligent and that their negligence resulted in the death of Brett Lovelace. The Defendants dispute these allegations and maintain that the care and treatment they provided to Brett Lovelace complied with the recognized standard of acceptable professional practice and that no action or inaction on their part caused injury to the child. His parents are suing for money damages for economic losses, his pain and suffering, and their loss of the consortium of their child. (They are also suing for negligent infliction of emotional distress).

**Defendant, Dr. Clemons', Proposed Statement to the Jury**

On March 12, 2012, Brett Lovelace, age 12, was taken to surgery at LeBonheur Hospital for a tonsillectomy and adenoidectomy, which was performed by a surgeon, Dr. Mark Clemons, who is a Board-Certified Otolaryngologist. Anesthesia was provided by Dr. Babu Rao Paidipalli, an anesthesiologist, and his anesthetist, Grace Freeman. The surgery went as planned, and there were no complications. There are no criticisms of Dr. Clemons' surgical procedure. After the surgery was completed at approximately 10:15 a.m., Grace Freeman, with the supervision of Dr. Paidipalli,

removed the patient's breathing tube, and Brett was transported from the operating room to the recovery room PACU (Post Anesthesia Care Unit) by Grace Freeman, CRNA, where she provided a report and turned the patient over to PACU Nurse/LeBonheur employee, Kelly Kish, RN.  Once the patient was transferred to PACU, the recovery room nurse was in charge of the patient's care, including monitoring the airway, oxygenation, blood pressure, vital signs, and was to call anesthesia if there was any problem.

Dr. Clemons passed through PACU immediately after arrival to the unit at approximately 10:30 a.m.  Dr. Clemons observed Brett Lovelace's monitors, all of which showed that the patient was oxygenating properly.  Brett Lovelace was laying with his legs curled up under him on his stomach.  Dr. Clemons asked Brett's mother about Brett's sleeping position, and Mrs. Lovelace responded stating that her son liked that position.  He asked the parents if everything was okay and then gave a prescription to be called in.  At the time that Dr. Clemons saw the patient in the recovery room, Brett Lovelace was breathing normally.  Dr. Clemons then left to go to his office with the expectation that the recovery room personnel would ensure that he was oxygenating with an open airway.

**[Plaintiffs object to the following multi-paragraph narrative statement in its entirety.  The Court previously ruled that Defendant, Clemons, had no affirmative defense of third-party fault against the hospital or its staff.  Contrary to the Court's ruling in its Order Granting Plaintiffs' Motion to Strike the Certificate of Good Faith of Defendant, Mark P. Clemons, M.D. under T.C.A. § 29-26-122, (b) and (c), and Brief [D.E. 118], Defendant here raises factual allegations of an unavailable**

4

**affirmative defense. See also Plaintiffs' Preliminary Objections to the Admissibility of Exhibits, Deposition Testimony and Witness Testimony filed by Defendant, Mark P. Clemons [D.E. 168]].**

While in the recovery room, Nurse Kelly Kish was assigned to care for Brett Lovelace. Brett was her only patient, and she was responsible for monitoring his pain, response activity, blood profusion, and oxygenation. Upon arrival in the PACU, the patient was stable. Nurse Kish remained with the patient bedside for approximately 90 minutes. The nurse never attempted to arouse the patient during the 90 minutes he was in the recovery room in order to check on him. The nurse documented normal oxygen saturations, but it was later determined that her recordings were incorrect. The nurse has no explanation for why the monitor print-out oxygen saturations were significantly lower than what she recorded. While in the recovery room, the patient's blood pressure readings dropped, but Nurse Kish took no action. She did not call Dr. Paidipalli or anyone else. Nurse Kish was preoccupied with Facebook and at least one other social medial website on her computer during the time the patient was in the PACU. After 90 minutes, it became apparent that the patient was not oxygenating well. CPR was initiated, but the patient did not regain normal function. The patient was taken off the ventilator on March 14, 2012. Nurse Kish has since relinquished her nursing license.

Brett's parents, Daniel and Helen Lovelace, subsequently filed a lawsuit against Pediatric Anesthesiologists, Dr. Paidipalli, and Dr. Clemons, alleging that they violated the standard of care and caused Brett Lovelace's death.

5.      **CONTENTIONS OF THE PARTIES**:

**Plaintiffs' Contentions**

A.      **Background**:  Following what was to be a minor surgery, twelve-year-old Brett Lovelace was transported to the LeBonheur recovery room or PACU [Post-Anesthesia Care Unit], where all Defendants were chargeable and responsible for his pre- and post-operative care, when he sustained a medical injury (asphyxiation) on March 12, 2012, and subsequently died on March 14, 2012.  The parties culpable or negligent in causing Brett Lovelace's injury and consequent death due to asphyxia include the following:

a.      Babu Rao Paidipalli;

b.      Mark P. Clemons; and

c.      Pediatric Anesthesiologists, P.A.;

B.      **Claims of Medical Negligence**:  Pursuant to T.C.A. 29-26-115, et. seq., Defendants owed Brett Lovelace a duty of care consistent with the standard of acceptable medical care and treatment in their respective professions and in the specialty of otolaryngology (Clemons), and in the specialty of anesthesia (Paidipalli/Pediatric Anesthesiologists, P.A.), as same were practiced in the same or similar locality to where said treatment and services were rendered, viz., Memphis and its environs, or one similar thereto; that Defendants' treatment and care of Brett Lovelace fell below the acceptable standard of care for each Defendant in their respective professional specialties and as a physician.

Plaintiffs base their health care liability action upon Defendants' breach of the standard of care in each of their respective specialties and/or as a licensed physician in the following particulars, viz.:

a.        Failure to follow safe practices, standard precautions and patient guidelines for perioperative planning, perioperative management, intraoperative management, and postoperative management and treatment of a patient who is scheduled for airway surgery under a general anesthetic, such as Brett Lovelace, whose age, size and weight (80% percentile adult male), medical history, mental and physical condition, required that certain safeguards followed by hospitals of the same or similar communities be used, and which safeguards were not employed;

b.        Failure of Defendants, Babu Rao Paidipalli and Pediatric Anesthesiologists, P.A. and Mark P. Clemons to furnish or provide services consistent with the skill, knowledge and care required by physicians who practice in the specialty of anesthesia [Paidipalli and Pediatric Anesthesiologists, P.A.] and otolaryngology [Clemons] in the same or similar community, and under the same or similar circumstances or conditions, including the duty to extubate the patient when fully awake, to fully reverse the neuromuscular blockade prior to extubation, and to not abandon the patient when the patient is in a dangerous or hazardous condition or state, as here, when Defendants failed to properly provide supplemental oxygen, to assess, to awaken, to reposition, to monitor and to bring Brett Lovelace out from under the influence of his surgical anesthesia and to ensure that he was stable prior to abandoning him in a prone, knees-up under his diaphragm, fetal position on a gurney where he remained for more than an hour and twenty minutes;

c.      Failure to give safe, timely and proper handling instructions to the PACU nurse, resulting in the death of a child; and

d.      Failure to assess, note and intervene to correct the ultimately fatal, face-down prone/fetal position of the patient, Brett Lovelace, for one and half hours.

That, for these defaults, Defendants are answerable in tort, jointly and severally, as parties acting in concert, for all proximately cause harm and damages sought herein.

C.      **Negligent Infliction of Emotional Distress**: Plaintiffs, Daniel Lovelace and Helen Lovelace, husband and wife, and parents of twelve-year old Brett Lovelace, were present and actively seeking immediate post-surgical care for their son in the LeBonheur PACU.    Plaintiffs further assert herein individual claims for negligent infliction of emotional distress against all Defendants, as Plaintiffs were at all times present and suffered severe serious emotional injuries as a result of having witnessed not only the inadequate care rendered to and received by Brett Lovelace, but upon witnessing his death due to the lack of cooperation, the inattention, the indifference and the substandard care rendered to and received by Brett Lovelace by and from Defendants, and those under their supervision, orders, direction or control.  Said claims are supported by expert medical or psychological proof and treatment rendered to the Plaintiffs on account of the harms and conduct alleged herein against Defendants.

D.      **Damages**:  Plaintiffs' son and decedent, Brett Lovelace, twelve years of age, sustained fatal injuries as a proximate result of the negligence of Defendants.  Due to Defendants' negligence and the consequent fatal injury complained of and other harms, Plaintiffs' decedent sustained a severe anoxic brain injury in the LeBonheur PACU or recovery room, while recovering from minor surgery.  Plaintiffs seek damages in this

8

case for decedent's personal injuries and wrongful death, as set forth and to the full extent recoverable under T.C.A. § 20-5-113, including damages for pain and suffering, medical and other expenses, and damages resulting to those for whose use and benefit the decedent's right of action survives, including all pecuniary losses for Defendants' negligent infliction of mental distress to Plaintiffs, Daniel and Helen Lovelace, as independent torts; and for such further consequential damages for the decedent's pecuniary losses due to his untimely death, which exceed, based upon a projection of pecuniary losses of and for Brett Lovelace, for any medical expenses, autopsy, burial expenses, and for any and all consequential losses that arise out of the injury and death of Plaintiffs' decedent, for which these Defendants are responsible.  At trial, there will be proof of the economic losses sustained by the Plaintiffs in this case, as well as any other damages sought.

E.     Plaintiffs reiterate and herein assert all assertions previously made in Plaintiffs' Preliminary Objections to the Admissibility of Exhibits, Deposition Testimony and Witness Testimony filed by Mark P. Clemons [D.E. 168]; and Plaintiffs' Preliminary Objections to the Admissibility of Exhibits, Deposition Testimony and Witness Testimony filed by Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli [D.E. 167].

## Defendants, Dr. Paidipalli and Pediatric Anesthesiologist, P.A's, Contentions

A. **Denial of Claims of Medical Negligence:** Defendants admit that they owed their patient, Brett Lovelace, a duty of care in accordance with the recognized standard of acceptable professional practice in the profession and specialty thereof that the defendants practiced, in the Memphis, Tennessee, community, at the time of the care provided to their patient. Defendants contend that they complied with that duty. Defendants deny that their care

fell below the recognized standard of acceptable professional practice for pediatric anesthesiologists and CRNAs in this community. Defendants therefore deny any and all allegations of medical negligence and deny that they are jointly and/or severally liable for any injury to plaintiffs or plaintiffs' decedent.

Defendants have asserted the doctrine of comparative fault against a non-party, Kelly Kish, who was at all times relevant to this matter a registered nurse employed with Methodist healthcare – Methodist Hospitals d/b/a Le Bonheur Children's Medical Center, and non-party Methodist Healthcare – Memphis Hospitals based on Kelly Kish's deviations from the recognized standard of acceptable professional practice for a registered nurse in this community in the care provided to the patient, Brett Lovelace. Defendants contend that the care provided by Kelly Kish to the patient, Brett Lovelace, was in violation of and a gross deviation from the recognized standard of acceptable professional practice for a registered nurse practicing in the post anesthesia care unit in the Memphis, Tennessee community at the time of the incident. Defendants further contend that Kish's deviation from the applicable standard of care was the legal cause of the injury to, and death of, Brett Lovelace which would not otherwise have occurred.

Defendants contend that Brett Lovelace was awake and spontaneously ventilating adequately at the time of extubation. When the patient left the operating room, he was stable with good vital signs and good respiratory effort. It is not unusual for children to reposition themselves onto their stomachs after extubation, and it is not a deviation from the standard of care to allow a patient to reposition himself to a prone position so long as the patient is breathing adequately. Brett Lovelace was breathing adequately when he arrived from the OR and had good vital signs. Once the CRNA transferred the care of

Brett Lovelace to the PACU nurse, Kelly Kish, there was no obligation on the part of these Defendants to monitor a stable patient such as Brett Lovelace or to check on the patient unless called by Kelly Kish for assistance. Ms. Kish never alerted any of the Defendants or anyone else, for that matter, to any problems until the patient coded. In fact, Ms. Kish fraudulently charted the patient's vital signs and Aldrete scores indicating good post-anesthesia recovery.

Defendants therefore deny any negligence and fault on their part, but allege alternatively that if any of their acts or omissions are found to be in any way a cause of any of the injuries sustained by Plaintiffs and/or Brett, that the acts and omissions on the part of Kelly Kish and Methodist Healthcare – Memphis Hospitals constitute a superseding cause of all injuries sustained by Brett Lovelace and Plaintiffs. All medical care, attention, examination, treatments, prescriptions and procedures rendered or furnished by these defendants were the usual, proper, and customarily accepted medical treatments, attention, care, prescriptions, examinations, and procedures for the condition of plaintiffs' decedent, then and there existing. At no time were defendants guilty of any negligence or improper medical attention, care, treatment, examination, prescriptions or procedures. Defendants performed each and every act of medical attention, care, treatment, examination, prescriptions, and procedures in a careful, proper, and efficient form and in a customary, recognized, accepted and approved manner followed by the medical profession in their community at that time.

## B. Denial of Claims for Negligent Infliction of Emotional Distress:

These Defendants deny each and every allegation regarding the negligent infliction of emotional distress claims. These Defendants would further show that these

claims of negligent infliction of emotional distress were not timely filed, are not supported by any expert medical or psychological proof, and, therefore, cannot be proved pursuant to Tennessee law. Finally, Defendants claim that the parents' stand alone claims for negligent infliction of emotion distress were filed outside of the statute of limitations.

## C. Damages

These Defendants deny that the Plaintiffs are entitled to any relief whatsoever. In the event that the jury returns a verdict in favor of the Plaintiffs, these Defendants would show that Tenn. Code Ann. § 29-39-102 limits all noneconomic damages to $750,000. This category of noneconomic damages includes damages for pain and suffering and consortium. The causes of action for negligent infliction of emotional distress are derivative of the medical negligence claim, if permitted.  Defendants contend that one cap, and one cap only, covers all noneconomic damages in this case. Defendants do not believe that "multiple caps" are recoverable. Defendants further contend that Plaintiffs have not provided the required expert proof to prove that the medical expenses at issue were reasonable, necessary, paid, or payable pursuant to Tenn. Code Ann. § 29-26-119.

### **Defendant, Dr. Clemons,' Contentions**

Dr. Clemons performed the surgery in accordance with the standard of care, and there were no complications intra-operatively.  Anesthesia took over custody of the patient and transferred him to the recovery room.  Brett Lovelace left the operating room and arrived in the recovery room in stable condition, and there was no indication that there was a problem with breathing or anything else.  Once the patient was transferred to PACU, the recovery room nurse was in charge of the patient's care, including monitoring

the airway, oxygenation, blood pressure, vital signs, and was to call anesthesia if there was any problem.

When Dr. Clemons briefly stopped by the patient's bedside in recovery to provide prescriptions to the parents, the patient was breathing normally and doing well.  He was in the prone position with his face turned to the side.  Mrs. Lovelace relayed that this was a normal sleeping position for her son.  Dr. Clemons did not expect the patient to remain in that position as it is the responsibility of the recovery room nurse to arouse the patient with movement, to do routine assessments, and to ensure there is a patent airway.

It is admitted that Dr. Clemons owed Brett Lovelace the duty of care consistent with the standard of acceptable medical care and treatment applicable to otolaryngologists in this community, and Dr. Clemons complied with said duty.  Dr. Clemons denies that his treatment fell below the acceptable standard of care for otolaryngologists in this or a similar community and denies that anything he did or did not do caused an injury to Brett Lovelace that would not have otherwise occurred.

**[Plaintiffs object to the following multi-paragraph narrative statement in its entirety.  The Court previously ruled that Defendant, Clemons, had no affirmative defense of third-party fault against the hospital or its staff.  Contrary to the Court's ruling in its Order Granting Plaintiffs' Motion to Strike the Certificate of Good Faith of Defendant, Mark P. Clemons, M.D. under T.C.A. § 29-26-122, (b) and (c), and Brief [D.E. 118], Defendant here raises factual allegations of an unavailable affirmative defense.  See also Plaintiffs' Preliminary Objections to the Admissibility of Exhibits, Deposition Testimony and Witness Testimony filed by Defendant, Mark P. Clemons [D.E. 168]].**

The patient was stable upon transfer from the operating room to the PACU, and Kelly Kish did not call anybody and ask for assistance until after the code was called approximately 90 minutes after the patient first arrived in the PACU.  Upon the patient's arrival into the PACU, Ms. Kish made an initial assessment but chose not to place the patient on a cardiac monitor, as permitted by hospital policy.  Ms. Kish replaced a pulse oximeter on the patient, but the oximeter worked only intermittently, and Ms. Kish did not notify anyone of the problem and did not replace the device.

At no time did Ms. Kish attempt to speak with or rouse the patient, despite charting a rating of 9 out of 10 on the Aldrete scale.  Such a score would indicate, among other things, full breathing, high oxygen saturation, full consciousness, good circulation, and lively activity and motor control.  Ms. Kish never roused or checked on the patient to make these ratings, but instead based her charting on her observation of the patient's status when he initially entered the PACU.  Among other things, Ms. Kish charted the patient's level of consciousness as "arousable on calling" from the time he entered the PACU up until the "Harvey" code, indicating an unresponsive patient, was called, as detailed below.  Throughout her time caring for the patient, Ms. Kish documented oxygen saturations that were not reflected on the print-out.  Ms. Kish documented, for example, 100% oxygen saturation when the monitor read only "artifact" or levels below 25%.  Ms. Kish documented a series of assessments approximately every 15 minutes that the patient was in the PACU during the patient's first hour, then every 30 minutes thereafter, as dictated by hospital policy.  In her assessments she documented, in addition to the Aldrete scores noted above, breath sounds and readings from an automated blood pressure cuff.

Approximately 30 minutes after the patient was admitted to the PACU, Kelly Kish documented the patient's blood pressure as 118 over 56. Approximately 45 minutes after the patient was admitted to the PACU, Ms. Kish documented the patient's blood pressure as 106 over 53. Approximately 60 minutes after the patient was admitted to the PACU, Kelly Kish charted that the patient's blood pressure was 84 over 42. Kelly Kish did not take any action in response to these changes in the patient's blood pressure. Approximately 90 minutes after the patient was admitted to the PACU, Kelly Kish left to obtain fluids for the patient. Upon her return, the patient's father asked Ms. Kish for help turning the patient, as the patient's leg appeared blue. When the patient was turned, he was noted to be cyanotic, apneic, and pulseless. CPR was initiated, and a "Harvey" code was called. While the patient was eventually resuscitated, he suffered anoxic brain injury and died approximately 48 hours later.

During the patient's time in the PACU, Kelly Kish accessed Facebook and at least one other social media website using a hospital computer. On or about March 23, 2012, Ms. Kish resigned in lieu of termination. It is Defendant's position that Kelly Kish's actions constitute independent superseding and intervening causes that resulted in Brett Lovelace's death.

Regarding damages, Defendant denies any liability in this matter, however, Plaintiffs' recovery of any actual economic losses is limited in that plaintiffs may only recover such damages to the extent that such costs are not paid or payable, and such losses are not replaced or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by Social Security benefits, service benefit programs, unemployment benefits, or any other source except the assets of plaintiffs or of

the members of plaintiffs' immediate family and insurance purchased in whole or in part, privately and individually.  Brett Lovelace was covered under Arkansas Medicaid and all amounts due and owing to the Arkansas Department of Human Services (Medicaid) were paid in full and/or written off.  There are no outstanding medical bills.  The LeBonheur bill was written off as part of its pre-suit settlement.  Plaintiffs are not entitled to recover the amounts that were written off.  Additionally, Plaintiffs have not provided expert proof stating that the medical expenses were reasonable and necessary, and therefore, they may not present the expenses at trial.  Defendant is of the position that Plaintiffs' noneconomic damages are capped at $750,000 pursuant to Tenn. Code Ann. § 29-39-102, and that only one cap applies in the present case.

**Plaintiffs object and dispute the statement that non-economic damages are capped under T.C.A. § 29-39-102(h), as there is substantial evidence of falsified medical records.  Dr. Clemons was asked about this in his deposition, and had no explanation for why his Operative Report was created <u>prior</u> to the surgery, or later revised.**

Finally, Defendant disputes Plaintiffs' claims for negligent infliction of emotional distress.  Plaintiffs' claims for negligent infliction of emotional distress must be proven by expert testimony.  Plaintiffs have not identified experts to testify as to their claims for negligent infliction of emotional distress.  Additionally, Plaintiffs' claims for negligent infliction of emotional distress are time-barred, as they were filed past the statute of limitations.  Therefore, these claims cannot be maintained.

6.      **UNDISPUTED ISSUES OF FACT**:

**Plaintiffs' List of Undisputed Issues of Fact**

1.      That all times pertinent hereto, _i.e._, March 12, 2012 – March 14, 2012, Brett Lovelace, the 12-year old son of Plaintiffs, Daniel and Helen Lovelace, was a patient of these Defendants while he was admitted for the purpose of a tonsillectomy and adenoidectomy at LeBonheur Hospital, which surgery was performed by the surgeon, Mark P. Clemons, while Brett Lovelace was anesthetized by Defendants, Babu Rao Paidipalli and Pediatric Anesthesiologists, P.A..

2.      On the date of his death, March 14, 2012, Brett Lovelace (Date of Birth: August 21, 1999), according to the U. S. Life Tables, 2009, had a life expectancy to age 76 - 87 years.

Brett Lovelace's death was accidental, inasmuch as he did not die of natural causes.

**Defendants, Dr. Paidipalli and Pediatric Anesthesiologist, P.A.'s,
Undisputed Issues of Fact**

1.      Brett Lovelace, the 12-year old son of Plaintiffs, Daniel and Helen Lovelace, was a patient of these Defendants while he was admitted to LeBonheur on March 12, 2012, for the purpose of a tonsillectomy and adenoidectomy.

2.      The surgery was performed by defendant, Mark P. Clemons, an otolaryngologist.  CRNA Grace Freeman, under the supervision of Defendant, Babu Rao Paidipalli, M.D. administered the anesthesia to Brett Lovelace.

3.       The surgery itself proceeded without any complications.

4.      Brett Lovelace was extubated in the operating room after the conclusion of the surgery.

5.      Brett Lovelace was then transferred from the operating room to the pediatric anesthesia care unit ("PACU").

6.      He arrived in the PACU in stable condition.

7.      At some point after the extubation, Brett repositioned himself from a supine position (on his back) to a prone position (on his stomach) with his head to the side.

8.      Dr. Clemons briefly stopped by the patient's bedside in the PACU during which time Brett was breathing normally.

9.      The PACU nurse, Kelly Kish, cared for Brett Lovelace in the PACU after surgery for roughly an hour and a half. Kelly Kish charted a 9 out of 10 on the Aldrete scale[1] throughout Brett's stay in the PACU.

10.      Kish recorded such values despite never actually checking Brett Lovelace or attempting to rouse him.

11.      Kelly Kish also documented oxygen saturations that were not reflected on the monitor print-out. Kelly Kish did not attempt to contact a physician or take any action in response to a low blood pressure reading.

12.      Instead, Kelly Kish accessed Facebook and at least one other social media website using a hospital computer during her care and treatment of Brett Lovelace.

---

[1] Such a score would indicate, among other things, able to move for extremities voluntarily or on command; able to deep breathe and cough freely; blood pressure +/-20% presentation level; arousable on calling; and able to maintain oxygen saturation greater than 90% on room air.

13.     A "Harvey" code, indicating a nonresponsive patient, was eventually called when Kelly Kish and Daniel Lovelace turned Brett Lovelace over and saw that he was blue in the face.

14.     Brett Lovelace was eventually resuscitated, but suffered a severe anoxic brain injury and died approximately 48 hours later.

15.     Kelly Kish never called Dr. Clemons, Dr. Paidipalli or any physician or CRNA, during the 90 minutes that Brett Lovelace was in the PACU under her care.

16.     On March 23, 2012, Kelly Kish resigned in lieu of being terminated.

17.     Kelly Kish lost her nursing license in February 2013.

**Plaintiffs do not admit as true the "undisputed facts" asserted by Defendants, Dr. Paidipalli and Pediatric Anesthesiologist, P.A.**

## Defendant, Dr. Clemons,' List of Undisputed Issues of Fact

1.     On March 12, 2012, Brett Lovelace was admitted to Methodist-LeBonheur Hospital for the purpose of having a tonsillectomy/adenoidectomy, which surgery was performed by Mark Clemons, M.D. with anesthesia services performed by Dr. Babu Rao Paidipalli and Pediatric Anesthesiologists, P.A.

2.     The tonsillectomy/adenoidectomy was performed by Dr. Clemons as planned without any surgical complications.

3.     The patient was extubated after the surgery by Grace Freeman, CRNA, with the supervision of Dr. Paidipalli.

4.    The patient was transported from the operating room to the PACU by the Grace Freeman, who turned the care over to the PACU nurse, Kelly Kish, who assumed responsibility for evaluating and monitoring the patient.

5.    The patient was stable upon transfer from the operating room to the PACU.

6.    Dr. Clemons briefly stopped by the patient's bedside in the PACU, during which time, the patient was breathing normally.

**[Plaintiffs object to the following multi-paragraph narrative statement in its entirety.  The Court previously ruled that Defendant, Clemons, had no affirmative defense of third-party fault against the hospital or its staff.  Contrary to the Court's ruling in its Order Granting Plaintiffs' Motion to Strike the Certificate of Good Faith of Defendant, Mark P. Clemons, M.D. under T.C.A. § 29-26-122, (b) and (c), and Brief [D.E. 118], Defendant here raises factual allegations of an unavailable affirmative defense.  See also Plaintiffs' Preliminary Objections to the Admissibility of Exhibits, Deposition Testimony and Witness Testimony filed by Defendant, Mark P. Clemons [D.E. 168]].**

7.    Upon the patient's arrival into the PACU, Kelly Kish made an initial assessment but chose not to place the patient on a cardiac monitor, as permitted by hospital policy.

8.    Ms. Kish replaced a pulse oximeter on the patient, but the oximeter worked only intermittently, and Ms. Kish did not notify anyone of the problem and did not replace the device.

9.      At no time did Ms. Kish attempt to speak with or rouse the patient, despite charting a rating of 9 out of 10 on the Aldrete scale.  Such a score would indicate, among other things, full breathing, high oxygen saturation, full consciousness, good circulation, and lively activity and motor control.  Ms. Kish never roused or checked on the patient to make these ratings, but instead based her charting on her observation of the patient's status when he initially entered the PACU.  Among other things, Ms. Kish charted the patient's level of consciousness as "arousable on calling" from the time he entered the PACU up until the "Harvey" code, indicating an unresponsive patient, was called, as detailed below.

10.      Throughout her time caring for the patient, Ms. Kish documented oxygen saturations that were not reflected on the print-out.  Ms. Kish documented, for example, 100% oxygen saturation when the monitor read only "artifact" or levels below 25%.

11.      Ms. Kish documented a series of assessments approximately every 15 minutes that the patient was in the PACU during the patient's first hour, then every 30 minutes thereafter, as dictated by hospital policy.  In her assessments she documented, in addition to the Aldrete scores noted above, breath sounds and readings from an automated blood pressure cuff.

12.      Approximately 30 minutes after the patient was admitted to the PACU, Kelly Kish documented the patient's blood pressure as 118 over 56.  Approximately 45 minutes after the patient was admitted to the PACU, Kelly Kish documented the patient's blood pressure as 106 over 53.  Approximately 60 minutes after the patient was admitted to the PACU, Kelly Kish charted that the patient's blood pressure was 84 over 42.  She did not take any action in response to these changes in the patient's blood pressure.

21

13.     Approximately 90 minutes after the patient was admitted to the PACU, Kelly Kish left to obtain fluids for the patient.  Upon her return, the patient was turned, and he was noted to be cyanotic, apneic, and pulseless.  CPR was initiated, and a "Harvey" code was called.

14.     While the patient was eventually resuscitated, he suffered anoxic brain injury and died approximately 48 hours later.

15.     During the patient's time in the PACU, Kelly Kish accessed Facebook and at least one other social media website using a hospital computer.

16.     On or about March 23, 2012, Kelly Kish resigned in lieu of termination.

17.     Kelly Kish did not call Dr. Clemons or Dr. Paidipalli at any time during the approximate 90 minutes that Brett Lovelace was in her care.

18.     Kelly Kish relinquished her nursing license in February 2013.


**Plaintiffs do not admit as true the "undisputed facts" asserted by Defendant, Mark Clemons, M.D.**


7.     <u>**CONTESTED ISSUES OF FACT**</u>:

<u>**Plaintiffs' List of Contested Issues of Fact**</u>

1.     Whether Defendants, or any of them, by act or omission, breached the established standard of care in their respective specialty or as a physician under T.C.A. § 29-26-115, <u>et</u>. <u>seq</u>., as set forth in paragraphs (A) – (D), <u>supra</u>, which was a proximate cause of the harms, injury and damages sought;

2.     Whether Brett Lovelace's endotracheal tube (ETT) was prematurely removed by Defendants, Paidipalli and Pediatric Anesthesiologists, P.A.

3.      Whether Brett Lovelace was abandoned by Defendants, or any of them, after his arrival in the PACU (Post-Anesthesia Recovery Unit).

4.      Whether the Plaintiffs suffered severe emotional injury after witnessing their son's injury and death due to the fault of Defendants;

5.      Whether the negligence of Defendants, or any of them, was a proximate cause of the harms, injury and damages sought here;

6.      Whether Defendants, or any of them, destroyed, falsified or concealed records containing evidence with the purpose of evading liability;

7.      What amount of compensation is appropriate to award Plaintiffs under the evidence for the harms, injury and damages claimed here;

### Defendants, Dr. Paidipalli and Pediatric Anesthesiologist, P.A's, Contested Issues of Fact

1.      Whether the timing of extubation was appropriate and in accordance with the recognized standard of acceptable professional practice.

2.      Whether Grace Freeman, CRNA, appropriately monitored Brett en route to the PACU.

3.      Whether Brett Lovelace was stable at the time he arrived in the PACU.

4.      Whether the handoff between Grace Freeman, CRNA and PACU nurse, Kelly Kish, was appropriate and in accordance with the standard of care.

5.      Whether Brett Lovelace was stable when Grace Freeman, CRNA left the PACU having transferred his care over to PACU nurse Kelly Kish.

6.      Whether Dr. Paidipalli and/or Grace Freeman had a duty, under the standard of care, to periodically return to the PACU and check on Brett Lovelace.

23

7.      Whether Grace Freeman, CRNA and/or Dr. Paidipalli ever saw Brett positioned in a way that his airway was obstructed.

### Defendant, Dr. Clemons', List of Contested Issues of Fact

1.      Whether Brett Lovelace was under the care of Dr. Clemons after his stable transfer to the PACU.

2.      Whether Brett Lovelace's airway was obstructed during Dr. Clemons' visit to the PACU.

8.      **CONTESTED ISSUES OF LAW:**

### Plaintiffs' List of Contested Issues of Law

1.      Whether Defendants' acts and omissions alleged and proven by Plaintiffs as respects Defendants are actionable under T.C.A. § 29-26-115, et. seq., and proximately caused the harms, injury and damages of Plaintiffs;

2.      Whether the elements of a cause of action for negligent infliction of mental distress have been proven by Plaintiffs;

3.      Whether the conduct of Defendants, or any of them, violated T.C.A. § 29-39-102(h).

**Defendant objects to the inclusion of this issue because none of the circumstances in Tennessee Code Annotated § 29-39-102(h) were alleged to have occurred by the Plaintiffs.**

4.      Whether Defendants, or any of them, were properly informed by timely examination of the actual condition and circumstances of Brett Lovelace's airway after his tonsillectomy and delivery to the PACU [Port-Anesthesia Care Unit].

## Defendants, Dr. Paidipalli and Pediatric Anesthesiologist, P.A's
## List of Contested Issues of Law

**Medical Negligence pursuant to Tenn. Code Ann. § 29-26-115[2]**

      1.      What was required of the recognized standard of acceptable professional practice in the profession and specialty of pediatric anesthesiologists practiced in the Memphis community or similar community on March 12, 2012.

      2.      What was required of the recognized standard of acceptable professional practice in the profession and specialty thereof of ENT surgeons practicing in the Memphis community or similar community on March 12, 2012.

      3.      Whether any Defendant acted with less than or failed to act with ordinary and reasonable care in accordance with their respective standard.

      4.      Whether, as a proximate result of the defendants' acts or omissions, the plaintiffs suffered injuries which would not otherwise have occurred.

**Comparative Fault[3]**

---

[2] Plaintiffs have the burden of proving the prongs of Tenn. Code Ann. § 29-26-115(b) with respect to these Defendants.
[3] Defendants have the burden of proving the prongs of Tenn. Code Ann. § 29-26-115 (b) with respect to Kelly Kish.

5.      What was required of the recognized standard of acceptable professional practice in the profession and specialty of nursing practiced in the Memphis community or similar community on March 12, 2012.

6.      Whether Kelly Kish acted with less than or failed to act with ordinary and reasonable care in accordance with this standard.

7.      Whether, as a proximate result of Kelly Kish's acts or omissions, the plaintiffs suffered injuries which would not otherwise have occurred.

8.      Whether Kelly Kish's acts or omissions constituted an intervening or superseding cause of the death of Brett Lovelace.

**Negligent Infliction of Emotional Distress**

8.      Whether the alleged emotional injury sustained by Plaintiffs was a "serious" or severe" emotional injury. Serious and severe emotional injuries occur "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." This claimed injury or impairment must be supported by medical or scientific proof. Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996).

9.      Whether the parents' stand alone claims for negligent infliction of emotional distress were filed outside of the one year statute of limitations for such claims.

**Damages**[4]

10.     Whether the Tennessee capped amount of $750,000 on noneconomic damages applies to the entirety of Plaintiffs' Complaint or to each individual cause of action listed by Plaintiffs in their Complaint. In other words, will Plaintiffs be entitled to recover under three separate caps since each Plaintiff has a negligent infliction of emotional distress claim in addition to their claim for wrongful death.

**Motions in Limine**

11.     Both parties are to file their motions in limine with the Court on the same day as this Order. These Motions in Limine will likely contain multiple contested issues of law regarding evidentiary matters.

<u>**Defendant, Dr. Clemons,' List of Contested Issues of Law**</u>

1.     Whether Babu Rao Paidipalli, M.D. violated the recognized standard of acceptable professional practice for his profession and specialty of pediatric anesthesiology in this community, or a similar community, in the care he provided to Brett Lovelace on March 12, 2012.

2.     Whether any action on the part of Dr. Paidipalli on March 12, 2012 was the legal cause of an injury to Brett Lovelace that would not have occurred otherwise.

3.     Whether any agent or employee of Pediatric Anesthesiologists, PA, (other than Dr. Paidipalli) violated the recognized standard of acceptable professional practice for the profession and specialty of pediatric anesthesiology in this community, or a similar community, in the care provided to Brett Lovelace on March 12, 2012.

---

[4] This contested issue of law only exists if Plaintiffs are able to prove their negligent infliction of emotional distress claim. Defendants contend that Plaintiffs lack the required expert proof and therefore no such claim may be proved at trial.

4.     Whether any action on the part of Pediatric Anesthesiologists, PA, (other than Dr. Paidipalli) on March 12, 2012 was the legal cause of an injury to Brett Lovelace that would not have occurred otherwise.

5.     Whether Mark Clemons, M.D. violated the recognized standard of acceptable professional practice for his profession and specialty of otolaryngology in this community, or a similar community, in the care he provided to Brett Lovelace on March 12, 2012.

6.     Whether any action on the part of Dr. Clemons on March 12, 2012 was the legal cause of an injury to Brett Lovelace that would not have occurred otherwise.

**[Plaintiffs object to the following multi-paragraph narrative statement in its entirety.  The Court previously ruled that Defendant, Clemons, had no affirmative defense of third-party fault against the hospital or its staff.  Contrary to the Court's ruling in its Order Granting Plaintiffs' Motion to Strike the Certificate of Good Faith of Defendant, Mark P. Clemons, M.D. under T.C.A. § 29-26-122, (b) and (c), and Brief [D.E. 118], Defendant here raises factual allegations of an unavailable affirmative defense.  See also Plaintiffs' Preliminary Objections to the Admissibility of Exhibits, Deposition Testimony and Witness Testimony filed by Defendant, Mark P. Clemons [D.E. 168]].**

7.     Whether Kelly Kish, violated the recognized standard of acceptable professional nursing practice in this community, or a similar community, in the care she provided to Brett Lovelace on March 12, 2012.

8.     Whether any action on the part of Kelly Kish on March 12, 2012 was the legal cause of an injury to Brett Lovelace that would not have occurred otherwise.

9.      Whether Plaintiffs' proof supports their claim for negligent infliction of emotional distress.


9.      **LISTS OF EXHIBITS:**

**Plaintiffs' List of Exhibits**


**Plaintiffs expect to offer the following documents as Exhibits:**

1.      Photographs taken by Helen Lovelace in the PACU on March 12, 2012;

2.      Photographs taken by Helen Lovelace of her son on prior occasions;

3.      Photographs taken by Helen Lovelace of her son, Dr. Paidipalli, Dr. Clemons,     Grace Freeman, Kelly Kish, and others at Le Bonheur Children's Medical Center before and after the surgery [non-PACU photos];

4.      Le Bonheur Children's Medical Center /Methodist Le Bonheur Healthcare medical records;

5.      Le Bonheur Children's Medical Center/Methodist Le Bonheur Healthcare medical bills;

6.      Mark Clemons, M.D.'s medical records;

7.      Medical Illustrations prepared by MediVisuals, Inc.;

8.      Jason D. Kennedy, M.D.'s Expert Report, Curriculum Vitae, reasons, bases, support, references;

9.      Frank J. Peretti, M.D.'s, Expert Report, Curriculum Vitae, Death Certificate, Autopsy Report, reasons, basis, support, references, exhibits, notes, photographs, findings, file; and

10.     Robert E. "Jay" Marsh's Expert Report, Curriculum Vitae, exhibits, tables, stated bases and reasons.


**Plaintiffs may offer the following documents as Exhibits:**

1.      Any pleadings filed in this cause, including discovery responses served in this   cause;

2.      Any exhibits to any deposition taken in this cause;

3.      Le Bonheur Children's Medical Center's protocol effective for March 12-14, 2012 for dictation of surgical reports;

4.      Le Bonheur Children's Medical Center's protocol for anesthesia services provided on March 12, 2012;

5.      Summaries of fault and damages;

6.      Timeline of Events Chart;

7.      Definitions or Glossary chart/boards;

8.      Jury Instructions chart/boards;

9.      Pulse Oximeter, supplemental oxygen equipment and patient dummy;

10.     A.S.A. Nurse Anesthetist Scope of Practice and Rules;

11.     Letter written by Allen Fincher, Finco Trucking;

12.     Letter written by L. Dewayne Weeks;

13.     Any and all exhibits identified or used by the Defendants, Pediatric Anesthesiologists, P.A., Babu Rao Paidipalli and Mark P. Clemons; and

.

14.     Copies of all March 12, 2012 O.R. Reports at LeBonheur of Dr. Mark Clemons, noting his time of dictation, time of transcription and any alterations or re-dating/re-timing of records, and the name(s) or initials of transcriptionists.

***Dr. Clemons' Objections to Plaintiffs' Exhibit List***

Defendant objects to a number of the exhibits identified in Plaintiffs' pretrial disclosures and those listed in this order.  These objections are on file with the Court (D.E. #166), and these Defendants incorporate those objections into this order.  Specifically, these Defendants object to the following:

   a.  **Photographs taken by Helen Lovelace in the PACU and at LeBonheur Children's Medical Center before and after surgery**

_Objections/Grounds_: Defendant has not had an opportunity to review original files of the photographs and therefore objects to their use at trial; Shahid v. Detroit, 889 F.2d 1543, 1546 (6th Cir. Mich. 1989); Fed. R. Evid. 403.

**b.  Photographs taken by Helen Lovelace of her son on other occasions**

_Objections/Grounds_: Defendant has not had an opportunity to review these photographs, and therefore objects to their use at trial.

**c.  LeBonheur Medical Bills**

_Objections/Grounds_:  Tenn. Code Ann. § 29-26-119; Richardson v. Miller, 44 S.W.3d 1, 32 (Tenn. Ct. App. 2000); Fed. R. Evid. 403.

**d.  Medical Illustrations prepared by MediVisuals, Inc.**

_Objections/Grounds_: Defendant has not had an opportunity to review these illustrations, and therefore objects to their use at trial.

**e.  Expert Materials**

_Objections/Grounds_: Fed. R. Civ. P. 26(a)(3)(A)(iii); Fed. R. Evid. 801; Fed. R. Evid. 702; Fed. R. Evid. 703; Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 728 (6th Cir. 1994); Fed. R. Evid. 403.

**f.  LeBonheur Children's Medical Center's procedures effective for March 12-14, 2012 for dictation of surgical reports**

_Objections/Grounds_: The procedures were obtained beyond the discovery deadlines, and as such, should be inadmissible at trial;  Fed. R. Evid. 403.

**g.  Summaries of fault and damages; timeline of events chart; definitions of glossary chart/boards; jury instructions chart/boards; pulse oximeter, supplemental oxygen equipment and patient dummy**

Objections/Grounds: Defendant has not had any opportunity to inspect these potential exhibits and therefore objects to their use at trial.

**h.  Letters written by Allen Fincher and L. Dewayne Weeks**

Objections/Grounds:  Speculative; Fed. R. Evid. 403.

**i.   Copies of operating room reports of Dr. Mark Clemons noting alterations or re-dating/re-timing.**

Objections/Grounds: Defendant has not had any opportunity to inspect any such reports and therefore objects to their use at trial.

*Defendants, Dr. Paidipalli and Pediatric Anesthesiologist, P.A's, Objections to Plaintiffs' Exhibit List*

Pursuant to this Court's Order found in the Notice of Re-Setting, if the parties cannot stipulate to exhibits, then the objections to these exhibits must be noted in the proposed pretrial order. Defendants object to a number of the exhibits identified in Plaintiffs' pretrial disclosures and those listed in this order. These objections are on file with the Court, and these Defendants incorporate those objections into this order. Specifically, these Defendants object to the following:

1.   All photographs taken by Helen Lovelace. Fed. R. Evid. 401, 402 and 403. Defendants

Objections/Grounds: Lack authenticity, Fed. R. Evid. 401-403.

2.  Le Bonheur Children's Medical Center/Methodist Le Bonheur Healthcare medical bills.

Objections/Grounds: Tenn. Code Ann. § 29-26-119. Nalawagan v. Dang, 2010 U.S. Dist. LEXIS 114576, 2010 WL 4340797 (W.D. Tenn. Oct. 27, 2010), Fed. R. Evid. 401, 402, 403.

3.  Medical Illustrations prepared by MediVisuals.

Objections/Grounds: Defendants have not had an opportunity to review these illustrations, and therefore object to their use at trial.

4.  Expert Reports of Jason D. Kennedy, M.D., Frank J. Peretti, M.D., and Robert E. "Jay" Marsh.

Objections/Grounds: Hearsay. Fed. Rules, 801-802, 805, Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 729 (6th Cir. 1994).

5.  Jason D. Kennedy, M.D.'s reasons, bases, support and references

Objections/Grounds: Hearsay, Fed. R. Evid. 801-803, Fed. R. Evid. 803 (18), MARSH v. TVA, 765 F.2d 145 (6th Cir. 1985) (citing Dawson v. Chrysler Corp. 630 F.2d 950 (3d Cir. 1980); Garbincius v. Boston Edison Co., 621 F.2d 1171 (1st Cir. 1980)).

6.  Frank J. Peretti, M.D.'s reasons, basis support, references, exhibits, notes, photographs, findings, and file

Objections/Grounds: Fed. R. Evid. 401-403, 801-803

7.  Le Bonheur Children's Medical Center's procedures for the anesthesia services provided on March 12, 2012.

Objections/Grounds: Defendants have not had an opportunity to review these procedures, and therefore object to their use at trial.

8.  Summaries of Fault and Damages.

> Objections/Grounds: Defendants have not had an opportunity to review these summaries, and therefore object to their use at trial.

9.  Timeline of Events Chart

> Objections/Grounds: Defendants have not had an opportunity to review this timeline/chart, and therefore object to its use at trial.

10. Definitions of glossary chart/boards

> Objections/Grounds: Defendants have not had an opportunity to review these definitions and therefore object to their use at trial.

11. Jury Instructions chart/board

> Objections/Grounds: Defendants have not had an opportunity to review these charts/boards and therefore object. Defendants also object under Fed. R. Evid. 401-403.

12. Pulse Oximeter, Supplemental Oxygen Equipment, and Patient Dummy

> Objections/Grounds: Defendants have not had an opportunity to review this equipment and therefore object to its use at trial.

13. A.S.A Nurse Anesthetist Scope of Practice and Rules

> Objections/Grounds: Fed. R. Evid. 401-403, 801-803, Tenn. Code Ann. § 29-26-115

14. Letters written by Allen Fincer, Finco Trucking and L. Dewane Weeks

> Objections/Grounds: Hearsay, Fed. R. Evid 401-403, 801-804.

### Defendants' List of Exhibits

**Dr. Paidipalli and Pediatric Anesthesiologists may offer the following documents as Exhibits:**

1. Allegations Report from the Tennessee Department of Health Office of Investigations dated March 27, 2012 regarding Kelly Kish's care in the PACU of LeBonheur Children's Hospital on March 12, 2012.

2. Affidavit of Denise L. Moran dated September 30th, 2013.

3. Tennessee Board of Nursing Agreed Order dated February 22, 2013 which outlines the State's investigation into Kelly Kish, R.N's treatment of Brett Lovelace and the disciplined rendered.

4. Medical Records of Methodist Healthcare – Memphis Hospitals d/b/a LeBonheur Children's Hospital's pertaining to the treatment. (Bates MLBH 0001 to 0591).

5. Methodist LeBonheur PACU monitor strips used in the care of Brett in the PACU on March 12, 2012.

6. Brett Lovelace's Healthcare records from Dayspring Behavioral Services in Marion Arkansas. (Bates DBHS 0001-0506).

7. Brett Lovelace's Healthcare records from UT Medical Group (Bates UTMG 0001 – 0024).

8. Brett Lovelace's Healthcare records from Memphis Neurology (Bates MN 0001-0024).

9. Brett Lovelace's Healthcare records from Mid South Pediatrics (Bates MSP 0001 – 00206)

10. Dr. Mark Clemons' Medical Records

11. Landsman IS, Wekhaven J: Anesthesia for Pediatric Otorhinolaryngologic Surgery. In Motoyama EK and Davis PJ ed. Smith's Anesthesia for Infants and Children. Mosby, New York: pp. 789-822, 2006.

12. <u>Landsman IS</u>: Anesthesia for Pediatric Otorhinolaryngologic Surgery. In Motoyama EK and Davis PJ ed. Smith's Anesthesia for Infants and Children. Mosby, Philadelphia: pp. 786-820, 2011.

13. Chart Illustration of Aldrete Scores and Kish's Charting of Aldrete Scores

14. Chart Illustration of Kelly Kish's Charting of Vital Signs and Aldrete Scores

15. Illustrations of Brett's Positioning

16. Jackson Reese Oxygen Delivery System including mask and ambu bag

17. Exemplar of Pulse Oximeter Probe

18. Exemplar of Endotracheal Tube

19. Facebook Logo

20. Caring Bridge Logo

21. Photograph of Babu Rao Paidipalli.

22. Photograph of Grace Freeman

23. Photograph of Telephone issued by Methodist to Dr. Paidipalli.

24. Photographs of LeBonheur PACU including photograph of exemplar gurney used to transport patient between OR and PACU. (PACU Photos 001-040)

25. Schematics Diagram of 2nd Floor of the Le Bonheur Children's Hospital.

26. Defendant reserved the right to utilize selected photographs (provided by Plaintiffs' counsel during discovery) of Brett Lovelace taken at LeBonheur prior to and immediately following the March 12, 2012 operation subject to the Court's ruling on anticipated motions in limine and objections made to these numerous photographs.

27. Curriculum Vitae of Rao Paidipalli, M.D.

28. Curriculum Vitae of Grace Freeman, CRNA

29. Curriculum Vitae of Timothy Martin, M.D.

30. Curriculum Vitae of Ira Landsman, M.D.

31. Curriculum Vitae of Dwayne Accardo, CRNA

32. Curriculum Vitae of Diane Dowdy, R.N.

33. Curriculum Vitae of Edward L. Brundick

34. All pleadings and discovery responses filed by Plaintiffs

**Dr. Paidipalli and Pediatric Anesthesiologists may offer the following documents as Exhibits:**

1. Redacted Personnel File of Kelly Kish from Methodist LeBonheur

2. Staffing logs from Methodist LeBonheur PACU

3. Any exhibits to any depositions taken in this cause

4. Curriculum Vitae of Jerome Thompson, M.D.

5. Curriculum Vitae of Jay Werkhaven, M.D.

6. Curriculum Vitae of Jason Kennedy, M.D.

7. Any Exhibit Identified by Co-Defendant

8. Any Exhibit Identified by Plaintiffs

*Plaintiffs' Objections to Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli's Exhibit List.*

Plaintiffs object to a number of the Exhibits identified in Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D.'s Pretrial Disclosures and those listed in this order.  These objections are on file with the Court [D.E. 167], and these Plaintiffs incorporate those objections into this order.

**Dr. Clemons expects to offer the following documents as exhibits:**

1. PACU demonstrative photos;

2. Methodist LeBonheur Hospital/Ortho Clinic medical records;

3. Dr. Mark Clemons' medical records;

4. Methodist LeBonheur Hospital medical records;

5. Dr. John Buntin's medical records;

6. Memphis Neurology medical records;

7. Braces by Burris (photos and medical records);

8. Children's Dental Group records;

9. Day Spring Behavioral Health Services medical records for Brett Lovelace;

10. Mid-South Pediatrics medical records;

11. Crittenden Regional Hospital medical records;

12. Dr. Samuel Meredith's medical records;

13. Crossridge Community Hospital medical records;

14. UT Medical Group's medical records;

15. Dr. Mark Clemons' CV;

16. Dr. Jay Werkhaven's CV;

17. Dr. Jerome Thompson's CV;

18. Kelly Kish, R.N.'s CV;

19. Diane Dowdy, R.N.'s CV;

20. Edward Brundick, III, CIME, CFP's CV;

21. Dr. Clemons' medical illustrations (2);

22. LeBonheur second floor schematics diagram;

23. State of Tennessee Nursing Board Allegations Report;

24. Tennessee Board of Nursing Agreed Order re: Kelly Kish, R.N.;

**Dr. Clemons may offer the following documents as exhibits:**

25. Crittenden Regional Hospital Mid-South Minor Med medical records of Helen
    Lovelace;

26. Coast to Coast HealthStop medical records of Helen Lovelace;

27. Women's Clinic of Forrest City medical records of Helen Lovelace;

28. Day Spring Behavioral Services medical records of Helen Lovelace;

29. Department of Veteran Affairs medical records of Daniel Lovelace;

30. Any exhibits identified by co-defendants, Dr. Paidipalli and Pediatric
    Anesthesiologists, P.A.;

31. Any pleadings filed in this cause;

32. Any exhibits to any depositions taken in this cause;

33. Any exhibits identified by plaintiffs.


*Plaintiffs' Objections to Dr. Clemonsi's Exhibit List.*

**Plaintiffs object to a number of the Exhibits identified in Mark P. Clemons'
Pretrial Disclosures and those listed in this order.  These objections are on file with
the Court [D.E. 168], and these Plaintiffs incorporate those objections into this
order.**


10.   <u>**LIST OF WITNESSES**</u>:

<u>**Plaintiffs' List of Witnesses**</u>

1.      Daniel Lovelace
        Address known to all

2.      Helen Lovelace
        Address known to all

3.      Jason D. Kennedy, M.D. [Expert]
        VUMC Department of Anesthesiology
        1211 21st Avenue South, Medical Arts Bldg. 526
        Nashville, TN 37232
        [Anesthesia/physician standard-of-care, fault, causation]

4.      Robert E. "Jay" Marsh, C.P.A., C.F.A., P.E., J.D. [Expert]
        Marsh Economic Consulting, Inc.
        6 Levant Drive
        Little Rock, AR  72212-2658
        [Economist – Damages/Losses due to death]

5.      Frank J. Peretti, M.D. [Expert]
        Forensic Pathologist
        Arkansas State Crime Lab
        3 Natural Resources Drive
        Little Rock AR 72205
        [Pathologists/death; performed autopsy; cause of death]

**Plaintiffs may call the following witnesses:**

1.      Any and all witnesses listed by Defendants, including the Defendants, their agents, servants and employees;

2.      Le Bonheur Children's Medical Center nursing personnel, including, without limitations, the following:

        Wayne Sutter, EMT, the Methodist EMT who observed Brett Lovelace in the PACU;  Elizabeth Hinson, R.N, Margarte Yoste, R.N, Brittany M. Dye, Halie N. Henson, Emily Todd, Mark Bugnitz, M.D., Kelly Kish

3.      Plaintiffs or family members identified in Defendants' discovery responses who filed malpractice claims against a Defendant, who have knowledge of prior relevant errors or similar circumstances of fault.

4.      Allen Fincher, Owner, Finco Trucking
        Address Unknown

5.      L. Dewayne Weeks, Co-Owner of W & W Landleveling;
        Address Unknown

***Dr. Paidipalli and Pediatric Anesthesia's Objections to Plaintiffs' Witnesses***

Pursuant to this Courts' Order found in the Notice of Re-setting, any objection to a witness in general must be noted in the proposed joint pretrial order. Defendants object to Plaintiffs calling any witness who has previously filed malpractice claims against Dr. Paidipalli. Plaintiffs wish to call the plaintiffs or family members of these prior lawsuits to testify in this matter. Their testimony would be completely irrelevant as they have nothing to do with the case at hand. Fed. R. Evid. 404 (a) (1), Fed. R. Evid. 404 (b) (1). Donathan v. Orthopaedic & Sports Med. Clinic, PLLC, 2009 U.S. Dist. LEXIS 99557 (E.D. Tenn. Oct. 26, 2009), Fed. R. Evid. 401, 402, 403, 602, 702. For a more detailed objection, please see Defendants' Objections to Plaintiffs' Pretrial Disclosures.

***Dr. Clemons' Objections to Plaintiffs' Witness List***

Defendant's objections to Plaintiffs' Witness List are on file with the Court (D.E. #166), and these Defendants incorporate those objections into this order. Specifically, these Defendants object to the following:

**a. Photographs taken by Helen Lovelace in the PACU and at LeBonheur Children's Medical Center before and after surgery**

Objections/Grounds: Defendant has not had an opportunity to review original files of the photographs and therefore objects to their use at trial; Shahid v. Detroit, 889 F.2d 1543, 1546 (6th Cir. Mich. 1989); Fed. R. Evid. 403.

**a. LeBonheur Children's Medical Center nursing personnel**

Objections/Grounds: Fed. R. Civ. P. 26(a)(3)(A)(i); Defendant will not have an opportunity to specifically object to the use of unnamed

individuals falling into this category before trial and will be prejudiced by

their use at trial.

**b. Plaintiffs or family members identified in Defendants' discovery responses who filed malpractice claims against a Defendant, who have knowledge of prior errors**

Objections/Grounds: Fed. R. Evid. 402; Fed. R. Evid. 403; Fed. R. Evid.

404; Fed. R. Evid. 608; Fed. R. Evid. 609; Donathan v. Orthopaedic &

Sports Med. Clinic, PLLC, No. 4:07-cv-18, 2009 U.S. Dist. LEXIS 99557,

at *25 (E.D. Tenn. Oct. 26, 2009)

## Defendants' List of Witnesses

**Dr. Paidipalli expects to call the following witnesses:**

1. Rao Paidipalli, M.D.

   - Address and Telephone Number Previously Provided

2. Grace Freeman, CRNA

   - Address and Telephone Number Previously Provided

3. Mark Clemons, M.D.

   - Address and Telephone Number Previously Provided

4. Kelly Kish, RN
   9972 Parrish Drive,
   Lakeland, TN 38002
   (901) 867-1058

5. Timothy Martin, M.D. (Expert)

   - Address and Telephone Number Previously Provided.

   - Will provide testimony on anesthesia standard of care, lack of breach, and lack of causation

6. Ira Landsman, M.D. (Expert)

- Address and Telephone Number Previously Provided

- Will provide testimony on anesthesia standard of care, lack of breach, and lack of causation

7. Dwayne Accardo, CRNA (Expert)

- Address and Telephone Number Previously Provided

- Will provide testimony on CRNA standard of care, lack of breach, and lack of causation

8. Diane Dowdy, RN. (Expert)

- Address and Telephone Number Previously Provided

- Will provide testimony on nursing standard of care, lack of breach, and lack of causation

9. Edward L. Brundick, III (Expert)

- Address and Telephone Number Previously Provided

- Economist who will provide testimony on damages and losses due to death.

10. Jerome Thompson, M.D. (Expert)

- Address and Telephone Number Previously Provided

- Will provide testimony on ENT standard of care, lack of breach, and lack of causation.

11. Jay Werkhaven, M.D. (Expert)

- Address and Telephone Number Previously Provided

- Will provide testimony on ENT standard of care, lack of breach, and lack of causation.

12. Joel Saltzman
    Chief of Anesthesiology for Pediatric Anesthesiologists, P.A.
    Designated Corporate Representative
    50 North Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

13. Custodian of Records for Methodist LeBonheur Hospitals
    50 North Dunlap
    Memphis, TN 38103
    901-516-6000

14. Custodian of Records for University of Tennessee Medical Group
    777 Washington Ave., Suite P110
    Memphis, TN 38105
    (901)-866-8864

15. Custodian of Records for Mid-South Pediatricians
    2921 Highway 77, Suite 21
    Marion, AR 72364
    870-739-5311

16. Custodian of Records for DaySpring Behavioral Services
    2688 N. State Highway 77
    Marion, AR 72364
    Telephone: 870-739-1700

17. Custodian of Records for Tennessee Board of Nursing
    665 Mainstream Drive
    Nashville, TN 37243
    (615) 532-7665

18. Custodian of Records for Memphis Neurology
    7645 Wolf River Circle
    Germantown, TN 38138-1743
    (901)-405-0275

**If the need arises, Dr. Paidipalli may call:**

1. Helen Lovelace

44

- Address and Telephone Number Previously Disclosed

2. Daniel Lovelace

   - Address and Telephone Number Previously Disclosed

3. Curtis Lovelace

   - Address and Telephone Number Previously Disclosed

4. Taylor Lovelace

   - Address and Telephone Number Previously Disclosed

5. Frank J. Peretti, M.D.

   - Address and Telephone Number Previously Provided

6. Shirley Pickering
   State Nursing Board Investigator
   2979 Highway 45 Bypass, #C, Jackson, TN 38305
   (731) 984-9724

7. Marc R. Guilford
   Assistant General Counsel
   Tennessee Department of Health
   Office of General Counsel
   220 Athens Way, Suite 210
   Nashville, Tennessee 37243
   (615) 741-1611

8. Denise L. Moran
   Tennessee Department of Health
   Office of Investigations
   227 French Landing, Suite 201
   Nashville, TN 37243
   (615) 532-3421

9. Thomas G. Stovall
   312 Rosa L. Parks Avenue
   Snodgrass Tower
   Nashville, TN 37243
   (615) 741-7008

10. Wayne Sutler
    50 N. Dunlap Street

Memphis, TN 38103
(901) 287-5437

11. Elesia Turner, R.N.
    50 N. Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

12. Mark Bugnitz, M.D.
    848 Adams Avenue
    Memphis, TN 38103
    (901) 287-6261

13. Elizabeth Hinson, RN
    50 N. Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

14. Margaret Yoste
    50 N. Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

15. Brittany Dye
    50 N. Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

16. Samantha Ransone, RN
    50 N. Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

17. Sue Watson
    50 N. Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

18. Custodian of Medical Equipment at LeBonheur Hospital
    50 N. Dunlap Street
    Memphis, TN 38103
    (901) 287-5437

19. Any witnesses identified by co-defendant, Mark Clemons, M.D.

20. Any witnesses identified by Plaintiffs

***Plaintiffs' Objections to Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli's Witnesst List.***

Plaintiffs object to a number of the Witnesses identified in Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli, M.D.'s Pretrial Disclosures and those listed in this order.  These objections are on file with the Court [D.E. 167], and these Plaintiffs incorporate those objections into this order.

Dr. Clemons expects to call the following witnesses:

1. Dr. Mark Clemons

   Address has been previously provided.

2. Dr. Jay Werkhaven

   Address has been previously provided.

3. Dr. Jerome Thompson

   Address has been previously provided.

4. Edward Brundick, III, CIME, CFP

   Address and phone number previously provided.

[Plaintiffs object to the following multi-paragraph narrative statement in its entirety.  The Court previously ruled that Defendant, Clemons, had no affirmative defense of third-party fault against the hospital or its staff.  Contrary to the Court's ruling in its Order Granting Plaintiffs' Motion to Strike the Certificate of Good Faith of Defendant, Mark P. Clemons, M.D. under T.C.A. § 29-26-122, (b) and (c), and Brief [D.E. 118], Defendant here raises factual allegations of an unavailable

**affirmative defense.  See also Plaintiffs' Preliminary Objections to the Admissibility of Exhibits, Deposition Testimony and Witness Testimony filed by Defendant, Mark P. Clemons [D.E. 168]].**

      5.Kelly Kish, R.N.

           9972 Parrish Drive
           Lakeland, TN 38002
           Telephone:  901-485-7793

5.  Diane Dowdy, R.N.

      Address and phone number previously provided.

**Dr. Clemons may call the following witnesses:**

6.  Dr. Babu Rao Paidipalli

    Address and phone number previously provided.

7.  Grace Freeman, CRNA

    Address and phone number previously provided.

8.  Daniel Lovelace

      Address and phone number known to Plaintiffs.

9.  Helen Lovelace

      Address and phone number known to Plaintiffs.

10. Curtis Lovelace

      Address and phone number known to Plaintiffs.

11. Taylor Lovelace

      Address and phone number known to Plaintiffs.

12. Dr. Timothy Martin

      Address and phone number previously provided.

13. Dr. Ira Landsman

     Address and phone number previously provided.

14. Dwayne Accardo, CRNA

     Address and phone number previously provided.

15. Medical Records Custodian for Methodist LeBonheur Hospital Orthopedic Clinic

     848 Adams Avenue,
       Memphis, TN  38103
     Telephone:  901-287-5437

16. Medical Records Custodian for Methodist LeBonheur Hospital

    50 North Dunlap
    Memphis, TN  38103
    Telephone:  901-516-6000

17. Medical Records Custodian for Dr. John Buntin

    312 N. Missouri
    West Memphis, AR 72301
    Telephone:  870-735-1673

18. Medical Records Custodian for Memphis Neurology

    7645 Wolf River Circle
    Germantown, TN  38138-1743
    Telephone:  901-405-0275

19. Medical Records Custodian for Braces by Burris

    126 W. Bond, West Memphis, AR 72301
    Telephone:  870-735-7805

20. Medical Records Custodian for Children's Dental Group

    303 Bancario, #11-12
    Marion, AR  72364
    Telephone:  870-739-2992

21. Medical Records Custodian for Day Spring Behavioral Health Services

    2688 N. State Highway 77

Marion, AR  72364
Telephone:  870-739-1700

22. Medical Records Custodian for the Department of Veteran Affairs

1030 Jefferson Avenue
Memphis, TN  38104
Telephone:  901-523-8990

23. Medical Records Custodian for Mid-South Pediatrics
(Drs. Ukwe and Swami)

2921 Highway 77, Suite 21
Marion, AR  72364
Telephone:  870-739-5311

24. Medical Records Custodian for Crittenden Regional Hospital – Closed –

200 W. Tyler Avenue
West Memphis, AR  72301
Telephone:  870-735-1500

25. Medical Records Custodian for Dr. Samuel Meredith

1231 Arkansas 77, #1
Marion, AR  72364
Telephone:  870-735-4400

26. Medical Records Custodian for Crossridge Community Hospital

310 S. Falls Blvd.
Wynne, AR  72396
Telephone:  870-238-3300

27. Medical Records Custodian for UT Medical Group (Drs. Ward, Srinivasan and
Schoumacher)

1407 Union Ave., Suite 700
Memphis, TN 38104
Telephone:  901-866-8864

28. Medical Records Custodian for Crittenden Regional Hospital Mid-South Minor
Med

710 N. Missouri
West Memphis, AR  72301-3150

Telephone:  870-400-2296

29.  Medical Records Custodian for Coast to Coast HealthStop

3900 Petro Road, Suite 111
West Memphis, AR  72301
Telephone:  870-732-0332

30.  Medical Records Custodian for Women's Clinic of Forrest City

902 Holiday Drive, #102
Forrest City, AR  72335
Telephone:  870-633-0091

31.  Medical Records Custodian for Day Spring Behavioral Services

2688 N. State Highway 77
Marion, AR  72364
Telephone:  870-739-1700

32.  Any witnesses identified by co-defendants, Pediatric Anesthesiologists, P.A. and
Babu Rao Paidipalli

50 North Dunlap
Memphis, TN  38103
Telephone:  901-287-6060

and

33.  Any witnesses identified by plaintiffs.

*Plaintiffs' Objections to Dr. Clemons' Witnesst List.*

**Plaintiffs object to a number of the witnesses identified in Mark P. Clemons'
Pretrial Disclosures and those listed in this order.  These objections are on file with
the Court [D.E. 168], and these Plaintiffs incorporate those objections into this
order.**

11.  <u>**DEPOSITION TESTIMONY**</u>:

**Plaintiffs' Deposition Testimony**

1.      Plaintiffs, Daniel Lovelace and Helen Lovelace, anticipate using all or portions of the depositions of Babu Rao Paidipalli, Mark P. Clemons and Kelly Kish, subject to the Court's ruling on objections stated in the depositions or otherwise, under the Federal Rules of Evidence and Federal Rules of Civil Procedure.  To the extent that Defendants intend to use Plaintiffs' depositions, or parts thereof, Plaintiffs reserve the right to offer portions as well for rebuttal or completeness, so as to address the matters offered by a defendant.  The same procedure applies to any experts offered who were deposed or other witnesses.

### *Dr. Paidipalli and Pediatric Anesthestiology Objections to Plaintiffs' Deposition Testimony*

Pursuant to this Courts' Order found in the Notice of Re-Setting, all objections to any deposition testimony must be noted in the proposed joint pretrial document so that the court may rule on such objections prior to trial. Plaintiffs identify the deposition of Kelly Kish as a deposition they anticipate using subject to the Court's ruling on objections stated in the depositions or otherwise under the Federal Rules of Evidence. Pursuant to this order, Defendants again raise their objection to the Plaintiffs' use of Kish's deposition because Kelly Kish is not a party to this action and has not shown to be unavailable pursuant to Federal Rule of Civil Procedure 32 (a) (4).

Plaintiffs also identified for use at trial the depositions of Babu Rao Paidipalli, M.D. and Mark P. Clemons, M.D. These Defendants object to the following portions of the deposition testimony:

### Objections to the Deposition of Mark Clemons, M.D.

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|

| | | | | |
|---|---|---|---|---|
| 17 | 9 | 17 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 18 | 1 | 19 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 19 | 24 | 25 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 26 | 20 | 27 | 16 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 28 | 23 | 29 | 3 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 29 | 22 | 30 | 10 | 401, 402, 403, 602, 611 |
| 30 | 16 | 31 | 3 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 35 | 10 | 36 | 2 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 36 | 18 | 37 | 1 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 38 | 11 | 39 | 3 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 42 | 14 | 44 | 15 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 46 | 2 | 49 | 17 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 50 | 2 | 53 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 53 | 18 | 54 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 56 | 6 | 57 | 4 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 59 | 14 | 60 | 1 | 401, 402, 403, 602, 611 |
| 60 | 2 | 60 | 17 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 61 | 12 | 61 | 22 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 62 | 5 | 62 | 12 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 62 | 13 | 62 | 22 | 401, 402, 403, 602, 611, 701, 702, 703 |

**Objections to the Deposition of Rao Paidipalli, M.D.**

| Page | Line | Through Page | Line | FRE Basis |
|---|---|---|---|---|
| 13 | 9 | 13 | 16 | 401, 402, 403 |
| 20 | 7 | 20 | 18 | 401, 402, 403, 602 |
| 21 | 8 | 23 | 1 | 401, 402, 403, 602 |
| 23 | 13 | 24 | 4 | 401, 402, 403, 611, 701, 702, 703 |
| 25 | 4 | 25 | 15 | 401, 402, 403 |
| 26 | 19 | 27 | 22 | 401, 402, 403, 602, 611 |
| 29 | 7 | 29 | 10 | 401, 402, 403, 602, 611 |
| 31 | 4 | 31 | 21 | 401, 402, 403, 611, 701, 702, 703 |
| 32 | 24 | 33 | 13 | 401, 402, 403, 602, 611 |
| 33 | 14 | 33 | 21 | 401, 402, 403, 602, 611 |
| 34 | 14 | 34 | 21 | 401, 402, 403, 602, 611 |
| 35 | 14 | 35 | 22 | 401, 402, 403, 602, 611 |
| 35 | 24 | 36 | 12 | 401, 402, 403, 602, 611 |
| 36 | 14 | 36 | 18 | 403, 611, 701, 702, 703 |
| 37 | 5 | 37 | 9 | 401, 402, 403, 602, 611 |
| 37 | 15 | 38 | 16 | 401, 402, 403, 611, 701, 702, 703 |
| 39 | 17 | 39 | 20 | 401, 402, 403, 602, 611 |
| 41 | 1 | 41 | 8 | 401, 402, 403, 602, 611 |
| 41 | 10 | 43 | 1 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 43 | 2 | 45 | 18 | 401, 402, 403, 602, 611 |

| 47 | 2 | 47 | 12 | 401, 402, 403, 602, 611 |
|----|----|----|----|-------------------------|
| 48 | 6 | 48 | 10 | 401, 402, 403, 611 |
| 49 | 1 | 51 | 20 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 51 | 22 | 55 | 4 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 55 | 22 | 56 | 17 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 56 | 18 | 56 | 24 | 401, 402, 403 |
| 56 | 25 | 57 | 7 | 401, 402, 403, 611 |
| 58 | 9 | 58 | 25 | 401, 402, 403, 602, 611 |
| 62 | 2 | 64 | 13 | 401, 402, 403, 611, 701, 702, 703 |

Furthermore, in the event that Plaintiffs attempt to use the deposition of Frank Peretti, M.D. at trial, Defendants object to the following portions:

**Objections to the Deposition of Frank Peretti, M.D.**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|
| 26 | 21 | 27 | 15 | 403, 602, 611, 701, 703 |

*Dr. Clemons' Objections the Plaintiffs' Designation of Deposition Testimony:*

In their Pretrial Disclosures, Plaintiffs state that they anticipate using all or portions of the deposition of Kelly Kish.  Federal Rule of Civil Procedure 32, which governs the use of depositions in court proceedings, provides:

(1) In General.  At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

(A)  the party was present or represented at the taking of the deposition or had reasonable notice of it;

(B)  it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(C)  the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a)(1).  Sections (2) through (8) allow the use of a deposition to impeach a witness; allow the use of a deposition of a party's agent; allow the use of a

deposition of an unavailable witness; set forth the limitations on use of depositions; set forth rules regarding the partial use of depositions; discuss the effect of substitution of a party on the use of a deposition; and discuss the use of a deposition taken in an earlier action.  See Fed. R. Civ. P. 32(a)(2)–(8).  None of the rules found in sections (2) through (8) permit the use of the deposition of Kelly Kish at trial.  As such, Defendants object to Plaintiffs' presentation of all or portions of the deposition of Kelly Kish.

Plaintiffs also identify for use at trial the depositions of Babu Rao Paidipalli, M.D. and Mark P. Clemons, M.D. These Defendants object to the following portions of the deposition testimony:

**Objections to the Deposition of Mark Clemons, M.D.**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|
| 17 | 9 | 17 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 18 | 1 | 19 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 19 | 24 | 25 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 26 | 20 | 27 | 16 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 28 | 23 | 29 | 3 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 29 | 22 | 30 | 10 | 401, 402, 403, 602, 611 |
| 30 | 16 | 31 | 3 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 35 | 10 | 36 | 2 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 36 | 18 | 37 | 1 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 38 | 11 | 39 | 3 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 42 | 14 | 44 | 15 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 46 | 2 | 49 | 17 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 50 | 2 | 53 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 53 | 18 | 54 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 56 | 6 | 57 | 4 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 59 | 14 | 60 | 1 | 401, 402, 403, 602, 611 |
| 60 | 2 | 60 | 17 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 61 | 12 | 61 | 22 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 62 | 5 | 62 | 12 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 62 | 13 | 62 | 22 | 401, 402, 403, 602, 611, 701, 702, 703 |

**Objections to the Deposition of Rao Paidipalli, M.D.**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|

| 13 | 9 | 13 | 16 | 401, 402, 403 |
|----|----|----|----|------------------------------------|
| 20 | 7 | 20 | 18 | 401, 402, 403, 602 |
| 21 | 8 | 23 | 1 | 401, 402, 403, 602 |
| 23 | 13 | 24 | 4 | 401, 402, 403, 611, 701, 702, 703 |
| 25 | 4 | 25 | 15 | 401, 402, 403 |
| 26 | 19 | 27 | 22 | 401, 402, 403, 602, 611 |
| 29 | 7 | 29 | 10 | 401, 402, 403, 602, 611 |
| 31 | 4 | 31 | 21 | 401, 402, 403, 611, 701, 702, 703 |
| 32 | 24 | 33 | 13 | 401, 402, 403, 602, 611 |
| 33 | 14 | 33 | 21 | 401, 402, 403, 602, 611 |
| 34 | 14 | 34 | 21 | 401, 402, 403, 602, 611 |
| 35 | 14 | 35 | 22 | 401, 402, 403, 602, 611 |
| 35 | 24 | 36 | 12 | 401, 402, 403, 602, 611 |
| 36 | 14 | 36 | 18 | 403, 611, 701, 702, 703 |
| 37 | 5 | 37 | 9 | 401, 402, 403, 602, 611 |
| 37 | 15 | 38 | 16 | 401, 402, 403, 611, 701, 702, 703 |
| 39 | 17 | 39 | 20 | 401, 402, 403, 602, 611 |
| 41 | 1 | 41 | 8 | 401, 402, 403, 602, 611 |
| 41 | 10 | 43 | 1 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 43 | 2 | 45 | 18 | 401, 402, 403, 602, 611 |
| 47 | 2 | 47 | 12 | 401, 402, 403, 602, 611 |
| 48 | 6 | 48 | 10 | 401, 402, 403, 611 |
| 49 | 1 | 51 | 20 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 51 | 22 | 55 | 4 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 55 | 22 | 56 | 17 | 401, 402, 403, 602, 611, 701, 702, 703 |
| 56 | 18 | 56 | 24 | 401, 402, 403 |
| 56 | 25 | 57 | 7 | 401, 402, 403, 611 |
| 58 | 9 | 58 | 25 | 401, 402, 403, 602, 611 |
| 62 | 2 | 64 | 13 | 401, 402, 403, 602, 611, 701, 702, 703 |

Furthermore, in the event that Plaintiffs attempt to use the deposition of Frank Peretti, M.D. at trial, Defendants object to the following portions:

**Objections to the Deposition of Frank Peretti, M.D.**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|------------------------|
| 26 | 21 | 27 | 15 | 403, 602, 611, 701, 703 |

**Defendants, Dr. Paidipalli and Pediatric Anesthesiology Deposition Testimony**

These Defendants anticipate using all or portions of the following depositions subject to the Court's ruling on objections in the depositions pursuant to the Tennessee Rules of Evidence:

1. Deposition of Helen Lovelace

2. Deposition of Daniel Lovelace

3. Evidentiary Deposition of Dr. Ira Landsman

To the extent that Plaintiffs intend to use Defendants' depositions, or parts thereof, Defendants reserve the right to offer portions as well for rebuttal or completeness, so as to address the matters offered by Plaintiff.

These Defendants also object to the following portions of the above cited depositions:

**Objections to the Deposition of Helen Lovelace**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|
| 40 | 19 | 40 | 20 | 801, 403, 602 |
| 41 | 4 | 41 | 11 | 801, 403, 602 |
| 54 | 13 | 55 | 23 | 401, 403, 801 |
| 68 | 5 | 70 | 2 | 401, 403, 801 |
| 81 | 24 | 82 | 2 | 403, 611(a), 702 |
| 93 | 3 | 94 | 7 | 801, 403, 611(a) |

**Objections to the Deposition of Daniel Lovelace**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|
| 34 | 13 | 36 | 7 | 401, 403, 801 |

Plaintiffs' object to the following deposition objections.  Plaintiffs have not been provided a copy of Ira Landsman, M.D.'s deposition.


**Objections to the Deposition of Ian Landsman, M.D.**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|
| 90 | 14 | 91 | 4 | 401, 402, 403, 611 |
| 91 | 18 | 92 | 5 | 611 |
| 92 | 9 | 94 | 12 | 401, 402, 403, 611 |
| 96 | 16 | 96 | 21 | 401, 402, 403, 611 |
| 99 | 1 | 99 | 10 | 401, 402, 403, 611 |
| 101 | 14 | 105 | 7 | 401, 402, 403, 611 |
| 105 | 8 | 107 | 14 | 401, 402, 403, 602, 611 |
| 108 | 20 | 110 | 2 | 401, 402, 403, 611 |
| 110 | 18 | 111 | 25 | 401, 402, 403, 611 |
| 113 | 16 | 113 | 19 | 401, 402, 403 |
| 115 | 10 | 115 | 20 | 401, 402, 403, 611 |
| 117 | 24 | 118 | 8 | 401, 402, 403, 611 |
| 118 | 10 | 119 | 11 | 403, 602, 611, 701 |
| 119 | 12 | 119 | 25 | 403, 602, 611, 701, |
| 120 | 1 | 120 | 12 | 403 |
| 121 | 23 | 122 | 6 | 403, 602, 611, 701, |
| 122 | 14 | 124 | 2 | 401, 402, 403, 602, 611, 701, |
| 124 | 3 | 124 | 13 | 401, 402 403, 602, 611, 701, 703 |
| 124 | 14 | 125 | 4 | 611, 701 |
| 126 | 8 | 126 | 13 | 401, 402, 403, 611 |
| 128 | 11 | 129 | 3 | 403 |
| 130 | 17 | 130 | 22 | 401, 402, 403 |
| 131 | 4 | 131 | 17 | 401, 402, 403 |
| 131 | 18 | 132 | 13 | 401, 402, 403, 611 |
| 132 | 14 | 136 | 2 | 401, 402 403, 602, 611, 701, 703 |
| 136 | 11 | 137 | 16 | 403, 611, 701 |
| 139 | 14 | 140 | 22 | 401, 402, 403, 611, 701, 703 |
| 141 | 20 | 141 | 23 | 401, 402, 403, 602 |
| 144 | 19 | 144 | 25 | 403, 602, 611, 701, 703 |
| 145 | 2 | 145 | 16 | 401, 402 403, 602, 611, 701, 703 |
| 145 | 24 | 148 | 7 | 401, 402 403, 602, 611, 701, 703 |
| 148 | 15 | 149 | 18 | 401, 402 403, 602, 611, 701, 703 |
| 149 | 19 | 149 | 25 | 401, 402 403, 611, 701, 703 |
| 152 | 6 | 152 | 19 | 401, 402 403, 602, 611, 701, 703 |
| 152 | 23 | 153 | 15 | 401, 402 403, 611 |

*Plaintiffs' Objections to Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli's Deposition Testimony.*

**Plaintiffs object to the deposition testimony identified in Pediatric Anesthesiologists, P.A. and Babu Rao Paidipalli's Pretrial Disclosures <u>and those listed in this order</u>.  These objections are on file with the Court [D.E. 168], and these Plaintiffs incorporate those objections into this order.**

<u>**Defendant, Dr. Clemons', Deposition Testimony**</u>

Dr. Clemons anticipates using all or portions of the depositions of Helen Lovelace and Daniel Lovelace subject to the Court's ruling on objections in the depositions pursuant to the Tennessee Rules of Evidence. These Defendants also object to the following portions of the above cited depositions and the deposition of Dr. Landsman.

<u>**Objections to the Deposition of Helen Lovelace**</u>

| Page | Line | Through Page | Line | FRE Basis |
|---|---|---|---|---|
| 40 | 19 | 40 | 20 | 801, 403, 602 |
| 41 | 4 | 41 | 11 | 801, 403, 602 |
| 54 | 13 | 55 | 23 | 401, 403, 801 |
| 68 | 5 | 70 | 2 | 401, 403, 801 |
| 81 | 24 | 82 | 2 | 403, 611(a), 702 |
| 93 | 3 | 94 | 7 | 801, 403, 611(a) |

<u>**Objections to the Deposition of Daniel Lovelace**</u>

| Page | Line | Through Page | Line | FRE Basis |
|---|---|---|---|---|
| 34 | 13 | 36 | 7 | 401, 403, 801 |

Plaintiffs' object to the following deposition objections.  Plaintiffs have not been provided a copy of Ira Landsman, M.D.'s deposition.


**Objections to the Deposition of Ian Landsman, M.D.**

| Page | Line | Through Page | Line | FRE Basis |
|------|------|--------------|------|-----------|
| 90 | 14 | 91 | 4 | 401, 402, 403, 611 |
| 91 | 18 | 92 | 5 | 611 |
| 92 | 9 | 94 | 12 | 401, 402, 403, 611 |
| 96 | 16 | 96 | 21 | 401, 402, 403, 611 |
| 99 | 1 | 99 | 10 | 401, 402, 403, 611 |
| 101 | 14 | 105 | 7 | 401, 402, 403, 611 |
| 105 | 8 | 107 | 14 | 401, 402, 403, 602, 611 |
| 108 | 20 | 110 | 2 | 401, 402, 403, 611 |
| 110 | 18 | 111 | 25 | 401, 402, 403, 611 |
| 113 | 16 | 113 | 19 | 401, 402, 403 |
| 115 | 10 | 115 | 20 | 401, 402, 403, 611 |
| 117 | 24 | 118 | 8 | 401, 402, 403, 611 |
| 118 | 10 | 119 | 11 | 403, 602, 611, 701 |
| 119 | 12 | 119 | 25 | 403, 602, 611, 701, |
| 120 | 1 | 120 | 12 | 403 |
| 121 | 23 | 122 | 6 | 403, 602, 611, 701, |
| 122 | 14 | 124 | 2 | 401, 402, 403, 602, 611, 701, |
| 124 | 3 | 124 | 13 | 401, 402 403, 602, 611, 701, 703 |
| 124 | 14 | 125 | 4 | 611, 701 |
| 126 | 8 | 126 | 13 | 401, 402, 403, 611 |
| 128 | 11 | 129 | 3 | 403 |
| 130 | 17 | 130 | 22 | 401, 402, 403 |
| 131 | 4 | 131 | 17 | 401, 402, 403 |
| 131 | 18 | 132 | 13 | 401, 402, 403, 611 |
| 132 | 14 | 136 | 2 | 401, 402 403, 602, 611, 701, 703 |
| 136 | 11 | 137 | 16 | 403, 611, 701 |
| 139 | 14 | 140 | 22 | 401, 402, 403, 611, 701, 703 |
| 141 | 20 | 141 | 23 | 401, 402, 403, 602 |
| 144 | 19 | 144 | 25 | 403, 602, 611, 701, 703 |
| 145 | 2 | 145 | 16 | 401, 402 403, 602, 611, 701, 703 |
| 145 | 24 | 148 | 7 | 401, 402 403, 602, 611, 701, 703 |
| 148 | 15 | 149 | 18 | 401, 402 403, 602, 611, 701, 703 |
| 149 | 19 | 149 | 25 | 401, 402 403, 611, 701, 703 |
| 152 | 6 | 152 | 19 | 401, 402 403, 602, 611, 701, 703 |
| 152 | 23 | 153 | 15 | 401, 402 403, 611 |

*Plaintiffs' Objections to Dr. Clemons deposition testimony.*

**Plaintiffs object to the deposition testimony identified in Dr. Clemons'**

**Pretrial Disclosures <u>and those listed in this order</u>.  These objections are on file with**

**the Court [D.E. 168], and these Plaintiffs incorporate those objections into this**

**order.**

**12.** <u>**ESTIMATED TRIAL LENGTH**</u>:  Four (4) days.

13. <u>**JURY TRIAL:**</u> A jury has been demanded.

**14.** <u>**ALL INTERESTED ATTORNEYS AND LETTERHEAD:**</u>

**For Plaintiffs**: Mark Ledbetter of Halliburton & Ledbetter.  Plaintiffs' counsel's

letterhead is attached.

**For Defendants**:

(1)     W. Bradley Gilmer, Jerry O. Potter, and Karen S. Koplon of The Hardison

Law Firm, counsel for Defendants, Pediatric Anesthesiologists, P.A. and Babu Rao

Paidipalli, M.D.  Defendants' counsel's letterhead is attached;

(2)     Marcy Magee, J. Kimbrough Johnson and Natalie M. Bursi of Lewis,

Thomason, King, Krieg & Waldrop, P.C., counsel for Defendant, Mark P. Clemons,

M.D.  The Defendant's counsel's letterhead is attached.

**15.** <u>**SPECIAL EQUIPMENT:**</u>   The parties anticipate that in addition to the use of

the Court's equipment, they will use laptops, overhead projectors, DVD players, easels,

enlarged exhibits, and speakers.

16. <u>**SUPPLEMENTATION**</u>: Both parties reserve the right to amend the Joint Pre-

Trial Order in response to any modification or supplementation by any party to the

proposed Joint Pre-Trial Order occurring after the deadline, and further reserve the right and intend to amend, supplement, and/or revise this Joint Pre-Trial Order in all respects as a result of the Court ruling on any of the pending motions or appeals.

      Entered this _____ day of January, 2015.


_____
Sheryl H. Lipman
United States District Court Judge